UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BETTER BUDGET FINANCIAL SERVICES, INC., JOHN COLON, JR. and JULIE FABRIZIO-COLON,<br><br>Defendants. | Civ. No. 04-12326 (WGY) |

## PRELIMINARY REPORT OF THE TEMPORARY RECEIVER, HERNAN SERRANO, JR., PURSUANT TO THE NOVEMBER 3, 2004 ORDER ISSUED BY THE COURT

Pursuant to the Order ("Order") issued by the Court on November 3, 2004, paragraph XVI, subpart P, the Temporary Receiver, Hernan Serrano, Jr. (the "Temporary Receiver"), through his counsel, Mintz Levin Cohn Ferris Glovsky & Popeo, P.C. ("Mintz Levin"), files the following Preliminary Report (the "Preliminary Report"). This Preliminary Report describes the activities and observations of the Temporary Receiver during the period commencing immediately after his appointment by this Court and continuing through the date herein. The Preliminary Report further sets forth the manner in which the Temporary Receiver and the professionals he has engaged have carried out their obligations and responsibilities under the Order:

1. On Thursday, November 4, 2004, the Temporary Receiver, accompanied by Kevin Gregory, Peter Zlotnick, Esq., and two computer forensic specialists from CoreFacts, LLC, entered the premises of defendant Better Budget Financial Services, Inc.

1

("Better Budget"), located at 800 Cummings Center, Suite 152-R, Beverly, Massachusetts 01915, with agents from the plaintiff, the Federal Trade Commission (the "FTC"), Carole A. Paynter, Esq., Elvia P. Gastelo, Esq., and others, as well as representatives from the Beverly, Massachusetts Police Department: Detectives David Richardson and Michael Cassola.

2. The above-mentioned individuals also entered the offices of Unimark Solutions, Inc. ("Unimark"), located at 800 Cummings Center, Suite 260-T, Beverly, Massachusetts 01915, a business entity affiliated with Better Budget.

3. Representatives of the Temporary Receiver also traveled to the home of the individual defendants John and Julie Fabrizio-Colon, located at 4 Conifer Way, Beverly, Massachusetts 01915, acting upon an understanding that assets of the corporate defendant Better Budget were located at the Colons' home. The Temporary Receiver's representatives included Seth Goldman, Esq. of Mintz Levin and Marvin Miller of the Temporary Receiver's accounting firm, Weinick, Sanders, Leventhal & Co., as well as Captain Jack DiVincenzo of the Beverly Police Department.

4. Approximately 35 employees were working at the Better Budget offices and approximately 5 were located in the Unimark offices at the time the Temporary Receiver and his team entered. The Beverly Police instructed employees from both Unimark and Better Budget to step away from their desks and from any computer or telephonic equipment. Mr. Gregory monitored the Unimark employees, including Scott Grimes, the IT manager and systems administrator, to ensure that they did not use this equipment. Mr. Gregory distributed an Employee Census Questionnaire to the Better Budget and Unimark employees. Each employee on site filled out the questionnaire and submitted a

2

copy of his or her driver's license. Upon completion of the questionnaire, the employees were permitted to leave the premises.

5. Mr. Gregory was assisted by Paul Bartlett, the Better Budget Director of Business Development. Both Mr. Bartlett and Mr. Grimes had offices that were physically located in the Unimark premises. Each of these individuals had business cards on their desks that announced them as Better Budget employees. In subsequent interviews with each of them and with John Colon, however, they stated that they had dual functions, working for both companies.

6. The two computer experts from CoreFacts secured the computer servers located at the site, digitally imaged the computer drives on the premises of both Better Budget and Unimark and retrieved certain critical data stored on those servers for immediate review and analysis. The Temporary Receiver's computer specialists ensured that the Receivership Defendants' computer systems were entirely secured and impenetrable from external access pursuant to the Order.

7. The Temporary Receiver also physical secured the premises of the Receivership Defendants by changing all the locks at the offices of Better Budget and Unimark. Before the locks were changed, Better Budget and Unimark shared the same master key.

8. The Temporary Receiver also served copies of the Order on several financial institutions, including Century Bank and St. Jean's Credit Union, freezing assets of the Receivership Defendants wherever any accounts of the Receivership Defendants could be located. Through extensive interviews with defendants John Colon, Julie Fabrizio-Colon and their counsel during the initial day of the receivership, the Temporary Receiver and

3

his counsel learned that the Receivership Defendants had extensive assets located at Century Bank. Having already served Century Bank with a copy of the Order, the Temporary Receiver immediately requested that Century Bank comply with the Order by providing bank statement and other documentation relating to any accounts for both Better Budget and Unimark. Better Budget's bank statements were sent to defendant Fabrizio-Colon's personal residence, rather than to the business address. However, when defendant Febrizio-Colon was asked about where the statements were sent, she denied knowledge that they were sent to her home. Some of the statements, but not all, were located in defendant Fabrizio-Colon's office in the Unimark suite. Despite the Temporary Receiver request for copies of the statements from Century Bank, as of this date, the Bank had not supplied those statements.

9. Mr. Goldman and Mr. Miller went to the residential address of defendant Fabrizio-Colon, 4 Conifer Way, Beverly, Massachusetts to interview Ms. Fabrizio-Colon. Mr. Zlotnick and Mr. Serrano, along with individuals from the FTC, interviewed defendant Colon. Mr. Gregory and Mr. Goldman interviewed department heads at Better Budget.

10. Through interviews conducted with defendants and defendants' employees, the Receiver learned that defendant Fabrizio-Colon is the vice president of Better Budget, and owns 51% of its stock. Defendant Colon owns 49% of its stock. Defendant Fabrizio-Colon is responsible for the financial matters of the company. Both Defendant Fabrizio-Colon and Defendant Colon have access to the accounts for Better Budget at Century Bank.

11. The Temporary Receiver also learned that Unimark is owned 45% by defendant Colon, 45% by defendant Fabrizio-Colon, and 10% by a third party who, upon information and belief, invested $250,00 in Unimark in or about the last week of October 2004. Unimark was formed in the past few months, and the funds to establish it appear to have come from personal loans from defendants Fabrizio-Colon and Colon, as well as inter-company loans from Better Budget in excess of $50,000. The Temporary Receiver has not yet located any loan documents and, according to John Colon, no formal loan documents were ever created with respect to the inter-company obligations.

12. Unimark sells a natural product that lowers cholesterol. Unimark shares a phone system and computer system with Better Budget. Most of Unimark's employees are separate from Better Budget; however, there does appear to be overlap among key employees, such as Mr. Grimes, Mr. Bartlett, and the two individual defendants, Mr. Colon and Ms. Fabrizio-Colon. (Better Budget employees are paid wages and fill out IRS W-2 forms, while Unimark employees work on a strict commission basis and complete 1099 forms).

13. Unimark occupies the former offices of Better Budget, and, upon information and belief, Better Budget continues to be the lessee under and pays for the lease of the office space that Unimark occupies. Better Budget also paid for all of the furnishings and office equipment located in Unimark's office space. Moreover, Unimark and Better Budget share common directors and officers; Mr. Colon and Ms. Fabrizio-Colon are the sole directors and officers of both companies.

14. At the time that the Temporary Receiver was appointed, Unimark had purchased approximately $50,000 in non-refundable, television advertising time for

infomercials that were to be run nationally on local television stations, advertising Unimark's cholesterol product. At the request of the individual defendants and Scott Sarver, an individual, who upon information and belief, is the general manager of Unimark and possibly a holder of a small fraction of shares of Unimark stock, the Temporary Receiver agreed to permit Unimark to staff its telemarketers at the business premises of Unimark on Friday, November 5, 2004, and over the weekend of November 6-7, 2004, to accommodate the direct response telemarketing that occurs after each infomercial segment. The Temporary Receiver agreed to allow 4 to 5 telemarketers to answer incoming telephone orders, starting at 9:30 a.m. on Saturday, November 6th through approximately 3 p.m. that afternoon. Suzanne Renaud, Esq. of Mintz Levin supervised the telemarketing activities of Unimark throughout the day on Saturday. On the following day, Ms. Renaud supervised the telemarketing activities, commencing at 5:00 a.m. and continuing through 2 p.m. Unimark's management and its counsel agreed that Unimark would only take orders from any callers who attempted to purchase product, but they also agreed that they would not process any credit cards or ship any goods until after the preliminary injunction hearing to be held by the Court.

15. The reason the Temporary Receiver chose to allow Unimark to continue to operate its business in this fashion was that the business of Unimark is not technically proscribed by any of the conduct prohibitions set forth in the Temporary Restraining Order. Notwithstanding that Unimark's business appears to be distinct from Better Budget's, the same does not appear to be true with respect to its corporate and financial structure, and the Temporary Receiver believes at this preliminary stage that Unimark

6

constitutes a, "Receivership Defendant," as that term is defined at Section 9 of the Definitions Section of the Temporary Restraining Order.

16. Through the course of his preliminary investigation, the Temporary Receiver has learned that Better Budget was in the process of changing its corporate identity to Debt Management Services, Inc. ("DMS"), a for-profit debt management company. Better Budget handles all of the DMX clients, including all customer service inquiries, pursuant to a 2004 contract. DMS's sole purpose is to enroll clients through its Internet site, debtsm.com. Defendant Colon is the 51% owner of Debt Management Services; defendant Fabrizio-Colon owns 49% of the company.

17. Through interviews with the principals involved, the Temporary Receiver gained insight into Better Budget's operations. Better Budget began operations at Rantoul Street in Beverly, Massachusetts, and by running advertisements in Pennysavers. Defendants Colon and Fabrizio-Colon handled all customer-related .

18. At some point, the Colons discovered a way to bring in new customers through the Internet by capturing customer information ion the Internet. Planet IBiz developed software called "Lead Manager" to generate new leads. Planet IBiz cold-called Colon to tell him about new debt software it developed.

19. Today, Better Budget purchases 25-50 leads a day from google.com; the sales department contacts those leads. The sales representatives enroll individuals and have them sign a contract; less than 10 % of the leads becomes a Better Budget client. In its best month, Better Budget enrolled 120 new clients.

20. . According to defendant John Colon, the sales representatives do not use a script; rather, they are trained for two weeks before they may enroll new clients. No

7

college degree is necessary for the position, but experience in collections is preferred. Sales representatives are instructed to tell potential clients that they could save 50-70 %.

21. After a client signs on, the sales representative has limited additional contact with the client. The account is transferred to the customer service department. The customer service department is comprised on 10-12 individuals.

22. After clients are enrolled, the clients are told to set up their own checking account; Better Budget has no access to the account. Better Budget requires that clients set up a separate account so that the funds do not get co-mingled and so Better Budget is always aware of the amount of money available in the account. The client also grants Better Budget the power of attorney.

23. Credit Soft is the proprietary software system that Better Budget acquired at considerable cost to enable it to keep track creditors and clients by scanning documents into a database and saving them to client files. This procedure includes telephone conversations, emails, mail received, and complaints received from the Better Business Bureau. The Temporary Receiver has not yet had a chance to review the documents stored in the CreditSoft system.

24. Upon review of hard copies of numerous Better Business Bureau complaints that the Temporary Receiver's professionals found in the defendants' offices, it appears that the defendants answered those complaints by means of a general form letter sent under the signature of defendant Fabrizio-Colon. It is unclear at this time, however, whether the defendants answered those complaints either adequately or in a timely fashion. Although the answers to the complaints refer to the telephone conversations with clients and faxes to creditors, these documents are not attached to the answers. At

most, a copy of the contract as well as applicable e-mails were attached. The Temporary Receive has not yet had the opportunity to review the complaints and answers in full.

The Temporary Receiver has not yet had an opportunity to conduct a complete or thorough review of the documents or databases at either Better Budget or Unimark, or to complete the interview process. To the contrary, the receivership is at the very earliest state of its inception and the Temporary Receiver is not prepared to make any recommendations conclusions at this time. Rather, this Report will be supplemented as new facts are uncovered and as the Temporary Receiver's investigation continues.

Dated: November 8, 2004

          Respectfully Submitted,

          HERNAN SERRANO, JR.

          By: *[signature]*

          Breton Leone-Quick, Esq. (BBO# 655571)
          Suzanne Renaud, Esq. (BBO# 655558)
          Mintz Levin Cohn Ferris Glovsky
          & Popeo, P.C.
          One Financial Center
          Boston, MA 02111
          (617) 542-6000

          Peter Zlotnick, Esq.
          Seth Goldman, Esq.
          Mintz Levin Cohn Ferris Glovsky
          & Popeo, P.C.
          The Chrysler Center
          666 Third Avenue
          New York, New York 10017
          (212) 935-3000

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 8th day of November, 2004, served a true copy of the above document by overnight mail on counsel for the defendant: Christian Pedersen, Esq., Metaxas, Norman & Pidgeon, LLP, 900 Cummings Center, Beverly, MA 01915.

_____
Breton Leone-Quick