UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

BETTER BUDGET FINANCIAL SERVICES, INC.,
JOHN COLON, JR., and JULIE FABRIZIO-COLON,

    Defendants.

Civ. No. 04-12326 (WGY)

**CUMMINGS PROPERTIES, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE**

Cummings Properties, LLC ("CPL") has moved to intervene in this action, pursuant to Federal Rule of Civil Procedure 24(a), to protect itself against the court-appointed temporary receiver's attempt to wrongfully dispossess CPL of certain security deposits in which CPL has a secured interest. CPL further requests an adjudication that CPL should not be compelled, pursuant to plaintiff's *Ex Parte* Temporary Restraining Order (the "TRO"), to turn over the security deposits because they are not assets of the receivership estate subject to the TRO. CPL also requests that this Court order the receiver to pay overdue rent under two commercial leases between defendant Better Budget Financial Services, Inc. ("BBFS") and CPL. In support of its motion, CPL states as follows.

**Background**

CPL and BBFS entered into a commercial lease for premises located at 800 Cummings Center, Suite 152-R, Beverly Massachusetts 01915 on May 16, 2002. A copy of that lease ("Lease A") is attached hereto as Exhibit A; *see also* Affidavit of Susan F. Brand ("Brand Aff.") at Exhibit B. The term of Lease A is September 1, 2002 through April 30, 2007, and the

premises initially consisted of approximately 4,386 square feet for executive and administrative offices and a call center. Upon execution of Lease A, the monthly rent was $7,657.17, and BBFS paid a security deposit of $15,300.00. On March 24, 2004, the lease was amended to relocate BBFS to Suite 260-T on the second floor of the same building. Under the amendment, the premises under Lease A increased to approximately 10,686 square feet. The monthly rent for Lease A also increased to $16,535.45. Upon execution of the amendment, the security deposit increased to $32,500.00, with BBFS paying CPL $17,200 in addition to the initial security deposit of $15,300.00.

On March 29, 2004, CPL entered into a separate lease ("Lease B") with Termidebt, Inc. ("Termidebt") for 4,290 square feet of executive and administrative offices at 800 Cummings Center, Suite 152-R, Beverly Massachusetts. See Exhibit C. The principals of Termidebt are also the principals of BBFS. See execution pages of Leases A and B at Exhibits A and C. The lease term is May 1, 2004 through April 30, 2008. The monthly rent is $5,005, and Termidebt paid a security deposit of $10,000. On June 9, 2004, Termidebt assigned Lease B, including its rights in the security deposit, to BBFS. CPL holds security deposits under the two leases with BBFS in the total amount of $42,500.

On or about November 2, 2004, the plaintiff, Federal Trade Commission ("FTC"), filed a complaint against the defendants, alleging violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). CPL was not served with the complaint and is not a party to this action. On November 3, 2004, the FTC filed a (Proposed) *Ex Parte* Temporary Restraining Order With Asset Freeze, Appointment of Receiver, Immediate Access to Defendants' Business Premises, Expedited Discovery, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (TRO). This Court granted the TRO on that day, which, by stipulation and order dated November 18,

2004, has been extended until the trial date. On or about November 23, 2004, the court-appointed temporary receiver served CPL with the TRO.

On November 1, 2004, BBFS failed to pay rent under both Lease A and Lease B, and neither BBFS nor the temporary receiver has paid rent or any other charges under the leases since that time. Presently, BBFS owes CPL $35,955.88 under Lease A and $10,760.34 under Lease B, for a total of $46,716.22. *See* statements attached as Exhibit D.

CPL is informed that another entity, UniMark Solutions, Inc. ("UniMark"), without the consent as required under Lease A, is presently occupying some portion of Suite 260-T. *See* Brand Aff. at Exhibit B, para. 7. Pursuant to Sections 2 and 2.c.i. of a Stipulation Modifying Plaintiff's *Ex Parte* Temporary Restraining Order entered by the court on November 18 2004, the temporary receiver has permitted Unimark to occupy that space, and UniMark is required to pay the temporary receiver rent until the space is vacated by either BBFS or UniMark. Despite that order, the temporary receiver has not paid CPL any rent monies due.

Since the issuance of the TRO, the temporary receiver has demanded that CPL turn over the security deposits held under Lease A and Lease B to the receiver. *See* Exhibit E at 2. Counsel for CPL and the temporary receiver have attempted in good faith to reach an agreement regarding the security deposits and past due rent. *See* Local Rule 7.1(a)(2) Certification attached hereto. The parties have reached an impasse, however, with the temporary receiver insisting that CPL return the security deposits before the temporary receiver decides what it will pay as administrative rent under each lease, and CPL maintaining that it has a right to continue to hold the security deposits under the leases to apply to future damages rather than administrative rent.

**Argument**

1. *CPL Should Be Allowed As Of Right To Intervene To Retain Its Security Deposits.*

Rule 24 of the Federal Rules of Civil Procedure provides that:

> anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Although CPL is not a party to this action, it should be permitted to intervene as a matter of right to protect its interest in the security deposits that it holds under Lease A and Lease B. It is clear from the TRO, as modified, that the interests of CPL are not adequately represented by any of the parties to this action, including the receiver. For example, BBFS and the other defendants would have no interest in who holds the deposits and whether or not they are applied to administrative rent. As plaintiff, the FTC filed the proposed TRO, asking for a freezing of assets and the appointment of a temporary receiver. The temporary receiver has taken a position directly contrary to CPL's, contending that CPL's security deposits are assets of the receivership estate and has demanded that CPL turn them over to him. Accordingly, it is clear that none of the parties adequately represents the interests of CPL. *See State of Maine v. United States Fish and Wildlife Service*, 262 F.3d 13 (2001) (observing that proposed intervenors' explanation that their interests are not adequately represented by the existing parties must be determined "'in keeping with a commonsense view of the overall litigation.'"), *quoting Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

Furthermore, the disposition of this action will likely include an adjudication that will affect the security deposits. Unless CPL is permitted to intervene, its ability to protect its interest in those security deposits most likely will be impeded or impaired. *See also Cotter v. Mass.*

4

*Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 34 (1st Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001) (reversing district court decision denying intervention on the ground that the intervenors had direct private interests). Because CPL's interests are not adequately represented by any of the parties and the disposition of this action might impair or impede its interests in the security deposits, CPL's motion to intervene as a matter of right should be granted. *See* Fed. R. Civ. P. 24(a)(2).

    2.    *The Turnover of CPL's Security Deposits Is Not Required By The TRO.*

As stated above, the temporary receiver has taken the position that the security deposits are assets of the receivership estate and thus subject to the TRO. He points to the definition of "asset" and other sections that purportedly give him the authority to seize CPL's security deposits. The TRO, however, does not support his untenable position.

    A.    *CPL's Security Deposits Are Not Receivership Assets.*

The TRO's definition of "asset" enumerates several discrete interests, including "chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, premises, mail or other deliverables, shares of stock, lists of consumer names, inventory, checks, notes, accounts, credits, receivables, funds, and all cash, wherever located." *See* TRO at 3. On its face, the definition does not include a "security deposit" held by a commercial landlord under a lease. In fact, nowhere in its 37 pages does the TRO expressly refer to or mention "security deposit." The only category of asset in the TRO that the temporary receiver has argued applies is "leasehold," which does not mean a security deposit. *See, e.g.*, http://www.dictionary.com (defining "leasehold" as land or property held under a lease).

The BBFS deposits were deposited in CPL's general operating account, not an escrow account, do not bear interest and may not be accessed by BBFS until after the lease ends, subject

to satisfactory compliance with the terms of the lease. *See* Brand Aff. At Exhibit B, para. 8; Exhibit A, Section 2. "Historically, a security deposit has been considered as a reserve held by the landlord against any loss of rent, damage to the premises or breach of any covenant of the lease or transaction." G. Warshaw, Massachusetts Landlord-Tenant Law § 10.1 at 306 (1987). While Massachusetts has enacted legislation that broadly defines a landlord's control over security deposits, including a requirement that the deposit go into an interest-bearing escrow account which the landlord's creditors cannot reach, the statute applies only to *residential tenancies*, not commercial leases such as BBFS's. G. L. c. 186, § 15B(1)(e), (3)(a). *See Kollins v. Cohen*, 1999 Mass. Super. LEXIS 315, *18 (1999) (explaining that G.L. c. 186 § 15B has no application to a commercial tenancy or other non-residential situations), *citing Shwachman v. Khoroshansky*, 15 Mass. App. Ct. 1002 (1983). Although the position taken by the temporary receiver may have some weight in the context of a residential tenancy, it simply does not apply to a commercial tenancy and the status of a commercial security deposit under Massachusetts law. *Id.*[1]

Moreover, a landlord's secured possessory interest in a security deposit is well recognized in bankruptcy law. The Bankruptcy Code treats security deposits as secured assets that a landlord may use to satisfy pre-petition and lease rejection obligations, and security deposits have been deemed to be secured interests of the landlord to the extent that they do not exceed a

---

[1] *See also Waylyn Corp. v. Casalduc*, 219 F.2d 888 (1st Cir. 1955). There, in a mortgage foreclosure action against a landlord, the court appointed a receiver, who adopted the leases held by the landlord and demanded that the landlord turn over all of its security deposits. When the landlord refused, the district court ordered the landlord to turn them over to "secure payment of rent and the compliance with the terms of the lease contracts adopted by the receiver." 219 F.2d at 889-90. On appeal by the landlord, the First Circuit Court of Appeals dismissed the appeal on the ground that the district court's order was interlocutory and thus not subject to appeal. *Id.* Here, as in the *Waylyn* case, the security deposits are being held by CPL to secure payment of rent and compliance with the terms of the lease contracts. While they were assets of the receivership estate in *Waylyn*, that was because the receivership was over the landlord and not the tenant, as in the case at hand. The security deposits cannot be construed as assets of both the landlord and the tenant.

6

landlord's allowable claim. *See* 11 U.S.C. § 502 (b) (6) and reporter's notes; *Oldden v. Tonto Realty Corp.*, 143 F.2d 916 (2d Cir. 1944) (holding that a landlord's security deposit may be deducted from allowed claim in bankruptcy); *ITXS, Inc. v. F&S Hayward, LLC*, No. 03-3082-MBM, slip op. at 8 (U.S.D.C. W.D. Pa. Dec. 13, 2004) (ruling that a landlord's security deposit constitutes, as a matter of law, a perfected security interest or lien in landlord's favor*); In re Johnson*, 215 B.R. 381, 384 (N.D. Ill. 1997) (holding landlord's interest in security deposit akin to a lien); *In re Atlanta Times, Inc.*, 259 F. Supp. 820, 827-28 (N.D. Ga. 1966) (finding that equipment lessor had a perfected security interest in security deposit that it held*): In re K&R Mining, Inc.*, 105 B.R. 394, 397 (N.D. Ohio 1989), *quoting In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (N.D. Ill. 1988) (holding that one who obtains a retainer of money is like a landlord who obtains a security deposit in the sense that both hold a possessory security interest in cash); *Brooks Shoe Mfg. Co., Inc. v. United Telephone Co.*, 39 B.R. 980, 982 (E.D. Pa. 1984) (finding that utility company's possession of a security deposit created a perfected security interest in such deposit); *In re Northeastern Int'l Airways, Inc.*, 99 B.R. 487, 488-89 (S.D. Fla. 1989) (holding creditor had a perfected possessory security interest in a security deposit that it held).

Based upon the foregoing authorities, particularly where CPL retains a possessory interest in the security deposits, CPL's security deposits are not subject to the TRO and need not be turned over to the receiver.

    B. *The TRO Does Not Require Turnover of the Security Deposits.*

The TRO is directed primarily at the conduct of the *defendants* and specifically enjoins them from engaging in prohibited activities. *See, e.g.*, TRO at Section I ("Prohibited

Misrepresentations"); Section II ("Prohibited Business Practices"); Section III ("Web Hosting"); Section IV ("Asset Freeze"); and Section V ("Customer Lists").

To the extent that other sections of the TRO apply to third parties, the temporary receiver has pointed to no section that applies to CPL's retention of its security deposit. The temporary receiver has cited Section VI, Section XVIII and Section XIX as the bases for the turnover of CPL's security deposits. Section VI, which is captioned "Retention of Assets and Records Held by Third Parties," is directed to any "person" that "holds, controls or maintains custody of any account or asset of any Defendant . . . ." Because the term "asset" does not include security deposits, and because CPL does not maintain any account or asset for any defendant, that section does not apply to CPL.

Section XVIII of the TRO, captioned "Delivery of Receivership Property," requires third parties to transfer or deliver to the temporary receiver possession, custody and control of "all assets, all property, owned beneficially or otherwise, wherever situated, of the Receivership Defendants." That section does not apply to CPL, again because CPL maintains no assets of BBFS, and further because the security deposits are not beneficially owned by any of the defendants. *See, e.g.,* Black's Law Dictionary 156 (6th ed. 1990) (defining "beneficial owner" as one who does not have title to the property but has rights in the property which are the "normal incidents of owning the property"); 17 C.F.R. § 240.13d-3(1)(a) (1991) (defining "beneficial ownership" as any person who has "voting power" or "investment power" of securities, such as stock); *Young v. Paquette*, 341 Mass. 67 (1960) (explaining that surviving joint tenant acquires full legal and beneficial ownership on co-tenant's death); *Moscatiello v. Board of Assessors of Boston*, 36 Mass. App. Ct. 622 (1994) (finding that because trust had legal ownership of property, principal resident, who was the beneficial owner, could not claim residential

exemption); *Barclay v. Deveau*, 11 Mass. App. Ct. 236 (1981) (holding that condominium owners had proportionate interest in management and were not simply "beneficial" owners with no voice in management).

Finally, Section XIX of the TRO, captioned "Transfer of Funds to the Temporary Receiver," is directed only to "banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions," and so does not apply to CPL because CPL is not one of the listed institutions.

In light of the fact that the TRO does not mention security deposits, as well as the failure of the receiver to pay outstanding rents due under the leases, the receiver's actions in attempting to invoke the TRO over CPL's security deposits should be denied as overreaching.[2]

4. *The Temporary Receiver Should Be Ordered to Pay CPL All Rents and Other Charges Due Under The Leases.*

It is well settled that for the purpose of determining the respective rights under a request for injunctive relief, court should weigh the equities of the parties affected. *See generally Federal Trade Comm'n v. Warner Communications, Inc.* 742 F.2d 1156 (9th Cir. 1984) (opining that court should balance equities among the parties in deciding whether to grant preliminary injunction); *Federal Trade Comm'n v. Weyerhaeuser Co.*, 648 F.2d 739 (D.C. Cir. 1981) (holding that private equities may be considered in a motion for injunctive relief). Since the

---

[2] In an action involving another federal regulatory agency, the Federal Deposit Insurance Corporation ("FDIC"), CPL was similarly up against a receiver attempting to negate CPL's rights under a commercial lease. *See Cummings Properties, Management, Inc. v. Federal Deposit Ins. Corp.*, 786 F. Supp. 144, 146 (D. Mass. 1992). There the FDIC, as receiver of a failed bank, attempted to remove an automatic teller machine (ATM) from premises leased by the bank from CPL. CPL moved for a preliminary injunction on the ground that the ATM was a leasehold improvement or fixture under the terms of the lease and Massachusetts law. The FDIC argued that 12 U.S.C. § 1821(j), which confers broad powers upon the FDIC in receivership actions, gave it the unfettered right to remove the ATM. Rejecting the FDIC's broad interpretation of its statutory authority, the district court granted CPL's motion, ruling that whether the ATM is a fixture was an issue appropriate for judicial review and stating further that the statute "does not elevate FDIC to the position of a sacred cow which may graze upon the rights of others at will, unchecked by the courts." 786 F. Supp. at 145-46. Similarly, CPL urges this Court to prevent the FTC and its temporary receiver from "graz[ing] upon" CPL's rights in this action.

commencement of this action and issuance of the TRO, neither BBFS nor the receiver has paid CPL any rent due under Leases A and B, although the receiver is in possession of both leased premises. Moreover, although UniMark is in possession of Suite 260-T at the premises, it has not paid CPL rent and the temporary receiver has not paid any rents owed, notwithstanding that the TRO requires UniMark to pay rent to the receiver. *See* Stipulation Modifying TRO, at para. 2.c.i. As of December 1, 2004, CPL has lost at least $46,716.22 and continues to sustain damages. *See* Exhibit D. Another $21,540.45 in rent will be due January 1, 2005 under Leases A and B. It is manifestly unfair and inequitable that the temporary receiver is withholding rent due under both leases, where he is in possession of the leased premises. Thus, CPL requests that this Court order the temporary receiver to pay to CPL all monies due under each lease as administrative expenses of the receivership. *See also* 11 U.S.C. § 502 (b) (6); § 503 (a)-(b).

## Conclusion

The FTC and its temporary receiver have overreached their authority in demanding that CPL turn over its security deposits rightfully held under two leases. CPL has a possessory interest in those security deposits, which are not part of the receivership estate. Since November 2004, moreover, CPL has not been paid rent that rightfully belongs to it under those leases, despite the receiver's possession of the premises. Accordingly, CPL respectfully moves to intervene in this action to protect itself against the FTC, its receiver and the TRO, and also moves for an order requiring the receiver to pay CPL overdue rent in an amount not less than $46,716.22.

Dated: December 31, 2004

Susan F. Brand, BBO# 054100
200 West Cummings Park
Woburn, MA 01801
(781) 935-8000

\\CPL-FP\ACCOUNTING\LEGAL\ESCOBAR\BETTERBUDGETMEMOINSUPPORTOFMOTION.DOC

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,           ) | |
| )| |
| Plaintiff,           ) | |
| ) | |
| v.           ) | |
| )           | Civ. No. 04-12326 (WGY) |
| BETTER BUDGET FINANCIAL SERVICES, INC.,  ) | |
| JOHN COLON, JR., and JULIE FABRIZIO-COLON,  ) | |
| ) | |
| Defendants.           ) | |
| ) | |

## CERTIFICATE OF SERVICE

I, Susan F. Brand, hereby state that on this date I caused to be served on all parties of record the enclosed Motion of Cummings Properties, LLC to Intervene, Local Rule 7.1(a)(2) Certification, Cummings Properties, LLC's Memorandum in Support of Its Motion to Intervene, Disclosure Statement, Motion for Admission to Practice *Pro Hac Vice* and form of Order, Certificate of Good Standing in Support of Motion for Admission to Practice *Pro Hac Vice*, and Notice of Appearance.

Dated: December 31, 2004

*/s/ Susan Brand*
Susan F. Brand, BBO# 054100
200 West Cummings Park
Woburn, MA 01801
(781) 935-8000

M:\LEGAL\ESCOBAR\!BETTERBUDGETCERTOFSERVICE.DOC