IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BETTER BUDGET FINANCIAL SERVICES, INC., ) <br> JOHN COLON, JR., and JULIE FABRIZIO-COLON, ) <br> ) <br> Defendants. ) <br> ) | Case No. 04-CV-12326 (WGY) |

**PLAINTIFF FEDERAL TRADE COMMISSION'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I. Introduction .................................................................. 1

II. Procedural History ........................................................... 1

III. Defendants' Deceptive Marketing of their Debt Settlement Services. ............. 2

IV. The Damages Caused by Defendants' Fraudulent Practices Exceeds 11.9 Million Dollars. ...................................................................... 4

V. Legal Argument .............................................................. 4

    A. The Standard For Granting Summary Judgment ........................... 4

    B. This Court has the Authority to Enter Permanent Injunctive Relief Against the Defendants for Violations of the FTC Act. ............................. 5

        1. Defendants Have Violated Section 5 of the FTC Act Through Their Deceptive Debt Settlement Program. ............................. 6

        2. Defendants John Colon, Jr. and Julie Fabrizio-Colon are Individually Liable for BBFS's Deceptive Conduct. ...................... 10

            a) John Colon, Jr.'s Liability ............................. 11
            b) Julie Fabrizio-Colon's Liability ........................ 12

        3. Defendants John Colon, Jr. and Julie Fabrizio-Colon are Liable for All Damages Resulting From Defendants' Deceptive Practices ... 13

VI. Conclusion .................................................................. 15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Affiliated Ute Citizens v. U.S.*, 406 U.S. 128 (1972) ................................. 7

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) ................................. 5

*Biogen, Inc. v. Berlex Labs., Inc.*, 113 F. Supp.2d 77 (D. Mass. 2000) ................... 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................. 5

*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 205 (S.D.N.Y. 2002) .................. 7

*FTC v. Amy Travel Service, Inc.*, 875 F.2d 564 (7th Cir.), *cert. denied*,
493 U.S. 954 (1989) ................................................. 6, 7, 10

*FTC v. Atlantex Assocs.*, 1987-2 Trade Cas. (CCH) ¶67,788 (S.D. Fla. 1987), *aff'd*,
872 F.2d 966 (11th Cir. 1989) ............................................. 6, 10

*FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) ..................................... 13

*FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993) ........................... 7, 13

*FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ............... 6, 7

*FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996). ......................... 6, 13

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982). ........................... 6

*FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282 (D. Minn. 1985) .................. 7, 13

*FTC v. Jordan Ashley, Inc.*, 1994-1 Trade Cas. (CCH) ¶ 70,570 (S.D. Fla. 1994). ......... 13

*FTC v. Nat'l Invention Servs.*, 1997-2 Trade Cas. (CCH) ¶71, 921(D.N.J. 1997). .......... 6

*FTC v. Renaissance Fine Arts, Ltd.*, 1995-2 Trade Cas. (CCH) ¶71,086
(N.D. Ohio Aug. 10, 1995). ................................................ 13

*FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991) ............... 6, 7

*FTC v. Silueta Distributings, Inc.*, 1995-1 Trade Cas. (CCH) ¶70,918
(N.D. Cal. Feb. 24, 1995). ................................................ 13

*FTC v. Wilcox*, 926 F.Supp. 1091 (S.D. Fla. 1995) ................................. 7

*FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988) .............. 6

*FTC v. World Travel Vacation Brokers, Inc.*, 761 F.Supp. 68 (N.D. Ill. 1991) ............. 13

*Gordon v. Burr*, 506 F.2d 1080 (2d Cir. 1974) ...................................... 13

*HUD v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920 (4th Cir. 1995) ....... 14

*Int'l Diamond Corp.*, 1993-2 Trade Cas. (CCH) ¶65,725 (N.D. Cal. 1993) .............. 7, 8

*In re Nat'l Credit Mgmt. Group, LLC*, 21 F. Supp. 2d 424 (D.N.J. 1998) ............... 6, 7

*In the Matter of Cliffdale Assocs.*, 103 F.T.C. 110 (1984). ............................ 7

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) ................................. 6

*SEC v. Lorin*, 76 F.3d 458 (2d. Cir. 1996) ......................................... 14

*Standard Educs., Inc. v. FTC*, 475 F.2d 401 (D.C. Cir.), *cert. denied*, 414 U.S. 828 (1973)) .. 10

**DOCKETED CASES**

*FTC v. Dion,* No. 03-40005, slip op. at 3 (D. Mass. Feb. 6, 2003) ..................... 10

**FEDERAL STATUTES**

15 U.S.C. § 45 ................................................................ 1

15 U.S.C. § 53 ............................................................... 1, 5

Fed.R.Civ.P. 56 ............................................................ 1, 4, 5

**MISCELLANEOUS**

Transcript of Deposition John Colon, Jr., dated December 29, 2004 ........... 2, 8, 9, 11, 12

Transcript of Deposition Julie Fabrizio-Colon, dated December 30, 2004 ...... 2, 8, 11, 12, 13

## I. Introduction

Plaintiff Federal Trade Commission ("FTC" or "Commission") files this memorandum in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56. As the substantial amount of evidence presented by the Commission in this motion clearly demonstrates, there is no genuine issue of material fact that defendants Better Budget Financial Services, Inc. ("BBFS"),[1] and its owners John Colon, Jr. and Julie Fabrizio-Colon ("Colon defendants"), made material misrepresentations about their debt settlement program that induced consumers nationwide to enroll in their program. As a result of the defendants' misrepresentations regarding their debt settlement services, consumers nationwide have suffered a total of $11,978,249.18 in injury. Because there is no genuine dispute of any material fact, the Commission is entitled to judgment as a matter of law. The Commission respectfully requests entry of the attached Final Order for Permanent Injunction against Better Budget Financial Services, Inc., John Colon, Jr. and Julie Fabrizio-Colon, including payment of damages in the form of disgorgement and restitution for consumers' injuries.

## II. Procedural History

On November 2, 2004, the FTC filed a complaint alleging that the defendants violated Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, by engaging in unfair and deceptive practices. The Commission sought preliminary and permanent injunctive relief under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to halt the alleged unlawful practices and to preserve assets and hence the ability of the Court to grant appropriate relief, including disgorgement of ill-gotten gains.

---

[1] In May 2004, the Colon defendants incorporated a second company, Debt Management Solutions ("DMS") that sold the exact services as BBFS. The Commission lacked evidence of whether DMS was operating at the time this action was filed. Since the filing of this action, the Commission has confirmed that DMS was operating and that it had been the subject of consumer complaints that are identical to those received by BBFS. DMS has not been named as a defendant in the complaint but will, if the Commission succeeds in this action, be subject to the requirements of a Permanent Injunction as an affiliate of BBFS. For the purposes of this motion, the term "BBFS" also refers to "DMS."

1

On November 3, 2004, the Court granted the Commission's *ex parte* application for a Temporary Restraining Order ("TRO"). The TRO enjoined the defendants from making certain misrepresentations about their debt settlement program; disabled the defendants' web sites, "www.betterbudget.net" and "termidebt.net," where the defendants had promoted their services; froze the defendants' assets; and appointed a Temporary Receiver to manage BBFS and marshal and preserve corporate assets, among other relief.

On November 10, 2004, the parties entered into a stipulation extending all of the provisions of the TRO until the time of trial, except for agreeing to modify the asset freeze on the Colon defendants to permit them to seek a mortgage on one of two homes they owned. The proceeds from any mortgage obtained were to be used to pay the Colon defendants' living expenses and attorney's fees.[2] The Court entered the stipulation on November 18, 2004, and the parties engaged in expedited discovery, which closed on January 21, 2005.

## III. Defendants' Deceptive Marketing of their Debt Settlement Services.

Defendants have operated BBFS since August 21, 2000,[3] offering debt settlement services to consumers nationwide. Defendants marketed their program over the Internet, in local newspapers and through telemarketing.[4] Defendants' debt settlement program purported to help consumers "eliminate anywhere between 50 and 70 percent"[5] of the consumers' debts through "creditor negotiation."[6] Consumers paid the defendants: 1) a retainer fee that ranged from hundreds to thousands of dollars, 2) a monthly administrative fee, and 3) 25% of any savings

---

[2] The Colon defendants were able to acquire a mortgage in the amount of $120,000 on this second home.

[3] PX-1, Ex. A.

[4] Transcript of Deposition John Colon Jr., dated December 29, 2004 ("Colon Tr."), p. 196:6- 197:5; Transcript of Deposition Julie Fabrizio-Colon, dated December 30, 2004 ("Fabrizio-Colon Tr."), p. 28:3-7.

[5] PX-1, Ex. F, p. 6; PX-6, ¶4; Declaration of Angela Starksspear, dated January 12, 2005 ("Starksspear Dec."), ¶4.

[6] PX-1, Ex. C.

realized in a settlement with a creditor.[7] In marketing their debt settlement services, the defendants represented that they would take various actions that would enable consumers to pay off all of their unsecured debts for a reduced amount (Complaint Count I). The defendants also represented that they would settle each creditor's account as consumers had saved enough money to pay one-half of the debt owed (Complaint Count II). Finally, the defendants represented that they would contact consumers' creditors to ensure that the creditors ceased making harassing collection calls to the consumers (Complaint Count III).

The Commission has brought forth substantial evidence in support of this motion that shows convincingly that the defendants made material, false representations regarding their services to consumers. The Commission has submitted the sworn statements of twenty former BBFS customers (including two declarations from consumers who contacted the Commission after the filing of this action) attesting to the defendants' false representations and the consumers' injury. The Commission has also submitted a complaint chart showing that 79 new consumer complaints have been filed with the Commission since this action was commenced, all of which complain about the defendants' failures to fulfill their promises. Further, the Commission has presented copies of customer correspondence[8] and complaint logs obtained from BBFS's premises on November 4, 2004, wherein the customers complain about the defendants' misrepresentations.

---

[7] PX-1, Ex. E.

[8] For example, BBFS customer Kathy Wolford emailed the defendants on November 3, 2004: "...from the day we started with your company our life has went [sic] to hell. We want out today...Your company did nothing for us, so we owe you nothing. And for the lies that was [sic] told to us, your company told us they would handle the calls from day one and now they tell us not to answer them. And we wouldn't be sued????? Guess again... I have a lawyer calling me and my neighbors asking for 10,000 dollars today our [sic] he will see us in court." Similarly, BBFS customer Sharon Millican wrote on October 19, 2004: "Your office has failed miserably in every respect in following through with its promises to assist me in reaching a settlement on my various credit card debts. I have had nothing but trouble as a result of your company's ineptitude in these matters. Your company has grossly misrepresented its services from the start, and in fact, I have already been blind-sided by one law suit from a company that you were supposedly negotiating with on my behalf. Today, I am being harassed by another collection service on another account that your company was supposed to be handling. Your company has saved me no money whatsoever, and in fact, your gross misconduct and fraudulent business practices are continuing to cost me more money each day." (Copies of BBFS consumer correspondence are attached to the Cindy Kapadia Declaration II as Ex. C).

3

Additionally, since the filing of this action, consumers have contacted the Temporary Receiver via email, complaining about defendants' failures to fulfill their promises, some of which the Commission has presented in this motion. As all of this evidence fully details, the defendants in numerous instances did not take actions that enabled the consumers to pay off all of their debts for a reduced amount. Further, the defendants often did not settle consumers' accounts when the consumers had saved sufficient money in the savings account that the defendants instructed them to open. Finally, the defendants frequently did not contact creditors to stop creditors from making harassing collection calls to the consumers. There is no genuine issue that, in numerous instances, all of these material claims were false.

## IV.  The Damages Caused by Defendants' Fraudulent Practices Exceeds 11.9 Million Dollars.

The defendants' records maintained at their business premises and obtained by the Commission pursuant to the TRO, were analyzed by the Commission to determine how much consumers have paid for the defendants' deceptively marketed services. These records revealed that the defendants have collected over 11.9 million dollars in fees from consumers.[9] As fully discussed in the Legal Argument section below, damages in this case consist of all of the fees that consumers paid to the defendants. Accordingly, the Commission seeks entry of a judgment against the defendants in the amount of $11,978,249.

## V.  Legal Argument

### A. The Standard For Granting Summary Judgment

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[9] Declaration of Peter Dykstra, dated January 25, 2005 ("Dykstra Dec."), ¶ 7 and Ex. C thereto.

4

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the Court "is compelled to undertake two inquiries: (1) whether the factual disputes are genuine, and (2) whether any fact genuinely in dispute is material."[10] The Commission, as movant, bears the initial burden of proof.[11] Summary judgment is proper if there is no genuine factual issue on which there is sufficient evidence favoring the nonmoving party for the finder of fact to reasonably return a verdict for that party.[12] As set forth below, there are no genuine disputes as to any material facts regarding the defendants' deceptive conduct in marketing their debt settlement program. Accordingly, the Court should enter summary judgment in favor of the Commission.

### B. This Court has the Authority to Enter Permanent Injunctive Relief Against the Defendants for Violations of the FTC Act.

To remedy the defendants' violations of the FTC Act recounted herein, the Commission seeks injunctive, monetary and ancillary relief against defendant BBFS and the Colon defendants. This Court has the authority to grant permanent relief pursuant to the second proviso of Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which states that "in proper cases the Commission may seek, and, after proper proof, the court may issue, a permanent injunction" against violations of "any

---

[10] *Biogen, Inc. v. Berlex Labs., Inc.*, 113 F. Supp. 2d 77, 82 (D. Mass. 2000) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986)).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[12] *Liberty Lobby*, 477 U.S. at 249.

provision of law enforced by the Federal Trade Commission."[13] A common fraud case such as this qualifies as a "proper case" under Section 13(b).[14]

Section 13(b) confers full equitable powers on this Court. In addition to entering a permanent injunction, the Court may order the rescission of contracts, restitution, and/or disgorgement of ill-gotten gains.[15] Where, as here, the public interest is implicated, this Court's equitable powers "assume an even broader and more flexible character than when only a private controversy is at stake."[16]

### 1. Defendants Have Violated Section 5 of the FTC Act Through Their Deceptive Debt Settlement Program.

As set forth in detail in the Commission's Rule 56 Statement, the evidence before the Court clearly demonstrates that the defendants repeatedly violated Section 5 of the FTC Act, which forbids deceptive acts or practices. An act or practice is deceptive under Section 5(a) if it involves a representation, omission, or practice that is likely to mislead consumers acting reasonably under the circumstances.[17] Misrepresentations of material facts made for the purpose of inducing consumers to purchase products or services constitute deceptive acts or practices forbidden by

---

[13] 15 U.S.C. § 53(b).

[14] See, e.g., *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1028 (7th Cir. 1988); *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir. 1982).

[15] *FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 468-70 (11th Cir. 1996); *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314-15 (8th Cir. 1991); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571-72 (7th Cir.), cert. denied, 493 U.S. 954 (1989).

[16] *Gem Merchandising*, 87 F.3d at 469 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)).

[17] See *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 526 (S.D.N.Y. 2000); *In re Nat'l Credit Mgmt. Group, LLC*, 21 F. Supp. 2d 424, 441 (D.N.J. 1998); *FTC v. Nat'l Invention Servs.*, 1997-2 Trade Cas. (CCH) ¶71, 921 at 80,478 (D.N.J. 1997); *FTC v. Atlantex Assocs.*, 1987-2 Trade Cas. (CCH) ¶67,788 at 59,252 (S.D. Fla. 1987), aff'd, 872 F.2d 966 (11th Cir. 1989).

6

Section 5(a).[18] Generally, representations are material if they involve any information which affects consumer choices and decision-making.[19] Specifically, "explicit claims or deliberately-made implicit claims utilized to induce the purchase of a service or product are presumed to be material."[20]

To establish a Section 5 violation, "a defendant need not have engaged in the practices or made the misrepresentations with an intent to deceive."[21] Additionally, the Commission need not prove that every consumer actually relied upon the misrepresentations to prevail.[22] "Requiring proof of subjective reliance by each individual consumer would thwart effective prosecutions of large consumer redress actions and frustrate the statutory goals of [Section 13(b)]."[23] Rather, the central issue is "whether the seller's misrepresentations tainted the customer's purchasing decisions."[24] A presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendant's product.[25] Once the Commission sets forth proof on these

---

[18] See Nat'l Credit Mgmt., 21 F. Supp. 2d at 441.

[19] Affiliated Ute Citizens v. U.S., 406 U.S. 128, 153-54 (1972); In the Matter of Cliffdale Assocs., 103 F.T.C. 110, 165 (1984).

[20] See Nat'l Credit Mgmt., 21 F. Supp. 2d at 441.

[21] Id.

[22] Amy Travel Serv., Inc., 875 F.2d at 573-74, cert. denied, 493 U.S. 954 (1989); Five-Star Auto, 97 F. Supp. 2d at 530.

[23] FTC v. Figgie Int'l, Inc., 994 F.2d 595, 605-06 (9th Cir. 1993) (citing FTC v. Kitco of Nevada, Inc., 612 F. Supp. 1282, 1293 (D. Minn. 1985) and Sec. Rare Coin, 931 F.2d at 1316 (8th Cir. 1991); FTC v. Wilcox, 926 F. Supp. 1091, 1105 (S.D. Fla. 1995); Int'l Diamond Corp., 1993-2 Trade Cas. (CCH) ¶65,725 at 69,709 (N.D. Cal. 1993).

[24] FTC v. 1263523 Ontario, Inc., 205 F. Supp. 2d 205 (S.D.N.Y. 2002) (citing Sec. Rare Coin, 931 F.2d at 1316).

[25] Figgie Int'l, 994 F.2d at 605-06.

elements, the burden shifts to the defendants to prove that consumers did not rely on the misrepresentations.[26]

In the present case, it is beyond question that the defendants made misrepresentations about their services and that these misrepresentations were material to consumers. On their Internet web sites, in their written materials, and sales presentations, the defendants expressly stated and deliberately implied that consumers would have all of their unsecured debts settled at reduced amounts by using the defendants' services. Rule 56.1 Statement ¶16. In fact, very few consumers were able to have all of their debts settled using the defendants' services. Rule 56.1 Statement ¶¶17-18. The defendants' own records show that only 224 of the 9,981 clients who were enrolled in the program are marked as having "completed program."[27] Further, both Colon defendants admitted that most consumers do not have all of their debts settled by defendants' program.[28] Indeed, as a result of the defendants' failure to act as promised by contacting creditors and settling accounts, consumers typically remain on the program at most seven months before terminating their membership.[29] When they terminated their membership, consumers found themselves in worse financial straits than when they began the program.[30] Despite knowing of the dismal results of their program, the defendants continue to enroll consumers on the strength of the promise that the defendants will settle all of the consumers' debts at a reduced amount.

---

[26]*Int'l Diamond Corp.*, 1993-2 Trade Cas. at 69,709.

[27]Dykstra Dec. Ex. C.

[28]Colon Tr. p. 90:3-9 and Fabrizio-Colon Tr. p. 31:4-18.

[29]Dykstra Dec. Ex. B.

[30]*See e.g.* Declaration of Carrie Alajoki, dated January 14, 2005, ("Alajoki Dec") ¶12 and Starksspear Dec ¶9.

The defendants further violated the FTC Act when they expressly stated or deliberately implied that they would settle a creditor's account when consumers accumulated one-half of the amount owed. Rule 56.1 Statement ¶ 23. As the consumer evidence demonstrates, the defendants do not settle accounts when consumers have the required funds. Rather consumers were typically forced to call the defendants and request that settlements be made. Consumers made this complaint often enough that a category was provided for it on the "Complaint Follow-Up Form" created by the defendants.[31]

Finally, the defendants expressly stated or deliberately implied that they would contact consumers' creditors to stop the creditors from making harassing telephone calls to consumers about overdue payments. Rule 56.1 Statement ¶¶ 24-25. Again, the consumer declarations clearly demonstrate that the defendants frequently do not contact creditors to stop them from making harassing calls to consumers.[32] Indeed, according to defendant John Colon, BBFS really cannot successfully stop creditors from contacting consumers since creditors commonly discard the forms requesting no contact.[33] All of these representations by the defendants to consumers were material because they were central to the transaction and obviously affected consumer choices and decision-making.[34] Furthermore, the defendants' fraudulent representations permeated their business operations and were made to legions of consumers nationwide. Given the materiality of the misrepresentations and the widespread audience to which they were disseminated, the Commission

---

[31]Kapadia Dec.-II, Ex. E.

[32]*See e.g.*, Alajoki Dec. ¶¶8-9 and Starksspear Dec. ¶9.

[33]Colon Tr. p. 221:14-20.

[34]Alajoki Dec. ¶ 12 and Starsksspear Dec. 11, and PX-4-18 annexed to Plaintiff's Motion for a TRO.

is entitled to judgment as a matter of law for the defendants' violations of Section 5 of the FTC Act.

### 2. Defendants John Colon, Jr. and Julie Fabrizio-Colon are Individually Liable for BBFS's Deceptive Conduct.

Individual defendants John Colon, Jr. and Julie Fabrizio-Colon are directly liable for their own violations of Section 5 of the FTC Act. They are also liable for BBFS' violations because: (1) the corporate defendant violated the FTC Act; (2) the individual defendants participated directly in the wrongful acts or practices *or* the individual defendants had authority to control the corporate defendant;[35] and (3) the individual defendants had some knowledge of the wrongful acts or practices.[36]

The FTC has submitted substantial evidence showing that the individual defendants knew or should have known of, or have recklessly disregarded, the deceptive practices engaged in by the corporate defendant. The unlawful practices at issue in this case go to the heart of defendants' fraudulent operation. The Colon defendants both served as officers and directors of BBFS and held themselves out in their corporate capacity throughout the course of this deceptive scheme. The Colon defendants have either participated directly in the wrongful acts of the corporate defendant or have had the authority to control BBFS. They clearly knew or should have known of

---

[35] An individual's status as a corporate officer gives rise to a presumption of ability to control a small, closely-held corporation. "A heavy burden of exculpation rests on the chief executive and primary shareholder of a closely held corporation whose stock-in-trade is overreaching and deception." *Standard Educs., Inc. v. FTC*, 475 F.2d 401, 403 (D.C. Cir.), *cert. denied*, 414 U.S. 828 (1973).

[36] To satisfy Section 5's knowledge requirement, the Commission "need not demonstrate . . . that the individual defendants possessed the intent to defraud." *FTC v. Jordan Ashley, Inc.*, 1994-1 Trade Cas. (CCH) ¶ 70,570 at 72,096 (S.D. Fla. 1994) (*citing Amy Travel Serv.*, 875 F.2d at 573-74). In addition, "direct participation in the fraudulent practices is not a requirement for liability. Awareness of fraudulent practices and failure to act within one's authority to control such practices is sufficient to establish liability." *Atlantex Assocs.*, 1987-2 Trade Cas. at 59,254 (citations omitted); *See also FTC v. Dion*, No. 03-40005, slip op. at 3 (D. Mass. Feb. 6, 2003).

the deceptive acts. Thus, defendants Colon and Fabrizio-Colon should be held individually liable for BBFS' wrongdoing.

### a. John Colon, Jr.'s Liability

John Colon, Jr. is clearly individually liable for both injunctive and monetary relief. He served as president and director of BBFS,[37] had signatory authority on the corporate bank accounts,[38] and held debit cards for the company accounts.[39] Colon also completed BBFS' application for membership with the Boston BBB, and was in charge of marketing BBFS' services via the internet and local newspapers.[40] In fact, Colon effectively directs and participates in nearly every aspect of BBFS' operations.

The evidence of Colon's knowledge here is likewise overwhelming. He was in charge of monitoring consumer completion of BBFS's program.[41] He met at least three times a week with the company's general manager, to whom all other supervisors reported, including the supervisors for client services and account settlement departments.[42] In effect, Colon was aware of everything that took place within the company. Therefore, Colon knew or should have known of the misrepresentations made by BBFS, and he is thus liable for BBFS' violations of the FTC Act.

---

[37] PX-1, Ex. B.

[38] Colon Tr. at p. 32:5-14; PX-1, Ex. B.

[39] Colon Tr. at p. 186:10-16.

[40] PX-1, Ex H.; Fabrizio-Colon Tr. at p. 28:3-7.

[41] Fabrizio-Colon Tr. at pp. 155:21-157:1

[42] Colon Tr. at pp. 22:23-24:25 and 57:19-58:18.

### b. Julie Fabrizio-Colon's Liability

Julie Fabrizio-Colon is also clearly individually liable for both injunctive and monetary relief. She served as vice president and treasurer of defendant BBFS,[43] had signatory authority on the corporate bank accounts,[44] and held debit cards for the company accounts.[45] As treasurer, Fabrizio-Colon oversaw all corporate financial transactions,[46] including endorsing and depositing in the corporate bank accounts all checks and money orders from BBFS consumers.[47] In fact, Fabrizio-Colon effectively directs and participates in nearly every aspect of BBFS's operations.

The evidence of Fabrizio-Colon's knowledge of the wrongful acts or practices here is likewise overwhelming. During her deposition, she admitted to having enrolled customers in BBFS' program, and being in charge of handling consumer complaints.[48] In fact, she signed all responses to consumer complaints, and personally responded to consumer complaints filed against BBFS with the BBB and the Massachusetts Attorney General.[49] Indeed, as she herself states, "nothing would leave the office without [her] signature."[50] Given her degree of control over the company's handling of consumer complaints, it is obvious that Fabrizio-Colon should have

---

[43] Fabrizio-Colon Tr. at pp. 6:20-7:1

[44] Colon Tr. at p. 32:5-14; PX-1, Ex. B.

[45] Colon Tr. at p. 186:10-16.

[46] Fabrizio-Colon Tr. at pp. 38:19-39:7

[47] *See e.g.*, Fabrizio-Colon Tr. at p. 38:19–39:7; Ex. 13 and 14 to Colon Tr.

[48] Fabrizio-Colon Tr. at pp. 39:8-40:23.

[49] PX-1, Ex. H.

[50] *See* Fabrizio-Colon Tr. at p. 48:7-48:19 (Fabrizio-Colon admits that she signed every letter that was sent by BBFS, in response to consumer complaints filed with the BBB).

known–and indeed, had full knowledge–of the misrepresentations made by BBFS.[51] Consequently, Fabrizio-Colon is also liable for BBFS' violations of the FTC Act.

### 3. Defendants John Colon, Jr. and Julie Fabrizio-Colon are Liable for All Damages Resulting From BBFS's Deceptive Practices.

The proper measure of BBFS consumer injury for which the defendants should be held jointly and severally liable is the total amount of consumer payments made to BBFS.[52] In determining a damage award, the Court is not required to ascertain whether every purchaser was deceived by the defendants' advertising or was dissatisfied with the defendants' services.[53] Moreover, in calculating the proper measure of restitution, the Court may restore purchasers to the status quo; it need not limit the recovery by accounting for the value of the unwanted or misrepresented product or service actually provided.[54] If redress to consumers is wholly or partially impracticable, disgorgement of ill-gotten gains is also a proper remedy, pursuant to Section 13(b) of the FTC Act.[55] Whether for redress or disgorgement, the proper measure of consumer injury for which the defendants should be held jointly and severally liable is the total amount of consumer payments made to the defendants, less any amounts previously returned to the victims.[56]

---

[51] Fabrizio-Colon represented BBFS in a hearing with the BBB, where she tried to persuade the BBB to not revoke BBFS' membership. PX-1, Exh. H.

[52] *FTC v. World Travel Vacation Brokers, Inc.* 761 F.Supp. 68, 69 (N.D. Ill. 1991) (number of certificates sold by travel agency was appropriate basis for awarding damages under FTC Act).

[53] *Id.*

[54] *Figgie Int'l*, 994 F.2d at 606-07; *Gordon v. Burr*, 506 F.2d 1080, 1085 (2d Cir. 1974); *Kitco*, 612 F. Supp. at 1295-96.

[55] *See FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997); *Gem Merchandising*, 87 F.3d at 470.

[56] *See Febre*, 128 F.3d at 536; *FTC v. US Sales Corp.*, 785 F. Supp. 737, 753 (N.D. Ill. 1992). *See also Gem Merchandising*, 87 F.3d 466 (affirming an award of damages as calculated by consumers' losses); *Figgie Int'l*, 994 F.2d at 606-07 (restitution is amount of enrichment received); *Amy Travel*, 875 F.2d at 570 (affirming restitution award equal to the amount consumers paid for travel certificates); *FTC v. Renaissance Fine Arts, Ltd.*, 1995-2 Trade Cas. (CCH) ¶71,086 (continued...)

For the Commission to recover monetary damages at summary judgment, it "must show that its calculations reasonably approximated the amount of customers' net losses...."[57] Once the Commission shows that its calculations "reasonably approximate[] the amount of consumers' net losses," the burden "shifts to the defendants to show that those figures were inaccurate."[58] Moreover, where necessary information is lacking to calculate damages with certainty, "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty."[59] This measure of restitution applies even if the product purchased by consumers has some value.[60]

FTC employee Peter Dykstra has reviewed BBFS' database and identified all receipts reflecting fees paid by consumers to BBFS.[61] After analyzing all such receipts, he added together all the amounts and determined that they totaled $11,978,249.18. This should be the amount of the judgment issued in this case.[62] As set forth above, the defendants are not entitled to any offset based

---

[56](...continued) at 75,194 (N.D. Ohio Aug. 10, 1995) (generally the appropriate amount of restitution in consumer redress cases is the full purchase price of the product, less refunds paid); *FTC v. Silueta Distribs., Inc.*, 1995-1 Trade Cas. (CCH) ¶70,918 at 74,099 (N.D. Cal. Feb. 24, 1995) (awarding restitution in full amount consumers paid).

[57]*Febre*, 128 F.3d at 534 (citing *SEC v. Lorin*, 76 F.3d 458, 462 (2d. Cir. 1996) and *HUD v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 927 (4th Cir. 1995)). In *Febre*, the Commission showed that consumers paid defendants a total of $16,615,424 for the eight business opportunity programs that the court found to be deceptive. Additionally, the Commission showed that consumers received $489,409 in refunds. "Thus, in subtracting the amount of refunds from the total consumer sales, the remainder is $16,096,345, which is the amount of damages requested by the Commission." *Febre*, 128 F.3d at 535 n. 6. The district court found that the calculations were supported by the record and awarded that amount in damages, and the Court of Appeals for the Seventh Circuit affirmed. *Id.* at 536.

[58]*Febre*, 128 F.3d at 535 (citations omitted).

[59]*Id.* (internal quotation marks and citation omitted).

[60]See *Figgie Int'l*, 994 F.2d at 606 (noting that "courts have previously rejected the contention 'that restitution is available only when the goods purchased are essentially worthless'") (citation omitted).

[61]Dykstra Dec. at ¶ 7 and Exh. C.

[62]*Id.*

14


on one or more accounts that they had settled for individual consumers, because the proper measure of consumer injury is the total sales generated through their deceptive practices.[63]

Accordingly, the Commission's motion for summary judgment against BBFS, John Colon, Jr. and Julie Fabrizio-Colon should be granted, and the proposed Final Order for Permanent Injunction submitted should be entered, with a monetary judgment entered against the defendants in the total amount of $11,978,249.

## IX. Conclusion

Defendants in this case have caused substantial injury to consumers through their repeated violations of the FTC Act and there is no genuine issue of law or fact regarding their liability thereunder and the amount of damages to which the FTC is entitled. For the reasons set forth in this motion, memorandum and supporting exhibits, the Commission respectfully requests that the Court grant summary judgment against the defendants, jointly and severally, and enter the requested permanent injunction, and damages in the amount of $11.9 million and other ancillary relief requested in the Proposed Order.

Dated: *January 28*, 2005

Respectfully submitted,

*Carole A. Paynter*
Carole A. Paynter
Elvia P. Gastelo
Theodore Zang, Jr.
Attorneys for the Plaintiff
Federal Trade Commission Northeast Region
One Bowling Green, Suite 318
New York, NY 10004
(212) 607-2829
(212) 607-2822 (facsimile)

---

[63] See fn. 54.

15