UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　　　Plaintiff<br><br>v.<br><br>BETTER BUDGET FINANCIAL<br>SERVICES, INC., JOHN COLON, JR. and<br>JULIE FABRIZIO-COLON,<br><br>　　　　　　　Defendants. | Civil Action No. 04-12326 (WGY) |

## DECLARATION OF JULIE FABRIZIO-COLON

JULIE FABRIZIO COLON, states as follows:

1. I am the former Treasurer of Better Budget Financial Services, Inc. and Debt Management Solutions (collectively "BBFS"). I am over eighteen (18) years of age and am competent to testify as to the statements made in this declaration. Unless otherwise stated, I have personal knowledge of the acts stated below, and if sworn as a witness, I would testify to those facts. I make this declaration in support of the Opposition to the Federal Trade Commission's Motion for Summary Judgment.

### BBFS' Business Practices

2. Prior to becoming an officer and director of BBFS, I was a manager for several debt collection law firms and agencies. Based on this experience, I knew how unsecured creditors assessed, bought, settled and otherwise handled outstanding, unsecured debts. Along with my husband John Colon, Jr., we realized that we could use our experience in the debt collection and settlement field to establish a business to negotiate with creditors on behalf of consumers, and established BBFS, investing over

$100,000 of our own savings into capitalizing the business.

### The Enrollment Packet

3.  BBFS marketed its services through the internet, and placed a small number of ads in local "penny saver" and other publications. All potential clients who contacted BBFS and expressed an interest in retaining BBFS' services were provided with an application and enrollment packet. The packet contained (1) a contract for services that the potential client was required to review and sign; (2) a copy of any worksheet identifying the potential client's creditors and the estimated amount to be saved; (3) an ACH authorization form to be completed by the potential client; and (4) a power of attorney to be completed by the potential client. Beginning in 2004, the enrollment packet also contained a letter detailing BBFS' services. Before consumers were charged a retainer fee, they were required to complete and return the documents contained in the enrollment package.

### 1. The Contract for Services

4.  BBFS used two different contracts for services at different times in the life of the company, but each contract sent to a consumer (the "Contract") provided that the client would establish a separate bank account and would authorize BBFS to directly withdraw the agreed-to fees from that account. (Contracts, attached as Exhibit A). Regarding those fees, the Contract provided that (1) the client's first monthly payment was to be made to BBFS as a retainer fee to enter the program, and was non-refundable; (2) BBFS is entitled to a fee in an amount equal to 25% of the difference between the creditors claim amount and the amount BBFS negotiated as settlement with the creditors to accept as final payment; and (3) the client agrees to pay $29.95 (or, later, $39.95) per

month as an administrative fee to be drawn directly from the account established by the client.

    5.    The Contract also contained the following terms and conditions:

- "**Services Not Provided by BBFS:** Client understands that BBFS does not make monthly payments to Client's creditors. Monies paid directly to BBFS are for BBFS fees only and not for payment of the Client's debts....By entering into this Agreement, Client acknowledges that BBFS has not advised Client to stop or reduce payments to existing creditors."

- "**Individual Results May Vary:** Client understands that all calculations contained in this Agreement are estimates using debt that the Client listed at the time of enrollment. Client also understands that the length of the Client's program is an estimate based on the information provided by the Client....The Client understands that at any time a creditor may refuse the settlement of a debt. In this case, BBFS will negotiate, to the best of its abilities, a hardship payment plan that is within your budget."

- "**Creditor Action and Creditor Disclaimer:** It is understood that no representation about any aspect of your credit rating can or will be made by BBFS. Depending upon individual circumstances, credit can be enhanced, damaged or altered, but in any case such effect is beyond the control and scope of the program. Client acknowledges that participation in the BBFS program is voluntary, and made at the sole discretion of the Client. Additionally, Client understands that participation in this program will likely have an adverse effect on Client's credit score and some accounts may charge off."

- "It is also understood that BBFS will use its best efforts to minimize creditor communications directly with you....It is understood that communications by creditors, collections agencies and/or collection law offices directly with you may continue for the period of time you are enrolled in the program."

- "**Customer Satisfaction Guarantee:** At any time during the term of the program, Client may cancel this agreement without penalty and without further obligation for administrative fees. Except as provided herein, BBFS makes no guarantees, representations, warranties, or predictions as to the outcome of its services. BBFS's expressions about the outcome of any matter are at best professional estimates only and are limited by its knowledge of Client's financial circumstances as provided by Client to BBFS."

    6.    In the most recent version of the Contract, used in 2004, the client was

3

required to initial each provision. The earlier version of the Contract contained the same, or virtually the same, terms and conditions.

### 2. The Limited Power of Attorney

7. The client was also required to complete a Limited Power of Attorney and return it to BBFS. Through it, clients authorized that

> "**all** necessary communications, correspondence, and negotiations regarding my account(s) be conducted by Better Budget Financial Services, Inc. (BBFS). I instruct you to close any open accounts and suspend any privileges that go along with them. Any and all communications directed to me will be referred to BBFS, and only they will be authorized to deal with your company and or your company representatives."

The Limited Power of Attorney also directed consumers to direct any collections communications to BBFS so that BBFS could handle those communications directly. (Limited Power of Attorney, attached as Exhibit B).

### Consumer Communications

8. When a BBFS client called with a complaint, the complaint was addressed by the client service representative who spoke with the client. If the complaint could not be resolved, it would then be addressed by BBFS' Client Services Supervisor or by Paul Bartlett, BBFS general manager. I regularly reviewed and approved BBFS' response to any complaints. Over the course of the four years BBFS was in operation, I can recall having to address a small number of complaints. Several of those complaints were brought to our attention through our participation with the Better Business Bureau ("BBB"). I made every effort to respond fully and diligently to complaints brought to our attention. In several cases we were able to resolve the complaints presented. Overall, I am aware of fewer than 1% of all BBFS clients ever complaining to BBFS about its service.

9. In late 2003, the BBB informed BBFS that it had received complaints from consumers that they had not received services contracted for and that BBFS had not contacted "or paid creditors" as promised. At a hearing before the BBB on April 28, 2004, it became clear to us that the BBB was under the mistaken impression that BBFS offered credit counseling services, and not debt negotiation services, and that BBFS made payments to creditors on behalf of consumers. As explained on BBFS' website, BBFS' debt negotiation services were different from credit counseling because credit counseling services negotiate a periodic payment to creditors, rather than a settlement of the entire outstanding debt owed to each creditor. Having attended the hearing, it was apparent to me that the decision to terminate was based on this misunderstanding of the services BBFS provided consumers.

Executed on February 10, 2005.

I declare that the foregoing is true and accurate under penalty of perjury.

_____
Julie Fabrizio-Colon