# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FEDERAL TRADE COMMISSION,      )
     )
           Plaintiff,           )
    v.                   )
     )
BETTER BUDGET FINANCIAL SERVICES,   )   CIVIL ACTION NO. 04-12326 (WGY)
INC., JOHN COLON, JR. and JULIE       )
FABRIZIO-COLON,              )
     )
           Defendants.       )
     )

## JOINT PRETRIAL MEMORANDUM

In accordance with L.R. 16.5 and the Court's February 9, 2005 order, the parties hereby submit their joint pre-trial memorandum.

## I.     Concise Summary

### a. **Plaintiff's Position**:

Plaintiff Federal Trade Commission ("FTC") will present testimonial evidence from consumers that defendants induced them to enter into their debt reduction program with express and/or implied false promises:  that defendants would be able to settle all of the consumers' debts at a reduced amount; that they would negotiate and settle the debts as the consumer had saved enough money to pay half the debt; and that they would contact consumers' creditors to keep creditors from making harassing phone calls to the consumers.  Plaintiff will also present testimonial evidence from a former employee of defendants attesting to these misrepresentations, through his testimony of defendants failures to operate as promised.  Finally, Plaintiff will present testimonial and documentary evidence from an FTC investigator.

**b. <u>Defendants' Position</u>**:

In bringing the action the FTC relies almost exclusively on a handful of consumer complaints that represent less than 1% of BBFS' overall business. They also rely upon declarations from two of its investigators to support its claims, but those transcripts, taken in context, show that the two BBFS employees the FTC investigator spoke with provided the investigator with a comprehensive and accurate description of what BBFS could offer—and could not offer—consumers. Whatever witnesses the FTC ultimately decides to call at trial, the evidence will show that BBFS did <u>not</u> make the representations that the FTC claims it did and that no reasonable consumer would likely have been mislead about what they could expect to receive upon entering BBFS' debt settlement program. Accordingly, the FTC's claims under Section 5 of the FTC Act cannot succeed.

More particularly, the FTC alleges in its Complaint that BBFS represented to consumers that they: (1) "will enable consumers to pay off all their unsecured debts for a reduced amount"; (2) "will settle each creditor's account once the consumer accumulates one-half of the amount owed to the creditor"; and (3) "will contact all of a consumer's unsecured creditors on the consumer's behalf to ensure that creditors do not call or harass consumers about their payments that may be overdue." Of course the FTC also alleges that BBFS failed to do all these things, however, this again assumes the allegations were made in the first place.

The only reliable evidence as to what BBFS said and did not say to its consumers is contained within the company's business records. However, the FTC clearly seeks to ignore this information and in other instances blatantly mischaracterizes its content. By way of example, the BBFS web-site advises consumers that "[i]n some instances the creditor refuses to settle a client's debts." It also explains that in those instances where a creditor will agree to settle, "it

2

can take up to 6 months or more to reach a mutually agreeable settlement," and that "debts are negotiated ONE AT A TIME, based on [the client's] budget and ability to handle the settlements." The web-site also discredits the FTC's allegations with respect to calls from creditors. Specifically, the web-site prominently displays the following Q and A:

> **Will the creditors start calling and harassing me?** Yes. As accounts go delinquent, especially in the beginning, clients will get creditor calls. However, we have developed [tools] that our clients can use that are effective in minimizing and often eliminating telephone calls from creditors.

In making its claims the FTC also ignores the Services Agreement that each consumer was required to sign before entering the BBFS program. That document contained a number of important disclosures, which again refute the FTC's allegations here. For example, the Agreement informed consumers, and the clients agreed, that:

- the client understands that all calculations contained in the Contract are estimates using debt that the client listed at the time of enrollment;

- the client all understands that the length of the client's program is an estimate based on the information provided by the client;

- the client understands that any time a creditor may refuse the settlement of a debt;

- depending upon individual circumstances, credit can be enhanced, damaged or altered, but in any case such effect is beyond the control and scope of the program;

- the client acknowledges that participation in the BBFS program is voluntary, and made at the sole discretion of the client;

- the client understands that participation in this program will likely have an adverse effect on the client's credit score and some accounts may charge off;

- communications by creditors, collections agencies and/or collection law offices directly with [the client] may continue for the period of time [the client is] enrolled in the program; and

3

- BBFS' expressions about the outcome of any matter are at best professional estimates only and are limited by its knowledge of the client's financial circumstances as provide by the client to BBFS.

Lastly, as evidence of the fact that consumers were not mislead to their detriment, BBFS will introduce data from its computerized database of consumer account activity that shows the benefit consumers received from BBFS. For example, this database shows that 6,859 of BBFS' actively enrolled clients—or approximately 80% of those clients—had debts settled by BBFS. For these clients, most received debt settlements for 50% (or more) of the outstanding debt balance. The FTC's only effort to analyze this critical information was to assert that 294 BBFS clients had all their debts settled. The FTC intends to offer evidence that BBFS has not met its promise of settling all of the debts of every client; however, the defendants dispute that they ever made that promise to begin with.

Reduced to the basics, the FTC does not like debt settlement companies and presumes them all to be "boiler room" operations that prey upon unsuspecting consumers. The facts of this case undisputedly tell a different tale. Not only did BBFS tell its customers exactly what to expect in its program, the company has a demonstrated history in helping consumers settle debts. At time of trial, the FTC will not be able to meet its burden under Section 5 of the FTC Act.

## II. Statement of Facts Established by the Pleadings

### a. Plaintiff's Position:

1.   Plaintiff FTC is an independent agency of the United States government created by the FTC Act. The FTC is charged with enforcement of Section 5(a) of the FTC Act, which prohibits unfair and deceptive acts and practices in or affecting commerce, among other duties. The FTC is authorized by Section 13(b) of the FTC Act to initiate federal district court proceedings to enjoin violations of the FTC Act in order

to obtain consumer redress and to secure such equitable relief as may be appropriate in each case.

2. Defendant Better Budget Financial Services Inc. ("BBFS") is a Massachusetts corporation that was incorporated on August 21, 2000.

3. Defendant John Colon, Jr. is the President and a director of BBFS. Colon executed the company's application for membership in the BBB, and was a signatory to at least one corporate bank account.

4. Defendant Julie Fabrizio-Colon is the wife of defendant John Colon, Jr. and serves as the Treasurer, Clerk and a director of BBFS. Fabrizio-Colon was also a signatory to at least one corporate bank account. Fabrizio-Colon also responded to consumer complaints filed against BBFS with the BBB and the office of the Massachusetts Attorney General.

5. In May 2004, BBFS' membership in the Boston Better Business Bureau was revoked.

6. In May 2004, defendants John Colon and Julie Fabrizio-Colon incorporated Debt Management Solutions ("DMS") in the state of Massachusetts. DMS marketed and sold the same debt settlement services as BBFS.

7. Defendants marketed their services nationwide on two Internet websites, through Internet advertising, in Pennysaver type newspapers and through telemarketing.

8. Defendants' debt settlement program purported to help consumers eliminate anywhere between 50 and 70 percent of the consumers' debts through creditor negotiation, in exchange for the payment of various fees from the consumers.

9. Defendants claimed that they had good relationships with many creditors which is why their negotiations are successful.

10. In exchange for their services, defendants required consumers to pay: 1) a retainer fee that ranged from hundreds to thousands of dollars, 2) a monthly administrative fee, and 3) 25% of any savings realized in a settlement with a creditor.

11. In numerous instances, defendants promised consumers that, in exchange for these fees: defendants would contact all of a consumers' creditors to stop them from making harassing debt collection calls; defendants would negotiate and settle with each of a consumer's creditors when the consumer had accumulated one-half of the amount owed to the creditor; and actions taken by defendants on consumers' behalf would enable them to pay off all of their unsecured debts for a reduced amount.

12. Based on these material claims, consumers were induced to purchase defendants' services.

13. Defendants instructed consumers to stop paying their creditors so that their accounts could become delinquent, since creditors would generally only negotiate on delinquent accounts.  Defendants instructed consumers to open a bank account ("BBFS account") in which they would save a specific sum of money monthly and this money would be used to pay Defendants' administrative fee and any settlements negotiated with creditors.

14. Defendants also instructed consumers to sign power of attorney forms that defendants represented would enable defendants to contact all of the consumers creditors and inform them that defendants represent the consumer and that the creditors and debt collectors should cease all contact with the consumer.  Defendants

6

informed consumers that this practice would stop creditors from contacting them. Defendants instructed consumers to refuse to speak with any creditors who might contact them.

15. Defendants calculated how long it would take consumers to pay off all of their debts through this settlement process, with programs of varying lengths like twenty-four months, thirty-six months and forty-eight months.

16. Defendant John Colon admitted that the goal of the defendants' program is to settle all of the consumers' debts: "successful completion" of the defendants' program "means that all of the accounts they gave us [defendants] are settled." Further, "unsuccessful means . . . if they enrolled ten accounts and only nine were settled, then they did not successfully complete the program. However, they did complete the program, but not what we would consider to be successful. We only consider ourselves successful when every account that they give to us is settled."

17. In numerous instances, the actions taken by defendants did not enable consumers to pay off all of their unsecured debts for a reduced amount, as claimed.

18. Defendants claim to have no idea of the number of consumers that have successfully completed the program, but admit that typically consumers who enrolled in their program did not have all of their accounts settled by defendants.

19. Defendants often settled some consumer accounts but not others, while some consumers saw none of their accounts settled.

20. Defendants' records show that consumers typically did not remain enrolled in defendants' program for more than seven months after they begin the program. Of the 9981 customers who have been enrolled in defendants' program, only 224 are

identified in defendants= records as having had all of their debts settled and having completed the program.

21. Consumers contacted defendants daily with complaints about their failure to provide promised services. Defendants recorded these complaints on a form called a "Complaint Follow-Up Form" which was "used for the client service representatives in which they speak to a client who is upset with our service or is upset with any issues regarding our service."

22. Defendants' complaint follow-up form captured the following specific complaints: 1) Creditors calling, 2) Received summons/arbitration, 3) Unreturned phone calls, 4) Credit issue, 5) has funds/requesting settlement, 6) Not understanding our fees (retainer, admin, settlements), 7) Does not understand the program, felt they were mislead, 8) Administration fee issue and 9) Other. This form captured the most common complaints made about the defendants' services.

23. The purpose of defendants' complaint follow-up form was "to eliminate complaints" and keep customers from leaving program. Defendants provided various monetary incentives to their customer representatives to retain customers who wanted to leave the program because they were dissatisfied with defendants' services.

24. Defendants represented to consumers that they would settle each creditor's account once the consumer had accumulated one-half of the amount owed to that creditor. However, defendants in numerous instances did not settle consumers' accounts as promised.

25. The defendants were aware that it was unlikely that they could stop all creditors from calling consumers, because many "bill collectors tell consumers that they have not

8

heard from a third party simply because bill collectors work on a commission basis; and if they obeyed the [FDCPA], they would not be allowed to contact our clients." Further, "...the creditor would let a client know or the creditor would tell a client in most of these cases that they have not heard from Better Budget when, in fact, we know that the bill collector 90 percent of the time ripped up the power of attorney and said to the consumer we haven't heard from Better Budget. They lie, they rip up power of attorneys. They do anything they can to collect debt. And I know I ripped up power of attorneys as a collector."

26. John Colon and Julie Fabrizio-Colon, at all times material to the Commission's Complaint, acting alone or in concert with others, formulated, directed, controlled, or participated in the acts and practices of corporate defendant BBFS. The Colon defendants' control of the actions of BBFS is predicated upon their positions as the officers and directors of BBFS, as well as their being signatories to at least one corporate bank account, during the entire course of their business.

27. The individual defendants made all major decisions for BBFS. John Colon "handled most of [BBFS'] marketing," and he was in charge of monitoring how many consumers successfully completed the program. John Colon typically met "at least three times a week" with the company's general manager, to whom all other supervisors reported, including the supervisors for client services and account settlement departments. In addition, defendant John Colon executed the company's application for membership in the BBB.

28. Apart from serving as Treasurer of BBFS, defendant Julie Fabrizio-Colon "enrolled clients" in the program, and has always had the responsibility for responding to

customer complaints. Defendant Fabrizio-Colon also represented BBFS before the Boston Better Business Bureau in a meeting held to address the pattern of unresolved complaints that BBFS had generated.

### b. **Defendants' Position**:

Defendants stipulate, for the purposes of trial, to the facts asserted by the FTC in paragraphs 1, 2, 3, 4, 5, and the first sentence of paragraph 7. Defendants will also stipulate that BBFS marketed its services nationwide via the internet and through "penny saver" and other print ads.

## III.    Contested Issues of Fact

### a. **Plaintiff's Position**:

1. Defendants represented to consumers, expressly or by implication, that actions taken by defendants would enable consumers to pay off all of their unsecured debts for a reduced amount. However, after paying defendant for their services, consumers were unable to pay off all of their unsecured debts for a reduced amount.

2. Defendants represented, expressly or by implication, that they would negotiate and settle each creditor's account once the consumer accumulated one-half of the amount owed to the creditor. However, defendants did not settle each creditor's account once the consumer accumulated one-half of the amount owed to the creditor.

3. Defendants represented that they would contact all of a consumer's unsecured creditors to ensure that creditors do not call or harass consumers about their payments that may be overdue. However, consumers continued to receive harassing calls from their creditors despite defendants' promises, even though consumers had been enrolled in the program for many months.

4. Consumers suffered substantial injury as a result of defendants' misrepresentations, in terms of both increased debt, and fees paid for promises not kept. When consumers terminated their contracts because defendants were not performing as promised, consumers often found that their overall debt had actually increased, because they owed interest and late fees due to not paying creditors, as required by defendants' program.

5. Many consumers, prior to entering the program, were paying their creditors on time but found that enrolling in defendants' debt settlement scheme caused their financial situation to deteriorate. Some consumers found their financial situation deteriorated to the point of being forced to file bankruptcy.

6. Since beginning their operations, defendants have generated $11,978,249 in revenues from the collection of retainer fees, monthly fees and settlement fees, as a result of their misrepresentations made to consumers.

**b. Defendants' Position**:

1. Defendants dispute that BBFS advertising promised consumers that BBFS would settle all of its debts, that BBFS would ensure all creditors from calling BBFS clients.

2. Defendants dispute that consumers suffered substantial injury as a result of engaging BBFS, and maintain that the vast majority of its clients obtained debt settlements from creditors.

3. Defendants dispute that the fees generated were the result of misrepresentation, and dispute that the figure in alleged ill-gotten fees is $11.9 million. Most of BBFS' fees were settlement fees agreed to by clients who contracted for BBFS' services, and those fees were charged only after clients obtained settlements with their creditors.

IV.    **Jurisdictional Questions**

The parties agree that there are no jurisdictional questions.

V.    **Questions Raised by Pending Motions**

    a. <u>**Plaintiff's Position**</u>:

Plaintiff has a pending motion for the issuance of summary judgment against all of the

defendants for their violation of Section 5 of the Federal Trade Commission act by making

misrepresentations in the promotion and sale of their debt reduction services.

    b. <u>**Defendants' Position**</u>:

The FTC moved for Summary Judgment on February 4, 2005, seeking judgment on all

grounds.  The defendants' filed their opposition papers on February 11, 2005.  There are no other

motions pending at this time.

VI.    **Issues of Law, Evidentiary Questions and Supporting Authority**

    *Parties'*

    a. ~~**Plaintiff's**~~ **Position**:

<u>**Issues of Law**</u>

The legal issues regarding liability and damages, and the factual support for Plaintiff's

position on these issues, are set forth in detail in the Plaintiff Federal Trade Commission's

Memorandum of Points and Authorities in Support of its Motion for Summary Judgment

("Summary Judgment Memorandum") and other documents in support of that motion, and are

summarized as follows:

    1.    <u>This Court has authority to enter permanent injunctive relief against Defendants</u>

        <u>for violations of Section 5 of the FTC Act, pursuant to Section 13(b) of the FTC</u>

        <u>Act, 15 U.S.C. 53(b).</u>  In response to Plaintiff's motion for summary judgment,

        Defendants have posed no legal argument to refute this Court's authority to enter

permanent injunctive relief. The dispute lies in the parties' interpretation of the facts. Defendants do not dispute the jurisdictional power of the Court to enter equitable relief pursuant to Section 13(b) for a violation of Section 5, if proven at trial.

2.    Defendants have violated Section 5 of the FTC Act through their deceptive debt settlement program. In response to Plaintiff's motion for summary judgment, Defendants have posed no legal argument to dispute the proper legal standard applicable to Section 5 violations. The dispute lies in the parties' interpretation of the facts. Among other things, the FTC's Complaint alleges that BBFS misrepresented to consumers that BBFS: (a) will enable consumers to pay off all their unsecured debts for a reduced amount; (b) will settle each creditor's account once the consumer accumulates one-half of the amount owed to the creditor; and (c) will contact all of a consumer's unsecured creditors on the consumer's behalf to ensure that creditors do not call or harass consumers about their payments that may be overdue. Plaintiff maintains that, in addition to a clear pattern of deception evidenced by consumer witness testimony, complaints and declarations, the following evidence supports a finding of Section 5 violations: (a) Defendants' own records show that only 224 of the 9,981 clients who were enrolled in the program are marked as having "completed the program"; and (b) both of the individual Defendants admitted at their depositions that most consumers do not have all of their debts settled by Defendants' program, Defendants often settle some consumer accounts but not others, while some consumers saw none of their accounts settled. As will be established at trial, it is beyond question that

Defendants made misrepresentations about their services and that these misrepresentations were material to consumers. As described above, Defendants dispute that BBFS made the representations alleged by the FTC, that consumers were harmed, or that restitution is appropriate in this case.

3.   Defendants John Colon, Jr. and Julie Fabrizio-Colon are individually liable for both injunctive and monetary relief for BBFS' deceptive conduct. In their response to Plaintiff's motion for summary judgment, Defendants have posed no legal or factual argument to dispute the individual liability of John Colon Jr. and Julie Fabrizio-Colon. (*See* Section 2 above, Established Facts, at 26-28. *See also* factual and legal support set forth in Plaintiff's motion for summary judgment.). Defendants maintain that there is a legal issue as to whether the FTC can prove that the Colons had the necessary intent or control sufficient to establish individual liability in this action.

4.   Whether for redress or disgorgement, the proper measure of damages for which Defendants should be held jointly and severally liable is the total amount of consumer payments made to BBFS. As discussed in Plaintiff's Summary Judgment Memorandum, as a matter of well-settled law, the measure of damages is net consumer sales (total sales less refunds or chargebacks already made). The Plaintiff will support its claim for damages at trial with evidence of Defendants' revenue, including: Defendants' business records and a revenue summary analysis chart prepared by Peter Dykstra, an Investigator in the FTC's Information Technology Department, which is based upon the Defendants' records of fees consumers paid to them. As the FTC will support at trial, in calculating the

proper measure of restitution, the Court may restore purchasers to the status quo; it need not limit the recovery by accounting for the "value" of unwanted or misrepresented product or service actually provided. *See FTC v. Figgie Int'l., Inc.*, 994 F.2d 595, 606-07 (9th Cir. 1993); *Gordon v. Burr*, 506 F.2d 1080, 1085 (2d Cir. 1974); *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1295-96 (D. Minn. 1985). As discussed in Defendants' opposition to the motion for summary judgment, Defendants maintain that while the calculation of damages identified by the FTC is appropriate in some cases, it is not appropriate in all. Cases in which consumers were provided with no value or *de minimis* value, the appropriate measure of restitution is all fees. However, even *Figgie* and *FTC v. Amy Travel*, which were cited by the FTC in its motion for summary judgment, recognize that where consumers have received value for services they contracted, they are not entitled to receive restitution for the value of those services. Indeed, as the Court noted in *Amy Travel*, even where consumers were dissatisfied with the service received, it is appropriate to exclude the value of those services from the measure of any restitution awarded.

## Evidentiary Questions

As will be discussed below, the testamentary and documentary evidence that Plaintiff intends to introduce is clearly admissible under the Federal Rules of Evidence. Plaintiff will support the allegations of Defendants' deceptive trade practices with live testimony from witnesses, including consumers who had previously provided declarations in support of the FTC's motion for a Temporary Restraining Order. Plaintiff will also introduce Defendants' own

15

business records, including financial statements, to establish their liability and the amount of damages.

To the extent that the records were provided by the Defendants, their authenticity can be presumed. To authenticate business records obtained by Court-ordered access to Defendants' business premises, the Plaintiff will call FTC Investigator Cindy Kapadia, who was present at the business premises, participated in the document review, and has custody of the true and correct copies of the business records. Investigator Kapadia will also authenticate documentary evidence obtained during the course of the FTC's investigation, including the BBFS application and contract sent to FTC Investigator Kapadia in response to her undercover calls posing as a consumer. Certified copies of public records, including articles of incorporation, are self-authenticated pursuant to Rule 902(f).

Motions *in limine* have not been filed at this time. The parties intend to file motions *in limine* according to a schedule to be agreed upon following further meet-and-confer discussions.

Plaintiff presently anticipates filing motions *in limine* to:

1.  Admit declarations of consumers who are not available to testify at trial, pursuant to the residual exception to the hearsay rule, Fed. R. Evid. 807. Defendants anticipate objecting to such declarations as inadmissible hearsay because they do not have the requisite level of trustworthiness to trigger Rule 807. The declarations were all prepared after the start of litigation with the active involvement of the FTC in the drafting of those declarations. Moreover, most of the declarants are identified as live witnesses on the FTC's witness list. Consequently, any declaration sought to be admitted in conjunction with live testimony should be stricken.

2.      Admit evidence of complaints, including in letter and email form, against BBFS from consumers who are not available to testify at trial, pursuant to Fed. R. Evid. 807. Defendants anticipate objecting to evidence of complaints as lacking the indicia of trustworthiness necessary to trigger Rule 807.

3.      Admit evidence of complaints against Debt Management Solutions, a company operated by the Defendants at the time this action was filed, that sold the exact services as BBFS. These complaints, which are identical to those received by BBFS, are further evidence in support the request for a permanent injunction. The complaints are admissible pursuant to Fed. R. Evid. 807. A summary complaint chart prepared by FTC Investigator Cindy Kapadia is admissible pursuant to Fed. R. Evid. 1006. Defendants anticipate objecting to the admission of any consumer complaints as lacking the level of trustworthiness necessary to trigger Rule 807.

Plaintiff is prepared to provide legal support for its proffer of evidence at trial. To the extent that the Court requires it following an objection posed by Defendants, Plaintiff is prepared to make motions to:

1.      Admit evidence of records maintained in the ordinary course of business by the Boston Better Business Bureau ("BBB"), including: BBFS' application for membership, evidence of revocation of membership, consumer complaints, correspondence between BBFS and the BBB and BBFS' responses to complaints. These business records are admissible because they are accompanied by a certification from Deanna Gonsalves, Vice President of Operations, in conformity with Fed. R. Evid. 902(11).

17

2.    Admit evidence of Defendants' business records obtained by FTC staff at the business premises pursuant to the Temporary Restraining Order ("TRO") granted on November 3, 2004, including but not limited to BBFS' consumer correspondence, the Defendants' complaint follow-up forms, Defendants' computer records and bank records.

3.    Admit evidence of Defendants' business records and finances, including sworn financial statements, provided by the Defendants pursuant to the TRO and through the course of discovery in this case.

4.    Admit an analysis of the length of time that a consumer had an active account with BBFS, an analysis of consumers who were recorded as having completed BBFS' program, and a revenue analysis summary chart prepared by FTC Investigator Peter Dykstra, regarding Plaintiff's calculation of damages, pursuant to Fed. R. Evid. 1006. Defendants anticipate opposing this evidence because the tables upon which they were based were created by another individual, James Whitelaw, and have never been made available to Defendants.

5.    Admit a chart summarizing the complaints against BBFS, which was prepared by FTC investigator Cindy Kapadia, pursuant to Fed. R. Evid. 1006.

6.    Admit evidence of Defendant's advertisements in newspapers, pursuant to Fed. R. Evid. 902(6).

7.    Admit evidence of Defendant's web sites, through the testimony of FTC Investigator Cindy Kapadia, who performed the web captures.

8.    Admit transcripts from undercover telephone conversations between FTC Investigator Cindy Kapadia and Christina Creel, who was at the time a BBFS debt

counselor. Defendants anticipate objecting to this evidence as hearsay without exception.

9.    Admit a declaration from David Olson, General Counsel of the collections operation for Citi Cards. Defendants anticipate objecting to this evidence as hearsay without exception.

Plaintiff presently anticipates filing the following motions to preclude:

1.    Any evidence that the Defendants may seek to admit regarding allegedly satisfied customers should be precluded on the issue of liability. *See, e.g., Basic Books, Inc. v. FTC,* 276 F.2d 718, 720-21 (7th Cir. 1960) (Proffered evidence of some consumers who did not receive deceptive representations is not a defense to liability); *Independent Directory Corp. v. FTC,* 188 F.2d 468, 471 (2d Cir. 1951) (Evidence of satisfied customers is entirely irrelevant as whether defendant had deceptive practices and may be excluded from the record). Defendants do not anticipate calling any witnesses from "satisfied consumers" and therefore do not anticipate this issue being raised in a motion in limine. However, as described above, Defendants do intend to introduce evidence that consumers received services commensurate with the representations made by BBFS, both with regard to the issue of liability and damages.

Defendants anticipate objecting to exhibits identified by the FTC on the basis of hearsay or relevance. Those objections have been discussed as part of the parties' meet and confer, and are identified in writing on Attachment A – Plaintiff's Exhibit List. Objections to Defendants' proposed exhibits are identified on Attachment B – Defendants' Exhibit List.

## VII.   Amendments to Pleadings

### a. Plaintiff's Position:

Plaintiff has no amendments to the pleadings.

### b. Defendants' Position:

Defendants have no amendments to the pleadings.

## VIII.   Additional Matters to Aid in Disposition of the Action

The parties state that there are no such matters.

## IX.   Probable Length of Trial/Jury or Non-Jury

The plaintiff expects it to take 4 days to put on its evidence.  Defendants anticipate that it will require two days to put on its defense.  The parties expect the trial to last 6 days in total.

## X.   List of Witnesses

### a. Plaintiff's Position:

Cindy Kapadia - Live
One Bowling Green
New, NY 10004
(212) 607-2807

Peter Dykstra - Live
601 Pennsylvania Avenue
Washington, DC 20850
(202) 326-3645

James Whitelaw - Live
601 Pennsylvania Avenue
Washington, DC 20850
(202) 326 - 3315

Deanna Gonsalves - Live
235 West Central Street, Suite 1
Natick, MA 01760
(508) 652-4866

Lisa Lee Lum - Live
1065 Avenue of the Americas

New York, NY 10018
(212) 790-5700

Davin Clement - Live
41 Elliott Street #5
Beverly, MA 01915
(978) 473-9273

Carrie Alajoki - Live
801 Third Avenue E
Ashland, WI 54806
(715) 682-2812

Gretchen Alexander - Live
3202 Colwell Avenue #1505
Tampa, FL 33614
(813) 933-3666

Jeannette Canham - Live
967 Washington Street
Baldwin, NY 11510
(516) 867-7913

Timathy Dain - Live
128 East Third Street
Roxana, IL 62084
(618) 251-4806

Kathy Doty - Live
52 Bradley Drive
Shoreham, NY 11786
(631) 821-7266

Christopher Gadomski - Live
8210 Hartford Drive
Rowlett, TX 75089
(214) 734-6174

Justin Happ - Live
52 Staniels Road
Chichester, NH 03258
(603) 798-5688

Michael Owens - Live
155 Twin Valley Road
London, KY 40741

(606) 864-4461

Shenita Melvin-Dove - Live
139 NW Monroe Circle North
Saint Petersburg, FL 33702
(727) 528-8710

Melissa Niebuhr - Live
1362 McClure Drive
Longmont, CO 80501
(303) 772-9094

Wanda Novak - Live
164 Clinton Avenue
Hackensack, NJ 07601
(201) 487-3634

Angela Starksspear - Live
629 Bullhead Road
Conchas Dam, NM 88416
(505) 868-1911

Andrew Stutzman - Live
70 Forest Drive
Hegins, PA 17938
(484) 951-1746

John Colon, Jr. - Live
4 Conifer Way
Beverly, MA
(978) 524-0257

Julie Fabrizio-Colon - Live
4 Conifer Way
Beverly, MA
(978) 524-0257

Paul Bartlett - Live
55 Apple Road, Apt #21
Beverly, MA 01915
(978) 922-5038

     **b.  Defendants' Position**:

John Colon, Jr. - Live
4 Conifer Way

Beverly, MA
(978) 524-0257

Julie Fabrizio-Colon - Live
4 Conifer Way
Beverly, MA
(978) 524-0257

Paul Bartlett - Live
55 Apple Road, Apt #21
Beverly, MA 01915
(978) 922-5038

Scott Grimes
Mr. Grimes address is presently unknown, but may be reached by contacting counsel for
Defendants. Mr. Grimes' address will be provided to counsel for Plaintiff by February 25, 2005.

Andres Lartitegui – Live
CreditSoft/ICCO
9900 W. Sample Rd., Suite 200
Coral Springs, Florida 33065

Scott Rieger or another Representative from Automated Financial Group – Live
500 Polk Avenue, Suite 6A
Greenwood, IN 46143

## XI.    List of Proposed Exhibits

See (1) Attachment A – Plaintiff's Exhibit List and Defendants' Objections, and (2)

Attachment B – Defendants' Exhibit List and Plaintiff's Objections.

The parties reserve the right to use additional documents for impeachment purposes.

FEDERAL TRADE COMMISSION
By its attorneys,

Carole A. Paynter
Elvia Gastelo
FEDERAL TRADE COMMISSION
One Bowling Green, Ste. 318
New York, NY 10004
212-607-2813 (p)
212-607-2822 (f)

BETTER BUDGET FINANCIAL SERVICES,
INC, JOHN COLON, JR. and
JULIE FABRIZIO-COLON
By their attorneys,


Christian H. Pedersen (BBO #644016)
METAXAS, NORMAN & PIDGEON, LLP
900 Cummings Center, Suite 207T
Beverly, MA  01915
978-927-8000 (p)
978-922-6464 (f)



Ian D. Volner (*pro hac vice*)
Theodore W. Atkinson (*pro hac vice*)
VENABLE, LLP
575 7th Street, N.W.
Washington, DC  20004-1601
202-344-4814 (p)
202-344-8300 (f)

Dated: February 23, 2005

**ATTACHMENT A**
**PLAINTIFF'S EXHIBIT LIST AND DEFENDANTS' OBJECTIONS**

| EXH. | DESCRIPTION | DEFENDANTS' OBJECTION |
|---|---|---|
| PX 1 | Articles of Organization - Debt Management Solutions, Inc. | -- |
| PX 2 | BBFS Office Complaints Analysis Chart | Defendants are unsure what documents specifically are being offered by the FTC as part of this exhibit. To the extent the analysis chart constitutes a summary of BBFS complaints, Defendants object that the underlying complaint data is hearsay and is not admissible under Rule 802, and does not meet any exception under Rules 803 or 807. |
| PX 3 | Documents from BBFS Offices | Defendants are unsure what documents specifically are being offered by the FTC as part of this exhibit. |
| PX 4 | BBFS Analysis Chart | Defendants are unsure what documents specifically are being offered by the FTC as part of this exhibit. To the extent the analysis chart constitutes a summary of BBFS complaints, Defendants object that the underlying complaint data is hearsay and is not admissible under Rule 802, and does not meet any exception under Rules 803 or 807. |
| PX 5 | Consumer Complaints Follow Up Form | -- |
| PX 6 | Documents from Receiver | Defendants are unsure what documents specifically are being offered by the FTC as part of this exhibit. To the extent the analysis chart constitutes a summary of BBFS complaints, Defendants object that the underlying complaint data is hearsay and is not admissible under Rule 802, and does not meet any exception under Rules 803 or 807. <br><br> To the extent that this exhibit |

| EXH. | DESCRIPTION | DEFENDANTS' OBJECTION |
|---|---|---|
|  |  | consists of complaints received by the Receiver, Defendants object that the complaints are not relevant in that they are almost exclusively complaints that arose after the imposition of the Receivership. |
| PX 7 | Declaration of Peter C. Dykstra | Hearsay. The witness has been identified by the FTC as a live witness at trial. Defendants also object that Mr. Dykstra's declaration is impermissible summary evidence under Rule 1006. The underlying data tables, which were compiled by another individual, have never been provided to the Defendants. |
| PX 8 | FTC Dykstra Declaration - Exhibit A -Time Elapsed in the Program | Hearsay. The witness has been identified by the FTC as a live witness at trial. Defendants also object that Mr. Dykstra's declaration is impermissible summary evidence under Rule 1006. The underlying data tables, which were compiled by another individual, have never been provided to the Defendants. |
| PX 9 | FTC Dykstra Declaration - Exhibit B - Completed Program | Hearsay. The witness has been identified by the FTC as a live witness at trial. Defendants also object that Mr. Dykstra's declaration is impermissible summary evidence under Rule 1006. The underlying data tables, which were compiled by another individual, have never been provided to the Defendants. |
| PX 10 | FTC Dykstra Declaration - Exhibit C - Revenue Analysis | Hearsay. The witness has been identified by the FTC as a live witness at trial. Defendants also object that Mr. Dykstra's declaration is impermissible summary evidence under Rule 1006. The underlying data tables, which were compiled by another individual, have never been |

| EXH. | DESCRIPTION | DEFENDANTS' OBJECTION |
|---|---|---|
| | | provided to the Defendants. |
| PX 11 | Declaration of Carrie Alajoki | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 12 | Declaration of Angela Starksspear | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 13 | Deposition of John Colon, Jr. | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 14 | Deposition of Julie Fabrizio-Colon | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 15 | Articles of Organization - Better Budget Financial Services, Inc. | -- |
| PX 16 | Century Bank - Ownership of Account form for Julie A. Colon & John Colon, Jr. | -- |
| PX 17 | BBFS web pages | -- |
| PX 18 | Better Business Bureau, Inc. - Reliability Report | -- |
| PX 19 | 6/01/04 Telephone Contact with Christine Creel and Michael Delcore | Hearsay. The FTC investigator on the call has been identified by the FTC as a live witness at trial. |
| PX 20 | 5/20/04 Telephone Contact with Christine Creel | Hearsay. The FTC investigator on the call has been identified by the FTC as a live witness at trial. |
| PX 21 | 5/20/04 BBFS Letter & Contract Sent to Jennifer Shaw | -- |
| PX 22 | BBB (Eastern MA, ME, VT) Documents Sent to Carole A. Paynter, FTC Regarding BBFS | Hearsay. |
| PX 23 | 10/27/04 BBFS Press Release re Expansion Plans | Relevance. |
| PX 24 | Complaint Analysis Chart - Better Budget Financial Services, Inc. | Defendants are unsure what documents specifically are being offered by the FTC as part of this exhibit. To the extent the analysis chart constitutes a summary of BBFS complaints, Defendants object that the underlying complaint data is hearsay and is not admissible under Rule 802, and does not meet any exception under Rules 803 or 807. |
| PX 25 | Declaration of David P. Olson | Hearsay. |
| PX 26 | Declaration of Timathy Dain | Hearsay. The witness has been identified by the FTC as a live |

| EXH. | DESCRIPTION | DEFENDANTS' OBJECTION |
|---|---|---|
| | | witness at trial. |
| PX 27 | 6/25/03 BBFS Letter to Tim Dain re Debt Reduction Enrollment Package | -- |
| PX 28 | BBFS Contract for Services 2003-2005 | -- |
| PX 29 | BBFS Power of Attorney and Cease & Desist (completed form) | -- |
| PX 30 | BBFS letter to Tim Dain re Mr. Dain's File No. and Monthly Payment | -- |
| PX 31 | 8/5/03 Facsimile - Cease Communication from Dana M. Dain to CitiCards - Gordon's | Hearsay. |
| PX 32 | 10/12/03 Letter from Dana M. Dain to BBFS | Hearsay. |
| PX 33 | Chase Bank Special Offer to Dana Dain | Hearsay. |
| PX 34 | 5/14/04 Letter from Julie Fabrizio-Colon | -- |
| PX 35 | Declaration of Edward Dube, Jr. | Hearsay. |
| PX 36 | Declaration of Justin M. Happ | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 37 | Declaration of Janice Hoffman | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 38 | 1/28/02 Illinois AG Consumer Complaint Form from Brian & Janice Hoffman | Hearsay; relevance |
| PX 39 | Declaration of Wanda Novak | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 40 | 5/27/03 BBFS Letter to Wanda Novak | -- |
| PX 41 | 5/30/03 Letter from BBFS to Mr. Carter | -- |
| PX 42 | 6/25/04 10:15 AM Email from Wanda Novak to Joseph Zargari at BBFS | Hearsay. |
| PX 43 | 6/5/03 BBFS Letter to Wanda | -- |
| PX 44 | 6/27/03 16:21:35 Email from Wanda Novak to Davin Clement | Hearsay. |
| PX 45 | Declaration of Gretchen Alexander | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 46 | 7/28/03 BBFS Letter to Chris Gadomski re Debt Reduction Enrollment Package | -- |
| PX 47 | Declaration of Christopher Gadomski | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 48 | Declaration of Shellie Tucker | Hearsay. |
| PX 49 | Declaration of Melissa Niebuhr | Hearsay. The witness has been identified by the FTC as a live witness at trial. |

| EXH. | DESCRIPTION | DEFENDANTS' OBJECTION |
|---|---|---|
| PX 50 | Declaration of Michael Owens | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 51 | Declaration of Kimberly Epps | Hearsay. |
| PX 52 | 6/12/03 16:52:50 BBFS Email to Kimberly Epps | -- |
| PX 53 | 6/12/03 BBFS Letter to Kimberly Epps re Debt Reduction Enrollment Package | -- |
| PX 54 | 6/17/03 BBFS Power of Attorney and Cease & Desist Form Completed by Kimberly Epps | -- |
| PX 55 | Declaration of Kathy Doty | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 56 | 4/12/03 06:11:44 BBFS Email to Kathy J. Doty | -- |
| PX 57 | BBFS Contract for Service | -- |
| PX 58 | 8/24/01 Power of Attorney & Desist Form Completed by Kathy J. Doty | -- |
| PX 59 | 6/6/02 Letter from Kathy J. Doty to BBFS/Paul Bartlett | Hearsay. |
| PX 60 | 6/21/02 BBFS Letter from Julie Fabrizio to Ms. Doty | -- |
| PX 61 | 8/28/02 BBFS Letter/Julie Fabrizio "To Whom It May Concern" re Ms. Doty | -- |
| PX 62 | Declaration of Jody Manzanares | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 63 | 11/06/03 BBB of Eastern MA, ME & VT Response to Jody S. Manzanares Inquiry re BBFS | Hearsay; relevance |
| PX 64 | Declaration of Jeanette Canham | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 65 | Declaration of Andrew Stutzman | Hearsay. The witness has been identified by the FTC as a live witness at trial. |
| PX 66 | FTC Financial Statement of Corporate Defendant - Better Budget Financial Services, Inc. | Hearsay. |
| PX 67 | FTC Financial Statement of Individual Defendant - John Colon, Jr. | Relevance. |
| PX 68 | FTC Financial Statement of Individual Defendant - Julie Fabrizio Colon | Relevance. |
| PX 69 | Declaration of Peter Avallone | Hearsay. |
| PX 70 | 4/06/01 BBFS Settlement Offer on Behalf of Glenn Sasser | -- |
| PX 71 | 4/1/2002 National Conference of Bar Examiners | Hearsay; relevance. |

| EXH. | DESCRIPTION | DEFENDANTS' OBJECTION |
|---|---|---|
| | Reference Request by Joseph H. Pacifico, Jr. | |
| PX 72 | BBFS Draft Contract For Service | Relevance. |
| PX 73 | 4/07/04 Letter from Consumer Justice Law Center to BBFS & Kelly, Lucas & Pacifico on Behalf of Nicole Von Allmen | Hearsay. |
| PX 74 | 7/31/03 BBB Eastern MA. ME & VT Research Report for Tamara Harrington | Hearsay. |
| PX 75 | 10/27/03 To Whom It May Concern re Ms. Kimberly Epps from Julie Fabrizio, VP | -- |
| PX 76 | 4/21/2004 Letter from Michael J. DeCandio to BBFS re Laura Reinhardt & Her MBNA Account | Hearsay. |
| PX 77 | 4/22/2004 Letter from Julie Fabrizio-Colon to Michael J. DeCandio re Ms. Laura Reinhardt's Citibank Account | Hearsay. |
| PX 78 | 11/17/03 Copy of Century Bank Treasurer's Check | Relevance. |
| PX 79 | 1/15/03 Copy of Century Bank Checking Account Internal Debit Record | Relevance. |
| PX 80 | 8/12/04 Scott A. Moore Letter of Resignation to John Colon, Jr. | Hearsay; relevance. |
| PX 81 | Lexington Furniture Orders for Items Sold to Julie & John Colon | Hearsay; relevance. |
| PX 82 | Recreational Finance Co. Payment Book | Hearsay; relevance. |
| PX 83 | 2003 (BBFS) Financial Statement | Hearsay; relevance. |
| PX 84 | 2/02/04 BBB Eastern MA, ME & VT Notice of Cancellation to Ms. Julie Fabrizio,VP, BBFS | Hearsay. |
| PX 85 | 1/20/04 To Whom It May Concern at BBB re Cancellation of BBFS Membership | -- |
| PX 86 | 8/04/03 BBB Letter to Julie Fabrizio re Complaints Against BBFS | Hearsay. |
| PX 87 | 8/05/04 BBFS Payrolls Plus Pay Register | Hearsay; relevance. |
| PX 88 | BBFS Employee Contact List | Hearsay; relevance. |
| PX 89 | 9/02/03 BBFS Month to Date Roll Call | -- |
| PX 90 | 11/4/2004 BBFS Month to Date Roll Call | -- |
| PX 91 | Payroll to Be Paid 4/02/04 | Relevance. |
| PX 92 | Debt Management Solution (DMS) Statement of Benefits and Initial Pitch Outline | -- |
| PX 93 | 7/25/2002 BBFS Client Activity Chart | -- |
| PX 94 | 5/18/04 Letter From The Florida Bar/Jeffrey T. Picker to BBFS re Unlicensed Practice of Law | Hearsay; relevance. |
| PX 95 | 10/11/03 and Other Jewelry Appraisals by De Scenza Diamonds | Hearsay; relevance. |
| PX 96 | 2/04/04 Century Bank Checking Account | Relevance. |

| EXH. | DESCRIPTION | DEFENDANTS' OBJECTION |
|---|---|---|
|  | Internal Debit Record from John Colon |  |
| PX 97 | 8/26/2002 Century Bank DDA Internal Debit Record for John Colon | Hearsay; relevance. |
| PX 98 | 11/02/02 Copy of BBFS Check by John Colon to Caldwell Banker Residential Brokerage | Relevance. |
| PX 99 | Contract Between Davin Clement & Better Budget Financial Services Inc. | Relevance. |
| PX 100 | 2/27/04 Copy of BBFS Check No. 2345 from John Colon to Joe Pacifico | Relevance. |
| PX 101 | 2/27/04 Copy of BBFS Check No. 2346 From Julie Colon to Joe Pacifico | Relevance. |
| PX 102 | 3/31/04 BBFS Century Bank Statement | Relevance. |
| PX 103 | Complaint Follow Up Forms | -- |

**ATTACHMENT B**
**DEFENDANTS' EXHIBIT LIST AND PLAINTIFF'S OBJECTIONS**

| EXH. | DESCRIPTION | PLAINTIFF'S OBJECTION |
|---|---|---|
| DX-1 | BBFS Enrollment Packet—Enrollment Letter, ACH Form, Cease Communication Letter, Contract for Services, Power of Attorney Form, ACH Debit Form | Hearsay & relevance |
| DX-2 | Signed Contract for Services (Signed April 28, 2004) | Hearsay & relevance |
| DX-3 | DMS Enrollment Packet—Enrollment Letter, Client Information Form, Creditor List, Contract for Services | Hearsay & relevance |
| DX-4 | Sample BBFS Approval Letter | Hearsay & relevance |
| DX-5 | BBFS Client Briefing Letter | Hearsay & relevance |
| DX-6 | ACH Adjustment Form | Hearsay & relevance |
| DX-7 | Settlements Due Form | Hearsay & relevance |
| DX-8 | Lists of Creditors and Phone Numbers Used by Client Services Representatives | Hearsay & relevance |
| DX-9 | Sample "Complaint Follow Up Form" | Hearsay & relevance |
| DX-10 | Completed Complaint Follow Up Forms | Hearsay & relevance |
| DX-11 | Monitoring Phone Calls Follow Up Form | Hearsay & relevance |
| DX-12 | Request for Termination from Consumer D. Patrick, Accompanying Complaint Follow Up Form | Hearsay & relevance |
| DX-13 | Various Requests for Termination Forms | Hearsay & relevance |
| DX-14 | BBFS Records of Terminations for August through October 2004 | Hearsay & relevance |
| DX-15 | Request for Termination Dated 11/3/04 from D. Houston | Hearsay & relevance |
| DX-16 | Cease Communication Form | Hearsay & relevance |
| DX-17 | Sample Transaction Records from AFG Website | Hearsay & relevance |
| DX-18 | Memorandum Dated March 16, 2004 from Senior Management to All Sales Staff re: Professionalism and Integrity | Hearsay & relevance |
| DX-19 | Letter Dated January 20, 2004 to D. Gonsalves from Julie Fabrizio-Colon | Hearsay & relevance |
| DX-20 | Fulfillment Agreement between BBFS and DMS | Hearsay & relevance |
| DX-21 | Document Entitled "Bonus Plan for Client Services" Used by BBFS | Hearsay & relevance |
| DX-22 | Various Responses to the BBB from Julie Fabrizio-Colon | Hearsay & relevance |
| DX-23 | CreditSoft Data Captured by CoreFacts | Hearsay & relevance |
| DX-24 | CreditSoft Report – List of Customers with No Record of Recorded Settlement | Hearsay & relevance |

| EXH. | DESCRIPTION | PLAINTIFF'S OBJECTION |
|------|-------------|----------------------|
| DX-25 | CreditSoft Report – BBFS Customer Records (w/o Header) | Hearsay & relevance |
| DX-26 | CreditSoft Report – BBFS Customer Records (w/ Header) | Hearsay & relevance |
| DX-27 | CreditSoft Report – Summary of BBFS Customer Records (w/o Header) | Hearsay & relevance |
| DX-28 | CreditSoft Report – Summary of BBFS Customer Records (w/ Header) | Hearsay & relevance |
| DX-29 | CreditSoft Report – Customer Debts Settled by BBFS (w/o Header) | Hearsay & relevance |
| DX-30 | CreditSoft Report – Customer Debts Settled by BBFS (w/ Header) | Hearsay & relevance |
| DX-31 | Automated Financial Group Reports—BBFS and DMS ACH Transactions (15 Reports) | Hearsay & relevance |
| DX-32 | CreditSoft Records for K. Alajoki | Hearsay & relevance |
| DX-33 | CreditSoft Records for G. Alexander | Hearsay & relevance |
| DX-34 | CreditSoft Records for P. Avallone | Hearsay & relevance |
| DX-35 | CreditSoft Records for J. Canham | Hearsay & relevance |
| DX-36 | CreditSoft Records for T. Dain | Hearsay & relevance |
| DX-37 | CreditSoft Records for K. Doty | Hearsay & relevance |
| DX-38 | CreditSoft Records for S. Dove-Melvin | Hearsay & relevance |
| DX-39 | CreditSoft Records for E. Dube | Hearsay & relevance |
| DX-40 | CreditSoft Records for K. Epps | Hearsay & relevance |
| DX-41 | CreditSoft Records for C. Gadomski | Hearsay & relevance |
| DX-42 | CreditSoft Records for J. Happ | Hearsay & relevance |
| DX-43 | CreditSoft Records for J. Hoffman | Hearsay & relevance |
| DX-44 | CreditSoft Records for J. Manzanares | Hearsay & relevance |
| DX-45 | CreditSoft Records for M. Niebuhr | Hearsay & relevance |
| DX-46 | CreditSoft Records for W. Novak | Hearsay & relevance |
| DX-47 | CreditSoft Records for M. Owens | Hearsay & relevance |
| DX-48 | CreditSoft Records for S. Starkkspear | Hearsay & relevance |

Defendants also identify for use in its defense all exhibits identified by the Plaintiff that are not otherwise excluded on evidentiary grounds.