UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------- X
FEDERAL TRADE COMMISSION,                                  :
                                                           :   **CIVIL ACTION NO.:**
                Plaintiff,                            :   04-12326 (WGY)
                                                           :
   v.                                                      :
                                                           :
BETTER BUDGET FINANCIAL SERVICES,                          :
INC., JOHN COLON, JR., and JULIE                           :
FABRIZIO-COLON,                                            :
                                                           :
                Defendants.                           :
---------------------------------------------------------- X

**AFFIDAVIT OF HERNAN SERRANO, JR., AS RECEIVER,
IN SUPPORT OF THE INITIAL INTERIM FEE APPLICATION OF THE
RECEIVER AND HIS PROFESSIONALS**

HERNAN SERRANO, JR., being duly sworn, deposes and says:

1.     I am the temporary receiver (the "Reciever") of Better Budget Financial Services, Inc. ("BBFS"). I was appointed Receiver pursuant to an *Ex Parte* Temporary Restraining Order With Asset Freeze, Appointment Of Receiver, Immediate Access To Defendants' Business Premises, Expedited Discovery, And Order To Show Cause Why A Preliminary Injunction Should Not Issue, entered by this Court on November 3, 2004 (the "TRO"), as modified by Stipulation Modifying *Ex* Parte Temporary Restraining Order, signed by counsel for each of the parties hereto and "So Ordered" by the Court on or about November 18, 2004 (the "Stipulated TRO"). Copies of the TRO and Stipulated TRO are respectively annexed hereto as Exhibits A and B.

2. I am also the Director of Corporate Recovery Services in the firm of Weinick, Sanders, Leventhal & Co. ("WSL"). Except where stated upon information and belief, I have personal knowledge of the facts and circumstances set forth in this affidavit.

3. I submit this affidavit in support of the Joint Initial Interim Fee Application of me, as Receiver of BBFS, as well as the professionals I have engaged to assist the implementation of my duties and responsibilities under the TRO (the "Initial Application"). The team of professionals which I have engaged include my forensic accounting firm, WSL, as well as the law firm of Mintz Levin Cohn Ferris Glovsky & Popeo, P.C. ("Mintz Levin"). Collectively, we seek an order authorizing the payment of reasonable compensation for the two-month period from November 1, 2004 through December 31, 2004 (the "Initial Application Period").

## BACKGROUND

4. On November 3, 2004, the Federal Trade Commission (the "FTC") filed a complaint (the "FTC Complaint") and related affidavits and exhibits with the Court against the Defendants seeking restitution, permanent and preliminary injunctions, a temporary restraining order, the appointment of a receiver and other extraordinary provisional relief. The FTC Complaint alleged, among other things, that each of the Defendants, including BBFS, engaged in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). In particular, the FTC has alleged that Defendants have engaged in unfair and deceptive trade practices in connection with the advertising, promotion, offering or sale of services providing debt consolidation, debt reduction, debt negotiation or credit repair by telephone, on or through the Internet, the World Wide Web, various websites or otherwise in interstate commerce, by making or assisting in the making of statements or representations of material fact that are false or misleading, including, but not limited to, the following:

2

    a.    That consumers who purchase Defendants' services will be able to fully repay unsecured credit card debts for a reduced amount;

    b.    That Defendants will settle each creditor's account once a consumer accumulates one-half of the amount owed to that creditor; and

    c.    That Defendants will ensure that creditors do not call or harass consumers about payments on the consumers' debts that may be or may become overdue.

5.    Immediately upon service of the pleadings and papers in this Action, the Defendants engaged counsel, and they have denied and continue to deny the material allegations alleged against them by the FTC.

6.    My professionals and I physically took possession and control of the premises, assets and operations of the Defendants on November 4, 2004 at approximately 3:00 p.m. We traveled to 800 Cummings Center, Suites 152R and 260T, Beverly, Massachusetts 01915, together with representatives of the FTC, the Beverly Police Department, and the Massachusetts Attorney General's Office and served the Defendants at their business offices, as well as at one of the homes of Defendants John and Julie Colon, which is located at 434 Rantoul Street, Beverly, Massachusetts 01915.

7.    As Receiver, my initial activities focused on securing the BBFS business premises by changing the door locks, disabling the computer networks to prevent access to the network from remote sources and forensically imaging the computer hard drives in the offices, while inventorying the books, records and items of value at the site. In addition, my counsel, other members of my team and I also interviewed BBFS' principals, its various employees, certain third parties and also held lengthy discussions with counsel for the Defendants and the FTC in an effort to learn quickly the business of BBFS, the location of its assets and any other information

of value that we might need to know to effectuate the terms and conditions required of me by the TRO. We further served financial institutions with copies of the TRO to freeze the assets of the Defendants and communicated extensively with representatives from various banks and other creditors or vendors of the company to obtain documents relating to the business activities of BBFS pursuant to the TRO and to marshal assets as expeditiously as possible.

8. During this Initial Fee Application Period, we also prepared the Receiver's First Report to the Court and I appeared in Court with my counsel for each of the hearings and conferences that occurred in the case. A copy of the Receiver's First Report is annexed hereto as Exhibit C. As set forth in the Receiver's First Report to the Court, I was initially able to identify and secure cash in various accounts with the aggregate amount of approximately $500,000 as well as real and personal property, including a multi-million dollar home and numerous automobiles and vehicles (including a Porsche Carrera and several new Lexus automobiles owned by the Receivership Defendants, as well as various pick-up trucks owned by Defendants but in the possession of other family members of John and Julie Colon) with an unknown value. As of the date of this Initial Application, the estate has approximately $500,000 in liquid assets and approximately $1.1 million in fixed assets, which have been frozen and which are capable of being liquidated. For the benefit of the Court, I have annexed hereto as Exhibit D a copy of a schedule detailing each of the assets believed to be part of the Receivership Estate and its estimated fair saleable value at liquidation.

9. As Receiver, I, together with my team of professionals, have undertaken my duties and have devoted a very substantial amount of time to the supervision, operation, management and preservation of the Defendants' property and estate from November 4, 2004 to the present time.

10. Section XXI of the TRO (p. 32) provides that the Receiver and his professionals shall be compensated at their standard hourly rate. The schedules of rates and detail of the work that has been performed by members of my firm WSL, my counsel's firm, Mintz Levin and by me are set forth in the billing records from WSL and Mintz Levin Cohn Ferris Glovsky and Popeo, P.C. ("Mintz Levin"), which are respectfully annexed hereto as Exhibits E and F.

### RELIEF REQUESTED AND REASONS THEREFOR

11. As Receiver, and on behalf of my firm and my counsel, I submit this Initial Application for an order authorizing the allowance of reasonable compensation for the professional services rendered as Receiver for the Defendants. This Initial Application is submitted without prejudice to the Receiver's right to seek further allowances and compensation. Neither my counsel nor I have billed for our time in preparing this Initial Application.

12. This Initial Application covers the period from November 1, 2004 through December 31, 2004.

13. Prior to the filing of the Complaint by the FTC, the Receiver did not receive any retainer and received no other promise of payment for professional services rendered or to be rendered in this case.

14. My professionals and I maintain detailed records of the time expended in the rendition of all professional services required in the administration of the estates of the Defendants. The time records were made concurrently with the rendition of professional services. The time records have been reviewed and, where appropriate, redacted to eliminate portions of time entries that are privileged.

15. As stated above, the time entries do <u>not</u> include any time spent by the Receiver or counsel preparing this fee application.

16.     My normal hourly rate is $365 per hour. However, I agreed to reduce my rate as Receiver to an hourly rate of $200 per hour. As indicated on the WSL timesheets, the standard hourly rate of the professionals from WSL who have worked on the Receivership ranges from $110 to $365 per hour. As Receiver, I incurred 237.1 hours of professional time that I devoted to Receivership activities during the Initial Fee Application Period. Professionals from WSL incurred an aggregate of 272 hours of professional in connection with Receivership activities during the Initial Fee Application Period. Accordingly, the cost of my hourly time during the Initial Fee Application Period was $47,420. Based on my normal hourly rate, this amount reflects a savings of approximately $39,121.50 to the Estate. The cost of WSL Professionals' time was $52,424.50, for an aggregate cost of WSL timekeeper time of $99,844.50. WSL also incurred expenses during the Initial Fee Application Period in the amount of $7,726.98. In total, WSL seeks payment of $107,571.48 for professional services that it rendered and disbursements it incurred during the Initial Fee Application Period. On behalf of WSL, I respectfully submit that this amount is fair and reasonable under the circumstances due to the degree of difficulty and complex nature of this Receivership estate and the efficient, comprehensive, fair and exceptionally responsible decision-making on the part of the entire Receivership team.

17.     Attorneys for Mintz Levin worked at a blended hourly rate of approximately $321 per hour during the Initial Fee Application Period with the lowest timekeeper charging $150 per hour and the senior partner, Peter B. Zlotnick, Esq., charging $510 per hour. See Exh. F. Mintz Levin's timekeepers billed approximately 438 hours during the Initial Fee Application Period for an aggregate cost of $141,009.90. This amount reflects a courtesy discount of fifteen percent (an approximate savings of $24,884.10 to the Estate) from Mintz Levin's actual legal fees. Mintz Levin also incurred disbursements and expenses on behalf of the Receivership during the Initial

6

Fee Application period in the aggregate amount of $52,159.15, which included the cost of CoreFacts forensic computer specialists. Mintz Levin seeks the total payment of $193,169.05 for professional services that it rendered and disbursements it incurred during the Initial Fee Application Period.

18. I respectfully submit that, in addition to all of the foregoing reasons, each of the fees and disbursements described in paragraphs 16 and 17 above are fair and reasonable and the result of a complicated and involved initial period due to the activities necessitated by, among other things, the existence of Unimark Solutions, Inc. ("Unimark"). Immediately from the outset of the Receivership, my counsel and I worked diligently with counsel for the Defendants and the FTC to resolve issues relating to the business of Unimark, its corporate relationship to BBFS and the Colons and its use and occupancy of BBFS' office premises. Those discussions continued throughout the Initial Fee Application Period and are best memorialized by the Stipulation TRO, which represents a consensual injunction, circumscribing Unimark's authority to continue autonomously certain of its business activities and functions, notwithstanding that Unimark is still a Receivership Company as that term is defined in the TRO. See Stipulation TRO, ¶ 2(a) (b), and (c). The stipulated arrangement that the Court "So Ordered" continued the asset freeze over Unimark's assets; required Unimark to provide reports concerning Unimarks assets to the Receiver upon reasonable request by the Receiver, including, but not limited to, bank statements or other financial information). Stipulation TRO, ¶ 2.b. The Receiver and Unimark also agreed on logistical, mechanical and practical issues relating to limitations that the parties agree to impose on Unimark's use and occupancy of the BBFS offices at 800 Cummings Center, Suite 260T. Each of these restrictions was a product of negotiations in which we participated with counsel for the Defendants and counsel for the FTC. If only on the basis of only these activities,

NYC 309355v1

I respectfully submit that we have added substantial value to the Receivership Estate and request that the Court grant our request for fees and expenses in its entirety.

## CONCLUSION

19.  For all of the foregoing reasons, I respectfully submit that the Court should enter and order awarding me, in my capacity as the temporary Receiver of BBFS, together with my forensic accountants, WSL, and counsel, Mintz Levin, compensation in the amounts of $240,854.40 for their reasonable hourly fees and $59,886.13 for their disbursements on behalf of the Receivership Companies, in the aggregate amount of $300,740.53 with respect to the substantial work and services they rendered during the Initial Fee Application Period.

_____
Hernan Serrano, Jr.

Sworn to before me this
1st day of March, 2005

_____
Notary Public

HANG MUI YAU
Notary Public, State of New York
No. 01YA6062421
Qualified in Kings County
Commission Expires ~~May~~ August 6, 2005

8

NYC 309355v1