# EXHIBIT A

WILLIAM E. KOVACIC
General Counsel

BARBARA ANTHONY
Director, Northeast Region

CAROLE A. PAYNTER
ELVIA P. GASTELO
Federal Trade Commission
One Bowling Green, Suite 318
New York, New York 10004
(212) 607-2813 or 2811
Attorneys for Plaintiff

FILED
IN CLERKS OFFICE

2004 NOV -3  A 10: 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) |
| BETTER BUDGET FINANCIAL SERVICES, INC., | ) |
| JOHN COLON, JR., and JULIE FABRIZIO-COLON, | ) |
| Defendants. | ) |

Civ No. 04-12326 (WGY)

### (Proposed) *EX PARTE* TEMPORARY RESTRAINING ORDER
### WITH ASSET FREEZE, APPOINTMENT OF RECEIVER,
### IMMEDIATE ACCESS TO DEFENDANTS' BUSINESS PREMISES,
### EXPEDITED DISCOVERY, AND ORDER TO SHOW CAUSE WHY A
### PRELIMINARY INJUNCTION SHOULD NOT ISSUE

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), having filed its

Complaint for a permanent injunction and other relief in this matter, pursuant to Section 13(b) of

the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b); and having moved *ex parte*

for a Temporary Restraining Order pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the Court having considered the pleadings, declarations, exhibits, and memorandum of law filed in support of Plaintiff=s application, makes the following findings of fact:

1) This Court has jurisdiction of the subject matter of this case, and there is good cause to believe it will have jurisdiction over all parties.

2) There is good cause to believe that the Defendants Better Budget Financial Services, Inc., John Colon Jr. and Julie Fabrizio-Colon have engaged and are likely to engage in acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. ' 45(a), and that the Commission is therefore likely to prevail on the merits of this action.

3) There is good cause to believe that immediate and irreparable damage to the FTC=s ability to secure effective final relief for consumers in the form of monetary redress will occur, from the sale, transfer, or other disposition or concealment by the Defendants of assets or records, before said Defendants can be heard in opposition. There is thus good cause for issuing this Order pursuant to Fed. R. Civ. P. 65(b) and for relieving the Plaintiff of the duty to provide the Defendants with prior notice of the Plaintiff=s motion.

4) There is good cause to order an asset freeze and appoint a Temporary Receiver.

5) Weighing the equities and considering the Plaintiff=s likelihood of ultimate success in its cause of action, this temporary restraining order with asset freeze and other equitable relief is in the public interest.

2

6)    No security is required of any agency of the United States for issuance of a

restraining order.  Fed. R. Civ. P. 65(c).

## DEFINITIONS

For purposes of this temporary restraining order, the following definitions shall apply:

1.    AAsset@ means any legal or equitable interest in, right to, or claim to, any real and

personal property, including, but not limited to, chattel, goods, instruments, equipment,

fixtures, general intangibles, effects, leaseholds, premises, mail or other deliveries, shares

of stock, lists of consumer names, inventory, checks, notes, accounts, credits, receivables,

funds, and all cash, wherever located.

2.    AAssisting others@ means knowingly providing any of the following goods or services to

another person or entity:

a.    performing customer service functions, including, but not limited to, receiving or

responding to consumer complaints; or

b.    formulating or providing, or arranging for the formulation or provision of, any

telephone sales script or any other marketing material; or

c.    providing names of, or assisting in the generation of, potential customers; or

d.    performing marketing services of any kind.

3.    AConsumer@ means any person, including any individual, group, unincorporated

association, limited or general partnership, corporation, or other business entity.

4.    ADebtor@ means any consumer indebted to a creditor or creditors

5.    ADebt negotiation@ means

3

a.    the business or practice of receiving, in return for consideration, the scheduled receipt of a debtor=s monies, or evidences thereof, for the purpose of distribution among certain specified creditors in payment, or partial payment, of the debtor=s obligations; or

b.    the business or practice of acting or offering or attempting to act as an intermediary between a debtor and his creditors for the purpose of settling, negotiating, or in any way altering the terms of payment of any debt of a debtor.

6.    **ADefendants@** means Better Budget Financial Services, Inc., John Colon, Jr., and Julie Fabrizio-Colon, and each of them, by whatever names each might be known, as well as their successors, assigns, officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, divisions, sales entities, related entities, and all other persons or entities directly or indirectly under their control or under common control with them.

7.    **ADocument@** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term Adocument.@

8.    **AInternet@** means a worldwide system of linked computer networks that use a common protocol to deliver and receive information. The "Internet" includes, but is not limited to, the following forms of electronic communication: electronic mail and mailing lists, the

World Wide Web ("Web"), bulletin boards and newsgroups, chat groups, remote computer access (telnet), and file transfer protocol (ftp).

9.  **AReceivership Defendants@** means Better Budget Financial Services, Inc., and whatever names it might otherwise be known, as well as its parents, subsidiaries, affiliates, successors, assigns, officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, divisions, sales entities, related entities, and all other persons or entities directly or indirectly under their control or under common control with them.

10. **AURL@** is an abbreviation for Uniform Resource Locator. Each Web page and Web site has a distinct URL, such as www.betterbudgetservices.net or www.termidebt.com, that serves as a unique Internet address for that Web site or Web page.

11. A **AWeb page@** is a single electronic document within a Web site, readily viewable on a computer by anyone with access to the Internet, standard software, and knowledge of the Web page or Web site's URL.  Web site visitors generally first link to its "home page," which is a Web page that serves as an index, or gateway, to the rest of the Web site's contents.

12. A **AWeb site@** is a set of electronic documents, usually a home page and subordinate pages, readily viewable on a computer by anyone with access to the Internet, standard software, and knowledge of the Web site's URL.

13. The terms **Aand@** and **Aor@** shall be construed conjunctively or disjunctively as necessary, and to make the applicable phrase or sentence inclusive rather than exclusive.

## I. PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that in connection with the advertising, promotion,

offering, or sale of any services providing debt consolidation, debt reduction, debt negotiation, or

credit repair by telephone, on or through the Internet, the World Wide Web, any web site, or

otherwise in commerce, the Defendants, and all other persons or entities in active concert or

participation with them who receive actual notice of this Order by personal service or otherwise,

whether acting directly or through any trust, corporation, subsidiary, division or other device,

including, but not limited to, fictitious business names, are hereby temporarily restrained and

enjoined from:

1.    Making, or assisting in the making of, expressly or by implication, orally or in

writing, any statement or representation of material fact that is false or misleading,

including but not limited to, any misrepresentation that:

a.    a consumer who purchases Defendants= service will be able to pay off

unsecured debts for a reduced amount;

b.    Defendants will settle each creditor=s account once the consumer

accumulates one-half of the amount owed to the creditor;

c.    Defendants will ensure that creditors do not call or harass consumers about

payments on the consumer=s debts that may be overdue; and

2.    Making, or assisting in the making of, expressly or by implication, orally or in

writing, any statement or representation of material fact that is false or misleading,

including but not limited to, any misrepresentation about any other fact material to

6

a consumer=s decision to purchase any service providing debt consolidation, debt reduction, debt negotiation, or credit repair.

## II.  PROHIBITED BUSINESS PRACTICES

**IT IS THEREFORE ORDERED** that the Defendants, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, including, but not limited to, fictitious business names, must immediately take whatever steps may be necessary to ensure that Web pages or Web sites operated, in whole or in part, under the names www.betterbudgetservices.net and www.termidebt.com cannot be accessed by the public; and

**IT IS FURTHER ORDERED** that the Defendants, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, including, but not limited to, fictitious business names, are hereby temporarily restrained and enjoined from:

A.    Owning, operating, managing, and editing a debt negotiation Web site or Web page;

B.    Inserting any type of code or command in any Web page or on any Web site that automatically redirects a consumer to any other Web page or Web site;

C.    Advertising or promoting debt negotiation services on any Web page or Web site;

D.    Misrepresenting the contents of their Web pages or Web sites through the use of meta tags, or by any other means;

7

E.      Overriding the normal functioning of a consumer's Internet browser; and

F.      Registering any new domain names, either directly or through any third party,

without notifying counsel for the FTC within 24 hours of such action. Such

notice shall include the true identity of the domain name registrant, his or her

mailing address, e-mail address, and telephone number.

### III. WEB HOSTING

**IT IS FURTHER ORDERED** that, pending final resolution of this matter, any party

hosting any Web pages or Web sites for Defendants, and all other persons or entities in active

concert or participation with them who receive actual notice of this Order by personal service or

otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other

device, including, but not limited to, fictitious business names, shall:

A.      Immediately take whatever steps may be necessary to ensure that Web pages or

Web sites operated, in whole or in part, under the names

www.betterbudgetservices.net and www.termidebt.com, cannot be accessed by the

public;

B.      Prevent the destruction, or erasure of Web pages or Web sites operated, in whole

or in part, under the names www.betterbudgetservices.net and

www.termidebt.com by preserving such documents in the format in which they

are currently maintained; and

C.      Immediately notify counsel for the FTC of any other Web page or Web site

operated or controlled by any defendant.

8

## IV. ASSET FREEZE

**IT IS FURTHER ORDERED** that the Defendants are hereby temporarily restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, pledging or otherwise disposing of any funds, credit instruments, real or personal property, accounts, contracts, lists of consumer names, shares of stock or other assets, wherever located, including outside the United States, other than to make transfers to any Temporary Receiver appointed herein, that are:

1.    Owned or controlled by the Defendants, in whole or in part, including but not limited to any assets held by, for, or under the name of the Defendants at any bank or savings and loan institution, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution, depository of any kind, or business entity, including but not limited to the following:

(a)    any and all bank accounts maintained at Century Bank, located at 428 Rantoul Street, Beverly MA 01915, including but not limited to account numbers: 66352789, 5639093, 5639107, 5634148, 5634121, and 5647371; and

(b)    any and all bank accounts maintained at St. Jean=s Credit Union, located at 527 Western Avenue, Lynn, MA 01904, including but not limited to account number: 50308127;

9

2.    In the actual or constructive possession of Defendants; or

3.    Owned, controlled by, or in the actual or constructive possession of any

corporation, partnership, or other entity directly or indirectly owned,

managed, or controlled by or under common control with Defendants.

B.    Opening or causing to be opened any safe deposit boxes, titled, singly or jointly,

in the name of any Defendant, or subject to access by any of these Defendant.

C.    Incurring charges on any credit card issued in the name, singly or jointly of any

Defendant.

D.    Collecting, opening, or causing to be collected or opened, any mail, received by or

on behalf of the Receivership Defendant, at any address, including but not limited

to the following: 800 Cummings Center, Suites 152R and 260T, Beverly MA,

01915, and failing to turn over any such mail to the Temporary Receiver.

E.    Obtaining a personal or secured loan; and

F.    Incurring liens or other encumbrances on real property, personal property or other

assets of the Defendants in the name of Defendants, singly or jointly.

**IT IS FURTHER ORDERED** that:

G.    The assets affected by this Paragraph shall include both existing assets and assets

acquired after the effective date of this Order.

H.    Notwithstanding the provisions of this Paragraph, the Defendants may make

transfers as directed by the Temporary Receiver appointed by this Court, or as

otherwise ordered by this Court upon proper showing and after notice to counsel

for the Commission.

10

## V.  CUSTOMER LISTS

**IT IS FURTHER ORDERED** that the Defendants are hereby temporarily restrained and enjoined from selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, credit card number, debit card number, bank account number, e-mail address, or other identifying information of any person who paid any money to any Defendant, at any time prior to entry of this Order, in connection with the telemarketing, advertising, promoting, offering for sale, and selling of debt negotiation services.  Provided, however, that the Defendants may disclose such identifying information to a law enforcement agency or as required by any law, regulation, or court order.  The Defendants are also hereby temporarily restrained and enjoined from making any use of their own customer lists in any business, whether or not related to the present action.

## VI.  RETENTION OF ASSETS AND RECORDS
## HELD BY THIRD PARTIES

**IT IS FURTHER ORDERED** that, pending determination of the Commission=s request for a Preliminary Injunction, any financial or brokerage institution, business entity, or person served with a copy of this Order, that holds, controls or maintains custody of any account or asset of any Defendant, or has held, controlled or maintained custody of any such account or asset at any time since January 1, 2001 shall:

A.    Prohibit the Defendants from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such account or asset except as directed by further order of the Court;

11

B.    Deny the Defendants access to any safety deposit box, that is:

    1.    Titled in the name of any of the Defendants, either individually or jointly; or

    2.    Otherwise subject to access by any of the Defendants, either individually or jointly;

C.    Provide counsel for the Commission and the Temporary Receiver, within five (5) business days of receiving a copy of this Order, a sworn statement setting forth:

    1.    The identification number and description of each such account or asset titled in the name, individually or jointly, of the Defendants, or held on behalf of, or for the benefit of, any Defendant;

    2.    The balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and

    3.    The identification of any safe deposit box that is either titled in the name, individually or jointly, of the Defendants, or otherwise subject to access by any Defendant; and

D.    Upon the request of the Temporary Receiver or the Commission, promptly provide the Temporary Receiver and the Commission with copies of all records or other documentation pertaining to any account or asset of any Defendant,

including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs. Any such financial institution, account custodian, or other aforementioned entity shall arrange for Plaintiff and the Temporary Receiver to obtain copies of any such records which Plaintiff seeks, *provided* that such institution or custodian may charge a reasonable fee not to exceed ten cents (15¢) per page copied; and

E.    Cooperate with all requests of the Temporary Receiver relating to implementation of this Order, including transferring funds or other assets at the Temporary Receiver=s direction and producing records related to the accounts or assets of any Defendant.

## VII. REPATRIATION OF ASSETS AND DOCUMENTS LOCATED IN FOREIGN COUNTRIES

**IT IS FURTHER ORDERED** that the Defendants shall:

A.    Within forty-eight (48) hours following the service of this Order, take such steps as are necessary to transfer to the territory of the United States of America all documents and assets that are located outside of such territory and are held by or for the Defendants or are under their direct or indirect control, jointly, severally, or individually;

B.    Within forty-eight (48) hours following the service of this Order, provide counsel for the Commission and the Temporary Receiver with a full accounting of all

13

documents and assets that are located outside of such territory and are held by or

for the benefit of the Defendants or are under their direct or indirect control,

whether jointly, severally, or individually;

C.     Hold and retain all documents and assets transferred pursuant to Subparagraph A

and prevent any transfer, disposition, or dissipation whatsoever of any such assets

or funds; and

D.     Provide counsel for the Commission with access to records and documents of the

Defendants held by financial institutions outside the territorial United States of

America, by signing and delivering to Plaintiff the Consent of Release of

Financial Records attached hereto as Attachment A within forty-eight (48) hours

of service of this Order.

## VIII. INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that the Defendants are hereby temporarily restrained and

enjoined from taking any action, directly or indirectly, which may result in the encumbrance or

dissipation of Defendants= foreign assets or in the hindrance of the repatriation required by the

<u>preceding</u> Paragraph of this Order, including but not limited to:

A.     Sending any statement, letter, fax, e-mail or wire transmission, telephoning or

engaging in any other act, directly or indirectly, that results in a determination by a

foreign trustee or other entity that a Aduress@ event has occurred under the terms

of a foreign trust agreement until such time that all assets have been fully

repatriated pursuant to Section VII of this Order;

14

B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section VII of this Order.

## IX.  IMMEDIATE ACCESS TO DEFENDANTS= BUSINESS PREMISES

**IT IS FURTHER ORDERED** that the Defendants shall allow the Temporary Receiver and the Commission=s representatives immediate access to the Defendants= business premises, including but not limited to all such premises located at 800 Cummings Center, Suites 152R and 260T, Beverly MA 01915, 434 Rantoul Street, Beverly MA 01915, and all sales offices, branch offices, storage facilities or other offices used by the Defendants.  The purpose of this access shall be solely to inspect and copy materials relevant to this action and to inventory the assets and documents of the Defendants including, but not limited to:

A.    Documents evidencing, referring to, or relating to each Defendant=s financial status, including but not limited to, the nature or location of any bank account, safe deposit box, or any other asset of any Defendant;

B.    Documents evidencing, referring to, or relating to the telemarketing, advertising, promoting, offering for sale, and selling of debt negotiation services and other services to any consumer and any correspondence, transaction, or other communication by or between any consumer or prospective consumer and any Defendant or any of their representatives, employees, agents, or officers; and

C.    Documents evidencing, or referring to, any correspondence, action, or other communication by or between any law enforcement agency, consumer group, or

15

Better Business Bureau and any Defendant or any of their representatives, employees, agents, or officers.

The Defendants shall provide the Commission and the Temporary Receiver with all necessary means of access to these materials, including, without limitation, keys, lock combinations, and computer access codes. The Temporary Receiver and the Commission may remove such materials from the Defendants= business premises so they may be inspected, inventoried, and copied, so long as all such documents are returned in the same condition as when they were taken, and returned to the offices from which they were taken within five (5) business days of completing said inventory and copying. In no event shall such materials be retained longer than ten (10) business days.

## X. EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that the Commission and the Temporary Receiver are granted leave to conduct certain expedited discovery, and that, commencing with the time and date of this Order, in lieu of the time periods, notice provisions, and other requirements of Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, expedited discovery shall proceed as follows:

A.    Pursuant to Fed. R. Civ. P. 30, the Commission may take depositions upon oral examination concerning the nature, location, status, and extent of the Defendants= assets; the status and location of documents reflecting the Defendants= business transactions; and compliance with this Order, on two (2) days notice of any such deposition. Depositions may be taken Monday through Saturday. Deposition transcripts that have not been signed by the witness may be used for purposes of

16

the hearing on the Order to Show Cause Why a Preliminary Injunction Should Not Issue.

*Provided*, that this Subparagraph permitting expedited deposition discovery concerning the nature, location, status, and extent of the Defendants= assets, the status and location of documents reflecting the Defendants= business transactions, and compliance with this Order, shall not be construed in any manner to preclude Plaintiff=s right to take subsequent depositions of the same witnesses on the merits of this action.

*Provided, further,* that any deposition taken pursuant to this Subparagraph is in addition to, and not subject to, the presumptive limits on depositions set forth in Fed. R. Civ. P. 30(a)(2)(A).

B.    Pursuant to Fed. R. Civ. P. 34(b), the Defendants shall produce all documents requested by the Commission within two (2) days of service of such request, with production of documents made to Commission counsel at the address listed in Paragraph XXVI, or to such other person or place as counsel for the Commission may direct in writing.

*Provided,* that, in the event any of the Defendants= documents have been removed from the Defendants= premises by, and are in the possession of another law enforcement or investigative agency, the Commission may have immediate access to such documents for purposes of inspection, indexing, and copying, subject to the agency consenting to access by the Commission.

17

*Provided, further,* that this Subparagraph shall extend to parties and non-parties.

## XI. FINANCIAL REPORTS

**IT IS FURTHER ORDERED** that the Defendants, within forty-eight (48) hours of service of this Order, shall prepare and deliver to the Temporary Receiver, and to counsel for the Commission:

A.    Completed financial statements on the forms attached to this Order as Attachments B and C, for each individual Defendant, for each corporate Defendant, and for each business entity (whether or not incorporated) under which they conduct any business, or of which any Defendant is an owner or officer, and for each trust of which any Defendant is a trustee. The financial statements shall be accurate as of the date of entry of this Order; and

B.    All current accountants= reports; all federal tax returns filed since January 1, 2001; documents indicating title to real or personal property; and other indicia of ownership that are now in any of the Defendants= actual or constructive possession.

## XII. IDENTIFYING INFORMATION RELATING TO ACCOUNTANTS, FINANCIAL PLANNERS, INVESTMENT ADVISORS, STOCK BROKERS AND OTHERS

**IT IS FURTHER ORDERED** that the Defendants, within forty-eight (48) hours after service of this Order, shall provide counsel for the Commission and the Temporary Receiver: (1) the name, address and telephone number for each accountant, financial planner, investment advisor, stock broker or other individual, corporation or partnership whom they hire for personal

18

advice or services, including but not limited to preparation of tax returns and investment advice, since January 1, 2001, and (2) the name, address and telephone number for each accountant, financial planner, investment advisor, stockbroker or other individual, corporation or partnership who was hired on behalf of the Defendants since January 1, 2001.

### XIII. RECORD KEEPING/BUSINESS OPERATIONS

**IT IS FURTHER ORDERED** that the Defendants are hereby temporarily restrained and enjoined from:

A.   Failing to create and maintain documents that, in reasonable detail, accurately, fairly, and completely reflect their incomes, disbursements, transactions, and use of money;

B.   Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any contracts, accounting data, correspondence, advertisements, computer tapes, discs, or other computerized records, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices or business or personal finances of the Defendants; and

C.   Creating, operating, or exercising any control over any business entity, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing counsel for the Commission with a written

19

statement disclosing: (1) the name of the business entity; (2) the address and telephone number of the business entity; (3) the names of the business entity's officers, directors, principals, managers and employees; and (4) a detailed description of the business entity's intended activities.

## XIV. DISTRIBUTION OF ORDER BY DEFENDANTS

IT IS FURTHER ORDERED that the Defendants shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assign, officer, director, employee, independent contractor, agent, attorney, and representative of the Defendants and shall, within five (5) calendar days from the date of entry of this Order, provide counsel for the Commission and the Temporary Receiver with a sworn statement that each Defendant has complied with this provision of the Order, which statement shall include the names and addresses of each such person or entity who received a copy of the Order. The Temporary Receiver has no obligation under this Paragraph.

## XV. APPOINTMENT OF TEMPORARY RECEIVER

IT IS FURTHER ORDERED that  Hernan Serrano, Jr. , whose address is  New York City , is appointed Temporary Receiver for the Receivership Defendant, with the full power of an equity receiver for the Receivership Defendant, and all of the funds, properties, premises, accounts, and other assets directly owned by the Receivership Defendant. The Temporary Receiver shall be solely the agent of this Court in acting as Temporary Receiver under this Order. The Temporary Receiver shall be accountable directly to this Court. The Temporary Receiver shall comply with all Local Rules of this Court governing receivers.

20

## XVI. RECEIVERSHIP DUTIES AND AUTHORITY

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

A.     Assume full control of the Receivership Defendant by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendant, including any Defendant, from control of, management of, or participation in, the affairs of the business of the Receivership Defendant and manage and administer the business of the Receivership Defendant until such further Order of this Court by performing all incidental acts that the Temporary Receiver deems to be advisable or necessary, which includes retaining or hiring any employees, independent contractors or agents;

B.     Collect, marshal, and take exclusive custody, control and possession of all funds, property, books and records, accounts, mail, and other assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated, including but not limited to: 800 Cummings Center, Suites 152R and 260T, Beverly MA 01915 and 434 Rantoul Street, Beverly MA 01915. The Temporary Receiver=s authority to collect any and all mail relating to the affairs of the Receivership Defendants in the possession, custody, or under the control of, the Defendants, shall extend to mail in the possession of any third parties. The Temporary Receiver shall have full power to change mailing addresses of the Receivership Defendants. The Temporary Receiver shall have

21

full power to change any locks on any real or personal property of the Receivership Defendants. The Temporary Receiver shall have full power to divert mail, sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Receivership Defendants, including documents related to customers or clients whose interest are now held by or under the direction, possession, custody or control of the Defendants or under the control of any third party for the benefit of the Defendants. The Temporary Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Defendants. *Provided, however,* the Temporary Receiver shall not attempt to collect any amount from a consumer if the Temporary Receiver believes the consumer was a victim of the deceptive acts or practices alleged in the Complaint in this matter, without prior Court approval;

C.     Take all steps necessary to secure the business premises of the Receivership Defendants, including but not limited to all such premises located at 800 Cummings Center, Suites 152R and 260, Beverly MA 01915 and 434 Rantoul Street, Beverly MA 01915. Such steps may include, but are not limited to, the following, as the Temporary Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all Receivership assets; (3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home

22

address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (4) photographing or videotaping all portions of the Receivership Defendants= business premises; (5) securing the Receivership Defendants= business premises by changing the locks on any real or personal property of the Receivership Defendants; (6) disconnecting any computer modems or other means of access to the computer or other records maintained at the Receivership Defendants= business premises; (7) requiring any persons present on the Receivership Defendants= business premises at the time this Order is served to vacate the premises, to provide the Temporary Receiver with proof of identification, or to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises documents or assets of the Defendants. Law enforcement personnel, including but not limited to, local police or sheriffs, may assist the Temporary Receiver in implementing these provisions in order to keep the peace and maintain security;

D.    Conserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Defendants, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

E.    Enter into contracts and purchase insurance as advisable or necessary, including, but not limited to, (1) the retention and employment of investigators, attorneys or

23

accountants of the Temporary Receiver=s choice, including, without limitation, members and employees of the Temporary Receiver=s firm, to assist, advise and represent the Temporary Receiver, and (2) the movement and storage of any equipment, furniture, records, files, or other physical property of the Defendants;

F.     Prevent the inequitable distribution of the Receivership assets, and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Defendants;

G.     Have the *sole* legal authority to hire legal counsel on behalf of the Receivership Defendants;

H.     Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by any Receivership Defendant prior to the date of entry of this Order, except payments that the Temporary Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

I.     Institute, prosecute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Temporary Receiver deems necessary and advisable to preserve or recover the assets of the Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver=s mandate under this Order;

24

J.  Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Temporary Receiver in his role as Temporary Receiver, or against the Defendants that the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Temporary Receiver deems necessary and advisable to carry out the Temporary Receiver=s mandate under this Order;

K.  Issue subpoenas to obtain documents and records pertaining to the Receivership, and conduct discovery in this action on behalf of the Receivership estate;

L.  Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Temporary Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the Receivership estate from such an account;

M.  Maintain accurate records of all receipts and expenditures that he makes as Temporary Receiver;

N.  Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

O.  Have the *sole* legal authority to file, or cause to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. ' 101 *et seq.*, and only with prior written permission from this Court after notice to counsel for the Commission.

P.  Prepare and submit a Report to this Court and to the parties, not less than three (3) days prior to the scheduled Preliminary Injunction Hearing, describing the

25

Receiver=s activities in connection with carrying out the Receiver=s obligations and responsibilities under the Order, the Receivership Defendants= business activities, sales volume and/or number of purchasers, and assets and liabilities, to the extent such information is known to or has been provided to the Receiver, and any other information the Receiver believes is relevant to the Court.

## XVII. COOPERATION WITH THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Defendants shall fully cooperate with and assist the Temporary Receiver. The Defendants= cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this Order; providing any password or entry code required to access any computer or electronic files of the Defendants in any medium; or advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver. The Defendants are hereby restrained and enjoined from directly or indirectly:

A.    Transacting any of the business of the Receivership Defendants;

B.    Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Defendants, including, but not limited to, books, records, accounts, or any other papers of any kind or nature;

C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Defendants or the Temporary Receiver;

26

D.    Excusing debts owed to the Defendants;

E.    Failing to notify the Temporary Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other than the Receivership Defendant, or failing to provide any assistance or information requested by the Temporary Receiver in connection with obtaining possession, custody, or control of such assets; or

F.    Doing any act or refraining from any act whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or managing of Receivership Defendants= assets or documents; or to harass or interfere with the Temporary Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Temporary Receiver or the Temporary Receiver=s duly authorized agents in the exercise of their duties or authority under this Order, including but not limited to the preparation of the lists, schedules and statements required by Fed. R. Bankr. P. 1007 in any bankruptcy case commenced by the Temporary Receiver on behalf of the Receivership Defendants, without first obtaining leave of this Court.

## XVIII. DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that:

A.    Immediately upon service of this Order upon them, or within a period permitted by the Temporary Receiver, the Defendants and any other person or entity served

27

with a copy of this Order shall forthwith or within such time as permitted by the Temporary Receiver in writing, transfer or deliver possession, custody, and control of the following to the Temporary Receiver:

1.     All assets, all property, owned beneficially or otherwise, wherever situated, of the Receivership Defendants;

2.     All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

7)     All assets belonging to members of the public now held by the Receivership Defendants;

8)     All keys, computer passwords, entry codes and combination locks necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property;

3.     Information identifying the accounts, employees, properties or other assets or obligations of the Receivership Defendants.

B.     In the event any person or entity fails to deliver or transfer any asset or otherwise fails to comply with any provision of this Paragraph, the Temporary Receiver may file an Affidavit of Non-Compliance regarding such failure. Upon filing of the affidavit, the Court may

authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Temporary Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Federal Rule of Civil Procedure 4(c)(2)) to seize the asset, document, or other thing and to deliver it to the Temporary Receiver.

### XIX. TRANSFER OF FUNDS TO THE TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the Temporary Receiver relating to implementation of this Order, including transferring funds at his direction and producing records related to the assets of the Receivership Defendant.

### XX. STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

B.      Except by leave of this Court, during the pendency of the Receivership ordered herein, the Defendants and all vendors, principals, investors, creditors, stockholders, lessors, and all other persons and entities seeking to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, any of the Defendants, and all others acting for or on behalf of such persons, including attorneys, trustees, agents, sheriffs, constables, marshals, and other officers and their deputies, and their respective attorneys, servants, agents and employees, be and are hereby stayed from:

29

1.   Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding against any of the Defendants, except that such actions may be filed to toll any applicable statute of limitations;

9)   Commencing, prosecuting, continuing, or entering any suit or proceeding in the name of or on behalf of any of the Defendants;

10)  Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset of the Defendants; attempting to foreclose, forfeit, alter, or terminate any of the Defendants= interest in any asset, including without limitation, the establishment, granting, or perfection of any security interest, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

2.   Using self-help, executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon, any assets of any of the Defendants or the Temporary Receiver appointed by this Order or any agent appointed by said Temporary Receiver; or

3.   Taking any action or doing anything whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or management

of the Receivership Defendants= assets or documents, or to interfere in any way with the Temporary Receiver, or to harass or interfere with the duties of the Temporary Receiver, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants, or their subsidiaries or affiliates.

B.    This Paragraph does not stay:

1)    The commencement or continuation of a criminal action or proceeding;

2)    The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit=s police or regulatory power;

3)    The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit=s police or regulatory power, including execution on any security interest in favor of the FTC;

4)    The commencement of any action by the Secretary of the United States Department of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers  property, or combinations of property, consisting of five or more living units; or

5)    The issuance to a Defendant of a notice of tax deficiency.

31

C.      Except as otherwise provided in this Order, all persons and entities in need of

documentation from the Temporary Receiver shall in all instances first attempt to

secure such information by submitting a formal written request to the Temporary

Receiver, and, if such request has not been responded to within thirty (30) days of

receipt by the Temporary Receiver, any such person or entity may thereafter seek

an Order of this Court with regard to the relief requested.

## XXI.  COMPENSATION OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by

the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and

accountants, are entitled to reasonable compensation for the performance of duties pursuant to

this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets

now held by, or in the possession or control of, or which may be received by the Defendants.

Said fees and out-of-pocket expenses shall be paid prior to any monetary relief that may be

awarded by this Court to purchasers of the Defendants= debt negotiation services, including

Internet access, website design and other services.  The Temporary Receiver shall file with the

Court and serve on the parties periodic requests for the payment of such reasonable

compensation, which shall exclude the costs of filing and service, with the first such request filed

no more than sixty (60) days after the date of this Order.  The Temporary Receiver shall not

increase the hourly rates used as the bases for such fee applications without prior approval of the

Court and without prior notice to counsel for the Commission.

## XXII. WITHDRAWAL OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and any professional retained by the Temporary Receiver, including but not limited to his or her attorneys and accountants, be and are hereby authorized to withdraw from their respective appointments or representations at any time after the date of this Order, for any reason in their sole and absolute discretion, by sending written notice seven (7) days prior to the date the Temporary Receiver intends to withdraw to the Court and to the parties; and such Temporary Receiver and professionals shall be relieved of all liabilities and responsibilities seven (7) days from the date of such notice or withdrawal. The written notice shall include an interim report indicating the Temporary Receiver=s actions and reflect its knowledge gained. The report shall also contain the Temporary Receiver=s recommendations, if any.

## XXIII. TEMPORARY RECEIVER=S BOND

**IT IS FURTHER ORDERED** that the Temporary Receiver shall file with the Clerk of this Court within seven (7) days of entry of this Order, a bond in the sum of _____ with sureties to be approved by the Court, conditioned that the Temporary Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

## XXIV. CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that the Commission may obtain credit reports concerning any Defendant pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. ' 1681b(1), and that upon written request, any credit reporting agency from which such reports are requested shall provide them to the Commission.

33

### XXV. USE OF ALIASES

**IT IS FURTHER ORDERED** that the Defendants are hereby enjoined from using any fictitious, false, or assumed title or name, other than their own proper name, or otherwise misrepresenting their true identities in the course of business dealings or in publicly filed documents.

### XXVI. SERVICE OF PLEADINGS

**IT IS FURTHER ORDERED** that:

A.    The Defendants shall file with the Court and serve counsel for the Commission and the Temporary Receiver their response to the Order to Show Cause Why a Preliminary Injunction Should Not Issue, including all declarations, exhibits, memoranda, and other evidence, not less than seventy-two (72) hours prior to the hearing on such application. The Defendants shall serve copies of all such materials on the Commission, by hand, by facsimile transmission, or by overnight delivery service to the attention of counsel for the Commission, Carole A. Paynter at Federal Trade Commission, Northeast Regional Office, 1 Bowling Green, Suite 318, New York, NY 10004 (facsimile transmission to (212) 607-2832). *Provided, however*, that if the Defendants choose to serve the Commission via overnight delivery, the documents shall be delivered so that they shall be received by the Commission at least seventy-two (72) hours prior to the hearing.

B.    Service on the Temporary Receiver shall be performed by delivery to the attention of

_____.

34

C.  The Commission shall file with the Court and serve on the Defendants and the Temporary Receiver any supplemental memoranda, declarations, materials, or other evidence not less than twenty-four (24) hours prior to the hearing on the Order to Show Cause Why a Preliminary Injunction Should Not Issue.  The Commission shall serve copies of all such materials on counsel for each Defendant by hand, by facsimile transmission, or by overnight delivery service. *Provided, however*, that if the Commission chooses to serve any Defendant via overnight delivery, the documents shall be delivered so that they shall be received by such Defendant at least twenty-four (24) hours prior to the hearing.  Consumer declarations previously filed as exhibits in support of this Order comply with the disclosure requirements of this Paragraph.

D.  Pursuant to Federal Rule of Civil Procedure 4(c)(2), the copies of this Order and the initial pleadings and papers filed in this matter, including the Complaint and summonses, may be served by employees and agents of the Commission, by employees of any state or other federal law enforcement agency, including but not limited to the United States Marshal=s Office and the Federal Bureau of Investigation, and by agents of any process servers retained by the Commission, upon any office of the Defendants, any individual Defendant, any financial or brokerage institution, or any person or entity that may be in possession of any assets, property, or property rights of the Defendants.

E.  The issuance of a preliminary injunction shall be determined on the pleadings, declarations, memoranda, and other exhibits filed by the parties and on oral

argument, without live testimony. Any party who desires to present live testimony at the hearing shall file a motion requesting leave to present live testimony, and serve such motion on all opposing parties, not less than seventy-two (72) hours prior to the hearing on the Order to Show Cause Why a Preliminary Injunction Should Not Issue. The request shall set forth in detail the reasons why an evidentiary hearing is desired and how such hearing would be helpful to the Court. In addition, the request shall set forth a witness list that shall include the name, address, and telephone number of any such witness, and either a summary of the witness= expected testimony, or the witness= declaration revealing the substance of such witness= expected testimony. *Provided,* that if service is via overnight delivery, the documents shall be delivered so that they shall be received by all parties at least seventy-two (72) hours prior to the hearing.

Any party opposing a request to present live testimony shall file its written opposition, and serve such motion on all parties, not less than twenty-four (24) hours prior to the hearing on the Order to Show Cause Why a Preliminary Injunction Should Not Issue. Any party opposing a request to present live testimony also shall file its witness list, and serve such witness list on all parties, not less than twenty-four (24) hours prior to the hearing on the Order to Show Cause Why a Preliminary Injunction Should Not Issue. For purposes of this Subparagraph, service shall be by hand, by facsimile transmission, or by overnight delivery service. *Provided,* that if service is via overnight delivery, the documents shall be delivered so that they shall be received by all parties at least twenty-four (24) hours prior to the hearing.

36

## XXVII. DURATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire on _Nov. 10_, 2004, at _9:00_ o'clock _p_ .m., unless within such time, the Order, for good cause shown, is extended for an additional period not to exceed ten (10) days, or unless it is further extended pursuant to Federal Rule of Civil Procedure 65.

## XXVIII. ORDER TO SHOW CAUSE RE: PERMANENT RECEIVER AND PRELIMINARY INJUNCTION

**IT IS FURTHER ORDERED,** pursuant to Federal Rule of Civil Procedure 65(b), that each of the Defendants shall appear before this Court on the _10_ day of _November_, 2004, at _9_ o'clock _p_ .m., at the United States courthouse located at _US District Court_, Room _18_, to show cause, if there is any, why this Court should not appoint a Permanent Receiver for the Receivership Defendants and enter a preliminary injunction, pending final ruling on the Complaint against the Defendants, enjoining the Defendants from further violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), continuing the freeze of their assets, and imposing such additional relief as may be appropriate.

## XXIV. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**SO ORDERED,** this _3_ day of _November_, 2004, at _4_ .m.

_William G. Young_
UNITED STATES DISTRICT COURT JUDGE

37

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, Plaintiff | ) ) ) ) | |
| vs. | ) ) ) | Civ. No. 04-12326 (WGY) |
| BETTER BUDGET FINANCIAL SERVICES, INC., JOHN COLON, JR. and JULIE FABRIZIO-COLON, Defendants | ) ) ) ) ) | |

## STIPULATION MODIFYING PLAINTIFF'S EX PARTE TEMPORARY RESTRAINING ORDER

Except as modified hereby, the *Ex Parte* Temporary Restraining Order entered on November 3, 2004, ("TRO") is hereby extended on consent of the parties, until trial in this matter may be held at a date to be set at the earliest convenience of the parties and availability of the Court. The TRO is modified as follows:

1. The property owned by Defendants John and Julie Colon located at 405R Elliott Street, Beverly, MA 01915 is hereby released from the asset freeze of the TRO (Section VI) for the sole purpose of obtaining a second mortgage or home equity loan to pay living expenses and attorney's fees, except that the Defendants agree that they shall not transfer, convey or sell said property to any unrelated third party without permission of the Temporary Receiver. The FTC retains its right to consider the reasonable market value of said property in its tabulation of the Defendants' assets to be considered in connection with restitution claims made against the individual Defendants or against either of them.

2. UniMark Solutions, Inc. ("UniMark") is hereby permitted to conduct its regular and customary business and shall not be subject to the control of the Temporary Receiver, with the following exceptions:

a. all accounts and assets frozen by the asset freeze of the TRO, shall remain in effect, except that UniMark is permitted full authority, dominion and control over the following accounts receivables:

    i. UniMark's customer orders generated prior to the asset freeze; and

    ii. UniMark's customer orders generated after the appointment of the Temporary Receiver.

b. Upon reasonable request from either the FTC or the Temporary Receiver, UniMark shall provide periodic reports with regard to assets of UniMark (including banks statements of account or other financial information). With regard to any UniMark accounts or any accounts created in the name of the Colons, jointly or individually, after November 3, 2004, UniMark and the Colons agree to provide the Temporary Receiver with prompt notice of any transaction related to any of those accounts in an amount that is equal to or greater than $2,500.00.

c. With regard to the logistical, mechanical, and practical issues arising in connection with separating the operation of UniMark and Better Budget Financial Services, Inc. ("Better Budget") the parties agree that:

    i. UniMark shall occupy a portion of office space currently leased to Better Budget, paying the Receivership Estate rent and usage fee until such time as that space is vacated by either Better Budget or UniMark;

    ii. The Temporary Receiver agrees to Unimark's use of the following equipment currently located in the leased space occupied by UniMark: a) telephone equipment, b) desks and chairs, and c) any BBFS computer that is necessary to the operation of UniMark, only after such computer has

2

been properly imaged, backed up or the information thereon has been

properly preserved to the satisfaction of the Temporary Receiver.

iii.    UniMark and the Temporary Receiver shall cooperate regarding relocating

the telephone server currently located in the office of John Colon, Jr. to

another office on the premises at 800 Cummings Center, Suite 260T.

iv.     UniMark and the Temporary Receiver shall cooperate in transferring any

files belonging to UniMark that are located on Better Budget computers,

to computers that brought in by UniMark.

v.     UniMark and the Temporary Receiver shall cooperate regarding any

inventory of assets located at 800 Cummings Center, Suite 260T,

vi.     UniMark and the Temporary Receiver shall cooperate in regard to

resolving such further logistical, mechanical, and practical issues that may

arise.

Accepted and Agreed to by

PLAINTIFF:
FEDERAL TRADE COMMISSION

By:_s/Carole A. Paynter_____
    Carole A. Paynter
    Elvia P. Gastelo
    Federal Trade Commission
    One Bowling Green, Suite 318
    New York, NY 10004
    212-607-2813, 2811 (ph)
    212-607-2822 (fax)

DEFENDANTS:
BETTER BUDGET FINANCIAL
SERVICES, INC, JOHN COLON, JR. and
JULIE FABRIZO-COLON

By their attorneys,

s/Christian H. Pedersen_____
Christian H. Pedersen (BBO #644016)
METAXAS, NORMAN & PIDGEON, LLP
900 Cummings Center, Suite 207T
Beverly, MA  01915
978-927-800 (ph)
978-922-6464 (fax)

3

s/Theodore W. Atkinson
Ian D. Volner (*pro hac vice*)
Theodore W. Atkinson (*pro hac vice*)
VENABLE, LLP
575 7th Street, N.W.
Washington, DC 20004-1601
(202) 344-4814 (p)
(202) 344-8300 (f)

Assented to:


s/Hernan Serrano, Jr.
Hernan Serrano, Jr., as Receiver

By his attorneys,


s/Suzanne Renaud
Suzanne Renaud (BBO #655558)
Breton Leone-Quick (BBO #655571)
MINTZ LEVIN COHN FERRIS
  GLOVSKY & POPEO
One Financial Center
Boston, MA 02111
(617) 542-6000 (p)
(617) 542-2241 (f)

s/Seth Goldman
Peter B. Zlotnick (*pro hac vice*)
Seth Goldman (*pro hac vice*)
Chrysler Center
666 Third Avenue
New York, NY 10017
 (212) 935-3000 (p)
 (212) 983-3115 (f)

SO ORDERED this *18TH* day of November 2004

*William G. Young*
William G. Young, U.S.D.J.

Dc1\188468

4

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

BETTER BUDGET FINANCIAL
SERVICES, INC., JOHN COLON, JR. and
JULIE FABRIZIO-COLON,

Defendants.

---

Civ. No. 04-12326 (WGY)

**PRELIMINARY REPORT OF THE TEMPORARY RECEIVER, HERNAN
SERRANO, JR., PURSUANT TO THE NOVEMBER 3, 2004 ORDER ISSUED BY
THE COURT**

Pursuant to the Order ("Order") issued by the Court on November 3, 2004,

paragraph XVI, subpart P, the Temporary Receiver, Hernan Serrano, Jr. (the "Temporary

Receiver"), through his counsel, Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.

("Mintz Levin"), files the following Preliminary Report (the "Preliminary Report"). This

Preliminary Report describes the activities and observations of the Temporary Receiver

during the period commencing immediately after his appointment by this Court and

continuing through the date herein. The Preliminary Report further sets forth the manner

in which the Temporary Receiver and the professionals he has engaged have carried out

their obligations and responsibilities under the Order:

1. On Thursday, November 4, 2004, the Temporary Receiver, accompanied by

Kevin Gregory, Peter Zlotnick, Esq., and two computer forensic specialists from

CoreFacts, LLC, entered the premises of defendant Better Budget Financial Services, Inc.

("Better Budget"), located at 800 Cummings Center, Suite 152-R, Beverly,

Massachusetts 01915, with agents from the plaintiff, the Federal Trade Commission (the

"FTC"), Carole A. Paynter, Esq., Elvia P. Gastelo, Esq., and others, as well as

representatives from the Beverly, Massachusetts Police Department: Detectives David

Richardson and Michael Cassola.

2.  The above-mentioned individuals also entered the offices of Unimark

Solutions, Inc. ("Unimark"), located at 800 Cummings Center, Suite 260-T, Beverly,

Massachusetts 01915, a business entity affiliated with Better Budget.

3.  Representatives of the Temporary Receiver also traveled to the home of the

individual defendants John and Julie Fabrizio-Colon, located at 4 Conifer Way, Beverly,

Massachusetts 01915, acting upon an understanding that assets of the corporate

defendant Better Budget were located at the Colons' home. The Temporary Receiver's

representatives included Seth Goldman, Esq. of Mintz Levin and Marvin Miller of the

Temporary Receiver's accounting firm, Weinick, Sanders, Leventhal & Co., as well as

Captain Jack DiVincenzo of the Beverly Police Department.

4.  Approximately 35 employees were working at the Better Budget offices and

approximately 5 were located in the Unimark offices at the time the Temporary Receiver

and his team entered. The Beverly Police instructed employees from both Unimark and

Better Budget to step away from their desks and from any computer or telephonic

equipment. Mr. Gregory monitored the Unimark employees, including Scott Grimes, the

IT manager and systems administrator, to ensure that they did not use this equipment.

Mr. Gregory distributed an Employee Census Questionnaire to the Better Budget and

Unimark employees. Each employee on site filled out the questionnaire and submitted a

copy of his or her driver's license. Upon completion of the questionnaire, the employees were permitted to leave the premises.

5.  Mr. Gregory was assisted by Paul Bartlett, the Better Budget Director of Business Development. Both Mr. Bartlett and Mr. Grimes had offices that were physically located in the Unimark premises. Each of these individuals had business cards on their desks that announced them as Better Budget employees. In subsequent interviews with each of them and with John Colon, however, they stated that they had dual functions, working for both companies.

6.  The two computer experts from CoreFacts secured the computer servers located at the site, digitally imaged the computer drives on the premises of both Better Budget and Unimark and retrieved certain critical data stored on those servers for immediate review and analysis. The Temporary Receiver's computer specialists ensured that the Receivership Defendants' computer systems were entirely secured and impenetrable from external access pursuant to the Order.

7.  The Temporary Receiver also physical secured the premises of the Receivership Defendants by changing all the locks at the offices of Better Budget and Unimark. Before the locks were changed, Better Budget and Unimark shared the same master key.

8.  The Temporary Receiver also served copies of the Order on several financial institutions, including Century Bank and St. Jean's Credit Union, freezing assets of the Receivership Defendants wherever any accounts of the Receivership Defendants could be located. Through extensive interviews with defendants John Colon, Julie Fabrizio-Colon and their counsel during the initial day of the receivership, the Temporary Receiver and

his counsel learned that the Receivership Defendants had extensive assets located at Century Bank. Having already served Century Bank with a copy of the Order, the Temporary Receiver immediately requested that Century Bank comply with the Order by providing bank statement and other documentation relating to any accounts for both Better Budget and Unimark. Better Budget's bank statements were sent to defendant Fabrizio-Colon's personal residence, rather than to the business address. However, when defendant Febrizio-Colon was asked about where the statements were sent, she denied knowledge that they were sent to her home. Some of the statements, but not all, were located in defendant Fabrizio-Colon's office in the Unimark suite. Despite the Temporary Receiver request for copies of the statements from Century Bank, as of this date, the Bank had not supplied those statements.

9. Mr. Goldman and Mr. Miller went to the residential address of defendant Fabrizio-Colon, 4 Conifer Way, Beverly, Massachusetts to interview Ms. Fabrizio-Colon. Mr. Zlotnick and Mr. Serrano, along with individuals from the FTC, interviewed defendant Colon. Mr. Gregory and Mr. Goldman interviewed department heads at Better Budget.

10. Through interviews conducted with defendants and defendants' employees, the Receiver learned that defendant Fabrizio-Colon is the vice president of Better Budget, and owns 51% of its stock. Defendant Colon owns 49% of its stock. Defendant Fabrizio-Colon is responsible for the financial matters of the company. Both Defendant Fabrizio-Colon and Defendant Colon have access to the accounts for Better Budget at Century Bank.

11. The Temporary Receiver also learned that Unimark is owned 45% by defendant Colon, 45% by defendant Fabrizio-Colon, and 10% by a third party who, upon information and belief, invested $250,00 in Unimark in or about the last week of October 2004. Unimark was formed in the past few months, and the funds to establish it appear to have come from personal loans from defendants Fabrizio-Colon and Colon, as well as inter-company loans from Better Budget in excess of $50,000. The Temporary Receiver has not yet located any loan documents and, according to John Colon, no formal loan documents were ever created with respect to the inter-company obligations.

12. Unimark sells a natural product that lowers cholesterol. Unimark shares a phone system and computer system with Better Budget. Most of Unimark's employees are separate from Better Budget; however, there does appear to be overlap among key employees, such as Mr. Grimes, Mr. Bartlett, and the two individual defendants, Mr. Colon and Ms. Fabrizio-Colon. (Better Budget employees are paid wages and fill out IRS W-2 forms, while Unimark employees work on a strict commission basis and complete 1099 forms).

13. Unimark occupies the former offices of Better Budget, and, upon information and belief, Better Budget continues to be the lessee under and pays for the lease of the office space that Unimark occupies. Better Budget also paid for all of the furnishings and office equipment located in Unimark's office space. Moreover, Unimark and Better Budget share common directors and officers; Mr. Colon and Ms. Fabrizio-Colon are the sole directors and officers of both companies.

14. At the time that the Temporary Receiver was appointed, Unimark had purchased approximately $50,000 in non-refundable, television advertising time for

infomercials that were to be run nationally on local television stations, advertising Unimark's cholesterol product. At the request of the individual defendants and Scott Sarver, an individual, who upon information and belief, is the general manager of Unimark and possibly a holder of a small fraction of shares of Unimark stock, the Temporary Receiver agreed to permit Unimark to staff its telemarketers at the business premises of Unimark on Friday, November 5, 2004, and over the weekend of November 6-7, 2004, to accommodate the direct response telemarketing that occurs after each infomercial segment. The Temporary Receiver agreed to allow 4 to 5 telemarketers to answer incoming telephone orders, starting at 9:30 a.m. on Saturday, November 6th through approximately 3 p.m. that afternoon. Suzanne Renaud, Esq. of Mintz Levin supervised the telemarketing activities of Unimark throughout the day on Saturday. On the following day, Ms. Renaud supervised the telemarketing activities, commencing at 5:00 a.m. and continuing through 2 p.m. Unimark's management and its counsel agreed that Unimark would only take orders from any callers who attempted to purchase product, but they also agreed that they would not process any credit cards or ship any goods until after the preliminary injunction hearing to be held by the Court.

15. The reason the Temporary Receiver chose to allow Unimark to continue to operate its business in this fashion was that the business of Unimark is not technically proscribed by any of the conduct prohibitions set forth in the Temporary Restraining Order. Notwithstanding that Unimark's business appears to be distinct from Better Budget's, the same does not appear to be true with respect to its corporate and financial structure, and the Temporary Receiver believes at this preliminary stage that Unimark

constitutes a, "Receivership Defendant," as that term is defined at Section 9 of the Definitions Section of the Temporary Restraining Order.

16. Through the course of his preliminary investigation, the Temporary Receiver has learned that Better Budget was in the process of changing its corporate identity to Debt Management Services, Inc. ("DMS"), a for-profit debt management company. Better Budget handles all of the DMX clients, including all customer service inquiries, pursuant to a 2004 contract. DMS's sole purpose is to enroll clients through its Internet site, debtsm.com. Defendant Colon is the 51% owner of Debt Management Services; defendant Fabrizio-Colon owns 49% of the company.

17. Through interviews with the principals involved, the Temporary Receiver gained insight into Better Budget's operations. Better Budget began operations at Rantoul Street in Beverly, Massachusetts, and by running advertisements in Pennysavers. Defendants Colon and Fabrizio-Colon handled all customer-related .

18. At some point, the Colons discovered a way to bring in new customers through the Internet by capturing customer information ion the Internet. Planet IBiz developed software called "Lead Manager" to generate new leads. Planet IBiz cold-called Colon to tell him about new debt software it developed.

19. Today, Better Budget purchases 25-50 leads a day from google.com; the sales department contacts those leads. The sales representatives enroll individuals and have them sign a contract; less than 10 % of the leads becomes a Better Budget client. In its best month, Better Budget enrolled 120 new clients.

20. . According to defendant John Colon, the sales representatives do not use a script; rather, they are trained for two weeks before they may enroll new clients. No

college degree is necessary for the position, but experience in collections is preferred. Sales representatives are instructed to tell potential clients that they could save 50-70 %.

21. After a client signs on, the sales representative has limited additional contact with the client. The account is transferred to the customer service department. The customer service department is comprised on 10-12 individuals.

22. After clients are enrolled, the clients are told to set up their own checking account; Better Budget has no access to the account. Better Budget requires that clients set up a separate account so that the funds do not get co-mingled and so Better Budget is always aware of the amount of money available in the account. The client also grants Better Budget the power of attorney.

23. Credit Soft is the proprietary software system that Better Budget acquired at considerable cost to enable it to keep track creditors and clients by scanning documents into a database and saving them to client files. This procedure includes telephone conversations, emails, mail received, and complaints received from the Better Business Bureau. The Temporary Receiver has not yet had a chance to review the documents stored in the CreditSoft system.

24. Upon review of hard copies of numerous Better Business Bureau complaints that the Temporary Receiver's professionals found in the defendants' offices, it appears that the defendants answered those complaints by means of a general form letter sent under the signature of defendant Fabrizio-Colon. It is unclear at this time, however, whether the defendants answered those complaints either adequately or in a timely fashion. Although the answers to the complaints refer to the telephone conversations with clients and faxes to creditors, these documents are not attached to the answers. At

most, a copy of the contract as well as applicable e-mails were attached.  The Temporary Receive has not yet had the opportunity to review the complaints and answers in full.

The  Temporary Receiver has not yet had an opportunity to conduct a complete or thorough review of the documents or databases at either Better Budget or Unimark, or to complete the interview process.  To the contrary, the receivership is at the very earliest state of its inception and the Temporary Receiver is not prepared to make any recommendations conclusions at this time.  Rather, this Report will be supplemented as new facts are uncovered and as the Temporary Receiver's investigation continues.

Dated: November 8, 2004

Respectfully Submitted,

HERNAN SERRANO, JR.

By:

Breton Leone-Quick, Esq. (BBO# 655571)
Suzanne Renaud, Esq. (BBO# 655558)
Mintz Levin Cohn Ferris Glovsky
& Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Peter Zlotnick, Esq.
Seth Goldman, Esq.
Mintz Levin Cohn Ferris Glovsky
& Popeo, P.C.
The Chrysler Center
666 Third Avenue
New York, New York  10017
(212) 935-3000

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 8th day of November, 2004, served a true copy of the above document by overnight mail on counsel for the defendant: Christian Pedersen, Esq., Metaxas, Norman & Pidgeon, LLP, 900 Cummings Center, Beverly, MA 01915.

Breton Leone-Quick

# EXHIBIT D

**Receivership of Better Budget Financial Services, Inc.**
**Asset Analysis as of January 25, 2005 - Draft for Discussion Purposes Only**

**Cash Accounts**

| Bank | Accounts Number |
|---|---|
| **Century Bank & Trust Company** | 41073460 |
| | 5647606 |
| | 5647592 |
| | 5639093 |
| | 5639107 |
| | 5647371 |
| | 66352789 |
| | 5634148 |
| | 5634121 |
| | 5647541 |
| | 5647509 |
| | 5647517 |
| | 5647525 |
| | 5647533 |
| | 41072839 |
| | 99250284 |
| | 99250292 |
| | 5647568 |
| | 21277575 |
| | |
| **St. Jean's Credit Bureau** | 50308127 |
| | 50107888 |
| | 50107925 |
| | N/A |
| | 21587593 |
| | 43879-62 |
| | 43879-1 |
| | 43879-40 |
| | 29582122 |

**Additional Identified Assets**

**Loan receivable - Paul Barnett**

**ACH reserve (original reserve amount)**

**Automobiles**
Lexus - 2004 LS430
Lexus - 2004 SC 430

Porsche - Turbo 996

| Property - Real Estate | Est. Sale Price | Est. Liens |
|---|---|---|
| Elliot Street **(B)** | 500,000 | 325,000 |
| 4 Confers Way | 1,300,000 | 780,000 |
| Office Space Security Deposit | | |

| Property - Furnishings | Est. Purchase Price |
|---|---|
| Office Furniture | 250,000 |
| Home Furnishings | 50,000 |
| Computer Equipment ( **C**) | 50,000 |

| | Appraisal Value | Liquidation % |
|---|---|---|
| **Jewelry** | 87,550 | 90% |

**TOTAL ESTIMATED VALUE OF THE RECEIVERSHIP ESTATE AS OF JANUARY 25,2005**

Notes:
A)  Accounts balances frozen ($4,613.36 and $4,614.10) but not transferred to the Receivership Estate.
B)  Does not include any funds refinanced by the defendants post-receivership.
C)  Represents actual proceed amounts from sale to Sensitech.

| Type of Account | Amount | Comments |
|---|---|---|
| Colon - UTMA | $41,713.41 | |
| Unimark Payroll Account | 200.00 | |
| Unimark ACH Account | 2,513.00 | |
| BBFS - Business Checking | 35,241.16 | |
| BBFS - Business Checking | 813.58 | |
| BBFS - Business Checking | 78,529.11 | |
| BBFS - Business Savings | 100.87 | |
| BBFS - Business Checking | 4,294.56 | |
| BBFS - Business Checking | 1,100.51 | |
| DMS - Business Checking | 26,522.88 | |
| DMS - Business Checking | 8,613.59 | |
| DMS - Business Checking | 600.00 | |
| DMS - Business Checking | 1,766.37 | |
| DMS - Business Checking | 1,849.05 | |
| Colon - Money Market | 93,922.24 | |
| IRA (A) | | |
| IRA (A) | | |
| Unimark - Business Checking | 107,351.51 | |
| Colon - Checking | 5,596.02 | |
| **Total Century Bank** | **$410,727.86** | |
| | | |
| Colon, Fabrizio - Now | $5,673.38 | |
| Colon, Fabrizio - Money Market | 393.31 | |
| Checking | 2,018.22 | |
| Colon, Fabrizio - Money Market | 25,262.40 | |
| Colon, Fabrizio - Checking | 115.98 | |
| John Colon - Checking | 120.05 | |
| John Colon - Checking | 10,000.90 | |
| John Colon - Checking | 2,000.04 | |
| Julie Fabrizio - Checking | 10.00 | |
| **Total St, Jean's Credit** | **$45,594.28** | |
| | | |
| **Total Cash Accounts** | **$456,322.14** | |

|  |  |
|---|---|
| $ | 12,000 |
| $ | 15,000 |

| Estimated Value | |
|---|---|
| $ | 50,000 |
| | 80,000 |

|  | | |
|---|---|---|
| 100,000 | | |
| **Total Est. Auto Value** | $ | **230,000** |
| | | |
| **Est. Proceeds to Estate** | | |
| 175,000 | | |
| 520,000 | | |
| 42,000 | | |
| **Total Est. Property Value** | $ | **737,000** |
| | | |
| **Actual Proceeds** | | |
| 35,000 | | |
| 30,000 | | |
| 30,000 | | |
| **Total Property Proceeds** | $ | **95,000** |
| | | |
| **Est. Liquidation Value** | | |
| 78,795 | | |
| **Total Est. Jewelry Value** | $ | **78,795** |

**$1,624,117**

# EXHIBIT E

**BETTER BUDGET FINANCIAL SERVICES, INC.**
**Employee Time Detail**
**November 1st - December 31st, 2004**

| Date | Initial | Explanation of work performed | Time | Rate | Amount |
|------|---------|-------------------------------|------|------|--------|
| 11/03/04 | HS | Prepared for going to BBFS - discussions with staff, Corefacts and needs | 5.00 | $200.00 | $1,000.00 |
| 11/04/04 | HS | Security issues at facility | 0.50 | $200.00 | $100.00 |
| 11/04/04 | HS | Worked on securing facility - locksmiths, office allocation, inventory | 3.50 | $200.00 | $700.00 |
| 11/04/04 | HS | Met with the employees of BBFS - initial meeting | 3.60 | $200.00 | $720.00 |
| 11/04/04 | HS | Met with Corefacts personnel re: computer needs | 0.50 | $200.00 | $100.00 |
| 11/04/04 | HS | Prepared for serving documents on BBFS corporate | 2.50 | $200.00 | $500.00 |
| 11/04/04 | HS | Met with Counsel to the Defendants re: TRO | 2.60 | $200.00 | $520.00 |
| 11/04/04 | HS | Reviewed TRO and made notes re: needs for security officers | 0.90 | $200.00 | $180.00 |
| 11/05/04 | HS | Met with Unimark Personnel to open facility at 6:20am to meet the media requirements | 3.80 | $200.00 | $760.00 |
| 11/05/04 | HS | Dealt with numerous conferences and calls with Counsel for the Defendants | 3.60 | $200.00 | $720.00 |
| 11/05/04 | HS | Reviewed files and met with Defendants in BBFS offices | 4.80 | $200.00 | $960.00 |
| 11/06/04 | HS | Worked on open items - including notes for hearing | 4.20 | $200.00 | $840.00 |
| 11/08/04 | HS | Worked on Unimark issues for segregation of space | 2.80 | $200.00 | $560.00 |
| 11/08/04 | HS | Reviewed correspondences re: employees | 0.40 | $200.00 | $80.00 |
| 11/08/04 | HS | Made status calls with the Chambers | 0.40 | $200.00 | $80.00 |
| 11/08/04 | HS | Had Conference calls between Defendants Counsel and Receiver re: status of hearing postponement and calls to chambers | 0.90 | $200.00 | $180.00 |
| 11/08/04 | HS | Reviewed files at the office of BBFS | 2.80 | $200.00 | $560.00 |
| 11/08/04 | HS | Met with the Defendants Counsel re: data and file needs for their clients | 3.90 | $200.00 | $780.00 |
| 11/09/04 | HS | Had multiple discussions with Defendants Counsel re: status of hearing and documents needed | 2.60 | $200.00 | $520.00 |
| 11/09/04 | HS | Continued to review files and investigate information from BBFS | 6.80 | $200.00 | $1,360.00 |
| 11/09/04 | HS | Worked on BBFS data base | 1.30 | $200.00 | $260.00 |
| 11/10/04 | HS | Prepared for status hearing | 2.90 | $200.00 | $580.00 |
| 11/10/04 | HS | Met and discussed settlement issues for Unimark | 1.50 | $200.00 | $300.00 |
| 11/10/04 | HS | Worked on Unimark issues for segregation of space | 2.60 | $200.00 | $520.00 |
| 11/10/04 | HS | Reviewed documents from BBFS | 3.10 | $200.00 | $620.00 |
| 11/11/04 | HS | Worked on employee issues | 0.60 | $200.00 | $120.00 |
| 11/11/04 | HS | Addressed open issues for Unimark | 2.10 | $200.00 | $420.00 |
| 11/11/04 | HS | Worked on open issues for real estate | 0.40 | $200.00 | $80.00 |
| 11/12/04 | HS | Worked on open issues for revised order with Counsel to defendants | 3.60 | $200.00 | $720.00 |
| 11/15/04 | HS | Followed up on Cummings Real Estate issues | 0.20 | $200.00 | $40.00 |
| 11/15/04 | HS | Worked on employee letter | 0.30 | $200.00 | $60.00 |
| 11/15/04 | HS | Worked on open administrative items - inventory, backups, employees and post master | 2.70 | $200.00 | $540.00 |
| 11/15/04 | HS | Worked on TRO issues, changes and discussions with Counsel | 2.60 | $200.00 | $520.00 |
| 11/15/04 | HS | Discussions with C. Paynter re: file needs | 0.10 | $200.00 | $20.00 |
| 11/15/04 | HS | Addressed banking issues and asset freeze | 1.80 | $200.00 | $360.00 |
| 11/15/04 | HS | Reviewed correspondence re: phone server | 0.10 | $200.00 | $20.00 |

| Date | | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 11/16/04 | HS | Had multiple correspondence and calls with T. Atkinson re: Unimark issues and computer needs | 1.20 | $200.00 | $240.00 |
| 11/16/04 | HS | Worked on computer issues, back-ups and discussions on inventory lists | 3.60 | $200.00 | $720.00 |
| 11/17/04 | HS | Multiple discussions and return phone calls to BBFS customers and employees | 2.20 | $200.00 | $440.00 |
| 11/18/04 | HS | Worked on Unimark issues - office and computer | 3.90 | $200.00 | $780.00 |
| 11/18/04 | HS | Prepared for and participated in a conference call between FTC and Counsel for the Defendants | 0.80 | $200.00 | $160.00 |
| 11/19/04 | HS | Worked on Unimark issues - data production, numerous calls to vendor and office facility | 3.40 | $200.00 | $680.00 |
| 11/22/04 | HS | Worked on employee issues | 1.30 | $200.00 | $260.00 |
| 11/22/04 | HS | Worked on consumer issue follow ups | 1.90 | $200.00 | $380.00 |
| 11/22/04 | HS | Discussions with Counsel re: space issues | 0.60 | $200.00 | $120.00 |
| 11/22/04 | HS | Discussions with real estate representatives re: lease issues | 0.20 | $200.00 | $40.00 |
| 11/23/04 | HS | Had discussions with real estate representatives re: lease issues - discussions with J. Colon re: open items - truck return | 0.30 | $200.00 | $60.00 |
| 11/23/04 | HS | Worked on office issues - relinquish space, removal of equipment | 1.60 | $200.00 | $320.00 |
| 11/23/04 | HS | Worked on administrative issues for BBFS | 1.90 | $200.00 | $380.00 |
| 11/23/04 | HS | Addressed correspondence from T. Atkinson re: Colons | 0.30 | $200.00 | $60.00 |
| 11/23/04 | HS | Followed up on contact with J. Colon | 0.10 | $200.00 | $20.00 |
| 11/23/04 | HS | Worked on AFG issues | 0.60 | $200.00 | $120.00 |
| 11/24/04 | HS | Addressed customer calls | 0.80 | $200.00 | $160.00 |
| 11/24/04 | HS | Addressed lease issues and corresponded with Counsel | 1.40 | $200.00 | $280.00 |
| 11/24/04 | HS | Worked on banking issues | 1.10 | $200.00 | $220.00 |
| 11/24/04 | HS | Worked on computer issues and file backups, including correspondence with Corefacts, FTC and Defendants | 1.60 | $200.00 | $320.00 |
| 11/26/04 | HS | Addressed correspondence from employees re: health insurance | 0.60 | $200.00 | $120.00 |
| 11/26/04 | HS | Addressed banking issues | 0.80 | $200.00 | $160.00 |
| 12/02/04 | HS | Worked on document needs and bank statements for asset search | 6.20 | $200.00 | $1,240.00 |
| 12/02/04 | HS | Multiple discussions and return phone calls to BBFS customers and employees | 0.70 | $200.00 | $140.00 |
| 12/02/04 | HS | Discussions re: leased trucks and insurance issues | 0.60 | $200.00 | $120.00 |
| 12/03/04 | HS | Worked on Unimark issues | 2.90 | $200.00 | $580.00 |
| 12/04/04 | HS | Worked on open issues for liquidation, including review of appraisals and potential outlets for sale | 4.50 | $200.00 | $900.00 |
| 12/06/04 | HS | Worked on documents received from the offices of BBFS for purposes of asset tracing and document requests | 6.50 | $200.00 | $1,300.00 |
| 12/07/04 | HS | Worked on open issues for move | 4.20 | $200.00 | $840.00 |
| 12/07/04 | HS | Multiple discussions and return phone calls to BBFS customers and employees | 0.40 | $200.00 | $80.00 |
| 12/08/04 | HS | Worked on moving issues and sale of assets | 5.20 | $200.00 | $1,040.00 |
| 12/08/04 | HS | Followed up on cash balances | 0.60 | $200.00 | $120.00 |
| 12/08/04 | HS | Followed up discussions with ACH re: funding | 0.40 | $200.00 | $80.00 |
| 12/09/04 | HS | reviewed financial documents received from Century | 0.80 | $200.00 | $160.00 |
| 12/09/04 | HS | Discussions with S. Walker (Blue Cross Blue Shield) re: employee insurance issues | 0.30 | $200.00 | $60.00 |
| 12/09/04 | HS | Addressed moving issues for facility - including negotiation of leases | 3.40 | $200.00 | $680.00 |
| 12/10/04 | HS | Had discussions with S. Walker re: insurance for employees | 0.10 | $200.00 | $20.00 |
| 12/10/04 | HS | Worked on asset recovery issues | 6.40 | $200.00 | $1,280.00 |
| 12/10/04 | HS | Had discussions with D. Keenan - C.J. McCarthy re: insurance coverage's | 0.30 | $200.00 | $60.00 |
| 12/10/04 | HS | Corresponded with Defendants re: space lease issues | 0.20 | $200.00 | $40.00 |

| Date | Init | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 12/13/04 | HS | Prepared for and attended Status Conference in court | 3.50 | $200.00 | $700.00 |
| 12/13/04 | HS | Worked at the offices of BBFS - reviewed files and extracted information for bank review | 5.90 | $200.00 | $1,180.00 |
| 12/13/04 | HS | Discussed open issues with property brokers | 0.40 | $200.00 | $80.00 |
| 12/14/04 | HS | Met with Bartlett re: rental payments and outstanding loans | 0.20 | $200.00 | $40.00 |
| 12/14/04 | HS | Met with brokers - reviewed options for property sale if necessary | 1.10 | $200.00 | $220.00 |
| 12/14/04 | HS | Met with J. Colon and S. Sarver re: continuing business operations and potential sale of equipment | 0.60 | $200.00 | $120.00 |
| 12/14/04 | HS | Met with employees re: open issues for their wages and healthcare | 0.40 | $200.00 | $80.00 |
| 12/14/04 | HS | Reviewed Better Business documents extracted from BBFS | 2.40 | $200.00 | $480.00 |
| 12/14/04 | HS | Worked in the office of BBFS and Unimark on packing and reviewing files to move them to storage | 4.70 | $200.00 | $940.00 |
| 12/15/04 | HS | Worked on inventory listing | 3.10 | $200.00 | $620.00 |
| 12/15/04 | HS | Prepared correspondence with employees and clients | 1.30 | $200.00 | $260.00 |
| 12/15/04 | HS | Worked on open issues for liquidation | 4.90 | $200.00 | $980.00 |
| 12/15/04 | HS | Had discussions with Defendants re: status of move | 0.40 | $200.00 | $80.00 |
| 12/16/04 | HS | Worked on Cummings lease issues | 1.40 | $200.00 | $280.00 |
| 12/16/04 | HS | Worked on liquidation issues | 4.10 | $200.00 | $820.00 |
| 12/16/04 | HS | Addressed healthcare issues | 0.20 | $200.00 | $40.00 |
| 12/16/04 | HS | Responded to phone calls from employees | 0.30 | $200.00 | $60.00 |
| 12/17/04 | HS | Worked on cash issues and tracking of payments | 4.10 | $200.00 | $820.00 |
| 12/17/04 | HS | Worked on Cummings lease issues re: workstations | 1.80 | $200.00 | $360.00 |
| 12/18/04 | HS | Worked on document needs and bank statements for asset search | 3.40 | $200.00 | $680.00 |
| 12/18/04 | HS | Responded to phone calls from employees | 0.60 | $200.00 | $120.00 |
| 12/19/04 | HS | Worked on document needs and bank statements for asset search | 5.20 | $200.00 | $1,040.00 |
| 12/20/04 | HS | Worked on asset recovery issues | 2.90 | $200.00 | $580.00 |
| 12/21/04 | HS | Worked on the sale of assets, including research of vendors, potential move of work locations and storage facilities | 3.40 | $200.00 | $680.00 |
| 12/22/04 | HS | Followed up on open issues for Unimark: including discussions with Unimark personnel re: moving out of space | 0.70 | $200.00 | $140.00 |
| 12/22/04 | HS | Addressed correspondence and phone calls from BBFS employees | 0.90 | $200.00 | $180.00 |
| 12/23/04 | HS | Worked on asset recovery issues | 4.30 | $200.00 | $860.00 |
| 12/23/04 | HS | Discussions with J. Colon re: Unimark issues | 0.30 | $200.00 | $60.00 |
| 12/23/04 | HS | Corresponded with Counsel re: status of open issues. | 0.20 | $200.00 | $40.00 |
| 12/27/04 | HS | Worked on office move issues : including negotiation for equipment move with Cummings. | 3.80 | $200.00 | $760.00 |
| 12/28/04 | HS | Worked on Unimark issues for returning space with Cummings and moving of records | 4.90 | $200.00 | $980.00 |
| 12/29/04 | HS | Worked on asset recovery issues, including calls to liquidators and office equipment sellers | 3.40 | $200.00 | $680.00 |
| 12/29/04 | HS | Worked on Unimark issues for vacating space | 3.10 | $200.00 | $620.00 |
| 12/30/04 | HS | Followed up on more open issues with Unimark | 2.40 | $200.00 | $480.00 |
| 12/30/04 | HS | Worked on Cummings issues | 0.90 | $200.00 | $180.00 |
| | | | **237.10** | | **$47,420.00** |
| 10/10/04 | KG | Reviewed mail issues and secured delivery | 2.80 | $205.00 | $574.00 |
| 11/03/04 | KR | Bank information in Beverly, MA and contacted them | 4.50 | $110.00 | $495.00 |
| 11/03/04 | MSM | Worked on Asset Recovery Issues I preparation for going to offices of BBFS | 1.00 | $365.00 | $365.00 |
| 11/04/04 | KG | Interviewed BBFS employees | 3.70 | $205.00 | $758.50 |
| 11/04/04 | KG | Met with FTC and computer professionals in preparation of entering BBFS offices | 2.90 | $205.00 | $594.50 |
| 11/04/04 | KG | Reviewed files and prepared listings of needed documents | 4.80 | $205.00 | $984.00 |
| 11/04/04 | KG | Worked on accounting files | 3.40 | $205.00 | $697.00 |
| 11/04/04 | KR | Did internet research on Security Firms around Beverly, MA | 0.75 | $110.00 | $82.50 |

| 11/04/04 | KR | Contacted banks around Beverly, MA | 1.50 | $110.00 | $165.00 |
| 11/04/04 | MSM | Met with other professionals and FTC prior to going into BBFS offices | 3.80 | $365.00 | $1,387.00 |
| 11/04/04 | MSM | Worked on accounting records and met with BBFS staff | 6.90 | $365.00 | $2,518.50 |

| | | | | | |
|---|---|---|---|---|---|
| 11/04/04 | MSM | Worked on office layout and accounting proceeds | 2.10 | $365.00 | $766.50 |
| 11/04/04 | SO | Worked on open issues for the Receiver | 0.50 | $100.00 | $50.00 |
| 11/05/04 | KG | Worked in the BBFS offices re: document needs | 8.50 | $205.00 | $1,742.50 |
| 11/05/04 | KR | Researched on Security Firms around Beverly, MA | 1.75 | $110.00 | $192.50 |
| 11/05/04 | MSM | Worked on Asset Recovery issues with accountants | 6.00 | $365.00 | $2,190.00 |
| 11/08/04 | KG | Worked on document review at the offices of BBFS for office disbursements and receipts | 7.80 | $205.00 | $1,599.00 |
| 11/08/04 | KG | Worked on employee files for research documents | 0.80 | $205.00 | $164.00 |
| 11/08/04 | KG | Worked on accounting records after meeting with BBFS personnel | 3.10 | $205.00 | $635.50 |
| 11/08/04 | MSM | Worked on disbursement issues | 1.00 | $365.00 | $365.00 |
| 11/09/04 | KG | Worked on security issues | 3.25 | $205.00 | $666.25 |
| 11/10/04 | KG | Worked on unmailed documents and segregation of space | 5.90 | $205.00 | $1,209.50 |
| 11/12/04 | MSM | Worked on bank documents | 0.50 | $365.00 | $182.50 |
| 11/15/04 | KG | Reviewed e-mails and regarding accounting | 0.90 | $205.00 | $184.50 |
| 11/15/04 | KG | Worked on open employee issues | 1.40 | $205.00 | $287.00 |
| 11/15/04 | KG | Received phone calls from employees and discussed status | 1.10 | $205.00 | $225.50 |
| 11/15/04 | KG | Reviewed payroll records and discussed money owed to current payroll and due date | 0.90 | $205.00 | $184.50 |
| 11/15/04 | KG | Called K. Macdonald from Mintz Levin and requested property lease documents, car lease etc. | 0.60 | $205.00 | $123.00 |
| 11/15/04 | KG | Called the Cummings Center to discuss rent, unpaid rent, eviction notices and requested copies of lease agreements. Directed to call attorney. | 0.90 | $205.00 | $184.50 |
| 11/16/04 | KG | Followed up on messages left by employees of BBFS. Called and discussed current situation | 3.40 | $205.00 | $697.00 |
| 11/16/04 | KG | Prepared e-mail to S. Reimer requesting current bank information and contact information for S. Moore | 0.40 | $205.00 | $82.00 |
| 11/16/04 | KG | Worked on document request | 1.40 | $205.00 | $287.00 |
| 11/17/04 | KG | Started preparing a company census with contact information, payroll information and when contacted | 3.80 | $205.00 | $779.00 |
| 11/17/04 | KR | Reviewed BBFS bank statements | 1.75 | $110.00 | $192.50 |
| 11/17/04 | KR | Analyzed spreadsheet to evaluate need to widen the scope of checks copied | 2.00 | $110.00 | $220.00 |
| 11/18/04 | KG | Started preparing the claim request letter for employees | 0.90 | $205.00 | $184.50 |
| 11/18/04 | KG | Called back employees of BBFS and discussed current situation, payroll issue | 0.60 | $205.00 | $123.00 |
| 11/18/04 | KG | Called the Cummings Center and attorney to follow up on requested information | 0.70 | $205.00 | $143.50 |
| 11/18/04 | KG | Worked on follow up issues | 0.50 | $205.00 | $102.50 |
| 11/18/04 | KG | Corresponded with Century Bank, discussed with Receiver | 0.30 | $205.00 | $61.50 |
| 11/18/04 | KG | Reviewed work with staff, bank statements and schedules | 0.70 | $205.00 | $143.50 |
| 11/18/04 | KG | Reviewed Employee Census Questionnaires for medical coverage information. Called P. Bartlett | 0.60 | $205.00 | $123.00 |
| 11/18/04 | KR | Worked on Employee Questionnaire spreadsheet and scope spreadsheet | 4.25 | $110.00 | $467.50 |
| 11/19/04 | KG | Completed the claim request letter and discussed with Receiver and e-mailed to Counsel | 0.90 | $205.00 | $184.50 |
| 11/19/04 | KG | Called post office to discuss mail to Unimark | 0.60 | $205.00 | $123.00 |
| 11/19/04 | KG | Reviewed letter for registrar.com. Called E. Phillips to discuss status | 0.90 | $205.00 | $184.50 |
| 11/19/04 | KG | Reviewed copy of lease agreement and e-mailed scan copy and highlights to partner and counsel | 0.70 | $205.00 | $143.50 |
| 11/19/04 | KG | Called employees back to discuss current status, payroll issues | 0.30 | $205.00 | $61.50 |
| 11/19/04 | KG | Prepared a phone listing / e-mail contact list | 0.90 | $205.00 | $184.50 |
| 11/19/04 | KG | Called and discussed lease agreements with J. Simco at Cummings Center, security deposits | 0.60 | $205.00 | $123.00 |
| 11/19/04 | KR | Organized remaining documentation received from FTC and recorded deposit inquiry information on a spreadsheet | 2.00 | $110.00 | $220.00 |

| Date | Initials | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|
| 11/19/04 | KR | Discussed relevance of checks received and recorded the checks in a spreadsheet | 1.50 | $110.00 | $165.00 |
| 11/19/04 | KR | Worked on disbursement analysis | 2.50 | $110.00 | $275.00 |
| 11/23/04 | KG | Called the Cummings Center and discussed with J. Simco and attorney, issues with leases | 0.60 | $205.00 | $123.00 |
| 11/23/04 | KG | Discussed with S. Reimer and sent over contact information | 0.30 | $205.00 | $61.50 |
| 11/23/04 | KG | Conference calls with J. Colon and information on possible sale of choice furniture | 1.10 | $205.00 | $225.50 |
| 11/23/04 | KG | Received calls from employees and discussed payroll issues and claim forms | 0.90 | $205.00 | $184.50 |
| 11/23/04 | KG | Conference calls with J. Colon on current information | 0.50 | $205.00 | $102.50 |
| 11/24/04 | KG | Worked on open items of BBFS | 0.50 | $205.00 | $102.50 |
| 12/01/04 | KG | Worked on employee mailing | 0.70 | $205.00 | $143.50 |
| 12/01/04 | KG | Followed up on outstanding issues including leases, insurance | 1.80 | $205.00 | $369.00 |
| 12/01/04 | KG | Prepared for trip to BBFS offices | 0.80 | $205.00 | $164.00 |
| 12/01/04 | KG | Made changes to the Claim Request Form and prepared for sending. Reviewed letter. | 1.20 | $205.00 | $246.00 |
| 12/01/04 | MP | Researched accounting issues | 1.75 | $250.00 | $437.50 |
| 12/02/04 | KG | Started packaging files, documents and other information from employees' desks | 5.50 | $205.00 | $1,127.50 |
| 12/02/04 | KG | Went to Defendant's storage and took pictures and car information | 0.90 | $205.00 | $184.50 |
| 12/03/04 | KG | Started packaging files, documents and other information from employees' desks | 5.50 | $205.00 | $1,127.50 |
| 12/03/04 | MP | Worked on accounting issues | 1.00 | $250.00 | $250.00 |
| 12/06/04 | KG | Sent e-mail to Counsel regarding Receiver Notice | 0.40 | $205.00 | $82.00 |
| 12/06/04 | KG | Discussed preparation of Receiver's Notice with staff and reviewed for changes. | 1.10 | $205.00 | $225.50 |
| 12/06/04 | KG | Worked on mail issues with post office. Discussed internet filing and filing via fax. | 0.90 | $205.00 | $184.50 |
| 12/07/04 | KG | Worked on open issues and conference call concerning real estate, status of cars etc. | 0.90 | $205.00 | $184.50 |
| 12/07/04 | KG | Prepared e-mail to FTC regarding questions presented by C. Paynter | 0.40 | $205.00 | $82.00 |
| 12/07/04 | KG | Discussed changes to the Receiver Notice with Receiver and made changes. | 0.60 | $205.00 | $123.00 |
| 12/07/04 | KG | Called the post office regarding address change order. Prepared the form and faxed to the post office | 0.90 | $205.00 | $184.50 |
| 12/07/04 | KG | Followed up with S. Grimes and J. Byrd for updating the website. Discussed access and contact people to gain access | 0.80 | $205.00 | $164.00 |
| 12/08/04 | KG | Had a conference call with Blue Cross Blue Shield and discussed with Director | 0.50 | $205.00 | $102.50 |
| 12/08/04 | KG | Reviewed bank statements and set up spread sheets regarding bank statements and information to include. | 0.90 | $205.00 | $184.50 |
| 12/08/04 | KG | Worked on updating census and missing information based on claim request forms | 1.10 | $205.00 | $225.50 |
| 12/08/04 | KG | Conference call with FTC and discussion regarding open issues | 0.80 | $205.00 | $164.00 |
| 12/08/04 | KG | Co-ordinate with the post office to deliver mail overnight. Faxed another copy of change of address form and discussed of billing | 1.40 | $205.00 | $287.00 |
| 12/08/04 | KR | Entered claims - reorganized spreadsheets and called employees to get addresses or inquire about claim | 5.00 | $110.00 | $550.00 |
| 12/08/04 | KR | Analyzed bank statements given to us by Century Bank for BBFS | 3.50 | $110.00 | $385.00 |
| 12/08/04 | MP | Had a client conference on accounting and auditing issues | 1.25 | $250.00 | $312.50 |
| 12/09/04 | KG | Scanned through the mail and reviewed unemployment letters and sorting process | 1.75 | $205.00 | $358.75 |
| 12/09/04 | KG | Sent e-mail to J. Byrd to co-ordinate the Receivers Notice on the website | 0.50 | $205.00 | $102.50 |
| 12/09/04 | KG | Assisted staff with spreadsheet regarding bank statements | 0.60 | $205.00 | $123.00 |

| | | | | | |
|---|---|---|---|---|---|
| 12/09/04 | KG | Worked on open issues and participated in conference calls | 0.90 | $205.00 | $184.50 |
| 12/09/04 | KR | Analyzed checks and statements from Century Bank | 6.50 | $110.00 | $715.00 |
| 12/09/04 | LLL | Sorted mail into BBFS, DMS and Miscellaneous | 1.25 | $205.00 | $256.25 |
| 12/09/04 | MP | Had correspondence with BBFS personnel | 1.00 | $250.00 | $250.00 |
| 12/10/04 | KG | Worked on BBFS correspondence | 0.60 | $205.00 | $123.00 |
| 12/10/04 | KG | Had discussions with Director regarding bank statements, real estate and other issues | 0.90 | $205.00 | $184.50 |
| 12/10/04 | KR | Gathered all of BBFS bank statements and made an inventory of what statements we had received from Century or other sources | 2.00 | $110.00 | $220.00 |
| 12/10/04 | KR | Researched brokerage firms for the New England/Northeast area | 2.00 | $110.00 | $220.00 |
| 12/10/04 | KR | Called the brokerage firms for potential accounts | 2.00 | $110.00 | $220.00 |
| 12/10/04 | LLL | Sorted BBFS mail | 5.75 | $205.00 | $1,178.75 |
| 12/13/04 | KG | Followed up with issues, e-mails, e-mailed bank information spreadsheet, co-ordinate the pick up of machines at the office. e-mailed the Tax ID | 2.10 | $205.00 | $430.50 |
| 12/13/04 | KR | Worked on packing of BBFS documents | 0.50 | $110.00 | $55.00 |
| 12/13/04 | KR | Re-assessed mapping and labeling of 1st floor cubicles | 0.30 | $110.00 | $33.00 |
| 12/13/04 | KR | Verified labeling on boxes containing the contents from the 1st floor cubicles | 0.70 | $110.00 | $77.00 |
| 12/13/04 | KR | Boxed contents of cubicle #5 | 0.30 | $110.00 | $33.00 |
| 12/13/04 | KR | Boxed Principal Julie's 1st floor office | 2.00 | $110.00 | $220.00 |
| 12/13/04 | KR | Boxed Principal John's 1st floor office - desk and credenza | 0.50 | $110.00 | $55.00 |
| 12/13/04 | KR | Boxed the "Open Clients" files in file room on 1st floor | 2.00 | $110.00 | $220.00 |
| 12/13/04 | KR | Removed and sorted supplies from the 1st floor cubicles | 1.50 | $110.00 | $165.00 |
| 12/13/04 | LLL | Reviewed "closed clients" small file cabinets in the 1st floor file room | 5.80 | $205.00 | $1,189.00 |
| 12/13/04 | LLL | Reviewed documents at the offices of BBFS | 0.70 | $205.00 | $143.50 |
| 12/13/04 | LLL | Reviewed & boxed contents of file cabinets, drawers, desk & credenza in Principal Julie Colon's 1st floor office | 3.10 | $205.00 | $635.50 |
| 12/14/04 | KR | Delivered boxes to Parcel Plus for FedEx ground shipment | 0.50 | $110.00 | $55.00 |
| 12/14/04 | KR | Boxed  Bartlett's 2nd floor office file cabinet | 0.20 | $110.00 | $22.00 |
| 12/14/04 | KR | Met with Partner to discuss final details regarding the facility | 0.30 | $110.00 | $33.00 |
| 12/14/04 | KR | Prepared BBFS documents for transport | 0.50 | $110.00 | $55.00 |
| 12/14/04 | KR | Extracted documents from employee desks to pack with office files | 0.20 | $110.00 | $22.00 |
| 12/14/04 | KR | Boxed  S. Grime's 2nd floor office desk | 0.50 | $110.00 | $55.00 |
| 12/14/04 | KR | Boxed Colon's offices 2nd floor desk | 0.50 | $110.00 | $55.00 |
| 12/14/04 | KR | Boxed Julie's office 2nd floor desk | 1.50 | $110.00 | $165.00 |
| 12/14/04 | KR | Indexed and labeled boxes on the 1st floor | 0.70 | $110.00 | $77.00 |
| 12/14/04 | KR | Worked on the 2nd floor offices | 0.50 | $110.00 | $55.00 |
| 12/14/04 | LLL | Worked on final details regarding the facility | 0.20 | $205.00 | $41.00 |
| 12/14/04 | LLL | Reviewed documents at the offices of BBFS | 0.60 | $205.00 | $123.00 |
| 12/14/04 | LLL | Prepared delivery of documents to Receiver | 0.50 | $205.00 | $102.50 |
| 12/14/04 | LLL | Sealed and labeled boxes for transport | 0.40 | $205.00 | $82.00 |
| 12/14/04 | LLL | Extracted documents from employee desks to pack with office files | 0.20 | $205.00 | $41.00 |
| 12/14/04 | LLL | Worked in Bartlett's office and boxed additional contents | 0.20 | $205.00 | $41.00 |
| 12/14/04 | LLL | Indexed the boxes in Colon's 1st floor office | 0.20 | $205.00 | $41.00 |

| 12/14/04 | LLL | Reviewed and boxed contents of file cabinets in Grimes' 2nd floor office | 0.40 | $205.00 | $82.00 |
| 12/14/04 | LLL | Indexed and labeled boxes on the 1st floor, except Colon's office | 0.70 | $205.00 | $143.50 |
| 12/14/04 | LLL | Reviewed documents at the offices of BBFS | 0.40 | $205.00 | $82.00 |
| 12/14/04 | LLL | Worked in  Bartlett's 2nd floor office and boxed the contents from the desk | 0.20 | $205.00 | $41.00 |
| 12/14/04 | LLL | Worked in  Bartlett's 2nd floor office and boxed the contents from the desk | 0.50 | $205.00 | $102.50 |
| 12/16/04 | KR | Worked on documents received from the offices of BBFS | 0.30 | $110.00 | $33.00 |
| 12/16/04 | KR | Analyzed Century Bank statements from BBFS Operating Account for 11/3 to 04/04 | 4.00 | $110.00 | $440.00 |
| 12/16/04 | KR | Completed research on security firms | 1.00 | $110.00 | $110.00 |
| 12/16/04 | LLL | Appraisal spreadsheet - accumulated costs and expenses for jewelry and automobiles (including '02 Porsche Turbo 996, '99 Lexus LX470, '99 Porsche 911 SC 430) | 2.60 | $205.00 | $533.00 |
| 12/16/04 | LLL | Worked on documents at offices of BBFS | 0.30 | $205.00 | $61.50 |
| 12/17/04 | KG | Worked on current issues for the close of BBFS offices | 0.75 | $205.00 | $153.75 |
| 12/17/04 | KR | Wrote letter to security firms to search for BBFS accounts | 0.70 | $110.00 | $77.00 |
| 12/17/04 | KR | Worked on security firms as per their requests to allow search for BBFS accounts | 0.50 | $110.00 | $55.00 |
| 12/17/04 | KR | Analyzed Century Bank Statements for BBFS Operating Accounts 10/04 and 03/02 | 1.00 | $110.00 | $110.00 |
| 12/17/04 | KR | Analyzed Century Bank statements from BBFS Operating Accounts for 05/04 to 09/04 | 3.50 | $110.00 | $385.00 |
| 12/17/04 | LLL | Contacted S. Renaud at Mintz Levin via e-mail | 0.10 | $205.00 | $20.50 |
| 12/17/04 | LLL | Prepared for visit to BBFS offices | 0.40 | $205.00 | $82.00 |
| 12/17/04 | LLL | Relocated the sorted mail received from UPS and filed in the file room | 0.20 | $205.00 | $41.00 |
| 12/17/04 | LLL | Reviewed new developments and current status with Receiver | 0.30 | $205.00 | $61.50 |
| 12/17/04 | LLL | Searched the web for auto models and files for additional misfiled information per autos | 0.40 | $205.00 | $82.00 |
| 12/17/04 | LLL | Worked on issues to be addressed while at the facilities of BBFS | 0.30 | $205.00 | $61.50 |
| 12/20/04 | LLL | Sorted through Box 61 to retrieve additional information re: automobiles and Providian Credit card statements (from Julie's 1st floor office) | 1.30 | $205.00 | $266.50 |
| 12/20/04 | LLL | Observed S. Grimes' attempts to backup Jupiter & Saturn servers to tape | 0.90 | $205.00 | $184.50 |
| 12/20/04 | LLL | Conferred with S. Grimes and J. Byrd re: transfer and backup of files from Jupiter & Saturn servers | 0.20 | $205.00 | $41.00 |
| 12/20/04 | LLL | Sorted and consolidated information in Box 57 to retrieve additional information re: automobiles and Providian credit card statements (from Julie's 2nd floor | 0.80 | $205.00 | $164.00 |
| 12/20/04 | LLL | Sorted through boxes 51, 52 & 53 to retrieve additional information | 0.90 | $205.00 | $184.50 |
| 12/20/04 | LLL | Prepared inventory of items in the BBFS offices, including coffee and vending machine supplies in the 2nd floor staff room | 0.60 | $205.00 | $123.00 |
| 12/20/04 | LLL | Assisted and observed as T. Atkinson reviewed boxes 51, 52, 53, 57, 58 & 60 | 3.80 | $205.00 | $779.00 |
| 12/22/04 | LLL | Configured BBFS e-mail account | 0.20 | $205.00 | $41.00 |
| 12/22/04 | LLL | Sorted additional information retrieved on Monday | 1.10 | $205.00 | $225.50 |
| 12/22/04 | LLL | Updated index and other spreadsheets | 0.60 | $205.00 | $123.00 |
| 12/22/04 | LLL | Replied to e-mails from BBFS account | 2.40 | $205.00 | $492.00 |
| 12/23/04 | KR | Analyzed Century Bank Statements from BBFS Operating accounts for 04/04 through 12/02 | 4.30 | $110.00 | $473.00 |
| 12/23/04 | LLL | Responded to e-mails from BBFS account | 1.20 | $205.00 | $246.00 |
| 12/27/04 | KG | Worked on open items and discussed with Receiver | 1.50 | $205.00 | $307.50 |
| 12/27/04 | KR | Worked on operating account analysis for 12/02 Century Bank Statements | 0.80 | $110.00 | $88.00 |
| 12/27/04 | LLL | Worked on check disbursement analysis with staff | 0.10 | $205.00 | $20.50 |
| 12/27/04 | LLL | Researched information on payroll company in files and on the internet | 0.30 | $205.00 | $61.50 |

| | | | | | |
|---|---|---|---|---|---|
| 12/27/04 | LLL | Replied to e-mails from BBFS account | 1.80 | $205.00 | $369.00 |
| 12/27/04 | LLL | Verified location of BBFS mail forwarded by UPS | 0.30 | $205.00 | $61.50 |
| 12/27/04 | LLL | Discussed status of e-mails with Receiver | 0.20 | $205.00 | $41.00 |
| 12/27/04 | LLL | Had a telephone conversation with Real Estate representative re: storage, moving and office furniture | 0.50 | $205.00 | $102.50 |
| 12/27/04 | LLL | Reviewed "Company Census.xls" and catalogue employee e-mail addresses | 0.40 | $205.00 | $82.00 |
| 12/27/04 | LLL | Worked on current moving issues and storage issues | 0.90 | $205.00 | $184.50 |
| 12/27/04 | LLL | Conference call with J. Byrd re: computers at 800 Cummings Center | 0.30 | $205.00 | $61.50 |
| 12/27/04 | LLL | Sketched offices and created spreadsheets re: office furniture and equipment | 2.10 | $205.00 | $430.50 |
| 12/27/04 | LLL | Worked on healthcare and wages e-mails to employees | 0.15 | $205.00 | $30.75 |
| 12/28/04 | KG | Co-ordinate the locksmith. Called and set up time. Also, called up vending machine company and set up time and date | 0.90 | $205.00 | $184.50 |
| 12/28/04 | LLL | Prepared letter, merged and printed letter to BBFS employees re: continuing Healthcare | 1.50 | $205.00 | $307.50 |
| 12/28/04 | LLL | Searched boxes and previous mail for payroll reports | 1.00 | $205.00 | $205.00 |
| 12/28/04 | LLL | Contacted Scott Grimes re: payroll, followed up on reports and researched open issues | 0.60 | $205.00 | $123.00 |
| 12/28/04 | LLL | Discussed with UPS why BBFS mail is not being received and correct problem | 0.90 | $205.00 | $184.50 |
| 12/28/04 | LLL | Located, copied, scanned and forwarded (via fax & e-mail) receipts to Carole Paynter | 0.40 | $205.00 | $82.00 |
| 12/29/04 | KG | Discussed payroll issues with Receiver. reviewed payroll reports | 0.80 | $205.00 | $164.00 |
| 12/29/04 | LLL | Researched Auto per insurance summary | 0.60 | $205.00 | $123.00 |
| 12/29/04 | LLL | Located payroll figures and review current status with Receiver | 0.80 | $205.00 | $164.00 |
| 12/29/04 | LLL | Contacted S. Renaud re: personal article retrieval | 0.40 | $205.00 | $82.00 |
| 12/29/04 | LLL | Contacted movers and storage facilities for price estimates | 1.90 | $205.00 | $389.50 |
| 12/29/04 | LLL | Reviewed final payroll for 2004 - W-2's with Holly at Payrolls Plus | 1.30 | $205.00 | $266.50 |
| 12/29/04 | LLL | Researched Iron Mountain and other document retrieval companies | 0.70 | $205.00 | $143.50 |
| 12/30/04 | LLL | Verified payroll figures and discussed options with Payroll Plus | 0.90 | $205.00 | $184.50 |
| 12/30/04 | LLL | Discussed change in value of computer inventory from 11/29 to 12/27/04 with John Byrd | 0.20 | $205.00 | $41.00 |
| 12/30/04 | LLL | Updated the furniture and equipment spreadsheet | 0.50 | $205.00 | $102.50 |
| 12/01/04 | LLL | Compiled questions per e-mails received at BBFS account | 0.70 | $205.00 | $143.50 |
| | | | **272.00** | | **$52,424.50** |

| | | | | |
|---|---|---|---|---|
| **Total Receiver and WSL** | | **509.10** | | **$99,844.50** |

**BETTER BUDGET FINANCIAL SERVICES, INC.**
**Employee Time Detail**
**November 1st - December 31st, 2004**

### Out-of-Pocket Expenses

| CATEGORY | AMOUNT |
|---|---|
| Lodging | $1,277.69 |
| Meals | 492.72 |
| Misc. Expenses | 2,768.61 |
| Postage | 175.67 |
| Tolls | 60.10 |
| Travel | 2,952.19 |
| Total : | $7,726.98 |

# EXHIBIT F

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and POPEO, P.C.**
666 Third Avenue
New York, New York  10017

HERNAN SERRANO                           January 10, 2005
WEINICK, SANDERS, LEVENTHAL & CO.         24997-002
1375 BROADWAY                            Invoice # 8324423
NEW YORK, NY 10018-7010

---

FOR PROFESSIONAL SERVICES RENDERED THROUGH DECEMBER 31, 2004

RE:  BETTER BUDGET FINANCIAL SERVICES, INC.

| Date | Description | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/03/04 | Telephone call with Carole Paynter regarding appointment of Hernan Serrano as receiver of Better Budget and regarding logistics of commencing receivership; telephone calls with Seth Goldman and Stuart Riemer regarding same; reviewed Westlaw asset search regarding defendants' assets; telephone call with Evan Phillips of CoreFacts. | P B ZLOTNICK | 3.50 | 1785.00 |
| 11/03/04 | Office conference with P. Zlotnick regarding TRO; review pertinent papers and asset documents; meeting with S. Riemer regarding service on banks; review and revise order; telephone call with H. Serrano regarding BBFS. | S R GOLDMAN | 3.10 | 1286.50 |
| 11/03/04 | Write letters to all the financial institutions involved in the receivership action.  Conf w/ S. Goldman to discuss such.  Determine all local banks in the area of defendants. | S J RIEMER | 6.50 | 1722.50 |

HERNAN SERRANO
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

January 10, 2005     PAGE     2

| | | | | |
|---|---|---|---|---|
| 11/04/04 | Reviewed TRO and supporting papers; met with Hernan Serrano, Seth Goldman, Kevin Grimes, Marvin Miller, CoreFacts representatives, FTC representatives and Beverly, MA detectives regarding preparations for raiding offices of receivership defendants, freezing assets and complying with TRO.  Seized assets of receivership defendants, interviewed John and Julie Colon; met with counsel for defendants and the FTC; reviewed files and records in the offices of the receivership defendants; communicated with counsel for Century Bank regarding freezing of assets; took steps to secure premises; conferred with receiver and receiver's representatives regarding all of the above. | P B ZLOTNICK | 12.00 | 6120.00 |
| 11/04/04 | Reviewed TRO papers; office conference with P. Zlotnick; H. Serrano, M. Miller regarding TRO and asset freeze; meeting with same and FTC representatives regarding asset freeze and raid; execute TRO order on Julie Colon; interviewed key employees of BBFS; telephone calls with Stu Riemer regarding bank account information; reviewed asset documents; company documents; gather books and records and confer with FTC, receiver and receiver's counsel concerning all of the above. | S R GOLDMAN | 12.30 | 5104.50 |

HERNAN SERRANO                                    January 10, 2005    PAGE    3
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

11/04/04  Tele conf w/ P. Zlotnick and     S J RIEMER          10.20      2703.00
          S. Goldman re: service of
          TRO's.  Correspond with all
          financial institutions upon
          which service of TRO is
          made, ensure for proper
          documents of any/all of
          defendants' bank accounts;
          ensure all accounts of any
          defendant are frozen by
          every financial institution,
          correspond with various bank
          officials.

11/05/04  Conferred with the receiver     P B ZLOTNICK         8.00      4080.00
          and receiver's
          representatives regarding
          securing the receivership
          assets and freezing the
          assets and regarding issues
          regarding Unimark Solutions,
          Inc., an affiliated entity
          related to BBFS; conferred
          with defendants counsel
          regarding same; interviewed
          John and Julie Colon
          regarding same; reviewed
          business records located at
          the offices of the
          receivership defendants;
          conferred with Suzanne
          Renaud and Scott Sarver
          regarding telemarketing
          staffing for Unimark for
          November 6 and November 7.

11/05/04  Meetings with various key       S R GOLDMAN          8.20      3403.00
          employees regarding Better
          Budget including John and
          Julie Colon; meeting with
          lawyers for defendants;
          review Unimark documents;
          review pertinent BBFS
          documents; meeting with FTC
          and Receiver regarding same;
          meeting with various
          representatives of same;
          phone calls with S. Reimer
          regarding banks; review
          documents regarding same;
          exchange e-mail regarding
          same.

HERNAN SERRANO
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

January 10, 2005     PAGE     4

| 11/05/04 | Wrote letter to court requesting extension of time to file receiver's report; phone calls to court; travel to defendant's place of business; reviewed protocol for defendant's continuation of operations; managed documents for copying; reviewed pleadings. | S RENAUD | 5.80 | 1653.00 |
|---|---|---|---|---|
| 11/05/04 | Tele conf w/ P. Zlotnick and S. Goldman re: service of TRO's.  Correspond with all financial institutions upon which service of TRO is made, ensure for proper documents of any/all of defendants' bank accounts; ensure all accounts of any defendant are frozen by every financial institution, correspond with various bank officials.  Teleconference with Robert Marder, counsel to Century Bank, concerning production of documents and all active accounts at bank. | S J RIEMER | 6.40 | 1696.00 |
| 11/06/04 | Monitored Unimark telemarketing; reviewed documents; mailed documents to FTC. | S RENAUD | 7.00 | 1995.00 |
| 11/06/04 | Correspond with Robert Marder, counsel to Century Bank, regarding compliance with TRO and all active accounts of defendants at bank. Tele conf w/ P. Zlotnick detailing such. | S J RIEMER | 2.30 | 609.50 |
| 11/07/04 | Exchanged e-mails with Christian Pederson regarding defendants' request for documents; attention to file regarding same; telephone calls with Suzanne Renaud regarding status of Unimark telemarketing; reviewed TRO and bank documents. | P B ZLOTNICK | 1.00 | 510.00 |

```
HERNAN SERRANO                          January 10, 2005    PAGE    5
FILE NUMBER: 24997-002
INVOICE NO.: 8324423
```

| Date | Description | Timekeeper | Hours | Amount |
|------|-------------|------------|-------|--------|
| 11/07/04 | Monitored Unimark telemarketing; reviewed documents. | S RENAUD | 10.00 | 2850.00 |
| 11/08/04 | Conferred with Hernan Serrano and Kevin Graves regarding meeting with defendants' counsel regarding review documents and regarding Unimark; conferred with Christian Pederson, Ted Atkinson, Allison Klein and Hernan Serrano regarding same; telephone call with Carole Paynter regarding same; office conference with Suzanne Renaud regarding draft of Receiver's Report; reviewed and revised same; telephone call with CoreFacts representatives regarding sending Evan Phillips back to site to assist in review of Credit Soft database. | P B ZLOTNICK | 9.00 | 4590.00 |
| 11/08/04 | Drafted and/or edited pro hac vice motions, notice of appearance, and filed same along with first report of receiver. | B LEONE-QUICK | 2.80 | 798.00 |
| 11/08/04 | Reviewed documents; drafted Temporary Receiver's Report; assisted in filing report; compiled documents requested by defendant. | S RENAUD | 10.00 | 2850.00 |
| 11/08/04 | Tele conf. w/ P. Zlotnick; Tele conf. w/ H. Serrano; contact Providian Credit Cards and American Express re: service of TRO. Facilitate filing of Motions for Admission w/ Bret Leone-Quick. | S J RIEMER | .40 | 106.00 |

HERNAN SERRANO
FILE NUMBER: 24997-002                    January 10, 2005    PAGE    6
INVOICE NO.: 8324423

| Date | Description | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/08/04 | Assist S. Renaud and B. Leone-Quick with Electronic Filing procedures and guidelines; calls to Clerk at Federal District Court of Massachusetts; begin draft of memo cover sheet; prepare box of documents to be Fed Exed to Federal Trade Commission | K T MACDONALD | 2.70 | 405.00 |
| 11/09/04 | Conferred with Hernan Serrano and Evan Phillips regarding the Credit Soft database; telephone call to Carole Paynter regarding same; conferred with Hernan Serrano, Evan Phillips, Tammy Klein, Scott Grimes and Kristen Gecey regarding same; conferred with Ted Atkinson, Christian Pederson and Hernan Serrano regarding receivership issues; conferred with Hernan Serrano, Seth Goldman, Suzanne Renaud, Kevin Graves regarding same; reviewed business records of BBFS and Unimark; attention to file regarding all of the above. | P B ZLOTNICK | 8.00 | 4080.00 |
| 11/09/04 | Meeting with P. Zlotnick and H. Serrano regarding outstanding BBFS issues; meeting with CoreFacts regarding computer issues; meetings with T. Kline and T. Atkinson regarding variety of receivership issues; review report; review pertinent financial documents; telephone call with S. Riemer regarding bank issues; review bank documents; meeting with P. Zlotnick, H. Serrano and S. Renaud regarding hearing and various related issues. | S R GOLDMAN | 9.00 | 3735.00 |
| 11/09/04 | Check docket | V R BREED | .30 | 45.00 |

HERNAN SERRANO                           January 10, 2005    PAGE    7
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

| | | | | |
|---|---|---|---|---|
| 11/09/04 | Reviewed documents; monitored computer search; assisted in putting hold on mail. | S RENAUD | 9.20 | 2622.00 |
| 11/09/04 | Tele Conf.  w/ R. Marder, counsel to Century Bank. Write email to counsel concerning production of documents pursuant to TRO. Correspond with other financial institutions holding accounts in the name of defendants and affiliate companies. | S J RIEMER | 4.30 | 1139.50 |
| 11/09/04 | Spend day in Beverly, Massachusetts at offices of Unimark and Better Budget Financial Services assisting S. Renaud and P. Zlotnik in document review and replacement of original seized documents to previous locations in offices; monitor telemarketing representatives in office; help draft a brief summation of DMC v. Sarver case and relevance to present FTC investigation; assist in various copy jobs | K T MACDONALD | 11.00 | 1650.00 |
| 11/10/04 | Prepared for court hearing; reviewed defendants' papers in opposition to TRO; conferred with Hernan Serrano, Seth Goldman, Suzanne Renaud and Kevin Grimes regarding same; conferred with above and with Carole Paynter and defendants' counsel regarding stipulating to a preliminary injunction; appeared in court before Judge Young; telephone calls with Stu Riemer regarding bank issues; attention to file regarding same. | P B ZLOTNICK | 6.50 | 3315.00 |

HERNAN SERRANO
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

January 10, 2005    PAGE    8

| | | | | |
|---|---|---|---|---|
| 11/10/04 | Prepare for hearing before Judge Young; review defendants papers; review pertinent documents regarding same; meetings with H. Serrano and other representatives regarding hearing; telephone call with C. Paynter regarding hearing; attended hearing; settlement discussions. | S R GOLDMAN | 7.50 | 3112.50 |
| 11/10/04 | Copied documents collected at client site, arranged logistics for court appearance; conference call with FTC; appeared at court; participated in discussions with defendant. | S RENAUD | 5.40 | 1539.00 |
| 11/10/04 | Write email to P. Zlotnick, S. Goldman, S. Renaud and H. Serrano. Create Spreadsheet detailing all accounts frozen by various financial institutions. | S J RIEMER | 6.30 | 1669.50 |
| 11/11/04 | Telephone call with Ted Atkinson regarding scheduling November 11 conference call; reviewed draft modified TRO; telephone calls with Hernan Serrano regarding same; office conference's with Seth Goldman and Suzanne Renaud regarding same and Unimark scheduling; exchanged e-mails with above regarding same. | P B ZLOTNICK | 1.20 | 612.00 |
| 11/11/04 | Review documents regarding financials and Unimark; review various corporate information; review proposed stipulation; office conference with P. Zlotnick regarding same; e-mails with counsel regarding same. | S R GOLDMAN | 2.30 | 954.50 |
| 11/11/04 | Conversation with defendant regarding Unimark access to building; coordinated access to Unimark email. | S RENAUD | .90 | 256.50 |

HERNAN SERRANO                               January 10, 2005    PAGE    9
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

| Date | Description | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/12/04 | Office conferences with Seth Goldman and Stuart Riemer regarding Century Bank issues and regarding scheduling issues regarding defendants; telephone call with Bob Marder regarding Century Bank issues; reviewed e-mails from Stuart Riemer regarding same; telephone calls with Hernan Serrano regarding all of the above; telephone calls with BBFS employees regarding payroll issues. | P B ZLOTNICK | 2.20 | 1122.00 |
| 11/12/04 | Office conference with S. Riemer and P. Zlotnick regarding status; telephone call with R. Marder regarding Century Bank production; review same; review and revise letter regarding IBiz; telephone call with S. Renaud regarding same; review e-mails with counsel. | S R GOLDMAN | 3.50 | 1452.50 |
| 11/12/04 | Arranged to transfer keys to Unimark; conversation with Scott Grimes regarding computers at Unimark; conversation with Core Facts regarding computers; conversation with Planet ibiz regarding Unimark and BBFS accounts; wrote letter to Planet ibiz. | S RENAUD | 3.60 | 1026.00 |
| 11/12/04 | Conf w/ P. Zlotnick and S. Goldman re: document production from Century Bank. Tele conf. w/ Robert Marder re: document production. Write email to P. Zlotnick detailing conversation with counsel. Write correspondence to Fleet Bank re: TRO. | S J RIEMER | 6.70 | 1775.50 |
| 11/13/04 | Retrieved mail from post office; transferred key to Unimark; photographed Unimark offices. | S RENAUD | 1.50 | 427.50 |

HERNAN SERRANO
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

January 10, 2005     PAGE   10

| Date | Description | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/15/04 | Telephone calls with Ted Atkinson, Carole Paynter and Hernan Serrano regarding scheduling issues, bank issues, discovery issues, and substantive issues; office conferences with Seth Goldman and Suzanne Renaud regarding same; exchanged e-mails with all of the above regarding same; attention to file regarding same. | P B ZLOTNICK | 3.60 | 1836.00 |
| 11/15/04 | Telephone calls with T. Atkinson regarding Unimark issues; review correspondence; review documents; office conferences with P. Zlotnick regarding same; review e-mails; respond to same; review stipulation; telephone call with S. Riemer regarding various issues; telephone call with R. Marder regarding bank issues; review and draft e-mails regarding same. | S R GOLDMAN | 2.60 | 1079.00 |
| 11/15/04 | Reviewed letter sent to Register.com; follow-up with Unimark. | S RENAUD | .30 | 85.50 |
| 11/15/04 | Tele Conf w/ Monique Bullitt, counsel to Register.com; write letter to counsel requesting lockdown of certain URL's pursuant to TRO.  Tele conf w/ counsel to St. Jean's Credit Bureau; write email concerning research and document production by St. Jean's; conf w/ P. Zlotnick. | S J RIEMER | 5.70 | 1510.50 |

HERNAN SERRANO
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

January 10, 2005    PAGE   11

| 11/16/04 | Telephone call with Ted Atkinson regarding discovery issues and issues regarding Credit Soft database and preliminary injunction stipulation; exchanged e-mails with parties and Receiver's representatives regarding same; reviewed Century Bank statements; office conferences with Seth Goldman and Stu Riemer regarding all of the above. | P B ZLOTNICK | 2.70 | 1377.00 |
|---|---|---|---|---|
| 11/16/04 | Review stipulation; e-mails regarding same; telephone calls with T. Atkinson regarding computers and Unimark issues; telephone call with E. Phillips regarding same; telephone calls with H. Serrano regarding outstanding issues; office conferences with P. Zlotnick regarding same. | S R GOLDMAN | 2.20 | 913.00 |
| 11/16/04 | Conversation with Ted Atkinson; follow-up with Register.com; reviewed FTC documents for lease agreements. | S RENAUD | .70 | 199.50 |
| 11/16/04 | Conf w/ S. Goldman and S. Reneud, re: Register.com. Update log of all defendant's bank accounts, with account totals and summaries; email to Kevin Gregory. | S J RIEMER | 5.60 | 1484.00 |
| 11/16/04 | Document review with S. Renaud of Better Budget Financial Services boxes per request of Kevin Gregory | K T MACDONALD | 1.00 | 150.00 |

HERNAN SERRANO                                    January 10, 2005    PAGE   12
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

| Date | Description | Attorney | Hours | Amount |
|---|---|---|---|---|
| 11/17/04 | Office conference with Seth Goldman regarding modified stipulation issues; Unimark bank account issues and Credit Soft issues; telephone call with Evan Phillips regarding Credit Soft issue; reviewed e-mails from parties regarding all of the above. | P B ZLOTNICK | 1.70 | 867.00 |
| 11/17/04 | Review and revise proposed stipulation; office conference with P. Zlotnick regarding same; telephone call with H. Serrano regarding same; multiple telephone calls with T. Atkinson regarding Unimark issues; telephone call with C. Paynter, H. Serrano and T. Atkinson regarding stipulation; revise same; telephone call with R. Marder regarding bank accounts; draft e-mails regarding BBFS status; office conference with S. Riemer regarding domain issues; review documents; telephone calls with E. Phillips regarding Credit Soft and other issues; draft e-mails regarding same. | S R GOLDMAN | 7.60 | 3154.00 |
| 11/17/04 | Follow-up with Register.com; research of local rules for filing. | S RENAUD | .20 | 57.00 |
| 11/17/04 | Conf w/ S. Renaud; research Mass. Local Rules for Judge Young's Standing Orders with respect to electronic filing, re: Registrar's Certificate from register.com. Discuss filing process. Correspond w/ Kevin Gregory. | S J RIEMER | 4.60 | 1219.00 |

HERNAN SERRANO                                    January 10, 2005    PAGE   13
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

| | | | | |
|---|---|---|---|---|
| 11/18/04 | Office conference with Seth Goldman and Suzanne Renaud regarding issues regarding Unimark; exchanged e-mails with parties regarding same; attention to file regarding same. | P B ZLOTNICK | 1.50 | 765.00 |
| 11/18/04 | Multiple calls with H. Serranno in regards to Order and BBFS issues; Calls with T. Atkinson in regards to Unimark and modified TRO; Calls with Pederson in regards to same; multiple calls with Phillips in regards in computer issues; calls with S. Renaud in regards to access to offices; calls with Zlotnik in regards to same; review emails and corresponding documents; calls with counsel in regards to ongoing litigation. | S R GOLDMAN | 6.30 | 2614.50 |
| 11/18/04 | Conference call regarding Unimark operations. | S RENAUD | 1.90 | 541.50 |
| 11/18/04 | Retrieved mail from post office; sorted mail. | S RENAUD | 1.00 | 285.00 |
| 11/18/04 | Reviewed files in Unimark and Better Budget offices; copied documents. | S RENAUD | .50 | 142.50 |
| 11/18/04 | Coordinated transfer of computer equipment. | S RENAUD | 1.20 | 342.00 |
| 11/18/04 | Tele conf. w/ Hernan Serrano, re: Registrar's Certificate.  Write email to counsel to register.com; follow-up discussion with counsel. | S J RIEMER | 2.70 | 715.50 |
| 11/19/04 | Office conference with Seth Goldman regarding scheduling issues; computer issues and Unimark; telephone calls with Hernan Serrano regarding same; attention to file regarding same. | P B ZLOTNICK | .90 | 459.00 |

HERNAN SERRANO
FILE NUMBER: 24997-002                     January 10, 2005    PAGE   14
INVOICE NO.: 8324423

| Date | Description | Timekeeper | Hours | Amount |
|---|---|---|---|---|
| 11/19/04 | Review emails and letters; exchange emails; revise correspondence in regards to outstanding BBFS issues; calls with counsel; emails with Serrano; emails in regard to credit soft. | S R GOLDMAN | 1.30 | 539.50 |
| 11/19/04 | Conversation with paralegal regarding filing fee. | S RENAUD | .10 | 28.50 |
| 11/19/04 | Tele conf w/ Kathleen Arcuri, counsel to Fleet Bank, re: TRO; write letter to counsel concerning service of TRO; follow up tele conf. Discuss defendant's bank accounts. | S J RIEMER | 4.70 | 1245.50 |
| 11/22/04 | Exchanged e-mails with Seth Goldman and Suzanne Renaud regarding scheduling conference and client settlement status issues. | P B ZLOTNICK | .50 | 255.00 |
| 11/22/04 | Telephone calls with Hernan Serrano regarding BBFS issues; telephone call with W. Harris regarding outstanding litigations; telephone call with Serrano regarding same; review documents; telephone call with S. Renaud regarding Register.com; review documents. | S R GOLDMAN | 2.30 | 954.50 |
| 11/22/04 | Confer with attorney at register.com; drafted and sent letter to register.com. | S RENAUD | 1.00 | 285.00 |
| 11/22/04 | Conf w/ S. Goldman and S. Renaud; research 15 U.S.C. and determine application to service of TRO on register.com; write email summarizing findings. | S J RIEMER | 5.20 | 1378.00 |

HERNAN SERRANO
FILE NUMBER: 24997-002                    January 10, 2005    PAGE    15
INVOICE NO.: 8324423

| | | | | |
|---|---|---|---|---|
| 11/23/04 | Exchanged e-mails with Seth Goldman, Suzanne Renaud, and Hernan Serrano regarding computer issues, lease issues and Unimark issues; telephone calls with Seth Goldman and Hernan Serrano regarding same; attention to file regarding same. | P B ZLOTNICK | 1.50 | 765.00 |
| 11/23/04 | Telephone call with H. Serrano regarding outstanding issues; review correspondence regarding leases; draft letter regarding same; telephone call with H. Serrano regarding conflicts issues; review correspondence regarding same; draft e-mails; telephone call with P. Zlotnick regarding status; exchange e-mails with T. Atkinson; review e-mails regarding customers. | S R GOLDMAN | 4.30 | 1784.50 |
| 11/23/04 | Conf call w/ H. Serrano; conf call w/ Carolann Mitchell, landlord to Cummings Center Property; serve TRO on Ms. Mitchell via facsimile; correspond with Essex Furniture concerning TRO; determine process to consolidate and transfer all defendant's bank accounts at St. Jean's Credit Bureau and Century Bank. | S J RIEMER | 5.60 | 1484.00 |
| 11/24/04 | Office conference with Seth Goldman regarding status of receivership matters; telephone calls with Hernan Serrano regarding same; attention to file regarding same; exchanged e-mails regarding same; reviewed file regarding same. | P B ZLOTNICK | 1.80 | 918.00 |

HERNAN SERRANO                              January 10, 2005    PAGE  16
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

| 11/24/04 | Office conferences with P. Zlontick regarding status;. revised letter regarding Cummings; review e-mails regarding status; telephone calls with H. Serrano regarding status; draft e-mail regarding account information; telephone call with S. Riemer regarding same. | S R GOLDMAN | 2.40 | 996.00 |
|---|---|---|---|---|
| 11/24/04 | Conversation with court regarding scheduling conference. | S RENAUD | .10 | 28.50 |
| 11/24/04 | Conf call w/ John Gallo of Essex Furniture regarding receipts and checks in his possession; write letter to Gallo concerning production of such.  Manage files detailing all account summaries at various banks and correspondence with counsel for each entity. | S J RIEMER | 4.10 | 1086.50 |
| 11/27/04 | Exchanged e-mails with Seth Goldman regarding pending litigation by BBFS and regarding lease issues; reviewed file regarding same. | P B ZLOTNICK | .50 | 255.00 |
| 11/27/04 | Review correspondence regarding leases; respond to same; exchange e-mails with P. Zlontick regarding outstanding issues; telephone call with counsel regarding same. | S R GOLDMAN | 1.20 | 498.00 |
| 11/29/04 | Telephone call with Hernan Serrano regarding drafting voice response message for consumers, lease issues and pending litigation issues; office conferences with Stuart Riemer regarding bank account issues and regarding BBFS state court litigation issues; telephone call with | P B ZLOTNICK | 3.90 | 1989.00 |

HERNAN SERRANO                                January 10, 2005    PAGE   17
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

   Bob Marder, Esq. regarding
   Century Bank; telephone call
   with Carolann Mitchell, Esq.
   regarding Cummings Lease
   issues; reviewed file
   regarding same; telephone
   call with William Harris,
   Esq. regarding BBFS state
   court litigation issues;
   exchanged e-mails with
   Hernan Serrano, Stuart
   Riemer, Christian Pedersen,
   Ted Atkinson regarding all
   of the above.

11/29/04  Write letter to Essex Office    S J RIEMER          6.70    1775.50
   requesting copies of
   receipts and checks used to
   pay for furniture;
   teleconference w/ Bob Weber
   to discuss the TRO and
   consolidation of funds,
   power of Temporary Receiver
   to do so; write letter
   requesting such of Mr. Weber
   and St. Jean's Credit
   Bureau; conference w/ P.
   Zlotnick.

11/30/04  Exchanged e-mails with         P B ZLOTNICK         2.80    1428.00
   Hernan Serrano regarding
   lease issues, bank issues
   and Debt Management
   Solutions issues; exchanged
   e-mails with Bob Marden
   regarding Century Bank;
   conducted internet search of
   Debt Management Solutions;
   office conference with
   Stuart Riemer regarding bank
   issues; telephone call with
   Hernan Serrano regarding all
   of the above; attention to
   file regarding same.

11/30/04  Teleconference w/ Bob Weber,   S J RIEMER          1.80     477.00
   counsel to St. Jean's Credit
   Bureau; write letter to St.
   Jean's requesting
   consolidation of all
   defendants' accounts.

HERNAN SERRANO
FILE NUMBER: 24997-002                  January 10, 2005    PAGE  18
INVOICE NO.: 8324423

| | | | | |
|---|---|---|---|---|
| 12/01/04 | Telephone call with Scott Massi and Bill Harris regarding state court litigation; reviewed discharge papers faxed by Scott Massi; reviewed lease documents regarding Cummings Lease; exchanged e-mails with Christian Pederson regarding state court proceedings; telephone call with Hernan Serrano regarding above and regarding trip to Receivership Company's offices on December 2-3; attention to file regarding same. | P B ZLOTNICK | 2.80 | 1428.00 |
| 12/02/04 | Conferred with Hernan Serrano and Kevin Grimes regarding lease issues, regarding car lease issues, regarding sale of Colons' Unimark shares and regarding disposition of BBFS assets; reviewed court order regarding same; telephone call with William Harris, Esq. regarding state court action and Unimark stock sale issues; inspected automobiles and Elliott St. home; met with Christian Pederson, John and Julie Colon regarding same; reviewed draft assumption of automobile lease agreement; attention to file regarding same. | P B ZLOTNICK | 7.50 | 3825.00 |
| 12/02/04 | Conversation with client re: location of documents; forwarded computer equipment to CoreFacts for analysis. | S RENAUD | .30 | 85.50 |
| 12/02/04 | Write letter to Bob Weber, counsel to St. Jean's Credit Union, re: transfer of funds. Tele conference regarding same. | S J RIEMER | 1.50 | 397.50 |

HERNAN SERRANO                          January 10, 2005    PAGE   19
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

| 12/03/04 | Telephone call with Ted Atkinson, Christian Pederson, Carole Paynter and Hernan Serrano regarding lease issues, care lease issues, Unimark stock transfer issues and other general issues; conferred with Hernan Serrano and Kevin Grimes regarding same; reviewed documents at offices of BBFS; attention to file regarding same. | P B ZLOTNICK | 6.00 | 3060.00 |
|---|---|---|---|---|
| 12/06/04 | Office conference with Seth Goldman regarding case status; reviewed file regarding same; exchanged e-mails with Kevin Gregory regarding BBFS website message. | P B ZLOTNICK | .80 | 408.00 |
| 12/06/04 | Conversation with Blue Cross regarding service for BBFS. | S RENAUD | .10 | 28.50 |
| 12/07/04 | Telephone call with Carolann Mitchell regarding BBFS' leases; reviewed same and court order regarding same; reviewed and revised website message; exchanged e-mails with Hernan Serrano, Kevin Gregory, Seth Goldman regarding same; exchanged e-mails with Carole Paynter regarding bank records. | P B ZLOTNICK | 3.20 | 1632.00 |
| 12/07/04 | Office conference with P. Zlotnick regarding status; review e-mails regarding Century and BBFS issues; draft same; review documents regarding outstanding State Court issues; review documents regarding lease of property; discuss same with P. Zlotnick | S R GOLDMAN | 1.60 | 664.00 |
| 12/07/04 | Email exchange w/ S. Goldman, re: Cummings Center.  Conduct research on landlord's right to keep security deposit. | S J RIEMER | 1.80 | 477.00 |

```
HERNAN SERRANO                              January 10, 2005    PAGE   20
FILE NUMBER: 24997-002
INVOICE NO.: 8324423
```

| Date | Description | Attorney | Hours | Amount |
|---|---|---|---|---|
| 12/08/04 | Telephone call with Carolann Mitchell; drafted letter to same; reviewed and revised same; exchanged e-mails with Hernan Serrano regarding bank records; office conferences with Seth Goldman regarding all of the above and state court litigations | P B ZLOTNICK | 1.20 | 612.00 |
| 12/08/04 | Review correspondence; office conference with P. Zlotnick regarding outstanding issues; review letters regarding lease issues; review pertinent documents; telephone call with counsel regarding state court issues; review documents regarding same. | S R GOLDMAN | 1.10 | 456.50 |
| 12/09/04 | Reviewed FTC notice of depositions; exchanged e-mails with parties regarding scheduling order; office conference with Seth Goldman regarding same. | P B ZLOTNICK | .50 | 255.00 |
| 12/09/04 | Review documents; e-mails; office conference with P. Zlotnick regarding status; draft e-mails. | S R GOLDMAN | .60 | 249.00 |
| 12/09/04 | Conduct research concerning landlord's rights under Mass. law; conf w/ S. Goldman regarding same. | S J RIEMER | 4.20 | 1113.00 |

HERNAN SERRANO                              January 10, 2005    PAGE   21
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

| 12/10/04 | Reviewed correspondence from Cummings regarding lease issues; reviewed proposed Unimark lease; exchanged e-mails with Hernan Serrano regarding same; telephone calls with Hernan Serrano regarding same and regarding December 13 court hearing and trip to Beverly, MA; attention to file regarding same; reviewed deposition notices and other filings; office conference with Seth Goldman regarding all of the above. | P B ZLOTNICK | 3.20 | 1632.00 |
| 12/10/04 | Office conferences with P. Zlotnick regarding outstanding issues; review letters; office conferences with S. Riemer regarding frozen assets; telephone call with Hernan Serrano regarding outstanding issues; review documents regarding conference; discuss same with P. Zlotnick. | S R GOLDMAN | 1.10 | 456.50 |
| 12/13/04 | Attended court hearing; prepared for same; conferred with Hernan Serrano regarding same; conferred with parties' counsel regarding same; office conference with Seth Goldman regarding legal issues regarding security deposit held at Cummings; reviewed Cummings correspondence; reviewed files at offices of Receivership Companies; attention to file regarding same. | P B ZLOTNICK | 6.50 | 3315.00 |

```
HERNAN SERRANO                          January 10, 2005    PAGE  22
FILE NUMBER: 24997-002
INVOICE NO.: 8324423
```

| | | | | |
|---|---|---|---|---|
| 12/13/04 | Review e-mails regarding lease; review correspondence; telephone calls with P. Zlotnick regarding same; telephone call with Cummings counsel; review pertinent documents; telephone call with P. Zlotnick regarding hearing. | S R GOLDMAN | 2.20 | 913.00 |
| 12/13/04 | Miscellaneous document production, facilitated production of documents and emailing of document for client. | S RENAUD | .20 | 57.00 |
| 12/14/04 | Reviewed files at offices of Receivership Companies; met with realtors regarding possible sale of Colon residences; conferred with Hernan Serrano regarding same; attention to file regarding same. | P B ZLOTNICK | 5.30 | 2703.00 |
| 12/14/04 | Telephone calls with P. Zlotnick regarding status, telephone calls with Cummings regarding lease issues; draft emails regarding same; review cases, office conferences with S Riemer. | S R GOLDMAN | 2.10 | 871.50 |
| 12/14/04 | Assisted with email communications for client. | S RENAUD | .10 | 28.50 |
| 12/15/04 | Reviewed Massachusetts Attorney General complaint; reviewed TRO regarding same; telephone call with Jeff Tenenbaum and Ted Atkinson regarding receivership and discovery issues; exchanged e-mails with Hernan Serrano regarding liquidation of assets and lease issues; office conferences with Seth Goldman regarding all of the above; attention to file regarding same. | P B ZLOTNICK | 4.50 | 2295.00 |

HERNAN SERRANO
FILE NUMBER: 24997-002                    January 10, 2005      PAGE   23
INVOICE NO.: 8324423

| Date | Description | Attorney | Hours | Amount |
|---|---|---|---|---|
| 12/15/04 | Telephone calls with Cummings; office conferences with P. Zlotnick regarding outstanding issues; office conferences with S. Riemer regarding same; review docs. | S R GOLDMAN | 1.20 | 498.00 |
| 12/15/04 | Tele conf w/ Bob Weber; prepare Order extending TRO for review by his office. | S J RIEMER | .50 | 132.50 |
| 12/16/04 | Reviewed complaint of Massachusetts Attorney General; reviewed TRO regarding same; reviewed case law regarding receiver's right to security deposits from landlord of receivership property; office conference with Seth Goldman regarding prospective tenant for second floor suite; attention to file regarding all of the above. | P B ZLOTNICK | 1.50 | 765.00 |
| 12/16/04 | Telephone calls with Cummings; review letters; review documents; office conferences with P. Zlontick regarding status. | S R GOLDMAN | 1.50 | 622.50 |
| 12/16/04 | Email exchange w/ M. Bullittt of Register.com re: BBFS URL's.  Conf w/ S. Goldman. | S J RIEMER | 2.50 | 662.50 |
| 12/17/04 | Reviewed Massachusetts Attorney General Complaint; office conference with Stuart Riemer regarding same; telephone call with Ted Atkinson regarding December 20 trip to Beverly, MA and receivership issues; reviewed subpoena served by defendants upon receiver; office conferences with Seth Goldman regarding all of the above and regarding lease issues; telephone call with Seth Goldman and Hernan | P B ZLOTNICK | 5.00 | 2550.00 |

HERNAN SERRANO
FILE NUMBER: 24997-002                    January 10, 2005    PAGE  24
INVOICE NO.: 8324423

|  |  |  |  |  |
|---|---|---|---|---|
|  | Serrano regarding all of the above; exchanged e-mails with Hernan Serrano regarding all of the above. |  |  |  |
| 12/17/04 | Telephone calls with P. Escobar regarding leases; office conferences with H. Serrano and P. Zlotnick regarding status; review letters; respond to same; draft correspondence; exchange e-mails; review documents. | S R GOLDMAN | 3.30 | 1369.50 |
| 12/17/04 | Conf w. P. Zlotnick re: letter from Mass. AG concerning non-payment of wages; write letter to Mary Dullinger regarding same. | S J RIEMER | 1.50 | 397.50 |
| 12/20/04 | Reviewed files at offices of Receivership Companies in Beverly, MA; met with Ted Atkinson regarding document review; met with John Byrd and Lisa Lee Lam regarding all of the above; attention to file regarding same; telephone calls with Hernan Serrano and Seth Goldman regarding all of the above. | P B ZLOTNICK | 6.00 | 3060.00 |
| 12/20/04 | Telephone call with P. Escobar regarding leases; revise letter; telephone calls with Century Bank regarding transfers; draft e-mails regarding same; review subpoena; review letters; review AG letter; revise same; office conference with S. Riemer regarding status; telephone calls with H. Serrano and P. Escobar. | S R GOLDMAN | 3.00 | 1245.00 |
| 12/20/04 | Email exchange w/ S. Goldman; write Response to Document Requests; analyze financial figures from Century Bank, compare to previous figures to ensure accuracy. | S J RIEMER | 6.50 | 1722.50 |

HERNAN SERRANO
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

January 10, 2005    PAGE   25

| Date | Description | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 12/21/04 | Reviewed computer files of Paul Bartlett, Scott Sarver; Kristin Gecoy and other BBFS employees; conferred with John Byrd regarding same; met with Ted Atkinson regarding same and regarding document production; telephone calls with Seth Goldman and Hernan Serrano regarding same; attention to file regarding same. | P B ZLOTNICK | 4.50 | 2295.00 |
| 12/21/04 | Review documents regarding Century Bank and lease issues; telephone calls with various representatives regarding same; telephone call with H. Serrano regarding status; revise letter regarding Attorney General office; review subpoena regarding same; office conference with S. Riemer regarding same; review documents regarding transfer of funds. | S R GOLDMAN | 2.80 | 1162.00 |
| 12/22/04 | Exchanged e-mails with John Byrd of CoreFacts; telephone calls with Paul Escobar, Esq., of Cummings regarding lease issues; office conferences with Seth Goldman regarding same; exchanged e-mails with Hernan Serrano regarding all of the above and John Colon issues. | P B ZLOTNICK | 3.20 | 1632.00 |
| 12/22/04 | Review documents regarding Century Bank; telephone calls with R. Morder regarding transfer issues; draft e-mails regarding same; office conference with P. Zlotnick regarding same; telephone calls with P. Escobar regarding lease issues; review documents regarding same; office conferences with P. Zlotnick regarding same; draft e-mails regarding same. | S R GOLDMAN | 3.90 | 1618.50 |

HERNAN SERRANO
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

January 10, 2005    PAGE  26

| Date | Description | Attorney | Hours | Amount |
|---|---|---|---|---|
| 12/22/04 | Review subpoena issued by Theodore Atkinson on Hernan Serrano for documents. Prepare response to subpoena. | F J EARLEY | 1.10 | 434.50 |
| 12/23/04 | Telephone calls with Carole Paynter regarding litigation and lease issues; office conferences with Seth Goldman regarding lease issues; telephone calls with Paul Escobar of Cummings regarding same; reviewed TRO regarding same; researched law regarding same; telephone call with Jeffrey Tenebaum of Venable; reviewed subpoena duces tecum from Venable; office conference with Frank Earley regarding response to same; attention to file regarding same; reviewed files from BBFS offices. | P B ZLOTNICK | 2.00 | 1020.00 |
| 12/23/04 | Review and revise response to subpoena issued on by counsel for Better Budget Financial. | F J EARLEY | .90 | 355.50 |
| 12/28/04 | Review documents in regards to AG matter; review emails; respond to same; calls with H. Serrano. | S R GOLDMAN | 1.00 | 415.00 |
| 12/29/04 | Calls with H. Servano in regards to status; calls with S. Renaud in regards to same; reviewed docs; exchange calls with Mass AG in regards to status; review correspondence and documents in regards to same. | S R GOLDMAN | 1.30 | 539.50 |
| 12/30/04 | Calls with Cummings in regards to lease; review same; review emails; draft same. | S R GOLDMAN | 1.80 | 747.00 |
| 12/30/04 | Monitored move of Unimark inventory; copied bank statements; sent copies to client. | S RENAUD | 4.50 | 1282.50 |

HERNAN SERRANO                          January 10, 2005    PAGE  27
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

| | | | | |
|---|---|---|---|---|
| 12/31/04 | Reviewed and revised Receiver's responses to Defendants' documents request pursuant to subpoena duces tecum; telephone call with Seth Goldman regarding Cummings' proposed motion to intervene regarding security deposit and lease issues; exchanged e-mails with Seth Goldman and Hernan Serrano regarding same; and regarding other issues regarding Unimark, computers and termination of BBFS lease. | P B ZLOTNICK | 1.50 | 765.00 |
| 12/31/04 | Telephone call with P. Escobar regarding motion to intervene; review documents regarding same; telephone call with P. Zlotnick regarding status and outstanding issues regarding employees; draft correspondence regarding AG issue. | S R GOLDMAN | 2.10 | 871.50 |

            LESS 15% DISCOUNT                              (24884.10)


                 BILLABLE SERVICES BEFORE ADJUSTMENTS:    $165,894.00

                          LESS COURTESY DISCOUNT:    $ 24,884.10

                 TOTAL FOR SERVICES AFTER DISCOUNT:    $141,009.90


EXPENSES

| | |
|---|---|
| Telecopy | 999.00 |
| Reprographics | 1870.80 |
| Postage | 9.72 |
| Expert Fees | 39609.97 |
| Filing Fees | 100.00 |
| Out/Town Travel | 1158.16 |
| Air Freight | 113.67 |
| Air Travel | 2333.70 |
| Outside Service | 64.69 |
| Auto Travel | 828.86 |
| Taxi and ground transportation | 1038.49 |
| Westlaw | 3724.29 |
| Telephone/Outside | 39.05 |
| Meal Expense | 268.75 |

HERNAN SERRANO
FILE NUMBER: 24997-002
INVOICE NO.: 8324423

January 10, 2005    PAGE   28

TOTAL EXPENSES:    $ 52,159.15

TOTAL THIS STATEMENT:    $193,169.05