## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------------x
                                          :
FEDERAL TRADE COMMISSION,                 :
                                          :   CIVIL ACTION NO.:
                       Plaintiff,         :   04-12326 (WGY)
                                          :
          v.                              :
                                          :
BETTER BUDGET FINANCIAL SERVICES,         :
INC., JOHN COLON, JR., and JULIE          :
FABRIZIO-COLON,                           :
                                          :
                       Defendants.        :
                                          :
------------------------------------------------------------x
```

## AFFIDAVIT IN SUPPORT OF JOINT
## FINAL FEE APPLICATION OF HERNAN SERRANO, JR.,
## THE RECEIVER, AND HIS PROFESSIONALS

**HERNAN SERRANO, JR.**, being duly sworn, deposes and says:

1.  I am the receiver (the "Receiver") of Better Budget Financial Services, Inc.

("BBFS").  I make this affidavit in support of the joint fee application of me, as Receiver of

BBFS, as well as the professionals I have engaged to assist me with the implementation of my

duties and responsibilities as Receiver.  Except where stated upon information and belief, I have

personal knowledge of the facts and circumstances set forth in this affidavit.

2.  This affidavit also is submitted in support of my Final Report to the Court as Receiver

of BBFS, together with the exhibits attached thereto, sworn to February 8, 2006 (the "Final

Report"), which, in addition to the relief sought herein, constitutes the present application of my

professionals and me in my capacity as Receiver.  I incorporate by reference herein my Final

Report, and any and all supplements and amendments thereto.  Except as defined herein, all

defined terms shall have the meaning ascribed to them in the Final Report..

## My Appointment As Receiver of BBFS and My Team of Professionals

3.   I was appointed the temporary Receiver of BBFS pursuant to an *Ex Parte* Temporary

Restraining Order With Asset Freeze, Appointment Of Receiver, Immediate Access To

Defendants' Business Premises, Expedited Discovery, And Order To Show Cause Why A

Preliminary Injunction Should Not Issue, entered by this Court on November 3, 2004 (the

"TRO"), as modified by a Stipulation Modifying *Ex* Parte Temporary Restraining Order, signed

by counsel for each of the parties hereto and "So Ordered" by this Court on or about November

18, 2004 (the "Stipulated TRO").  Copies of the TRO and Stipulated TRO are respectively

annexed to the Final Report as Exhibits A and B.

4.     On or about March 10, 2005, the parties to this action settled their dispute by

executing and filing a Stipulated Final Judgment and Order for Permanent Injunction and Other

Equitable Relief Against All Defendants, which the Court "So Ordered" (the "Final Judgment").

A copy of the Final Judgment is annexed to the Final Report as Exhibit C.  Pursuant to Section

VIII of the Final Judgment, the parties agreed and this Court directed that my appointment as

Receiver be continued, except my duties were extended to require me to complete the BBFS

receivership (the "Receivership") by taking all steps necessary and advisable to locate and

liquidate any and all assets of BBFS.

5.      As described in this Final Report, my team of professionals and I have now accomplished this difficult and complex assignment.

6.      I was formerly the Director of Corporate Recovery Services for the firm of Weinick, Sanders, Leventhal & Co. ("WSL") and am currently a Managing Director and shareholder of Executive Sounding Board Associates, Inc. ("ESBA").

7.      The team of professionals which I have engaged includes my former employer, the forensic accounting firm, WSL, my current firm, ESBA, as well as the law firm of Mintz Levin Cohn Ferris Glovsky & Popeo, P.C. ("Mintz Levin").

**<u>The Fee Application of the Receiver and His Professionals</u>**

8.      As set forth in detail in the Final Report, I, in my capacity as Receiver, together with my team of professionals, have undertaken our duties and have devoted substantial time and effort to the supervision, operation, management and preservation of the Defendants' property and estate from November 4, 2004 through and including the present, and now present our Final Report to the Court and seek compensation for the services we have rendered during the Application Period.

9.      Section IX of the Final Judgment provides that the Receiver and his professionals shall be reasonably compensated for the services they have rendered in connection with this Receivership, as well as for the actual out-of-pocket expenses they have incurred in connection therewith.  The schedules of rates and detail of the work that has been performed by members of my former firm, WSL, my current firm, ESBA, my counsel, Mintz Levin, and by me in my

capacity as Receiver of BBFS are set forth in the billing records from WSL, ESBA, Mintz Levin and me, each of which are respectively annexed hereto as Exhibits A, B and C.

10. Additionally, I am annexing hereto as Exhibit D a copy of the amended and modified financial schedule of the Receivership estate for the period through and including the Application Period. The financial schedule annexed as Exhibit K to the Final Report may inadvertently give the impression that we marshaled approximately $1.5 million from various external sources into the estate, however, that schedule, while accurate, is really a cashflow schedule of funds flowing into and out of the Receivership trust account. I realized that the schedule might appear confusing after filing the Final Report and, thus, am now amending and modifying it to clarify the snapshot it depicts. The deposits and withdrawals included in the schedule refer to transfers to and from an interest-bearing Receivership money market account that I established to maximize value to the estate. The $1.5 million line item constitutes the gross amount of funds that came into the account, but not necessarily reflect whether those funds originated from sources other than money transfers across the Receivership accounts. Nonetheless, as set forth in the both the original and amended financial schedules, the Receivership estate currently contains a balance of $536,552.25. In addition, the total assets marshaled into the Receivership trust account equaled $994,539.79, while the aggregate liquid and non-liquid assets we marshaled into the estate that became subject to the settlement between the Colons and the FTC in connection with the Final Judgment totaled $1,232,166.10. Neither my professionals nor I were included in the negotiations concerning the Final Judgment and had no opportunity to attempt to secure for the estate or the consumers the estimated $235,000 in assets that the FTC permitted to be returned to the Colons as part of the Final Judgment. As set

4

forth below, my professionals and I are now seeking payment of the aggregate sum of $347,971.82, leaving the net sum of $188,580.43.

11. My professionals and I maintain detailed records of the time expended in the rendition of all professional services required in the administration of the estates of the Defendants. The time records were made concurrently with the rendition of professional services. The time records have been reviewed and, where appropriate, redacted to eliminate portions of time entries that are privileged.

12. My normal hourly rate is $325 per hour. I agreed, however, to reduce my rate as Receiver to an hourly rate of $200 per hour. As indicated on the WSL timesheets, the standard hourly rates of the professionals from WSL who have worked on the Receivership range from $110 to $365 per hour. Likewise, the standard hourly rates of the professionals from ESBA who have worked for the Receivership range from $110 per hour to $325 per hour. As Receiver, I, together with my colleagues from WSL and ESBA incurred 589.6 hours of professional time that we devoted to Receivership activities during the Final Fee Application Period. Professionals from WSL incurred an aggregate of 545.2 hours of professional time in connection with Receivership activities during the Final Fee Application Period. Professionals from ESBA incurred an aggregate of 17 hours of professional time in connection with Receivership activities during the Final Fee Application Period. Accordingly, the cost of our hourly time during the Final Fee Application Period was $106,158.50. Collectively, WSL and ESBA also incurred expenses during the Final Fee Application Period in the amount of $11,813.32. In total, WSL and ESBA seek payment of $117,971.82 for professional services that it rendered and disbursements it incurred during the Final Fee Application Period. On behalf of WSL and

ESBA, I respectfully submit that this amount is fair and reasonable under the circumstances due to the degree of difficulty and complex nature of this Receivership estate and the efficient, comprehensive, fair and exceptionally responsible decision-making on the part of the entire Receivership team.

13. As indicated by the Mintz Levin time sheets, professionals from Mintz Levin who worked on the Receivership during the Application Period charged from $150 per hour for the lowest billing timekeeper to $510 per hour, which is the amount that Mintz Levin senior partner, Peter B. Zlotnick, Esq., charged during the period.  Mintz Levin's timekeepers billed approximately 485 hours during the Application Period.  The time charged by Mintz Levin timekeepers to the Receivership during the Application Period was valued at $217,734.35.  This amount reflects a courtesy discount of approximately $25,000 that Mintz Levin voluntarily deducted from its time charges for the Application Period, which amount equals approximately a 12% discount off the total sum of $243,296.07 in time charges for Mintz Levin time keepers during the Application Period.  Mintz Levin also incurred disbursements and expenses on behalf of the Receivership during the Application Period in the aggregate amount of $7,265.65. Accordingly, Mintz Levin seeks the total payment of $225,000.00 for professional services that it rendered and disbursements it incurred during the Application Period.

14. I respectfully submit that, for all of the reasons contained in this affidavit, each of the fees and disbursements described in paragraphs 12 and 13 above are fair and reasonable and the result of complicated activities necessitated by, among other things, the sale of the Conifer Way Property.

6

## **CONCLUSION**

15. For all of the foregoing reasons, I respectfully submit that the Court should enter an Order, directing all of the relief sought herein, including but not limited to the payment of professional fees and disbursements to me, in my capacity as the temporary Receiver of BBFS, together with my forensic accountants, WSL and ESBA, and my counsel, Mintz Levin, in the aggregate amount of $342,971.82 with respect to the substantial work and services we rendered during the Application Period, together with a $5,000.00 reserve to be applied by me and my professionals to any additional work that may be required of us to wind down and terminate the Receivership.


                                                     /s/  Hernan Serrano, Jr.
                                                     Hernan Serrano, Jr.

Sworn to before me this
16th day of February, 2006


_____/s/_____
Notary Public


NYC 350811v.1