UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
FEDERAL TRADE COMMISSION,            )
                                     )
       Plaintiff,                    )
                                     ) Civil Action No.: 04-12326 (WGY)
  v.                                 )
                                     )
BETTER BUDGET FINANCIAL SERVICES, INC;)
JOHN COLON, JR., and JULIE FABRIZIO-COLON, )
                                     )
       Defendants.                   )
_____)

## PLAINTIFF'S OPPOSITION TO THE JOINT APPLICATION OF THE RECEIVER AND HIS PROFESSIONALS FOR AN ORDER AUTHORIZING THE PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES.

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), opposes the release of funds requested in the "Joint Application of the Receiver and His Professionals For an Order Authorizing the Payment of Compensation and Reimbursement of Expenses," dated February 24, 2006 ("Receiver's Application"). Payment of the Receiver and his professionals' full request would lead to an inequitable distribution of funds between the Receiver and his professionals on the one hand, and the 9981 injured Better Budget Financial Services' ("BBFS") customers on the other. In addition, certain of the legal fees incurred by Receiver's counsel appear to be unreasonable in view of negative value created by the services and the large-scale magnitude of such fees in relation to customary charges for similar services.

The receivership estate amassed in this case was $994,539[1] from which the Receiver and

---

[1] The Receiver has asserted that the proper value of the estate is $1,232,166.10, which reflects liquid and non-liquid assets that were subject to the asset freeze imposed by the *Ex Parte Temporary Restraining Order* entered by the court on November 4, 2004. The Receiver here attempts to make the requested fees appear reasonable by inflating the

his professionals have already been paid $300,740.53 for fees and expenses incurred in the first four months of this action, (November 2004 to February 2005). Currently, the receivership estate totals $536,552.25 of which amount, $45,564.28, will be returned to the defendants to be held in trust by a court appointed guardian for their minor child, as ordered by the Court in the Order of Permanent Injunction, entered on March 9, 2005. Once this disbursement is made, the estate will consist of just $490,987.97 to be used to pay the Receiver and his professionals and injured consumers.

In their current joint submission, the Receiver and his professionals have requested payment for fees and expenses totaling another $303,361.85[2], plus $5,000 to be held in reserve to pay unanticipated expenses generated by terminating the receivership. If the Receiver's requested payment of $308,361.85 were granted in full, a mere $182,626.12 would remain to pay redress to 9981 injured consumers and cover the costs of the administration of that redress, estimated at approximately $25,000. As stated above, the Receiver and his professionals have already been paid $300,740.53 and, combined with the current request, would ultimately receive $608,712.35 for fees and expenses in this case. The Receiver's entire fee amount would represent almost two-thirds of the total receivership estate of $948,975.51 that is available for

---

size of the estate. The Receiver boldly asserts that the FTC "permitted" $235,000 to be returned to the defendants as part of the final settlement. The Receiver fails to identify the assets that comprise the amount he claims was returned to the defendants. In the course of settlement, the FTC only agreed to return $88,000 of the Colon defendants' personal jewelry and permitted the Colon defendants to draw against equity in a second home that had approximately $40,000 in equity, to provide living expenses for them. Further, to imply that the FTC should not have agreed to release assets in an effort to settle the case, but should have retained the assets solely to provide more funds that the Receiver could draw against, is outrageous on its face. *See Declaration of Hernan Serrano*, dated February 24, 2006, ¶ 10.

[2]On March 7, 2006, counsel for the Receiver submitted an affidavit to the court that corrected the entry on a March 5, 2005 invoice of "expert fees $39,607.97" *See Declaration of Peter B. Zlotnick,* ¶ 2, dated March 7, 2006. During a February 29, 2006 conversation among the FTC, counsel and the Receiver, the FTC questioned this amount because no experts had been used at the time in question. Counsel to the receiver subsequently confirmed that this entry was erroneous and that counsel's fee application should be reduced by this amount.

distribution and is approximately six times the money available for consumer redress. Because such an outcome would be a gross injustice to consumers who have already been victimized by the defendants in this case, and because in some cases the fees in their sheer magnitude, are unreasonable and resulted in negative value to the estate, the FTC opposes the Receiver's Application and requests that the Court reduce the request as set forth below.[3]

The Court must exercise its discretion to balance the claims of the Receiver against those of victimized consumers. *See In re Hoe & Co.*, 471 F. Supp. 493, 502 (S.D.N.Y. 1978). In doing so, the Court looks at several factors including: 1) the nature of the services rendered; 2) the difficulties and complexities encountered; 3) time necessarily expended; 4) the results achieved; 5) the burden the estate can safely bear and the size of the estate. *Id*. In deciding the amount of a fee in a case such as the present one, the Court must "balance conflicting considerations" of protecting consumers who were injured and ensuring that the fees paid are sufficient enough that other practitioners will undertake similar matters in the future. *Id.* "These factors are to be given considerable weight." *SEC v. W.L. Moody & Co.*, 374 F. Supp. 465, 481 (S.D.Tex. 1974). Moreover, The Second Circuit noted:

> . . . in a reorganization proceeding, where the lawyers look for compensation to the debtor's estate which may belong in equity, largely to others than those who have requested their services, they should have in mind the fact that the total

---

[3]Moreover, a reduction of the fees requested is appropriate in this case where the FTC recommended the current Receiver to the Court based on the Receiver's abilities, experience with and knowledge of the FTC's practice as well as his representation to the FTC that he would cap the fees of his professionals at 25% of the overall estate. If the Court approves payment of the current amount, the Receiver's professionals will have received approximately 40% of the overall estate. It is relevant for the Court to consider the Receiver's stated intention to cap his professionals' fees, especially here where the public interest is involved. *See, e.g., Brown, Rudnick, Freed & Gesmer et al., v. Commonwealth of Mass.,* 2003 WL 22707409, (Mass. Super.).

<u>aggregate of fees must bear some reasonable relation to the estate's value. Under these circumstances they cannot always expect to be compensated at the same rate as in litigation of the usual kind</u>.

Finn v. Childs Co., 181 F.2d 431, 4435-36 (2d Cir. 1950)(emphasis added)(applying pre-Bankruptcy Code equitable principles). As explained below, substantial fees were generated by Receiver's counsel that generated either loss to the estate (absent the vagaries of litigation), or their size relative to the nature of the work performed and the ususal fees charged for such work were unreasonable. In either instance, consumers should not be required to pay the fees requested. Moreover, the estate that was amassed here was modest and simply cannot bear to pay the fees requested since it will significantly and unjustly reduce the amount that consumers will receive.

      The first area where a reduction in fees is warranted, involves negotiations that the Receiver and his counsel engaged in with the landlord of BBFS's offices, which negotiations produced negative results for the estate and consumers. Specifically, unbeknownst to the FTC, the Receiver and his counsel conducted extensive negotiations with the landlord over the landlord's return of BBFS's security deposit, sale of office furnishings and whether outstanding rent would be paid. The Receiver and his counsel conducted these negotiations without notifying the FTC that they were ongoing and the FTC only learned of them upon receipt of the landlord's motion to intervene in the action. Once the FTC learned the number of hours that Receiver's counsel had been expending on this matter, the FTC sought to become involved in order to try and bring that matter to a close and keep the costs to consumers down. It is common in FTC injunctive actions such as this one, for a receiver to request that the FTC enforce a temporary

restraining order provision where either the FTC or the receiver can act, i.e. demanding that third parties holding the defendants' assets turn them over to the estate. The Receiver and his counsel have served in several FTC matters and are fully aware of this process. Because they failed to follow it, however, the estate was opened to significant and avoidable expense.

The Receiver ultimately agreed with the landlord to pay: 1) $60,000 in past due rent and rent incurred for approximately 60 days of the receivership; and 2) 8% of monies derived from the sale of office furnishings in two offices leased by BBFS, amounting to $5,000.[4] Conversely, the sale of furnishings by the Receiver resulted in the estate receiving just $46,000, a net loss for the estate of $21,000. Coupled with the Receiver's counsel billing approximately $86,000 in connection with work performed here, the estate would be diminished by $107,000. It would be unjust to injured consumers to compensate Receiver's counsel $86,000 for this work, as it must have been, or given their substantial experience in FTC matters, should have been clear to them that these efforts were huge in relation to the size of the estate and were not benefitting the estate at all. Moreover, any argument by counsel that the landlord would have charged the estate an entire year's rent is without merit, as the landlord was under some obligation to mitigate damages and did indeed readily secure a new tenant. Accordingly, the Receiver's counsel's fees should be reduced in the amount of $107,000.

A second area where the Court should reduce the fee involves the sale of the Colon defendants' home located at 4 Conifer Way, Beverly MA, which sold for $1,087,500. Receiver's counsel billed $40,781 in connection with the sale of the Colon defendants' home, which, as the

---

[4] *See Attachment A, hereto, a copy of the "Stipulation and Settlement Agreement",* dated January 26, 2005.

seller's attorney, is a fee that is at least ten times greater than should have been charged for this work. Indeed, a review of the activities conducted by the Receiver's counsel shows that they handled this task as if this were the sale of a large commercial property rather than the sale of a home, with several lawyers billing for this task. For example:

1. 8/22/05  PB Zlotnick reviewed Conifer Way Sale Documents - **charge $255.**

2. 8/23/05  PB Zlotnick reviewed and revised purchase and sale agreement etc., - **charge $510**

3. 8/24/05  J.M Cosco reviewed P&S documents etc. charge **$112.50**

4. 8/25/05  PB Zlotnick exchanged emails with Joan Platt and Jonathan Cosco regarding deed issues. - **charge $459.00**

5. 8/26/05  PB Zlotnick exchanged emails with Joan Platt and Hernan Serrano re: home inspection report etc. **charge 1,785.00**

6. 10/24/05  JM Cosco tracked down lien release, etc., attend closing in Beverly **charge $1,740**

7. 10/24/05  PB Zlotnick traveled to Beverly MA to attend closing, participated in closing etc., **charge $3,835**

A copy of the relevant billing entries regarding the sale of the Colon defendants' home is attached as Attachment B. Had the Receiver utilized the services of a local attorney rather than a major law firm to prepare the closing, the estate would have saved a substantial amount since a local attorney would likely have charged $2000 for such work. The FTC accordingly requests that the Court disallow payment of fees connected with the closing on the Colon defendants' home.

Finally, if the Court does not find reason for reducing counsel's fees based on either of

the two foregoing objections, the Receiver's Application should be reduced because the estate and injured consumers simply cannot bear the cost of the requested fees. The final estate of $948,975.51 is very minuscule compared to the monies taken in by the defendants and there are thousands of consumers who could potentially seek redress.

On March 9, 2005, the Court entered judgment against the defendants in the amount of $11,978,249.00 reflecting losses suffered by consumers resulting from the payment of various fees to BBFS for settling delinquent unsecured credit accounts. Over the course of its operation, BBFS had enrolled 9981 customers and made very few refunds to cancelling customers. Based on "fees paid" to BBFS alone (consumers also lost money by paying late hundreds of dollars in late charges on their credit accounts), however, 9981 customers lost an average of $1200 each. If the Receiver's Application is paid in full, there would be just $182,626.12 remaining and, assuming $25,000 for administration costs, only $157,626.12 would actually be available to pay injured consumers. If two-thirds of BBFS's customers sought a refund, they would receive a mere $24 each or a 1.9% return of the money they lost. Even assuming a 50% claim rate, 1650 consumers would receive $31 each or 2.6% of their money back. For the Receiver and his counsel to receive fees that are thousands of times higher than the losses suffered by consumers is inequitable and the estate cannot bear to pay out the full amount of their request.

The FTC thus respectfully requests that the Court reduce the Receiver's requested fees from $303,361.85 to $160,987.97, in order to leave $330,000 in the estate for consumers. This amount would almost double the redress amount paid if two-thirds of BBFS clients requested redress - or $50. If just 50% of BBFS's customers sought refunds, they would receive $66 back or a return of 5% of their lost money. Additionally, the FTC opposes the Receiver's request for a $5,000 hold back to cover future potential costs to the Receiver in terminating the receivership.

7

The company has not operated since this case was brought in November 2004 and the Receiver has already taken significant steps to terminate the receivership. At most, a holdback of $750 would be reasonable to cover any expenses the Receiver may incur in completing this task. The FTC also requests that the Receiver provide the FTC with an accounting of all such funds spent and be ordered to release to the FTC any unused portion of those funds within six (6) months of the Court's Order dissolving the Receivership. Thus, the FTC requests that the Court release $161,737.97 to the Receiver, $160,987.97 of which will go to pay fees and expenses, plus the reserve amount of $750 as discussed above. When combined with the $300,740.53 paid to them previously, the Receiver and his professionals would receive $461,728.50 in total, which is 76% of their overall request.

     Plaintiff would like to emphasize that this Opposition to the payment of fees is not based on the quality of the work done by the Receiver and his supporting professionals. Rather, the FTC's Opposition is based upon the view that in the above instances, the Receiver and his professionals should have exercised better judgment in terms of the quantity of the work and nature of the work performed at very high billing rates, that in some cases did not have to be performed or could have been performed at much lower fees. This would have been consistent with the aims of protecting assets for consumers injured by the defendants' misconduct. Accordingly, the FTC respectfully requests that the Court grant the relief requested herein.

Date:  March 10, 2006

                              Respectfully submitted,

                              s/Carole A. Paynter
                              Carole A. Paynter (CP 4091)
                              Attorney for Plaintiff
                              Federal Trade Commission
                              One Bowling Green, Suite 318
                              New York, New York 10004
                              212-607-2813
                              212-607-2829

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing was furnished on this 10th day of March 2006 by regular mail to the following attorneys for the defendants in this action:

Peter B. Zlotnick (*pro hac vice*)
Mintz Levin Cohn Ferris
  Glovsky & Popeo, P.C.
The Chrysler Center
666 Third Avenue
New York, NY 10017

John Colon, Jr.,
Individually and on behalf of
Defendant Better Budget Financial Services
190 Jenness Street
Lynn MA 01904

Julie Fabrizio-Colon
405-R Elliott Street
Beverly MA 01915


                                                            s/ Carole A. Paynter