# EXHIBIT A

Westlaw.

Slip Copy                                                                                                                         Page 1
Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911
(Cite as: 2005 WL 3676529 (N.D.Ill.))

**Motions, Pleadings and Filings**

United States District Court,
N.D. Illinois, Eastern Division.
FEDERAL TRADE COMMISSION, Plaintiff,
v.
CAPITAL ACQUISITIONS & MANAGEMENT
CORP., a corporation, RM Financial Services,
Inc., a corporation, Capital Properties Holdings, Inc.,
a corporation, and
Reese Waugh, Jerome Kuebler, Eric Woldoff,
George Othon, and Jeffrey
Garrington, individually Defendants,
Roy WELLAND and Sheridan Opportunity Fund,
L.P., Defendants-Intervenors
No. 04 C 7781.

filed Dec. 2, 2004.
Aug. 26, 2005.
last filing Jan. 12, 2006.

Ausa, United States Attorney's Office, NDIL, Chicago, IL, Attorney to be Noticed, for Federal Trade Commission, (Plaintiff).

Terence G Banich, Jenner & Block, LLC, Chicago, IL, Attorney to be Noticed, for Sheridan Opportunity Fund, LP, (Cross Claimant).

Christina M Berish, Fagel & Haber, Chicago, IL, Attorney to be Noticed, for Roy Welland, (Intervenor).

Harry O Boreth, Glasser, Boreth, Ceasar & Kleppin, Plantation, FL, Lead Attorney, Attorney to be Noticed, for Andrea Barrett, (Claimant).

Melissa C. Brown, Foley & Lardner, Chicago, IL, Attorney to be Noticed, for Lepetomane, (Receiver).

James Jason Coggins, Wiedner & McAuliffe, Ltd., Chicago, IL, Attorney to be Noticed, for Andrea Barrett, (Claimant).

William C Connor, William C. Connor, PC, Peoria, IL, Attorney to be Noticed, for C.B. Accounts, Inc., (Unknown).

Mason N. Floyd, Martin, Brown & Sullivan, Ltd., Chicago, IL, Attorney to be Noticed, for Eric Woldoff, (Defendant).

Robert S. Grabemann, Martin, Brown & Sullivan, Ltd., Chicago, IL, Attorney to be Noticed, for Eric Woldoff, (Defendant).

Gary Eugene Green, Fagel & Haber, Chicago, IL, Attorney to be Noticed, for Roy Welland, (Intervenor).

Thomas A. Green, Barrick, Switzer, Long, Balsley & Van Evera, Rockford, IL, Attorney to be Noticed, for Charles Street Currency Exchange, (Claimant).

David Luther Hartsell, McGuire Woods LLP, Chicago, IL, for Eric Woldoff, (Defendant).

David Alan Hibben, Law Offices of David A. Hibben, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Credit Bureau Accounts, Inc., (Claimant).

John R Landis, Foley & Lardner, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Lepetomane, (Receiver).

John R Landis, Foley & Lardner, Chicago, IL, Attorney to be Noticed, for Capital Acquisitions and Management Corp., (Defendant).

Timothy D. McMahon, Wiedner & McAuliffe, Ltd., Chicago, IL, Attorney to be Noticed, for Andrea Barrett, (Claimant).

David A. O'Toole, Federal Trade Commission, Assistant Regional Director, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Federal Trade Commission, (Plaintiff).

Dennis E. Quaid, Fagel & Haber, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Roy Welland, (Intervenor).

Mark Lee Radtke, Shaw, Gussis, Fishman, Glantz, Wolfson & Towbin LLC, Chicago, IL, for Made Investments LLC, (Defendant).

Gregory J. Scandaglia, Scandaglia & Ryan, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Michael Seng, (Defendant).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-12326-WGY   Document 83-2   Filed 03/23/2006   Page 3 of 9

Slip Copy                                                                                                 Page 2
Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911
(Cite as: 2005 WL 3676529 (N.D.Ill.))

Michael Samuel Shapiro, Foley & Lardner, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Lepetomane, (Receiver).

John P. Sieger, Jenner & Block, LLC, Chicago, IL, for Sheridan Opportunity Fund, LP, (Defendant).

William Gibbs Sullivan, Martin, Brown & Sullivan, Ltd., Chicago, IL, Lead Attorney, Attorney to be Noticed, for Eric Woldoff, (Defendant).

Brian I. Swett, Jenner & Block, LLC, Chicago, IL, Attorney to be Noticed, for Sheridan Opportunity Fund, LP, (Defendant).

Michael P Tomlinson, Foley & Lardner, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Capital Acquisitions and Management Corp ., (Cross Defendant).

Steven Bennett Towbin, Shaw, Gussis, Fishman, Glantz, Wolfson & Towbin LLC, Chicago, IL, Lead Attorney, Attorney to be Noticed, for Made Investments LLC, (Defendant).

F. Alexis Tretter, Foley & Lardner, Chicago, IL, Attorney to be Noticed, for Lepetomane, (Receiver).

Therese Lynn Tully, Scandaglia & Ryan, Chicago, IL, Attorney to be Noticed, for Michael Seng, (Defendant).

*MEMORANDUM OPINION & ORDER*

NOLAN, Magistrate J.

*1 On December 2, 2004, plaintiff Federal Trade Commission ("FTC") sued defendants under the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 16921, to secure temporary, preliminary, and permanent injunctive relief, rescission of contracts, restitution, disgorgement, appointment of a receiver, and other equitable relief for defendants' alleged violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) and the FDCPA, 15 U.S.C. § 1692 et seq. The following day, the district court entered a temporary restraining order which appointed LePetomane XII, Inc. ("LePetomane") as Temporary **Equity Receiver** of the assets and operations of the corporate defendants Capital Acquisitions & Management Corp. ("CAMCO"), RM Financial Services, Inc., and Capital Properties Holdings, Inc. (collectively, the "Receivership Defendants"). On January 19, 2005, the district court entered the parties' Stipulated Preliminary Injunction, which continued the receivership and appointed LePetomane as Receiver, ("the Receiver"). Under both the TRO and the Stipulated Preliminary Injunction, the Receiver is empowered to "[c]hoose, engage, and employ attorneys, accountants, appraisers, and other agents or technical specialists as the Receiver deems necessary or advisable in the performance of the duties and responsibilities authorized by [the TRO and Stipulated Preliminary Injunction]." The Receiver engaged the law firm Foley & Lardner LLP ("Foley") as its counsel.

The district court has referred this matter to this court for rulings on several motions relating to attorney's fees and expenses. This matter is presently before the court for ruling on (1) the *Receiver's Second Motion for Approval and Allowance of Fees and Expenses of Foley & Lardner LLP as Counsel to the Receiver* ("Receiver's Second Fee Motion") and (2) the *Receiver's Third Motion for Approval and Allowance of Fees and Expenses of Foley & Lardner LLP as Counsel to the Receiver* ("Receiver's Third Fee Motion"). For the reasons explained below, the court grants the Receiver's Second and Third Fee Motions over the objections of defendant-intervenor Roy Welland ("Welland").

I. BACKGROUND

A brief summary of the motions and certain background facts is warranted. The Receivership Defendants, including CAMCO, were engaged in the business of purchasing and collecting consumer debts that had been charged off by the original creditors (*e.g.,* credit card, revolving charge card and installment debts). According to the FTC, the Receivership Defendants have been collecting time-barred debts since CAMCO was first incorporated in 1997, and have engaged in illegal practices in attempting to collect those debts. [FN1] The Receiver took possession of the Receivership Defendants' assets and operations on December 6, 2004. Welland, one of CAMCO's secured creditors, filed a motion to intervene in the litigation on January 13, 2005, claiming an interest in CAMCO's assets that the Receiver would be disposing of. Welland's motion to intervene was granted on January 18, 2005.

> FN1. For example, the FTC alleges that defendants threatened to take legal action when no legal action was possible, claimed to be working with government authorities and suggested the consumers would face

Case 1:04-cv-12326-WGY    Document 83-2    Filed 03/23/2006    Page 4 of 9

Slip Copy                                                                                                                                  Page 3
Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911
**(Cite as: 2005 WL 3676529 (N.D.Ill.))**

arrest or be imprisoned if they failed to pay, threatened to damage the consumers' credit reports, left threatening messages, etc.

*2 The following day, the Stipulated Preliminary Injunction was entered. The Stipulated Preliminary Injunction specifically provides that the Receiver and its attorneys and agents shall be compensated for their reasonable and necessary fees and expenses, upon application to the court and after notice to the parties.

On February 1, 2005, the Receiver filed its first fee motion, requesting approval to pay Foley $169,180.50 in fees and $7,708.16 in expenses incurred during the period from August 24, 2004 through and including December 31, 2004. Welland filed objections to the first fee motion, but on February 25, 2005, by agreed order, the court authorized payment for all of the expenses and $152,262.45 (ninety percent) of the fees requested. The agreed order further stated that the Receiver could resubmit the remaining $16,918.05 (ten percent) of the fees for further determination. (Agreed Order of 2.25.05.) [FN2]

FN2. *See* docket entry 76.

On March 25, 2005, the Receiver filed its Second Fee Motion, requesting approval to pay Foley: (a) "$114,467.50 for actual and necessary professional services performed on behalf of the Receiver from January 1, 2005 through and including January 31, 2005 (the 'Second Relevant Period')"; (b) expenses in the amount of $14,731.16 for the Second Relevant Period; and (c) the $16,918.05 in fees from the first fee motion that the district court deferred ruling on. (Second Fee Motion at 1-2.)

On April 4, 2005, four of CAMCO's creditors filed an involuntary petition in bankruptcy (Chapter 11) against CAMCO in the Bankruptcy Court of the Northern District of Illinois. [FN3] On April 14, 2004, the bankruptcy court issued an Agreed Order Authorizing Receiver to Continue its Duties under 11 U.S.C. § 543(d) as Enumerated Prepetition by the United States District Court. ("Agreed Bankruptcy Order"). Under the Agreed Bankruptcy Order, the Receiver is authorized to continue to exercise the duties and powers enumerated in the Stipulated Preliminary Injunction.

FN3. The bankruptcy case is captioned *In re Capital Acquisitions & Management Corp.*, No. 05-12554 (Bankr.N.D.Ill.).

On April 5, 2005, the district court granted the Second Fee Motion in part and continued it in part. Specifically, the district court approved payment of the $16,918.05 in fees that remained at issue from the first fee motion. To the extent the Receiver sought approval to pay fees and expenses incurred during the Second Relevant Period, the district court deferred ruling on the motion until April 7, 2005. (*See* Minute Order of 4.5.05. docket 122.) The following day, April 6, 2005, Welland filed objections to the Second Fee Motion. At the status hearing on April 7, 2005, after the district court was informed of the pending involuntary bankruptcy petition, the district court deferred ruling on the Second Fee Motion until May 11, 2005. On May 11, 2005, ruling on the Second Fee Motion was again deferred.

On June 7, 2005, the Receiver filed its Third Fee Motion, requesting approval to pay Foley: (a) "$143,722.00 for actual and necessary professional services performed on behalf of the Receiver from February 1, 2005 through and including February 28, 2005 (the 'Third Relevant Period')"; (b) expenses in the amount of $5,441.12 for the Third Relevant Period; (c) "$157,299.00 for actual and necessary professional services performed on behalf of the Receiver from March 1, 2005, through April 4, 2005 (the 'Fourth Relevant Period')"; and (d) expenses in the amount of $7,652.05 for the Fourth Relevant Period. (Third Fee Motion at 1-2.) Weller again filed objections.

*3 On June 14, 2005, the district court instructed counsel for Welland to comply with the requirements of Local Rule 54.3 if Welland intended to pursue his objections. Although Welland has pursued his objections, he has not complied with Local Rule 54.3.

On June 17, 2005, the district court referred the Second and Third Fee Motions to this court for ruling. The Receiver responded to Weller's objections to the Second and Third Fee Motions on July 12, 2005. Pursuant to this court's order, Weller filed a memorandum in support of his objections on July 25, 2005, and the Receiver filed its reply on August 1, 2005. The motions are fully briefed and ready for ruling.

II. DISCUSSION

The court has reviewed the Receiver's Second and Third Fee Motions, Welland's objections, and all of the supporting briefs. The Receiver's Second and Third Fee Motions are supported by Foley's detailed

Case 1:04-cv-12326-WGY   Document 83-2   Filed 03/23/2006   Page 5 of 9

Slip Copy                                                                      Page 4
Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911
(Cite as: 2005 WL 3676529 (N.D.Ill.))

invoices, with time entries recorded and reported in 45 different task categories and a summary of the extensive work the Receiver and its counsel have performed during the course of the Receivership. Welland, however, asserts that the attorney's fees are excessive and are disproportionate to the benefit bestowed on the receivership. [FN4] Additionally, in his final brief, Welland asserts that there is an apparent conflict of interest and that the fees are subject to the approval of the Bankruptcy Court, not this court. Finding no merit in Welland's objections, the court grants the Receiver's Second and Third Fee Motions.

> FN4. In objecting to the Second Fee Motion, Welland also objected that attorney's fees were not properly documented to allow an assessment of their reasonableness. In response to Welland's concern, Foley recategorized all of the time entries in the Second Fee Motion, categorizing work into forty-five different task categories (rather than chronologically or by attorney). Given that Welland has not challenged the documentation further, it appears he has dropped that objection. In any event, the court is satisfied with the documentation of counsel's fees and expenses. (*See* Section II.A.)

A. The Receiver Has Established A Prima Facie Case In Support of Requested Award

In seeking approval to pay Foley's fees and expenses, the Receiver must make "a prima facie case in support of the requested award." *In re Blackwood Assoc., L.P.,* 165 B.R. 108, 111 (Bankr.E.D.N.Y.1994). To do so, the Receiver needs to prepare an application from which the amount of its fees and expenses could be readily and reasonably ascertained. *In re Hunt's Health Care, Inc.,* 161 B.R. 971, 980 (Bankr.N.D.Ind.1993).

> To be proper, the application and its supporting documentation should be complete and self contained and include all of the relevant information the applicant would initially like the court to consider concerning the nature and the value of the services it provided. This requires the applicant to separately itemize and describe any expenses, the services for which compensation has been sought and the amount of time devoted to them; it must also identify each attorney or paraprofessional involved and their applicable hourly rates. Depending upon the size and complexity of the application and the range of services covered by it, this may require the applicant to separately categorize the time involved in order to ensure that the application does not become an incomprehensible mass of undifferentiated chronological data.

*Id.* In addition to describing the services rendered, the applicant should explain what results were obtained. *Id.* Provided the application contains sufficient descriptive detail, "the fee produced by the resulting lodestar calculation will, presumptively, be a reasonable one. Absent evidence to the contrary, the presumption of reasonableness should be respected and the fee generated by the lodestar calculation should be the fee awarded." *Id.*

*4 Here, the Receiver's Fee Motions are sufficiently detailed to establish a prima facie case. The Fee Motions and supporting documentation include Foley's detailed invoices which identify in descriptive detail the tasks performed, who performed each task, the person's position and billing rate, and how much time was devoted to each task. The invoices are organized into forty-five different task categories (rather than chronologically or by attorney), enabling the court to readily ascertain, for example, what work was done on general creditor matters, what work related to the sale of the debt portfolios, what work related to handling employee matters, what work related to litigation pending against CAMCO, etc. The supporting documentation also includes summaries of the work Foley performed during the relevant time period.

Additionally, the Receiver has provided an overview of the extensive work required to implement and administer the receivership, and the results obtained by the Receiver and its counsel. By way of example only, the Receiver and its counsel worked to assume control of the Receivership Defendants' assets and operations in an orderly manner, which involved taking possession of the Receivership Defendants' headquarters and remote locations. They also had to identify and evaluate the assets of the Receivership Estate, which included a large portfolio of charged-off consumer debt and an office building. By developing an innovative strategy to maximize the value of the debt portfolio, the Receiver and its counsel orchestrated a sale of the debt portfolio via public auction that yielded $2.8 million more for the Receivership Estate than a private sale was expected to yield. In addition to obtaining a premium price for the debt portfolio, the Receiver and its counsel worked to: "identify salvageable assets and close down remote facilities; issue W2 forms to employees as required by law; carry out the Receiver's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-12326-WGY   Document 83-2   Filed 03/23/2006   Page 6 of 9

Slip Copy                                                                                                                    Page 5
Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911
(Cite as: 2005 WL 3676529 (N.D.Ill.))

responsibilities to provide information to and protect the rights of consumers who have come into contact with the Receivership Defendants; represent the Estate in the District Court and before the Bankruptcy Court; manage over twenty active lawsuits against CAMCO at the direct instruction of the District Court, settling several for pre-receivership claims in order to avoid further litigation costs; and field hundreds of inquiries from former CAMCO employees, consumers and third parties asserting rights to or interest[s] in acquiring assets of the Receivership Estate...." (Receiver's Resp. to Welland's Objections at 7.) [FN5] The court finds that the Fee Motions and supporting documents more than adequately establish a prima face case, so the requested amounts are presumptively reasonable. *In re Hunt's Health Care,* 161 B.R. at 980.

FN5. *See* docket entry 190.

B. Welland's Objections

*1. The Fees & Expenses are Not Excessive*

Because of the presumption of reasonableness, as the party opposing the **fee application**, Welland "must carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence by [Welland], the opposition fails." *In re Blackwood Assoc., L.P.,* 165 B.R. 108, 112 (Bankr.E.D.N.Y.1994). "A party objecting to a **fee application** may not do so based on the general proposition that the fee sought is simply too much." *In re Hunt's Health Care,* 161 B.R. at 982; *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 570 (7th Cir.1992) ("a gestalt reaction that there was too much [time spent or that fees are excessive] ... isn't good enough"). Rather, "[t]he objector must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them." *Id.* Here, Welland has not met his burden.

*5 Welland argues that the fees are excessive. He does not direct the court to a single time entry or task that he considers unnecessary or unreasonable, nor does he challenge the reasonableness of the Foley attorneys' hourly rates, however. [FN6] Instead, Welland points to the total amounts of the attorney's fees billed each month, and claims that the attorney's fees will "unnecessarily and unjustly deplete the remaining assets of the receivership, including the assets held to pay secured creditors such as Welland." (*E.g.,* Welland Objection to Second Fee Mot. at 3.) [FN7] To support his contention, Welland calls attention to the hours one of the attorneys, Ms. Brown, devotes to the case each month. But despite Welland's suggestion to the contrary, the fact that Ms. Brown may spend a large percentage of her time working on issues relating to the receivership does not establish that the fees are excessive. As the Receiver explained in its Fee Motions, in an effort to eliminate duplication of effort, Foley gave primary responsibility for the case to Ms. Brown, staffing other attorneys on an as-needed basis. The court has no problem with Ms. Brown's hours.

> FN6. As noted earlier, the district court ordered Welland to comply with Local Rule 54.3 if he intended to pursue his objections. Among other things, Local Rule 54.3 requires a party opposing an **application** for attorney's **fees** to disclose the total amount of attorney's fees the objector has expended, to disclose counsel's time and work records, the applicable billable rates, evidence of litigation related expenses, etc. N.D. Ill. L.R. 54.3. Local Rule 54 .3 further requires the parties to provide a joint statement setting forth the total amount of fees the moving party seek, the total amount of fees/expenses the respondent deems appropriate, and to specifically describe the specific disputes remaining. *Id.* Welland, however, chose not to obey the district court's order, explaining to the Receiver that Local Rule 54.3 does not apply to Welland, because Welland is not the party from whom the movant seeks payment, and thus is not the "respondent" as defined by Local Rule 54.3. Although Welland's objections may not technically fall within the scope of Local Rule 54.3, the district court nevertheless directed Welland to comply with Local Rule 54.3--an order clearly within the district court's discretion. If Welland had a problem with that order, he should have asked the district court to reconsider, rather than unilaterally deciding not to comply. By refusing to disclose his attorney's fees and expenses, billable rates, etc., Welland not only disobeyed the district court's order, he also failed to provide any reference point from which the court could conclude that Foley's billable rates or hours are too high.

FN7. *See* docket entry 121.

Welland also contends that the fees are excessive because they are disproportionate to the benefit

Case 1:04-cv-12326-WGY   Document 83-2   Filed 03/23/2006   Page 7 of 9

Slip Copy                                                                                                                Page 6
Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911
(Cite as: 2005 WL 3676529 (N.D.Ill.))

bestowed on the receivership. Welland offers no factual basis for this argument, however, and relies on inapplicable case law. Welland, for example, points out that " 'in ordinary federal receivership cases, creditors or shareholders and their attorneys may receive compensation in the discretion of the trial judge where they benefit the receivership estate." ' *Exchange Nat'l Bank-Colo. v. Hendrickson,* No. IP-83-1821-C-B, 1996 U.S. Dist. Lexis 15623, *14 (S.D.Ind. Sept. 24, 1996) (quoting S.E.C. v. First Sec. Co. of Chicago, 528 F.2d 449, 451 (7th Cir.1976)). But that point has no bearing on the issue presented here: the Receiver is not seeking fees for work done by creditors, shareholders, or their attorneys--the Receiver is seeking compensation for *its* attorneys. [FN8] And in any event, the facts before the court demonstrate that the work done by Receiver and its counsel has benefitted the Receivership Estate substantially. (*See* Section II.A.) Welland's objections are, quite simply, misplaced.

> FN8. In its response to Welland's objections to the Second and Third Fee Motions, the Receiver distinguished each of the cases cited by Welland. Notably, in further briefing, Welland again cited those same cases, without bothering to address any of the distinctions made by the Receiver.

The court finds it unnecessary to specifically address each of Welland's arguments regarding the excessiveness of the fees, but here are some other examples. The Receiver and its counsel obtained a premium price for the sale of the debt portfolio, bringing in $2.8 million more than was expected. Welland, however, notes that the $2.5 billion debt portfolio was sold for $7.1 million. If Welland meant to imply that the Receiver and its counsel did not obtain a premium price for the debt portfolio, then Welland misunderstands the nature of charged-off consumer debt. The face value of the debt (which was $1.7 billion, not $2.5 billion, according to the Receiver) is not the amount that reasonably can be expected to be collected. If it were, the original creditor would have had no reason to charge the debt off. Charged-off consumer debt is typically collected at a small fraction of its face value, if it is even collectable. On the record before the court, it is undisputed that the Receiver and its counsel conceived of and implemented a marketing strategy for selling the debt portfolio in a public auction, which brought $2.8 million more to the Receivership Estate than a private sale was expected to yield.

*6 Welland also suggests, without supporting facts, that Foley's work on pending litigation against CAMCO was somehow wasteful. To bolster its position, Welland notes that the *Barrett* case pending in Florida "engendered substantial billing by Foley but only resulted in preparation for a trial that never occurred" and that the Receiver settled the case for three times more than the amount CAMCO had agreed to settle the same case. (Welland Mem. at 6.) [FN9] This argument is flawed. For one thing, Welland misstates the facts. As the Receiver explains, there was no agreed upon settlement amount before the Receivership commenced, and plaintiffs' counsel changed their demands substantially when they learned a receivership had been imposed on CAMCO's assets. Further, because the case did not settle until the eve of trial, the Receiver and its counsel had no choice but to prepare for trial.

> FN9. *See* docket entry 201.

None of Welland's objections rebut the presumptive reasonableness of the fees and expenses sought by the Receiver on behalf of its counsel. Welland does not challenge any specific time or billing rates, and does not even suggest what fees and expenses would be reasonable under the circumstances. *See In re Blackwood Assoc.,* 165 B.R. at 111-112; *In re Hunt's Health Care,* 161 F.R.D. at 982. His objections to Foley's fees and expenses amount to nothing more than an "unsubstantiated dissatisfaction" with the Fee Motions, and thus fail to establish that the fees and expenses are unreasonable. *In re Blackwood Assoc.,* 165 B.R. at 111. Tellingly, the FTC--the plaintiff in this matter, whose goal is to maximize the Receivership Estate in order to maximize the funds available for consumer redress--agrees that the Fee Motions are reasonable. According to the FTC, it "has reviewed the Receiver's counsels' billing statements, including comparing them to the bills for counsel to receivers and defense counsel submitted in similar matters in this District in which counsel for the FTC has been involved. After this review, the FTC is satisfied that the Foley & Lardner LLP request is reasonable." (FTC's Objections to McGuire Woods LLP's Petition for Fees at 5 n. 1.) [FN10] Because the Receiver has established a prima facie case to support its Fee Motions which Welland failed to rebut, the court, too, is satisfied that the fees and expenses requested are reasonable.

> FN10. *See* docket entry 67.

*2. There is No Conflict of Interest*

Case 1:04-cv-12326-WGY   Document 83-2   Filed 03/23/2006   Page 8 of 9

Slip Copy                                                                                          Page 7
Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911
(Cite as: 2005 WL 3676529 (N.D.Ill.))

In an argument raised for the first time in its memorandum filed on July 25, 2005, months after filing his original objections to the Second and Third Fee Motions, Welland contends that there appears to be a conflict of interest because Foley has filed appearances on behalf of both the Receiver and CAMCO. Welland further maintains that he is unable to discern which fees relate to Foley's representation of the Receiver and which relate to its representation of CAMCO. Neither of these arguments has merit. Welland fails to explain the nature of the purported conflict, ignores the fact that Foley entered its appearance on behalf of the Receivership Defendants at the district court's request, and offers no reason why Foley should not be paid for services it provided at the district court's request. Furthermore, Foley's detailed invoices delineate the services provided into forty-five different task categories, which includes separately identifying work Foley has done on each consumer or employee lawsuit against CAMCO. Welland's objections relating to Foley's work on behalf of CAMCO are unpersuasive.

3. *The Court has Authority to Approve the Fee Motions*

*7 In his final argument opposing the Second and Third Fee Motions, Welland contends that because of the pending bankruptcy case, the attorney's fees and expenses incurred prior to the bankruptcy are "a general unsecured claim pursuant to the hierarchy of priorities established by 11 U.S.C. § 507," the payment of which must be stayed under the automatic stay provisions of 11 U.S.C. § 362. Alternatively, Welland maintains that the fees and expenses are administrative expenses which are subject to approval by the bankruptcy court, not this court. Welland is incorrect on both points.

As a threshold matter, the Receiver's attorney's fees and expenses are not a general unsecured claim, they are administrative expenses under 11 U.S.C. 503(b), which have first priority for payment under § 507. 11 U.S.C. § 507(a)(1) (administrative expenses allowed under § 503(b) have first priority). The Receiver is a "custodian" as defined by § 101 of the Bankruptcy Code. 11 U.S.C. § 101(11)(A) ("custodian" includes the receiver of any property of the bankruptcy debtor appointed in a non-bankruptcy case or proceeding). As the pre-bankruptcy custodian, the Receiver can file a request for payment of its administrative expenses under § 503(a). Section 503(b)--which delineates what constitutes administrative expenses--provides that a custodian's compensation and its actual, necessary expenses are allowable administrative expenses, as are the reasonable professional fees and actual, necessary expenses incurred by the custodian's attorney. 11 U.S.C. § 503(b)(3)(E) (custodian); 11 U.S.C. § 503(b)(4) (attorney). The pre-bankruptcy attorney's fees and expenses sought by the Receiver are therefore first-priority administrative expenses under § 503(b), not a general unsecured claim against the bankruptcy debtor.

Furthermore, although Welland contends that the bankruptcy court must resolve the Fee Motions because of the automatic stay provisions of 11 U.S.C. § 362, the bankruptcy court has confirmed that Welland is incorrect. [FN11] In an order dated July 28, 2005, the bankruptcy court clarified that it need not be involved in reviewing the Receiver's Second and Third Fee Motions. (Bankr.Order of 7.28.05.) [FN12] Rather, once the court has ruled on the Fee Motions and determined the amount of fees and expenses Foley is entitled to receive, the Receiver shall present the court's ruling to the bankruptcy court for approval solely on the issue of disbursing payment. [FN13] (*Id.*) Welland's objections regarding this court's authority to resolve the Receiver's Second and Third Fee Motions are therefore overruled.

> FN11. At the hearing on July 13, 2005, the court asked the parties whether, in light of the bankruptcy proceedings, there is a stay affecting this court's ability to rule on the Fee Motions. The Receiver and Foley represented that there is no stay, and that Judge Hollis of the bankruptcy court has indicated that the bankruptcy court is willing to let the district court proceed with all hearings regarding the fees. The Receiver further represented that, in an abundance of caution, once this court rules on the Fee Motions, the Receiver will seek authorization from Judge Hollis to actually disburse the funds consistent with this court's findings. Welland's counsel, however, did not concede that this court has authority to rule on the Fee Motions. While acknowledging that the bankruptcy court did not want to be involved in the fee dispute, Welland's counsel contended that the bankruptcy court needed to resolve the Fee Motions. At that point, the Receiver stated that he would seek an order from Judge Hollis clarifying the bankruptcy court's position. The bankruptcy court's order of July 28, 2005 provides the requested clarification.

Case 1:04-cv-12326-WGY   Document 83-2   Filed 03/23/2006   Page 9 of 9

Slip Copy                                                                                   Page 8
Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911
**(Cite as: 2005 WL 3676529 (N.D.Ill.))**

FN12. *See In re Capital Acquisitions & Management Corp.,* No. 05- 12554 (Bankr.N.D.Ill.), docket entry 50.

FN13. The bankruptcy court's order states that this court may go forward as ordered by Judge Gettleman, and that Judge Gettleman may make a final determination regarding the Second and Third Fee Motions. More accurately, because Judge Gettleman referred the non-dispositive Fee Motions to this court for resolution, this court's order is the final determination unless one of the parties files written objections pursuant to Rule 72(a) of the Federal Rules of Civil Procedure within 10 days after being served with this order.

C. Fees & Expenses

Because the Receiver has established a prima facie case supporting its **applications** for attorney's **fees** and expenses and because none of Welland's objections are persuasive, the court grants the Receiver's Second and Third Fee Motions in full. Regarding the Second Fee Motion, the district court previously approved payment of $16,918.05 in fees that the Receiver sought in the Second Fee Motion. With respect to the remainder of fees and expenses at issue in the Second Fee Motion, the court approves payment of (a) $114,467.50 for actual and necessary professional services performed on behalf of the Receiver during the Second Relevant Period (January 1, 2005 through and including January 31, 2005); and (b) expenses in the amount of $14,731.16 for the Second Relevant Period. Similarly, regarding the Receiver's Third Fee Motion, the court approves payment of: (a) $143,722.00 for actual and necessary professional services performed on behalf of the Receiver from the Third Relevant Period (February 1, 2005 through and including February 28, 2005); (b) expenses in the amount of $5,441.12 for the Third Relevant Period; (c) $157,299.00 for actual and necessary professional services performed on behalf of the Receiver from the Fourth Relevant Period (March 1, 2005, through April 4, 2005); and (d) expenses in the amount of $7,652.05 for the Fourth Relevant Period. Accordingly, the court approves payment to Foley of $415,488.50 for attorney's fees and $27,824.33 for expenses, for a total of $443,312.83.

III. CONCLUSION

*8 For the reasons set forth above, the Receiver's Second and Third Fee Motions are granted in full. The court approves payment to Foley of $415,488.50 for attorney's fees and $27,824.33 for expenses, for a total of $443,312.83.

Slip Copy, 2005 WL 3676529 (N.D.Ill.), 2005-2 Trade Cases P 74,911

**Motions, Pleadings and Filings (Back to top)**

• 1:04cv07781 (Docket) (Dec. 02, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.