# EXHIBIT
# B

*A-1*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,      ) | |
|      ) | |
| Plaintiff,      ) | |
|      ) | |
| v.      ) | Civ. No. 04-12326 (WGY) |
|      ) | |
| BETTER BUDGET FINANCIAL SERVICES, INC.,      ) | |
| JOHN COLON, JR., and JULIE FABRIZIO-COLON,      ) | |
|      ) | |
| Defendants.      ) | |

## MOTION OF CUMMINGS PROPERTIES, LLC TO INTERVENE

Pursuant to Federal Rule of Civil Procedure 7(b)(1), Cummings Properties, LLC ("CPL"), not a party to this action, hereby moves as follows:

1.      To intervene in this action pursuant to Federal Rule of Civil Procedure 24(a)(2), on the ground that certain property in which CPL has a secured interest is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest.

2.      For an adjudication that CPL should not be compelled to turn over certain security deposits held by CPL pursuant to the *Ex Parte* Temporary Restraining Order entered on November 3, 2004, as amended (the "TRO"), on the ground that such security deposits are not assets of the receivership estate subject to the TRO.

3.      For an order requiring the receiver to pay from the receivership estate rent due under two commercial leases between defendants and CPL, on the ground that defendants are in arrears for rent due under those leases.

Accompanying this Motion are CPL's Rule 7.1(a)(2) Certification, Memorandum in Support hereof and Disclosure Statement.

## REQUEST FOR ORAL ARGUMENT

Cummings Properties, LLC requests that the Court schedule a hearing on this motion.

Date:   December 30, 2004                         Respectfully submitted,

Susan F. Brand, BBO# 054100
200 West Cummings Park
Woburn, MA  01801
(781) 935-8000

M:\LEGAL\ESCOBAR\BETTERBUDGETNOTICEOFMOTIONANDMOTION.DOC

2

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) |
| v. | ) |
| BETTER BUDGET FINANCIAL SERVICES, INC., JOHN COLON, JR., and JULIE FABRIZIO-COLON, | ) |
| Defendants. | ) |

Civ. No. 04-12326 (WGY)

### CUMMINGS PROPERTIES, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE

Cummings Properties, LLC ("CPL") has moved to intervene in this action, pursuant to Federal Rule of Civil Procedure 24(a), to protect itself against the court-appointed temporary receiver's attempt to wrongfully dispossess CPL of certain security deposits in which CPL has a secured interest. CPL further requests an adjudication that CPL should not be compelled, pursuant to plaintiff's *Ex Parte* Temporary Restraining Order (the "TRO"), to turn over the security deposits because they are not assets of the receivership estate subject to the TRO. CPL also requests that this Court order the receiver to pay overdue rent under two commercial leases between defendant Better Budget Financial Services, Inc. ("BBFS") and CPL. In support of its motion, CPL states as follows.

### Background

CPL and BBFS entered into a commercial lease for premises located at 800 Cummings Center, Suite 152-R, Beverly Massachusetts 01915 on May 16, 2002. A copy of that lease ("Lease A") is attached hereto as Exhibit A; *see also* Affidavit of Susan F. Brand ("Brand Aff.") at Exhibit B. The term of Lease A is September 1, 2002 through April 30, 2007, and the

premises initially consisted of approximately 4,386 square feet for executive and administrative offices and a call center. Upon execution of Lease A, the monthly rent was $7,657.17, and BBFS paid a security deposit of $15,300.00. On March 24, 2004, the lease was amended to relocate BBFS to Suite 260-T on the second floor of the same building. Under the amendment, the premises under Lease A increased to approximately 10,686 square feet. The monthly rent for Lease A also increased to $16,535.45. Upon execution of the amendment, the security deposit increased to $32,500.00, with BBFS paying CPL $17,200 in addition to the initial security deposit of $15,300.00.

On March 29, 2004, CPL entered into a separate lease ("Lease B") with Termidebt, Inc. ("Termidebt") for 4,290 square feet of executive and administrative offices at 800 Cummings Center, Suite 152-R, Beverly Massachusetts. *See* Exhibit C. The principals of Termidebt are also the principals of BBFS. *See* execution pages of Leases A and B at Exhibits A and C. The lease term is May 1, 2004 through April 30, 2008. The monthly rent is $5,005, and Termidebt paid a security deposit of $10,000. On June 9, 2004, Termidebt assigned Lease B, including its rights in the security deposit, to BBFS. CPL holds security deposits under the two leases with BBFS in the total amount of $42,500.

On or about November 2, 2004, the plaintiff, Federal Trade Commission ("FTC"), filed a complaint against the defendants, alleging violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). CPL was not served with the complaint and is not a party to this action. On November 3, 2004, the FTC filed a (Proposed) *Ex Parte* Temporary Restraining Order With Asset Freeze, Appointment of Receiver, Immediate Access to Defendants' Business Premises, Expedited Discovery, and Order to Show Cause Why a Preliminary Injunction Should Not Issue (TRO). This Court granted the TRO on that day, which, by stipulation and order dated November 18,

2

2004, has been extended until the trial date. On or about November 23, 2004, the court-appointed temporary receiver served CPL with the TRO.

On November 1, 2004, BBFS failed to pay rent under both Lease A and Lease B, and neither BBFS nor the temporary receiver has paid rent or any other charges under the leases since that time. Presently, BBFS owes CPL $35,955.88 under Lease A and $10,760.34 under Lease B, for a total of $46,716.22. *See* statements attached as Exhibit D.

CPL is informed that another entity, UniMark Solutions, Inc. ("UniMark"), without the consent as required under Lease A, is presently occupying some portion of Suite 260-T. *See* Brand Aff. at Exhibit B, para. 7. Pursuant to Sections 2 and 2.c.i. of a Stipulation Modifying Plaintiff's *Ex Parte* Temporary Restraining Order entered by the court on November 18 2004, the temporary receiver has permitted Unimark to occupy that space, and UniMark is required to pay the temporary receiver rent until the space is vacated by either BBFS or UniMark. Despite that order, the temporary receiver has not paid CPL any rent monies due.

Since the issuance of the TRO, the temporary receiver has demanded that CPL turn over the security deposits held under Lease A and Lease B to the receiver. *See* Exhibit E at 2. Counsel for CPL and the temporary receiver have attempted in good faith to reach an agreement regarding the security deposits and past due rent. *See* Local Rule 7.1(a)(2) Certification attached hereto. The parties have reached an impasse, however, with the temporary receiver insisting that CPL return the security deposits before the temporary receiver decides what it will pay as administrative rent under each lease, and CPL maintaining that it has a right to continue to hold the security deposits under the leases to apply to future damages rather than administrative rent.

3

## Argument

1.    *CPL Should Be Allowed As Of Right To Intervene To Retain Its Security Deposits.*

Rule 24 of the Federal Rules of Civil Procedure provides that:

> anyone shall be permitted to intervene in an action . . . when the
> applicant claims an interest relating to the property or transaction
> which is the subject of the action and the applicant is so situated that
> the disposition of the action may as a practical matter impair or
> impede the applicant's ability to protect that interest, unless the
> applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Although CPL is not a party to this action, it should be permitted to

intervene as a matter of right to protect its interest in the security deposits that it holds under

Lease A and Lease B. It is clear from the TRO, as modified, that the interests of CPL are not

adequately represented by any of the parties to this action, including the receiver. For example,

BBFS and the other defendants would have no interest in who holds the deposits and whether or

not they are applied to administrative rent. As plaintiff, the FTC filed the proposed TRO, asking

for a freezing of assets and the appointment of a temporary receiver. The temporary receiver has

taken a position directly contrary to CPL's, contending that CPL's security deposits are assets of

the receivership estate and has demanded that CPL turn them over to him. Accordingly, it is

clear that none of the parties adequately represents the interests of CPL. *See State of Maine v.*

*United States Fish and Wildlife Service*, 262 F.3d 13 (2001) (observing that proposed

intervenors' explanation that their interests are not adequately represented by the existing parties

must be determined "'in keeping with a commonsense view of the overall litigation.'"), *quoting*

*Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

Furthermore, the disposition of this action will likely include an adjudication that will

affect the security deposits. Unless CPL is permitted to intervene, its ability to protect its interest

in those security deposits most likely will be impeded or impaired. *See also Cotter v. Mass.*

4

*Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 34 (1st Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001) (reversing district court decision denying intervention on the ground that the intervenors had direct private interests). Because CPL's interests are not adequately represented by any of the parties and the disposition of this action might impair or impede its interests in the security deposits, CPL's motion to intervene as a matter of right should be granted. *See* Fed. R. Civ. P. 24(a)(2).

      2.    *The Turnover of CPL's Security Deposits Is Not Required By The TRO.*

      As stated above, the temporary receiver has taken the position that the security deposits are assets of the receivership estate and thus subject to the TRO. He points to the definition of "asset" and other sections that purportedly give him the authority to seize CPL's security deposits. The TRO, however, does not support his untenable position.

      A.    *CPL's Security Deposits Are Not Receivership Assets.*

      The TRO's definition of "asset" enumerates several discrete interests, including "chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, premises, mail or other deliverables, shares of stock, lists of consumer names, inventory, checks, notes, accounts, credits, receivables, funds, and all cash, wherever located." *See* TRO at 3. On its face, the definition does not include a "security deposit" held by a commercial landlord under a lease. In fact, nowhere in its 37 pages does the TRO expressly refer to or mention "security deposit." The only category of asset in the TRO that the temporary receiver has argued applies is "leasehold," which does not mean a security deposit. *See, e.g.*, http://www.dictionary.com (defining "leasehold" as land or property held under a lease).

      The BBFS deposits were deposited in CPL's general operating account, not an escrow account, do not bear interest and may not be accessed by BBFS until after the lease ends, subject

to satisfactory compliance with the terms of the lease.  *See* Brand Aff. At Exhibit B, para. 8;

Exhibit A, Section 2.  "Historically, a security deposit has been considered as a reserve held by

the landlord against any loss of rent, damage to the premises or breach of any covenant of the

lease or transaction."  G. Warshaw, Massachusetts Landlord-Tenant Law § 10.1 at 306 (1987).

While Massachusetts has enacted legislation that broadly defines a landlord's control over

security deposits, including a requirement that the deposit go into an interest-bearing escrow

account which the landlord's creditors cannot reach, the statute applies only to *residential*

*tenancies*, not commercial leases such as BBFS's. G. L. c. 186, § 15B(1)(e), (3)(a).  *See Kollins*

*v. Cohen*, 1999 Mass. Super. LEXIS 315, *18 (1999) (explaining that G.L. c. 186 § 15B has no

application to a commercial tenancy or other non-residential situations), *citing Shwachman v.*

*Khoroshansky*, 15 Mass. App. Ct. 1002 (1983).  Although the position taken by the temporary

receiver may have some weight in the context of a residential tenancy, it simply does not apply

to a commercial tenancy and the status of a commercial security deposit under Massachusetts

law.  *Id.*[1]

     Moreover, a landlord's secured possessory interest in a security deposit is well recognized

in bankruptcy law.  The Bankruptcy Code treats security deposits as secured assets that a

landlord may use to satisfy pre-petition and lease rejection obligations, and security deposits

have been deemed to be secured interests of the landlord to the extent that they do not exceed a

---

[1] *See also Waylyn Corp. v. Casalduc*, 219 F.2d 888 (1st Cir. 1955). There, in a mortgage foreclosure action against a landlord, the court appointed a receiver, who adopted the leases held by the landlord and demanded that the landlord turn over all of its security deposits. When the landlord refused, the district court ordered the landlord to turn them over to "secure payment of rent and the compliance with the terms of the lease contracts adopted by the receiver." 219 F.2d at 889-90. On appeal by the landlord, the First Circuit Court of Appeals dismissed the appeal on the ground that the district court's order was interlocutory and thus not subject to appeal. *Id.* Here, as in the *Waylyn* case, the security deposits are being held by CPL to secure payment of rent and compliance with the terms of the lease contracts. While they were assets of the receivership estate in *Waylyn*, that was because the receivership was over the landlord and not the tenant, as in the case at hand. The security deposits cannot be construed as assets of both the landlord and the tenant.

landlord's allowable claim. *See* 11 U.S.C. § 502 (b) (6) and reporter's notes; *Oldden v. Tonto Realty Corp.*, 143 F.2d 916 (2d Cir. 1944) (holding that a landlord's security deposit may be deducted from allowed claim in bankruptcy); *ITXS, Inc. v. F&S Hayward, LLC*, No. 03-3082-MBM, slip op. at 8 (U.S.D.C. W.D. Pa. Dec. 13, 2004) (ruling that a landlord's security deposit constitutes, as a matter of law, a perfected security interest or lien in landlord's favor*); In re Johnson*, 215 B.R. 381, 384 (N.D. Ill. 1997) (holding landlord's interest in security deposit akin to a lien); *In re Atlanta Times, Inc.*, 259 F. Supp. 820, 827-28 (N.D. Ga. 1966) (finding that equipment lessor had a perfected security interest in security deposit that it held*): In re K&R Mining, Inc.*, 105 B.R. 394, 397 (N.D. Ohio 1989), *quoting In re Burnside Steel Foundry Co.*, 90 B.R. 942, 944 (N.D. Ill. 1988) (holding that one who obtains a retainer of money is like a landlord who obtains a security deposit in the sense that both hold a possessory security interest in cash); *Brooks Shoe Mfg. Co., Inc. v. United Telephone Co.*, 39 B.R. 980, 982 (E.D. Pa. 1984) (finding that utility company's possession of a security deposit created a perfected security interest in such deposit); *In re Northeastern Int'l Airways, Inc.*, 99 B.R. 487, 488-89 (S.D. Fla. 1989) (holding creditor had a perfected possessory security interest in a security deposit that it held).

Based upon the foregoing authorities, particularly where CPL retains a possessory interest in the security deposits, CPL's security deposits are not subject to the TRO and need not be turned over to the receiver.

    B.    *The TRO Does Not Require Turnover of the Security Deposits.*

The TRO is directed primarily at the conduct of the *defendants* and specifically enjoins them from engaging in prohibited activities.    *See, e.g.*, TRO at Section I ("Prohibited

Misrepresentations"); Section II ("Prohibited Business Practices"); Section III ("Web Hosting");

Section IV ("Asset Freeze"); and Section V ("Customer Lists").

To the extent that other sections of the TRO apply to third parties, the temporary receiver

has pointed to no section that applies to CPL's retention of its security deposit. The temporary

receiver has cited Section VI, Section XVIII and Section XIX as the bases for the turnover of

CPL's security deposits. Section VI, which is captioned "Retention of Assets and Records Held

by Third Parties," is directed to any "person" that "holds, controls or maintains custody of any

account or asset of any Defendant . . . . " Because the term "asset" does not include security

deposits, and because CPL does not maintain any account or asset for any defendant, that section

does not apply to CPL.

Section XVIII of the TRO, captioned "Delivery of Receivership Property," requires third

parties to transfer or deliver to the temporary receiver possession, custody and control of "all

assets, all property, owned beneficially or otherwise, wherever situated, of the Receivership

Defendants." That section does not apply to CPL, again because CPL maintains no assets of

BBFS, and further because the security deposits are not beneficially owned by any of the

defendants. *See, e.g.,* Black's Law Dictionary 156 (6th ed. 1990) (defining "beneficial owner" as

one who does not have title to the property but has rights in the property which are the "normal

incidents of owning the property"); 17 C.F.R. § 240.13d-3(1)(a) (1991) (defining "beneficial

ownership" as any person who has "voting power" or "investment power" of securities, such as

stock); *Young v. Paquette,* 341 Mass. 67 (1960) (explaining that surviving joint tenant acquires

full legal and beneficial ownership on co-tenant's death); *Moscatiello v. Board of Assessors of

Boston,* 36 Mass. App. Ct. 622 (1994) (finding that because trust had legal ownership of

property, principal resident, who was the beneficial owner, could not claim residential

8

exemption); *Barclay v. Deveau*, 11 Mass. App. Ct. 236 (1981) (holding that condominium owners had proportionate interest in management and were not simply "beneficial" owners with no voice in management).

Finally, Section XIX of the TRO, captioned "Transfer of Funds to the Temporary Receiver," is directed only to "banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions," and so does not apply to CPL because CPL is not one of the listed institutions.

In light of the fact that the TRO does not mention security deposits, as well as the failure of the receiver to pay outstanding rents due under the leases, the receiver's actions in attempting to invoke the TRO over CPL's security deposits should be denied as overreaching.[2]

4.    *The Temporary Receiver Should Be Ordered to Pay CPL All Rents and Other Charges Due Under The Leases.*

It is well settled that for the purpose of determining the respective rights under a request for injunctive relief, court should weigh the equities of the parties affected.  *See generally Federal Trade Comm'n v. Warner Communications, Inc.* 742 F.2d 1156 (9th Cir. 1984) (opining that court should balance equities among the parties in deciding whether to grant preliminary injunction); *Federal Trade Comm'n v. Weyerhaeuser Co.*, 648 F.2d 739 (D.C. Cir. 1981) (holding that private equities may be considered in a motion for injunctive relief).  Since the

---

[2] In an action involving another federal regulatory agency, the Federal Deposit Insurance Corporation ("FDIC"), CPL was similarly up against a receiver attempting to negate CPL's rights under a commercial lease. *See Cummings Properties, Management, Inc. v. Federal Deposit Ins. Corp.*, 786 F. Supp. 144, 146 (D. Mass. 1992). There the FDIC, as receiver of a failed bank, attempted to remove an automatic teller machine (ATM) from premises leased by the bank from CPL.  CPL moved for a preliminary injunction on the ground that the ATM was a leasehold improvement or fixture under the terms of the lease and Massachusetts law.  The FDIC argued that 12 U.S.C. § 1821(j), which confers broad powers upon the FDIC in receivership actions, gave it the unfettered right to remove the ATM.  Rejecting the FDIC's broad interpretation of its statutory authority, the district court granted CPL's motion, ruling that whether the ATM is a fixture was an issue appropriate for judicial review and stating further that the statute "does not elevate FDIC to the position of a sacred cow which may graze upon the rights of others at will, unchecked by the courts."  786 F. Supp. at 145-46.  Similarly, CPL urges this Court to prevent the FTC and its temporary receiver from "graz[ing] upon" CPL's rights in this action.

commencement of this action and issuance of the TRO, neither BBFS nor the receiver has paid CPL any rent due under Leases A and B, although the receiver is in possession of both leased premises. Moreover, although UniMark is in possession of Suite 260-T at the premises, it has not paid CPL rent and the temporary receiver has not paid any rents owed, notwithstanding that the TRO requires UniMark to pay rent to the receiver. *See* Stipulation Modifying TRO, at para. 2.c.i. As of December 1, 2004, CPL has lost at least $46,716.22 and continues to sustain damages. *See* Exhibit D. Another $21,540.45 in rent will be due January 1, 2005 under Leases A and B. It is manifestly unfair and inequitable that the temporary receiver is withholding rent due under both leases, where he is in possession of the leased premises. Thus, CPL requests that this Court order the temporary receiver to pay to CPL all monies due under each lease as administrative expenses of the receivership. *See also* 11 U.S.C. § 502 (b) (6); § 503 (a)-(b).

## Conclusion

The FTC and its temporary receiver have overreached their authority in demanding that CPL turn over its security deposits rightfully held under two leases. CPL has a possessory interest in those security deposits, which are not part of the receivership estate. Since November 2004, moreover, CPL has not been paid rent that rightfully belongs to it under those leases, despite the receiver's possession of the premises. Accordingly, CPL respectfully moves to intervene in this action to protect itself against the FTC, its receiver and the TRO, and also moves for an order requiring the receiver to pay CPL overdue rent in an amount not less than $46,716.22.

Dated: December 31, 2004

Susan F. Brand, BBO# 054100
200 West Cummings Park
Woburn, MA  01801
(781) 935-8000

\\CPL-FP\ACCOUNTING\LEGAL\ESCOBAR\!BETTERBUDGETMEMOINSUPPORTOFMOTION.DOC

10

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Civ. No. 04-12326 (WGY) |
| BETTER BUDGET FINANCIAL SERVICES, INC., | ) |
| JOHN COLON, JR., and JULIE FABRIZIO-COLON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**CERTIFICATE OF SERVICE**

    I, Susan F. Brand, hereby state that on this date I caused to be served on all parties of record the enclosed Motion of Cummings Properties, LLC to Intervene, Local Rule 7.1(a)(2) Certification, Cummings Properties, LLC's Memorandum in Support of Its Motion to Intervene, Disclosure Statement, Motion for Admission to Practice *Pro Hac Vice* and form of Order, Certificate of Good Standing in Support of Motion for Admission to Practice *Pro Hac Vice*, and Notice of Appearance.

Dated:  December 31, 2004

 

                                    _Susan Brand_
                                   Susan F. Brand, BBO# 054100
                                   200 West Cummings Park
                                   Woburn, MA  01801
                                   (781) 935-8000

 

                            M:\LEGAL\ESCOBAR\BETTERBUDGETCERTOFSERVICE.DOC

Case 1:04-cv-12326-WGY     Document 41-2     Filed 01/03/2005     Page 2 of 25

CUMMINGS PROPERTIES, LLC

B-0202038-JCS-A

STANDARD FORM

# COMMERCIAL LEASE

In consideration of the covenants herein contained, Cummings Properties, LLC, hereinafter called LESSOR, does hereby lease to _Better Budget Financial Services, Inc. (a MA Corp.), 434 Rantoul Street, Beverly, MA 01915_ hereinafter called LESSEE, the following described premises, hereinafter called the leased premises: _approximately 4,386 square feet_ _(including 15.4% common area) at 800 Cummings Center, Suite 152-R, Beverly, MA 01915_

**TO HAVE AND HOLD** the leased premises for a term of _____ five (5) years _____ commencing at noon on _September 1, 2002_ _____ and ending at noon on _August 30, 2007_ _____ unless sooner terminated as herein provided. LESSOR and LESSEE now covenant and agree that the following terms and conditions shall govern this lease during the term hereof and for such further time as LESSEE shall hold the leased premises or any portion thereof.

**1. RENT.** LESSEE shall pay to LESSOR base rent at the rate of _ninety one thousand, eight hundred eighty six  (91,886)_ U.S. dollars per year, drawn on a U.S. bank, payable in advance in monthly installments of _$7,657.17_ _____ on the first day in each calendar month. The first monthly payment, plus an appropriate fraction of a monthly payment for any portion of a month at the commencement of the lease term, shall be made upon LESSEE's execution of this lease. All payments shall be made to LESSOR or agent at 200 West Cummings Park, Woburn, Massachusetts 01801, or at such other place as LESSOR shall from time to time in writing designate. If the "Cost of Living" has increased as shown by the Consumer Price Index (Boston, Massachusetts, all items, all urban consumers), U.S. Bureau of Labor Statistics, the amount of base rent due during each calendar year of this lease and any extensions thereof shall be annually adjusted in proportion to any increase in the Index. All such adjustments shall take place with the rent due on January 1 of each year during the lease term.  The base month from which to determine the amount of each increase in the Index shall be January _2002_, which figure shall be compared with the figure for November _2002_, and each November thereafter to determine the percentage increase (if any) in the base rent to be paid during the following calendar year. In the event the Consumer Price Index as presently computed is discontinued as a measure of "Cost of Living" changes, any adjustment shall then be made on the basis of a comparable index then in general use.

**2. SECURITY DEPOSIT.** LESSEE shall pay to LESSOR a security deposit in the amount of _fifteen thousand three hundred_   (15,300) U.S. dollars upon the execution of this lease by LESSEE, which shall be held as security for LESSEE's performance as herein provided and refunded to LESSEE without interest at the end of this lease, subject to LESSEE's satisfactory compliance with the conditions hereof.  LESSEE may not apply the security deposit to any payment due under the lease. In the event of any default or breach of this lease by LESSEE, however, LESSOR may elect to apply the security deposit first to reduce any unamortized improvements completed for LESSEE's occupancy, then to offset any outstanding invoice or other payment due to LESSOR, and then to outstanding rent. If all or any portion of the security deposit is applied to cure a default or breach during the term of the lease, LESSEE shall restore said deposit forthwith. LESSEE's failure to remit the full security deposit or any portion thereof or to restore said deposit when due shall constitute a substantial lease default. Until such time as LESSEE pays the security deposit and first month's rent, LESSOR may declare this lease null and void for failure of consideration.

**3. USE OF PREMISES.** LESSEE shall use the leased premises only for the purpose of _executive and administrative_ _offices and call center_ _____

**4. ADDITIONAL RENT.** LESSEE shall pay to LESSOR as additional rent a proportionate share (based on square footage leased by LESSEE as compared with the total leaseable square footage of the building or buildings of which the leased premises are a part (hereinafter called the building)) of any increase in the real estate taxes levied against the land and building, whether such increase is caused by an increase in the tax rate, or the assessment on the property, or a change in the method of determining real estate taxes. LESSEE shall make payment within 30 days after receipt of any invoice from LESSOR, and any additional rent shall be prorated should the lease terminate before the end of any tax year. The base from which to determine the amount of any increase in taxes shall be the rate and the assessment in effect as of July 1, _2002_.

**5. UTILITIES.** LESSOR shall provide equipment per LESSOR's building standard specifications to heat the leased premises in season and to cool all office areas between May 1 and November 1. LESSEE shall pay all charges for utilities used on the leased premises, including electricity, gas, oil, water and sewer, and shall use whichever utility service provider LESSOR shall designate from time to time. LESSEE shall pay the utility provider or LESSOR, as applicable, for all such utility charges as determined by separate meters serving the leased premises and/or as a proportionate share of the utility charges for the building if not separately metered. LESSEE shall also pay LESSOR a proportionate share of any other fees and charges relating in any way to utility use at the building.

**6. COMPLIANCE WITH LAWS.** LESSEE acknowledges that no trade, occupation, activity or work shall be conducted in the leased premises or use made thereof which may be unlawful, improper, noisy, offensive, or contrary to any applicable statute, regulation, ordinance or bylaw.  LESSEE shall keep all employees working in the leased premises covered by Worker's Compensation Insurance and shall obtain any licenses and permits necessary for LESSEE's use and occupancy. LESSEE shall be responsible for causing the leased premises and any alterations by LESSEE allowed hereunder to be in full compliance with any applicable statute, regulation, ordinance or bylaw.

**7. FIRE, CASUALTY, EMINENT DOMAIN.** Should a substantial portion of the leased premises, or of the property of which they are a part, be substantially damaged by fire or other casualty, or be taken by eminent domain, LESSOR may elect to terminate this lease. When such fire, casualty, or taking renders the leased premises substantially unsuitable for their intended use, a proportionate abatement of rent shall be made, and LESSEE may elect to terminate this lease if: (a) LESSOR fails to give written notice within 30 days of intention to restore the leased premises; or (b) LESSOR fails to restore the leased premises to a condition substantially suitable for their intended use within 90 days of said fire, casualty or taking. LESSOR reserves all rights for damages or injury to the leased premises for any taking by eminent domain, except for damage to LESSEE's property or equipment.

**8. FIRE INSURANCE.** LESSEE shall not permit any use of the leased premises which will adversely affect or make voidable any insurance on the property of which the leased premises are a part, or on the contents of said property, or which shall be contrary to any law, regulation or recommendation from time to time made by the Insurance Services Office (or successor organization), state fire prevention agency, local fire department, LESSOR's insurer, or any similar entity. LESSEE shall on demand reimburse LESSOR and all other tenants all extra insurance premiums caused by LESSEE's use of the leased premises. LESSEE shall not vacate the leased premises or permit same to be unoccupied other than during LESSEE's customary non-business days or hours.

9.  **MAINTENANCE OF PREMISES.** LESSOR will be responsible for all structural maintenance of the leased premises and for the normal daytime maintenance of all space heating and cooling equipment, sprinklers, doors, locks, plumbing, and electrical wiring, but specifically excluding damage caused by the careless, malicious, willful, or negligent acts of LESSEE or others, chemical, water or corrosion damage from any source, and maintenance of any "non-building standard" leasehold improvements, whether installed by LESSOR, LESSEE or a prior occupant. LESSEE agrees to maintain at its expense all other aspects of the leased premises in the same condition as they are at the commencement of the term or as they may be put in with LESSOR's written consent during the term of this lease, normal wear and tear and damage by fire or other casualty only excepted, and whenever necessary, to replace light bulbs and glass, acknowledging that the leased premises are now in good order and the light bulbs and glass whole. LESSEE shall at all times properly control and vent all solvents, degreasers, radioactive materials, smoke, odors, and any other materials that may be harmful, and shall not cause the area surrounding the leased premises or any other common area as defined below to be in anything other than a neat and clean condition, depositing all waste in appropriate receptacles. LESSEE shall be solely responsible for any damage to plumbing equipment, sanitary lines, or any other portion of the building which results from the discharge or use of any substance by LESSEE. LESSEE shall not permit the leased premises to be overloaded, damaged, stripped or defaced, nor suffer any waste, and will not keep animals within the leased premises. If the leased premises include any wooden mezzanine type space, the floor capacity of such space is suitable only for office use, light storage or assembly work. LESSEE will protect any carpet with plastic or Masonite chair pads under any rolling chairs. Unless heat is provided at LESSOR's expense, LESSEE shall maintain sufficient heat to prevent freezing of pipes or other damage. Any increase in air conditioning equipment or electrical capacity, or any installation or maintenance of equipment which is necessitated by some specific aspect of LESSEE's use of the leased premises, whether installed by LESSOR, LESSEE or a prior occupant, shall be LESSEE's sole responsibility, at LESSEE's expense and subject to LESSOR's prior written consent. All maintenance provided by LESSOR shall be during LESSOR's normal business hours.

10.  **ALTERATIONS.** LESSEE shall not make structural alterations or additions of any kind to the leased premises, but may make nonstructural alterations with LESSOR's prior written consent. All such allowed alterations shall be at LESSEE's expense and shall conform with LESSOR's construction specifications. If LESSOR or its agent provides any services or maintenance for LESSEE in connection with such alterations or otherwise under this lease, including any maintenance or repairs LESSEE is required but has failed to do, LESSEE will promptly pay any just invoice. LESSEE shall not permit any mechanics' liens, or similar liens, to remain upon the leased premises in connection with work of any character performed or claimed to have been performed at the direction of LESSEE and shall cause any such lien to be released or removed forthwith without cost to LESSOR. Any alterations or additions shall become part of the leased premises and the property of LESSOR. Any alterations completed by LESSOR or LESSEE shall be LESSOR's building standard unless noted otherwise. LESSOR shall have the right at any time to make additions to the building, change the arrangement of parking areas, stairs, or walkways or otherwise alter common areas as defined below or the exterior of the building.

11.  **ASSIGNMENT OR SUBLEASING.** LESSEE shall not assign this lease or sublet or allow any other entity or individual to occupy the whole or any part of the leased premises without LESSOR's prior written consent in each and every instance. In no case may LESSEE assign this lease or sublet the leased premises to any other current or prospective tenant of LESSOR, or any affiliate of such current or prospective tenant. Notwithstanding LESSOR's consent to any assignment or subleasing, LESSEE and GUARANTOR shall remain liable to LESSOR for the payment of all rent and for the full performance of all covenants and conditions of this lease. LESSEE shall pay LESSOR for legal and administrative expenses incurred by LESSOR in connection with any consent requested hereunder by LESSEE.

12.  **SUBORDINATION.** This lease shall be subject and subordinate to any and all mortgages and other instruments in the nature of a mortgage, now or at any time hereafter, and LESSEE shall, when requested, promptly execute and deliver such written instruments as shall be necessary to show the subordination of this lease to said mortgages or other such instruments in the nature of a mortgage.

13.  **LESSOR'S ACCESS.** LESSOR and its agents and designees may at any reasonable time enter to view the leased premises; to show the leased premises to others; to make repairs and alterations as LESSOR or its designee should elect to do for the leased premises, the common areas, or any other portions of the building; and without creating any obligation or liability for LESSOR, to make repairs which LESSEE is required but has failed to do.

14.  **SNOW REMOVAL.** The plowing of snow from all roadways and unobstructed parking areas shall be at the sole expense of LESSOR. The control of snow and ice on all walkways, steps and loading areas serving the leased premises and all other areas not readily accessible to plows shall be the sole responsibility of ~~LESSEE~~. Notwithstanding the foregoing, however, LESSEE shall hold LESSOR and OWNER harmless from any and all claims by LESSEE's
    *LESSOR
employees, agents, callers or invitees for damage or personal injury resulting in any way from snow or ice on any area serving the leased premises.

15.  **ACCESS AND PARKING.** Unless otherwise provided herein, LESSEE shall have the right without additional charge to use parking facilities provided for the leased premises in common with others entitled to the use thereof. Said parking areas plus any stairs, corridors, walkways, elevators or other common areas (herein collectively called the common areas) shall in all cases be considered a part of the leased premises when they are used by LESSEE or LESSEE's employees, agents, callers or invitees. LESSEE will not obstruct in any manner any portion of the building or the walkways or approaches to the building, and will conform to all rules and regulations now or hereafter made by LESSOR for parking, and for the care, use, or alteration of the building, its facilities and approaches. LESSEE further warrants that LESSEE will not permit any employee or visitor to violate this or any other covenant or obligation of LESSEE. No unattended parking will be permitted between 7:00 PM and 7:00 AM without LESSOR's prior written approval, and from November 15 through April 15 annually, such parking shall be permitted only in those areas specifically designated for assigned overnight parking. Unregistered or disabled vehicles, or storage trailers of any type, may not be parked at any time. LESSOR may tow, at LESSEE's sole risk and expense, any misparked vehicle belonging to LESSEE or LESSEE's employees, agents, callers or invitees, at any time. LESSOR does not provide and shall not be responsible for providing any security services.

16.  **LIABILITY.** LESSEE shall be solely responsible as between LESSOR and LESSEE for deaths or personal injuries to all persons whomsoever occurring in or on the leased premises (including any common areas that are considered part of the leased premises hereunder) from whatever cause arising, and damage to property, including damage by fire or other casualty, to whomsoever belonging arising out of the use, control, condition or occupation of the leased premises by LESSEE; and LESSEE agrees to indemnify and save harmless LESSOR and OWNER from any and all liability, including but not limited to costs, expenses, damages, causes of action, claims, judgments and attorney's fees caused by or in any way growing out of any matters aforesaid, except for death, personal injuries or property damage directly resulting from the sole negligence of LESSOR.

17.  **INSURANCE.** LESSEE will secure and carry at its own expense a commercial general liability policy insuring LESSEE, LESSOR and OWNER against any claims based on bodily injury (including death) or property damage arising out of the condition of the leased premises (including any common areas that are considered part of the leased premises hereunder) or their use by LESSEE, including damage by fire or other casualty, such policy to insure LESSEE, LESSOR and OWNER against any claim up to $1,000,000 in the case of any one accident involving bodily injury (including death), and $1,000,000 against any claim for damage to property. LESSOR and OWNER shall be included in each such policy as additional insureds using ISO Form CG 20 26 11 85 or some other form approved by LESSOR, and each such policy shall be written by or with a company or companies satisfactory to LESSOR. Prior to occupancy, LESSEE will deliver to LESSOR certificates and any applicable riders or endorsements showing that such insurance is in force, and thereafter will provide renewal certificates at least 15 days prior to the expiration of any such policies. All such insurance certificates shall provide that such policies shall not be cancelled without at least 10 days prior written notice to each insured. In the event LESSEE fails to provide or maintain such insurance at any time during the term of this lease, LESSOR may elect to contract for such insurance at LESSEE's expense.

18.  **SIGNS.** LESSOR authorizes, and LESSEE at LESSEE's expense agrees to erect promptly upon commencement of this lease, signage for the leased premises in accordance with LESSOR's building standards for style, size, location, etc. LESSEE shall obtain the prior written consent of LESSOR before erecting any sign on the leased premises, which consent shall include approval as to size, wording, design and location. LESSOR may at LESSEE's expense remove and dispose of any sign not approved, erected, maintained or displayed in conformance with this lease.

**19. BROKERAGE.** LESSEE warrants and represents to LESSOR that LESSEE has dealt with no broker or third person with respect to this lease, and LESSEE agrees to indemnify LESSOR against any brokerage claims arising by virtue of this lease. LESSOR warrants and represents to LESSEE that LESSOR has employed no exclusive broker or agent in connection with the letting of the leased premises.

**20. DEFAULT AND ACCELERATION OF RENT.** In the event that: (a) any assignment for the benefit of creditors, trust mortgage, receivership or other insolvency proceeding shall be made or instituted with respect to LESSEE or LESSEE's property; (b) LESSEE shall default in the observance or performance of any of LESSEE's covenants, agreements, or obligations hereunder, and such default shall not be corrected within 10 days after written notice thereof; or (c) LESSEE vacates the leased premises, then LESSOR shall have the right thereafter, while such default continues and without demand or further notice, to re-enter and take possession of the leased premises, to declare the term of this lease ended, and to remove LESSEE's effects, without being guilty of any manner of trespass or conversion, and without prejudice to any remedies which might be otherwise used for arrears of rent or other default or breach of the lease. If LESSEE shall default in the payment of the security deposit, rent, taxes, or substantial invoice from LESSOR or LESSOR's agent for goods and/or services or other sum herein specified, and such default shall continue for 10 days after written notice thereof, and, because both parties agree that nonpayment of said sums when due is a substantial breach of the lease, and, because the payment of rent in monthly installments is for the sole benefit and convenience of LESSEE, then, in addition to any other remedies, the entire balance of rent due hereunder shall become immediately due and payable as liquidated damages. LESSOR, without being under any obligation to do so and without thereby waiving any default, may remedy same for the account and at the expense of LESSEE. If LESSEE pays or incurs any obligations for the payment of money in connection therewith, such sums paid or obligations incurred, plus interest and costs, shall be paid to LESSOR by LESSEE as additional rent. Any sums received by LESSOR from or on behalf of LESSEE at any time shall be applied first to any unamortized improvements completed for LESSEE's occupancy, then to offset any outstanding invoice or other payment due to LESSOR, and then to outstanding rent. LESSEE agrees to pay reasonable attorney's fees and/or administrative costs incurred by LESSOR in enforcing any or all obligations of LESSEE under this lease at any time. LESSEE shall pay LESSOR interest at the rate of 18 percent per annum on any payment from LESSEE which is past due.

**21. NOTICE.** Any notice from LESSOR to LESSEE relating to the leased premises or to the occupancy thereof shall be deemed duly served when left at the leased premises, or served by constable, or sent to the leased premises or to the last address designated by notice in accordance with this section, by certified or registered mail, return receipt requested, postage prepaid, or by recognized courier service with a receipt therefor, addressed to LESSEE. Any notice from LESSEE to LESSOR relating to the leased premises or to the occupancy thereof shall be deemed duly served when served by constable, or delivered to LESSOR by certified or registered mail, return receipt requested, postage prepaid, or by recognized courier service with a receipt therefor, addressed to LESSOR at 200 West Cummings Park, Woburn, MA 01801 or at LESSOR's last designated address. No oral notice or representation shall have any force or effect. Time is of the essence in the service of any notice.

**22. OCCUPANCY.** In the event that LESSEE takes possession of the leased premises prior to the start of the lease term, LESSEE will perform and observe all of its covenants from the date upon which it takes possession. LESSEE shall not remove its goods or property from the leased premises other than in the ordinary and usual course of business, without having first paid LESSOR all rent which may become due during the entire term of this lease. LESSOR may require LESSEE to relocate to another similar facility upon prior written notice to LESSEE and on terms comparable to those herein. In the event that LESSEE continues to occupy or control all or any part of the leased premises after the termination of this lease without the written permission of LESSOR, LESSEE shall be liable to LESSOR for any and all loss, damages or expenses incurred by LESSOR, and all other terms of this lease shall continue to apply, except that use and occupancy payments shall be due in full monthly installments at a rate of 150 percent of the monthly rent due under this lease immediately prior to termination or at LESSOR's then current published rent for the leased premises, whichever is greater, it being understood that such extended occupancy is a tenancy at sufferance, solely for the benefit and convenience of LESSEE and of greater rental value. LESSEE's control or occupancy of all or any part of the leased premises beyond noon on the last day of any monthly rental period shall constitute LESSEE's occupancy for an entire additional month, and increased payment as provided in this section shall be due and payable immediately in advance. LESSOR's acceptance of any payments from LESSEE during such extended occupancy shall not alter LESSEE's status as a tenant at sufferance.

**23. FIRE PREVENTION.** LESSEE agrees to use every reasonable precaution against fire, and agrees to provide and maintain approved, labeled fire extinguishers, emergency lighting equipment, and exit signs and complete any other modifications within the leased premises as required or recommended by the Insurance Services Office (or successor organization), OSHA, the local fire department, LESSOR's insurer or any similar entity.

**24. OUTSIDE AREA.** Any goods, equipment, or things of any type or description held or stored in any common area without LESSOR's prior written consent shall be deemed abandoned and may be removed by LESSOR at LESSEE's expense without notice. LESSEE shall maintain a building standard size dumpster in a location approved by LESSOR, which dumpster shall be provided and serviced at LESSEE's expense by whichever disposal firm LESSOR may designate from time to time. Alternatively, if a shared dumpster or compactor is provided by LESSOR, LESSEE shall pay the disposal firm or LESSOR, as applicable, LESSEE's proportionate share of any costs associated therewith.

**25. ENVIRONMENT.** LESSEE will so conduct and operate the leased premises as not to interfere in any way with the use and enjoyment of other portions of the same or neighboring buildings by others by reason of odors, smoke, exhaust, smells, noise, pets, accumulation of garbage or trash, vermin or other pests, or otherwise, and will at its expense employ a professional pest control service if necessary. LESSEE agrees to maintain efficient and effective devices for preventing damage to plumbing and heating equipment from solvents, degreasers, cutting oils, propellants, acids, etc. which may be present at the leased premises. No hazardous materials or wastes shall be stored, disposed of, or allowed to remain at the leased premises at any time, and LESSEE shall be solely responsible for any and all corrosion or other damage in any way associated with the use, storage and/or disposal of same by LESSEE.

**26. RESPONSIBILITY.** Neither LESSOR nor OWNER shall be held liable to anyone for loss or damage caused in any way by the use, leakage, seepage or escape of water from any source, or for the interruption or cessation of any service rendered customarily to the leased premises or building or agreed to by the terms of this lease, or due to any accident, the making of repairs, alterations or improvements, labor difficulties, weather conditions, mechanical breakdowns, trouble or scarcity in obtaining fuel, electricity, service or supplies from the sources from which they are usually obtained for the building, or due to any change in any utility or service provider, or any cause beyond LESSOR's immediate control.

**27. SURRENDER.** LESSEE shall at the termination of this lease remove all of LESSEE's goods and effects from the leased premises. LESSEE shall deliver to LESSOR the leased premises and all keys and locks thereto, all fixtures and equipment connected therewith, and all alterations, additions and improvements made to or upon the leased premises, whether completed by LESSEE, LESSOR or others, including but not limited to any offices, partitions, window blinds, floor coverings (including computer floors), plumbing and plumbing fixtures, air conditioning equipment and ductwork of any type, exhaust fans or heaters, water coolers, burglar alarms, telephone wiring, telephone equipment, air or gas distribution piping, compressors, overhead cranes, hoists, trolleys or conveyors, counters, shelving or signs attached to walls or floors, and all electrical work, including but not limited to lighting fixtures of any type, wiring, conduit, EMT, transformers, distribution panels, bus ducts, raceways, outlets and disconnects, and furnishings and equipment which have been bolted, welded, nailed, screwed, glued or otherwise attached to any wall, floor, ceiling, roof, pavement or ground, or which have been directly wired to any portion of the electrical system or which have been plumbed to the water supply, drainage or venting systems serving the leased premises. LESSEE shall deliver the leased premises fully sanitized from any chemicals or other contaminants, broom clean, and in the same condition as they were at the commencement of this lease or any prior lease between the parties for the leased premises, or as they were modified during said term with LESSOR's written consent, reasonable wear and tear and damage by fire or other casualty only excepted. Any of LESSEE's property that remains in the leased premises upon termination of the lease shall be deemed abandoned and shall be disposed of as LESSOR sees fit, with no liability to LESSEE for loss or damage thereto, and at the sole risk of LESSEE. LESSOR may remove and store any such property at LESSEE's expense; retain same under LESSOR's control; sell same at public or private sale (without notice) and apply the net proceeds of such sale to the payment of any sum due hereunder; or destroy same. In no case shall the leased premises be deemed surrendered to LESSOR until the termination date provided herein or such other date as may be specified in a written agreement between the parties, notwithstanding the delivery of any keys to LESSOR.

Case 1:04-cv-12326-WGY of Document 41-2     Filed 01/03/2005     Page 5 of 25

28. GENERAL. (a) The obligations and benefits hereof shall run with the land, and this lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that LESSOR and OWNER shall be liable for obligations occurring only while lessor or owner of the leased premises. (c) Any action or proceeding arising out of the subject matter of this lease shall be brought by LESSEE within one year after the cause of action has occurred and only in a court within the commonwealth of Massachusetts. (d) If LESSOR is acting under or as agent for any trust or corporation, the obligations of LESSOR shall be binding upon the trust or corporation, but not upon any trustee, officer, director, shareholder, or beneficiary of the trust or corporation individually. (e) If LESSOR is not the owner (OWNER) of the leased premises, LESSOR represents that OWNER has agreed to be bound by the terms of this lease unless LESSEE is in default hereof. (f) This lease is made and delivered in the commonwealth of Massachusetts, and shall be interpreted, construed, and enforced in accordance with the laws thereof. (g) This lease was the result of negotiations between parties of equal bargaining strength, and when executed by both parties shall constitute the entire agreement between the parties, superseding all prior oral and written agreements, representations, statements and negotiations relating in any way to the subject matter herein. This lease may not be extended or amended except by written agreement signed by both parties or as otherwise provided herein, and no other subsequent oral or written representation shall have any effect hereon. (h) Notwithstanding any other statements herein, LESSOR makes no warranty, express or implied, concerning the suitability of the leased premises for LESSEE's intended use. (i) LESSEE agrees that if LESSOR does not deliver possession of the leased premises as herein provided for any reason, LESSOR shall not be liable for any damages to LESSEE for such failure, but LESSOR agrees to use reasonable efforts to deliver possession to LESSEE at the earliest possible date. A proportionate abatement of rent, excluding the cost of any amortized improvements to the leased premises, for such time as LESSEE may be deprived of possession of the leased premises, except where a delay in delivery is caused in any way by LESSEE, shall be LESSEE's sole remedy. (j) Neither the submission of this lease form or any amendment hereof, nor the prospective acceptance of the security deposit and/or rent shall constitute a reservation of or option for the leased premises, or an offer to lease, it being expressly understood and agreed that neither this lease nor any amendment shall bind either party in any manner whatsoever unless and until it has been executed by both parties. (k) LESSEE shall not be entitled to exercise any option contained herein if LESSEE is at that time in default of any terms or conditions hereof. (l) Except as otherwise provided herein, neither LESSOR, nor OWNER, nor LESSEE shall be liable for any special, incidental, indirect or consequential damages, including but not limited to lost profits or loss of business, arising out of or in any manner connected with performance or nonperformance under this lease, even if any party has knowledge of the possibility of such damages. (m) The headings in this lease are for convenience only and shall not be considered part of the terms hereof. (n) No restriction, condition or other endorsement by LESSEE on any check nor LESSOR's deposit of any full or partial payment shall bind LESSOR in any way or limit LESSOR's rights under this lease. (o) LESSOR, LESSEE, OWNER and GUARANTOR hereby waive any and all rights to a *jury* trial in any proceeding in any way arising out of this lease.

29. SECURITY AGREEMENT. LESSEE hereby grants LESSOR a continuing security interest in all existing or hereafter acquired property of LESSEE in any of LESSOR's buildings to secure the payment of rent, the cost of leasehold improvements, and the performance of any other obligations of LESSEE under this lease or any subsequent lease between the parties. This provision shall survive termination of this lease, shall continue under any subsequent lease, and shall not negate or replace any continuing security interest of LESSOR under any prior lease between the parties. Default in the payment or performance of any of LESSEE's obligations under this lease or any subsequent lease shall be a default under this security agreement, and shall entitle LESSOR to immediately exercise all of the rights and remedies of a secured party under the Uniform Commercial Code. LESSEE agrees to execute a UCC-1 Financing Statement and any other financing agreement as requested by LESSOR in connection with this security interest.

30. WAIVERS, ETC. No consent or waiver, express or implied, by LESSOR to or of any breach of any covenant, condition or duty of LESSEE shall be construed as a consent or waiver to or of any other breach of the same or any other covenant, condition or duty. If LESSEE is several persons, several corporations or a partnership, LESSEE's obligations are joint or partnership and also several. Unless repugnant to the context, "LESSOR" and "LESSEE" mean the person or persons, natural or corporate, named above as LESSOR and as LESSEE respectively, and their respective heirs, executors, administrators, successors and assigns.

31. AUTOMATIC FIVE-YEAR EXTENSIONS. This lease, including all terms, conditions, escalations, etc. shall be automatically extended for additional successive periods of five years each unless LESSOR or LESSEE shall serve written notice, either party to the other, of either party's option not to so extend the lease. The time for serving such written notice shall be not more than 12 months or less than six months prior to the expiration of the then current lease period. Time is of the essence.

32. ADDITIONAL PROVISIONS. (Continued on attached rider(s) if necessary.)

- See Attached Rider -

IN WITNESS WHEREOF, LESSOR and LESSEE have hereunto set their hands and common seals, intending to be legally bound hereby this 16th day of May, 2002.

LESSOR: CUMMINGS PROPERTIES, LLC

By: *Douglas Stephens*
                *Duly authorized*

LESSEE: BETTER BUDGET FINANCIAL SERVICES, INC.

By: *Better Budget Financial Services Inc.*
                *Duly authorized*

Print name: Better Budget Financial Services Inc.
John Colon Jr.

**GUARANTY**

IN CONSIDERATION of Cummings Properties, LLC making this lease with LESSEE at the request of the undersigned (GUARANTOR) and in reliance on this guaranty, GUARANTOR hereby personally guarantees the prompt payment of rent by LESSEE and the performance by LESSEE of all terms, conditions, covenants and agreements of the lease, and any extensions or amendments thereof, and the undersigned promises to pay all expenses, including reasonable attorney's fees, incurred by LESSOR in enforcing all obligations of LESSEE under the lease or incurred by LESSOR in enforcing this guaranty. LESSOR's consent to any assignments, subleases, amendments and extensions by LESSEE or to any compromise or release of LESSEE's liability hereunder, with or without notice to the undersigned, or LESSOR's failure to notify the undersigned of any default and/or reinstatement of the lease by LESSEE, shall not relieve the undersigned from liability as GUARANTOR.

IN WITNESS WHEREOF, the undersigned GUARANTOR has hereunto set his/her/its hand and common seal, intending to be legally bound hereby this _____ day of _____.

_____

Print name: _____

10/99

CUMMINGS PROPERTIES, LLC
STANDARD FORM

# RIDER TO LEASE

B-0202038-JCS-1

The following additional provisions are incorporated into and made a part of the attached lease:

**A. CONFLICTS.** In the event of any conflict between any provision of this Rider to Lease and the attached lease, the provisions of this Rider shall govern.

**B. SOUTH ESSEX SEWERAGE DISTRICT.** With respect to leases at Cummings Center in Beverly (only), LESSEE shall fully comply with all regulations of the South Essex Sewerage District (SESD) now or hereafter in effect, including prompt filing with LESSOR of any documents required by SESD regulations, and LESSEE agrees to indemnify and hold harmless LESSOR and OWNER from any and all liability arising out of any noncompliance by LESSEE with such regulations.

**C. ACTIVITY AND USE RESTRICTION.** With respect to leases at Cummings Center in Beverly and 10 and 18 Commerce Way in Woburn (only), and except as provided below, the following activities and uses are expressly prohibited at the property of which the leased premises are a part: residential uses (except for facilities for adult congregate care or assisted living, senior housing, nursing home uses and other adult residential facilities in certain designated areas of the property); child care, day care, or public or private elementary or secondary schools; a public park, playground or playing field, or other activities involving more than casual contact with the ground; cultivation out-of-doors of fruits and vegetables destined for human consumption; and fishing or swimming in the ponds and other waterways on or adjacent to the property. In addition, implementation of a health and safety plan is required for construction, utilities maintenance and other intrusive activities which are likely to involve extensive exposure to or contact with subsurface soils at the property. Notices of Activity and Use Limitation providing further information have been recorded at the Essex South Registry of Deeds and the Middlesex South Registry of Deeds, respectively, as well as recorded amendments authorizing both child care and a public elementary school in specific locations at Cummings Center.

**D. PARKING.** LESSEE shall be entitled to use, in common with others, a proportionate share of the total number of common area parking spaces provided for the building (based on square footage leased by LESSEE as compared with the total leasable square footage of the building). The number of spaces used by LESSEE's employees, agents and invitees shall not at any time exceed LESSEE's proportionate share of the total spaces for the building. For purposes of determining LESSEE's compliance with this paragraph at any time, the number of spaces used by LESSEE shall be presumed to equal the number of persons who are then present at the leased premises.

**E. RECORDING AND SECURITY.** Although LESSOR may choose at any time to record activities at the building with unmonitored remote television cameras, LESSEE acknowledges and agrees that, as provided in Section 15 above, LESSOR is not thereby or in any other way providing any security service for LESSEE or its employees, agents, invitees, contractors and representatives, and that LESSOR has made no representations whatsoever, written or oral, concerning the safety of the leased premises or the presence, effectiveness or operability of any security devices or security measures, or the safety or security of LESSEE, its employees, agents, invitees, callers, contractors and representatives, or LESSEE's property, against the criminal or wrongful acts of third parties. Additionally, LESSEE accepts full responsibility for protecting the persons and property of LESSEE and those of its employees, agents, invitees, callers, contractors and representatives, and (acknowledging that security devices or measures may fail or be thwarted by criminals, by other third parties or by electrical or mechanical malfunction), agrees not to rely on any such devices or measures, and to protect itself, its property, and its employees, agents, invitees, callers, contractors and representatives as if such devices or measures did not exist.

**F. ELECTRIC SERVICE.** With respect to leases at Cummings Center in Beverly (only), LESSEE agrees that in the event its average electricity use at the leased premises is expected to exceed 200 kW of demand per month during the term of this lease, it will not self-generate or co-generate at the leased premises during the term of this lease or any extension(s) hereof.

G.  * LESSOR, at LESSOR's cost, shall modify the leased premises according to a mutually agreed upon plan attached hereto before or about the time LESSEE takes possession of the leased premises.

H.  * Notwithstanding the commencement date of the lease, LESSEE may occupy the leased premises as of July 1, 2002 provided this lease, including any plans and specifications, has been fully executed, the security deposit and the first month's rent due for the month of September 2002 have been fully paid, and all required insurance certificates and financing statements have been produced, without further obligation for the payment of monthly rent until October 1, 2002. All other terms, covenants and conditions of this lease shall apply during this rent-free period.

I.  * Notwithstanding monthly rent as provided in Section 1 above, LESSEE may deduct $2,419.67 per month from each monthly rental payment due from September 1, 2002 through August 30, 2003 (only), provided LESSEE is not in default of the lease or in arrears of any rent or invoice payments.

LESSOR: **CUMMINGS PROPERTIES, LLC**

By: _Douglas Stephens_
                              *Duly authorized*

Date: _5/16/02_

LESSEE: **BETTER BUDGET FINANCIAL
SERVICES, INC.**

By: _Better Budget Financial Services Inc._
                              *Duly authorized*

Print Name _Better Budget Financial
Services Inc.
John Colon Jr._

01/01

CUMMINGS PROPERTIES, LLC     *SERVICES, INC.*
STANDARD FORM

B-0204065-JCS-C

## AMENDMENT TO LEASE #  1

In connection with a lease currently in effect between the parties at ___800 Cummings Center, Suite 152-R___ ,
___Beverly___ , Massachusetts, fully executed on ___May 16, 2002___ and terminating ___August 30, 2007___ ,
and in consideration of the mutual benefits to be derived herefrom, Cummings Properties, LLC, LESSOR, and
___Better Budget Financial Services, Inc.___ , LESSEE, hereby agree, effective ___May 1, 2004___ ,
to amend said lease as follows:

1.  Base rent is hereby changed to ___one hundred ninety eight thousand four hundred twenty five and 34/100___
    ___(198,425.34)___ dollars per year or $ ___16,535.45___ per month.

2.  The base month from which to determine the amount of each annual increase in the "Cost of Living" shall be
    November ___2003___ , which figure shall be compared with the figure for November ___2004___ , and each November thereafter
    to determine the percentage increase (if any) in the base rent to be paid during the following calendar year.

3.  Upon execution of this amendment, the security deposit shall be increased by $ ___17,200___ from $ ___15,300___ to a new
    total of $ ___32,500___ . LESSEE shall pay this increase upon LESSEE's execution of this amendment.

4.  Notwithstanding Section 20 of the lease, in the event the entire balance of rent due under the lease becomes due and payable
    as liquidated damages, said amount shall be discounted to its net present value as of the date of LESSOR's notice of default,
    using the published prime rate then in effect. Furthermore, LESSEE's covenants under the lease shall be independent of
    LESSOR's covenants, and LESSOR's failure to perform any of its covenants under the lease, including a covenant constituting
    a significant inducement to LESSEE to enter into the lease, shall not excuse the payment of rent or any other charges by
    LESSEE or allow LESSEE to terminate the lease.

5.  In the event either party has employed a real estate broker, tenant representative, or other third party on its behalf in
    connection with this amendment and/or any future extension, renewal, or expansion of the lease, then payment of any and all
    fees or commissions shall be the sole responsibility of the party engaging any such broker, representative, or third party.
    LESSEE and LESSOR agree that the party who so engages any broker, representative, or other third party shall indemnify the
    other against any and all claims for any such fees or commissions.

6.  * The location of the leased premises is hereby changed from 800 Cummings Center, Suite 152-R to 800
    Cummings Center, Suite 260-T. As a result of this relocation, the size of the leased premises is hereby
    increased by approximately 6,300 square feet (including 15.4% common area), from approximately
    4,386 square feet (including 15.4% common area) to a new total of approximately 10,686 square feet
    (including 15.4% common area). LESSEE shall vacate 800 Cummings Center, Suite 152-R on or before
    the effective date hereof, and any extended occupancy of said earlier facility beyond the effective date
    shall be governed by Section 22 of the lease. LESSEE shall upon vacating be responsible for any
    damage to said earlier facility in accordance with the lease, and shall promptly pay any just invoice
    therefor. Time is of the essence.

7.  LESSOR, at LESSOR's cost, shall modify Suite 260-T according to a mutually agreed upon plan
    attached hereto 45 days following full execution of this amendment and plan and payment of the
    additional security deposit provided for in Section 3 above.

8.  The parties acknowledge and agree that, as of the execution of this amendment, not all of the perimeter
    walls of Suite 260-T have been built. Accordingly, upon completion of the modifications provided for
    herein, LESSOR shall carefully measure the Suite 260-T, and if the size including common area does not
    equal the number of square feet set forth in Section 6 above, LESSOR shall notify LESSEE in writing of
    the actual revised square footage and the corresponding increase or decrease in rent, based on the same
    rate per square foot used in this amendment, and said actual square footage and adjusted rent shall be
    substituted for the figures herein.

This amendment shall not bind either party in any manner until it has been executed by both parties. All other terms, conditions and covenants of the
lease shall continue to apply, and to the extent any inconsistency exists between this amendment and the lease, including any prior amendments, the
conditions herein shall control and supersede any earlier provisions.

In Witness Whereof, LESSOR and LESSEE have hereunto set their hands and common seals this ___24th___ day
of ___MARCH___ , 2004 .

LESSOR: **CUMMINGS PROPERTIES, LLC**          LESSEE: **BETTER BUDGET FINANCIAL SERVICES, INC.**

By: *W.S. Cummings*                          By: *John Colon*
                          *Duly Authorized*                          *Duly Authorized*

10/03                                         Print Name: *John Colon*

**Plan Omitted**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civ. No. 04-12326 (WGY) |
| BETTER BUDGET FINANCIAL SERVICES, INC., | ) |
| JOHN COLON, JR., and JULIE FABRIZIO-COLON, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### AFFIDAVIT OF SUSAN F. BRAND IN SUPPORT OF MOTION OF CUMMINGS PROPERTIES, LLC TO INTERVENE

I, Susan F. Brand, being duly sworn, state under oath as follows:

1.      I am presently General Counsel of Cummings Properties, LLC ("CPL"), located at 200 West Cummings Park, Woburn, Massachusetts 01801.

2.      I am admitted before this Court and am a member in good standing of the Massachusetts bar.

3.      Attached as Exhibit A to Cummings Properties, LLC's Memorandum in Support of its Motion to Intervene ("the Memorandum") is a true and correct copy of a lease as amended between CPL and Better Budget Financial Services, Inc. ("BBFS").

4.      Attached as Exhibit C to the Memorandum is a true and correct copy of a lease entered into between CPL and Termidebt, Inc. (Termidebt") and an assignment of the lease by Termidebt to BBFS.

5.      Attached as Exhibit D to the Memorandum are true and correct statements for outstanding rent and related charges due under the leases attached as Exhibits A and C to the Memorandum.

6.      Attached as Exhibit E to the Memorandum is a true and correct copy of a letter received by CPL from the temporary receiver's counsel on December 9, 2004.

7.      I am informed and believe it to be true that Unimark Solutions, Inc., is presently occupying some portion of Suite 260-T with the consent of the receiver, but without the consent of CPL, as required under the lease.

8.      The security deposits for the leases attached as Exhibits A and C were deposited into CPL's general operating account, not an escrow account.

Signed under the pains and penalties of perjury.


December 30, 2004                                   Susan F. Brand

\\CPL-FP\ACCOUNTING\LEGAL\ESCOBAR\BETTERBUDGETAFFOFSUSANBRAND.DOC

2

Case 1:04-cv-12326-WGY    Document 41-2    Filed 01/03/2005    Page 13 of 25    *TERMIDEBT, INC.*

CUMMINGS PROPERTIES, LLC

STANDARD FORM

# COMMERCIAL LEASE

B-0304081-JCS-B

In consideration of the covenants herein, Cummings Properties, LLC ("LESSOR") hereby leases to ~~Termidebt, Inc. (a MA nonprofit corp.),~~
800 Cummings Center, Suite 152-R, Beverly, MA  01915 _____ ("LESSEE") the following premises,
approximately 4,290 square feet (including 15.4% common area) at 800 Cummings Center,
~~Suite 152-R, Beverly, MA  01915~~ _____ ("the leased premises"),
for a term of ___ four (4) years _____ commencing at noon on ___ May 1, 2004 _____ and ending at
noon on ___ April 30, 2008 _____ unless sooner terminated as herein provided. LESSOR and LESSEE now covenant and agree that the
following terms and conditions shall govern this lease.

1. **RENT.** LESSEE shall pay to LESSOR base rent at the rate of ___ sixty thousand sixty _____ (60,060)
U.S. dollars per year, drawn on a U.S. bank, payable in advance in monthly installments of $ __ 5,005.00 __ on the first day of each calendar month, without offset or deduction. The first monthly payment, plus an appropriate fraction of a monthly payment for any portion of a month at the commencement of the lease term, shall be made upon LESSEE's execution of this lease. All payments shall be made to LESSOR at 200 West Cummings Park, Woburn, Massachusetts 01801, or at such other place as is designated in writing by LESSOR. If the "Cost of Living" has increased as shown by the Consumer Price Index (Boston, Massachusetts, all items, all urban consumers), U.S. Bureau of Labor Statistics, then base rent due during each calendar year of this lease and any extensions thereof shall be annually adjusted in proportion to any increase in the Index. All such adjustments shall take place with the rent due each January 1. The base month from which to determine the amount of each increase in the Index shall be January ___ 2004 ___, which figure shall be compared with the figure for November ___ 2004 ___, and each November thereafter to determine the increase (if any) in the base rent to be paid during the following calendar year. If the Consumer Price Index referenced above is discontinued as a measure of "Cost of Living" changes, LESSOR shall substitute a comparable index then in general use.

2. **SECURITY DEPOSIT.** LESSEE shall pay to LESSOR a security deposit of ___ ten thousand _____ (10,000)
U.S. dollars, drawn on a U.S. bank, upon LESSEE's execution of this lease, which shall be held as security for LESSEE's performance hereunder and refunded to LESSEE without interest at the end of this lease, subject to LESSEE's satisfactory compliance with the conditions hereof. LESSEE may not apply the security deposit to any payment due under the lease. In the event of any default or breach of this lease by LESSEE, however, LESSOR may elect to apply the security deposit first to any unamortized improvements completed for LESSEE's occupancy, then to offset any outstanding invoice or other payment due to LESSOR, and then to outstanding rent. If all or any portion of the security deposit is applied to cure a default or breach during the term of this lease, LESSEE shall restore said deposit forthwith. LESSEE's failure to remit the full security deposit or any portion thereof or to restore said deposit when due shall constitute a substantial lease default. If LESSEE fails to pay the security deposit and first month's rent on a timely basis, LESSOR may retake possession and relet the leased premises for LESSEE's account, or declare this lease null and void for failure of consideration.

3. **USE OF PREMISES.** LESSEE shall use the leased premises only for ___ executive and administrative offices _____

4. **REAL ESTATE TAX INCREASES.** LESSEE shall pay to LESSOR as additional rent a proportionate share (based on square footage leased by LESSEE as compared with the total leaseable square footage of the building or buildings of which the leased premises are a part (hereinafter called the building)) of any increase in real estate taxes levied against the land and building, whether such increase is caused by an increase in the tax rate or the assessment on the property, or a change in the method of determining real estate taxes. Any additional rent shall be prorated should the lease terminate before the end of any tax year. The base from which to determine the amount of any increase in taxes shall be the rate and the assessment in effect as of July 1, ___ 2004 ___, net of abatements, if any.

5. **UTILITIES.** LESSOR shall provide equipment per LESSOR's building standards to heat the leased premises in season and to cool all office areas between May 1 and November 1. LESSEE shall pay all charges for utilities used on the leased premises, including electricity, gas, oil, water and sewer, and shall use whichever utility service provider LESSOR shall designate at any time. LESSEE shall pay the utility provider or LESSOR, as applicable, for all such utility charges as determined by separate meters serving the leased premises and/or as a proportionate share of the utility charges for the building if not separately metered. LESSEE shall also pay LESSOR a proportionate share of any other fees and charges relating in any way to utility use at the building, including charges for routine maintenance of any on-site septic system.

6. **COMPLIANCE WITH LAWS.** LESSEE agrees not to use the leased premises in any way that may be unlawful, improper, noisy, offensive or contrary to any applicable statute, regulation, ordinance or bylaw. LESSEE shall keep all employees working in the leased premises covered by Worker's Compensation Insurance and shall obtain any licenses and permits necessary for LESSEE's use and occupancy. LESSEE shall be responsible for causing the leased premises and any alterations by LESSEE allowed hereunder to be in full compliance with any applicable statute, regulation, ordinance or bylaw.

7. **FIRE, CASUALTY, EMINENT DOMAIN.** Should a substantial portion of the leased premises, or of the property of which they are a part, be substantially damaged by fire or other casualty, or be taken by eminent domain, LESSOR may elect to terminate this lease. When such fire, casualty or taking renders the leased premises substantially unsuitable for their intended use, a proportionate abatement of rent shall be made, and LESSEE may elect to terminate this lease if: (a) LESSOR fails to give written notice within 30 days after said fire, casualty or taking of its intention to restore the leased premises; or (b) LESSOR fails to restore the leased premises to a condition substantially suitable for their intended use within 90 days after said fire, casualty or taking. LESSOR reserves all rights for damages or injury to the leased premises for any taking by eminent domain, except for damage to LESSEE's property or equipment.

8. **FIRE INSURANCE.** LESSEE shall not permit any use of the leased premises which will adversely affect or make voidable any insurance on the property of which the leased premises are a part, or on the contents of said property, or which shall be contrary to any law, regulation or recommendation made by the Insurance Services Office (or successor organization), state fire prevention agency, local fire department, LESSOR's insurer or any similar entity. LESSEE shall on demand reimburse LESSOR and all other tenants all extra insurance premiums caused by LESSEE's use of the leased premises. LESSEE shall not vacate the leased premises or permit same to be unoccupied other than during LESSEE's customary non-business days or hours, or cause or allow the utilities serving the leased premises to be terminated.

9. **SIGNS.** LESSEE, at LESSEE's expense, shall erect promptly upon commencement of this lease, and then maintain signage for the leased premises in accordance with building standards for style, size, wording, design, location, etc. now or hereafter made by LESSOR. LESSEE shall obtain LESSOR's prior written consent before erecting any sign, and LESSOR may, at LESSEE's expense, remove and dispose of any sign not approved, erected, maintained or displayed in conformance with this lease.

10. **MAINTENANCE OF PREMISES.** Except as otherwise provided below, LESSOR will be responsible for the structural maintenance of the leased premises and for maintenance of the roof, landscaping, heating and cooling equipment, sprinklers, doors, locks, plumbing and electrical wiring, but specifically excluding damage caused by the careless, malicious, willful or negligent acts of LESSEE or others, and chemical, corrosion or water damage from any source. LESSEE agrees to maintain at its expense all other aspects of the leased premises in the same condition as they are at the commencement of the lease term or as they may be put in with LESSOR's written consent during the term of this lease, normal wear and tear only excepted, and whenever necessary, to replace light bulbs and glass, acknowledging that the leased premises are now in good order and the light bulbs and glass whole. LESSEE shall properly control and vent all chemicals, radioactive materials, smoke, odors and other materials that may be harmful, and shall not cause the area surrounding the leased premises or any other common area to be in anything other than a neat and clean condition, depositing all waste in appropriate receptacles. LESSEE shall be solely responsible for any damage to plumbing equipment, sanitary lines or any other portion of the building which results from the discharge or use of any substance by LESSEE. LESSEE shall not permit the leased premises to be overloaded, damaged, stripped or defaced, nor suffer any waste, and will not keep animals within the leased premises. If the leased premises include any wooden mezzanine-type space, the floor capacity of such space is suitable only for office use, light storage or assembly work. LESSEE will protect any flooring with chair pads under any rolling chairs. Unless heat is provided at LESSOR's expense, LESSEE shall maintain sufficient heat to prevent freezing of pipes or other damage. Notwithstanding the foregoing, any increase in heating, ventilating, air conditioning, plumbing or electrical equipment or capacity, and any installation or maintenance of any "non-building standard" leasehold improvements or equipment which is associated with some specific aspect of LESSEE's use, whether installed by LESSEE, LESSEE or a prior occupant, shall be LESSEE's sole responsibility, at LESSEE's expense, and subject to LESSOR's prior written consent. All maintenance provided by LESSOR shall be during LESSOR's normal business hours.

11. **ASSIGNMENT OR SUBLEASE.** Provided LESSEE is not in default of any terms or conditions hereof, LESSEE may assign this lease or sublet or allow another entity or individual to occupy the whole or any part of the leased premises, but only with LESSOR's prior written consent in each and every instance. In no case may LESSEE assign this lease or sublet the leased premises to any other current or prospective tenant of LESSOR, or any affiliate of such current or prospective tenant. As a condition to any assignment or sublease, an additional security deposit shall be paid to and held by LESSOR. If LESSEE notifies LESSOR in writing of its desire to assign this lease or sublet the leased premises, LESSOR shall have the option to terminate this lease, at an effective date to be determined by LESSOR, upon written notice to LESSEE. Notwithstanding LESSOR's consent to any assignment or sublease, LESSEE and GUARANTOR shall remain liable to LESSOR for the payment of all rent and for the full performance of all covenants and conditions of this lease.

12. **ALTERATIONS.** LESSEE shall not make structural alterations, additions or improvements of any kind to the leased premises, but may make nonstructural alterations, additions or improvements with LESSOR's prior written consent. All such allowed alterations, additions and improvements shall be at LESSEE's expense and shall conform with LESSOR's building standards and construction specifications. If LESSOR or its agent provides any services or maintenance for LESSEE in connection with such alterations, additions and improvements or otherwise under this lease, LESSEE will promptly pay any just invoice. LESSEE shall obtain a lien waiver from any contractor it employs prior to commencement of any work. LESSEE shall not permit any mechanics' liens, or similar liens, to remain upon the leased premises in connection with any work performed or claimed to have been performed at the direction of LESSEE and shall cause any such lien to be released or removed forthwith without cost to LESSOR. Any alterations, additions and improvements shall become part of the leased premises and the property of LESSOR. LESSOR shall have the right at any time to make additions to the building, change the arrangement of parking areas, stairs or walkways, or otherwise alter common areas or the exterior of the building.

13. **LESSOR'S ACCESS.** LESSOR and its agents and designees may at any reasonable time enter to view the leased premises; to show the leased premises to others; to make repairs and alterations as LESSOR or its designee should elect to do for the leased premises, the common areas, or any other portions of the building; and without creating any obligation or liability for LESSOR, but at LESSEE's expense, to make repairs which LESSEE is required but has failed to do.

14. **SNOW REMOVAL.** The plowing of snow from all roadways and unobstructed parking areas shall be at the sole expense of LESSOR. The control of snow and ice on all walkways, steps and loading areas serving the leased premises and all other areas not readily accessible to plows shall be the sole responsibility of ~~LESSEE~~* Notwithstanding the foregoing, however, LESSEE shall hold LESSOR and OWNER harmless from any and all claims by LESSEE's employees, agents, callers or invitees for damage or personal injury resulting in any way from snow or ice on any area serving the leased premises.

**LESSOR

15. **ACCESS AND PARKING.** Unless otherwise provided herein, LESSEE shall have the right without additional charge to use parking facilities provided for the leased premises in common with others entitled to the use thereof. LESSEE shall not obstruct any portion of the building or its walkways and approaches. No unattended parking will be permitted between 7:00 PM and 7:00 AM without LESSOR's prior written approval, and from November 15 through April 15 annually, such parking shall be permitted only in those areas designated for assigned overnight parking. Unregistered or disabled vehicles, or storage trailers of any type, may not be parked at any time. LESSOR may tow, at LESSEE's sole risk and expense, any misparked vehicle belonging to LESSEE or LESSEE's employees, agents, callers or invitees, at any time. LESSOR shall not provide, and shall not be responsible for providing, any security services.

16. **LIABILITY.** LESSEE shall be solely responsible as between LESSOR and LESSEE for deaths or personal injuries to all persons and damage to any property, including damage by fire or other casualty, occurring in or on the leased premises (including any common areas as described below) and arising out of the use, control, condition or occupancy of the leased premises by LESSEE, except for death, personal injuries or property damage directly resulting from the sole negligence of LESSOR. LESSEE agrees to indemnify and hold harmless LESSOR and OWNER (as defined below) from any and all liability, including but not limited to costs, expenses, damages, causes of action, claims, judgments and attorney's fees caused by or in any way arising out of any of the aforesaid matters. All common areas, including but not limited to any parking areas, stairs, corridors, roofs, walkways and elevators (herein collectively called the common areas) shall be considered a part of the leased premises for liability and insurance purposes when they are used by LESSEE or LESSEE's employees, agents, callers or invitees.

17. **INSURANCE.** LESSEE shall secure and carry at its own expense a commercial general liability policy insuring LESSEE, LESSOR and OWNER against any claims based on bodily injury (including death) or property damage arising out of the condition of the leased premises (including any common areas as described above) or their use by LESSEE, including damage by fire or other casualty, such policy to insure LESSEE, LESSOR and OWNER against any claim up to $1,000,000 for each occurrence involving bodily injury (including death), and $1,000,000 for each occurrence involving damage to property. This insurance shall be primary to and not contributory with any insurance carried by LESSOR, whose insurance shall be considered excess. LESSEE, LESSOR and OWNER shall be included in each such policy as additional insureds using ISO Form CG 20 26 11 85 or some other form approved by LESSOR, and each such policy shall be written by or with a company or companies satisfactory to LESSOR. Prior to occupancy, LESSEE shall deliver to LESSOR certificates and any applicable riders or endorsements showing that such insurance is in force, and thereafter will provide renewal certificates at least 15 days prior to the expiration of any such policies. All such insurance certificates shall provide that such policies shall not be cancelled without at least 10 days' prior written notice to each insured. If LESSEE fails to provide or maintain such insurance at any time during the term of this lease, LESSOR may elect to contract for such insurance, and LESSEE shall pay LESSOR any costs that LESSEE would incur for such insurance in complying with this section, plus LESSOR's administrative expenses.

18. **BROKERAGE.** LESSEE warrants and represents to LESSOR that LESSEE has dealt with no broker or third person with respect to this lease, and LESSEE agrees to indemnify LESSOR against any brokerage claims arising out of this lease. LESSOR warrants and represents to LESSEE that LESSOR has employed no exclusive broker or agent in connection with this lease. If either party introduces a broker or third person on its behalf for any extension, renewal or expansion of this lease, any fees or commissions shall be the sole responsibility of the party engaging such broker or third person.

19. **SUBORDINATION.** This lease shall be subject and subordinate to any and all mortgages and other instruments in the nature of a mortgage, now or at any time hereafter, and LESSEE shall, when requested, promptly execute and deliver such written instruments as shall be necessary to show the subordination of this lease to said mortgages or other such instruments in the nature of a mortgage.

20. **DEFAULT AND ACCELERATION OF RENT.** In the event that (a) any assignment for the benefit of creditors, trust mortgage, receivership or other insolvency proceeding shall be made or instituted with respect to LESSEE or LESSEE's property or (b) LESSEE shall default in the observance or performance of any of LESSEE's covenants, agreements or obligations hereunder, and such default shall not be corrected within 10 days after written notice thereof, then LESSOR shall have the right thereafter, while such default continues and without demand or further notice, to re-enter and take possession of the leased premises, to declare the term of this lease ended, and/or to remove LESSEE's effects, without being guilty of trespass or conversion, and without prejudice to any remedies which might be otherwise used for arrears of rent or other default or breach of the lease. If LESSEE defaults in the payment of the security deposit, rent, taxes or substantial invoice from LESSOR or LESSOR's agent, and such default continues for 10 days after written notice thereof, and, because both parties agree that nonpayment of said sums when due is a substantial breach of the lease, and, because the payment of rent in monthly installments is for the sole benefit and convenience of LESSEE, then, in addition to any other remedies, the net present value of the entire balance of rent due hereunder as of the date of LESSOR's notice, using the published prime rate then in effect, shall immediately become due and payable as liquidated damages. No actions taken by LESSOR under this section shall terminate LESSEE's obligation to pay rent under this lease, as liquidated damages or otherwise. Any sums received by LESSOR from or on behalf of LESSEE at any time shall be applied first to any unamortized improvements completed for LESSEE's occupancy, then to offset any unpaid invoice or other payment due to LESSEE, and then to unpaid rent. LESSEE shall pay any invoice within 10 days after receipt. If any rent and/or other payment is not received by LESSOR when due, then LESSEE shall pay LESSOR a one-time late charge for each past due payment equal to one percent of such overdue amount or $35, whichever is greater. LESSEE shall also pay LESSOR interest at the rate of 18 percent per annum on any past due payment.

21. **NOTICE.** Any notice from LESSOR to LESSEE relating to the leased premises or this lease shall be deemed duly served when left at the leased premises, or served by constable, or sent to the leased premises or to the last address designated by notice in accordance with this section, by certified or registered mail, return requested, postage prepaid, or by recognized courier service with a receipt therefor, addressed to LESSEE. Any notice from LESSEE to LESSOR relating to the leased premises or this lease shall be deemed duly served when served by constable, or delivered to LESSOR by certified or registered mail, return receipt requested, postage prepaid, or by recognized courier service with a receipt therefor, addressed to LESSOR at 200 West Cummings Park, Woburn, Massachusetts 01801 or at LESSOR's last designated address. No oral notice or representation shall have any force or effect. Time is of the essence in the service of any notice.

22. **OCCUPANCY.** If LESSEE takes possession of the leased premises prior to the start of the lease term, LESSEE will perform and observe all of its covenants under this lease from the date upon which it takes possession. If LESSEE continues to occupy, control or encumber all or any part of the leased premises after the termination of this lease without the written permission of LESSOR, LESSEE shall be liable to LESSOR for any and all loss, damages or expenses incurred by LESSOR, and all terms of this lease shall continue to apply, except that use and occupancy payments shall be due in full monthly installments at a rate which shall be two times the greater of the monthly rent due under this lease immediately prior to termination or LESSOR's then current published rent for the leased premises, it being understood that such extended occupancy is a tenancy at sufferance, solely for the benefit and convenience of LESSEE and of greater rental value. LESSEE's control, occupancy or encumbrance of all or any part of the leased premises beyond noon on the last day of any monthly rental period shall constitute LESSEE's occupancy for an entire additional month, and increased occupancy as provided in this section shall be due and payable immediately in advance. LESSOR's acceptance of any payments from LESSEE during such extended occupancy shall not alter LESSEE's status as a tenant at sufferance. LESSOR may require LESSEE to relocate to another similar facility at any time during the lease term upon prior written notice to LESSEE and on terms comparable to those herein, and LESSEE shall be liable to LESSOR for any loss, damages or expenses incurred by LESSOR if LESSEE fails to relocate as required herein.

23. **FIRE PREVENTION.** LESSEE agrees to use every reasonable precaution against fire, to provide and maintain approved, labeled fire extinguishers, emergency lighting equipment and exit signs, and to complete any other modifications within the leased premises as required or recommended by the Insurance Services Office (or successor organization), OSHA, the local fire department, LESSOR's insurer or any similar entity.

24. **OUTSIDE AREA.** Anything held or stored by LESSEE in any common area without LESSOR's prior written consent shall be deemed abandoned and may be removed by LESSOR at LESSEE's expense without notice. LESSEE shall maintain a building standard size dumpster in a location approved by LESSOR, which dumpster shall be provided and serviced at LESSEE's expense by whichever disposal firm LESSOR may designate. Alternatively, if a shared dumpster or compactor is provided by LESSOR, LESSEE shall pay the disposal firm or LESSOR, as applicable, LESSEE's proportionate share of any charges associated therewith.

25. **ENVIRONMENT.** LESSEE will use the leased premises so as not to interfere in any way with the use and enjoyment of other portions of the same or neighboring buildings by others by reason of odors, smoke, exhaust, smells, vibrations, noise, pets, accumulation of garbage or trash, vermin or other pests, or otherwise, and will at its expense employ a professional pest control service if determined necessary by LESSOR. LESSEE agrees to maintain effective devices for preventing damage to plumbing and heating equipment from deionized water, chemicals or hazardous materials which may be present at the leased premises. No hazardous materials or wastes shall be used, stored, disposed of, or allowed to remain at the leased premises at any time without LESSOR's specific approval, and LESSEE shall be solely responsible for, and shall indemnify and hold harmless LESSOR and OWNER from, any and all corrosion or other damage in any way associated with the use, storage and/or disposal of same by LESSEE.

26. **RESPONSIBILITY.** Neither LESSOR nor OWNER shall be liable to anyone for, nor shall LESSEE's obligations under this lease be reduced because of, loss or damage caused in any way by the use, leakage, seepage, flooding or escape of water or sewage in any form or from any source, by the interruption or cessation of any service rendered customarily to the leased premises or building or agreed to by the terms of this lease, by any accident, the making of repairs, alterations or improvements, labor difficulties, weather conditions, mechanical breakdowns, trouble or scarcity in obtaining fuel, electricity, service or supplies from the sources from which they are usually obtained, by any change in any utility or service provider, or by any cause beyond LESSOR's immediate control.

27. **SURRENDER.** On or before the termination of this lease, LESSEE shall remove all of LESSEE's goods and effects from the leased premises, and shall deliver to LESSOR actual and exclusive possession of the leased premises and all keys and locks thereto, all fixtures, equipment and workstations of any type connected therewith, and all alterations, additions and improvements made to or upon the leased premises, whether completed by LESSEE, LESSOR or others, including but not limited to any offices, window blinds, floor coverings, computer floors, plumbing and plumbing fixtures, heating, ventilating and air conditioning equipment, ductwork, exhaust fans, water coolers, security, surveillance and fire protection systems, telecommunications and data wiring, telephone equipment, air and gas distribution piping, compressors, overhead cranes, hoists, cabinets, counters, shelving, signs, electrical work, including but not limited to lighting fixtures of any type, wiring, conduit, EMT, transformers, generators, distribution panels, bus ducts, raceways, outlets and disconnects, and furnishings and equipment which have been bolted, welded, nailed, screwed, glued or otherwise attached to any wall, floor, ceiling, roof, pavement or ground, or which have been directly wired or plumbed to any portion of any building or other system serving the leased premises, including but not limited to water supply, drainage, venting or air or gas distribution systems. Notwithstanding the foregoing, prior to termination of this lease, LESSEE shall, if requested by LESSOR, remove or tag for future use any and all wiring and cabling installed and/or used by LESSEE. LESSEE shall deliver the leased premises fully sanitized from any chemicals or other contaminants, broom clean, and in at least the same condition as they were at the commencement of the lease or any prior lease between the parties for the leased premises, or as they were modified during said term with LESSOR's written consent, reasonable wear and tear only excepted, and LESSEE shall be deemed to be encumbering the leased premises until it delivers the leased premises to LESSOR in the condition required under this lease. Any of LESSEE's property that remains in the leased premises upon termination of the lease shall be deemed abandoned and shall be disposed of as LESSOR sees fit, with no liability to LESSEE for loss or damage thereto, and at the sole risk of LESSEE. LESSOR may remove and store any such property at LESSEE's expense; retain same under LESSOR's control; sell same at public or private sale (without notice) and apply the net proceeds of such sale to the payment of any sum due hereunder; or destroy same. In no case shall the leased premises be deemed surrendered to LESSOR until the termination date provided herein or such other date as may be specified in a written agreement between the parties, notwithstanding the delivery of any keys to LESSOR.

28.  **GENERAL.** (a) The invalidity or unenforceability of any clause or provision of this lease shall not affect or render invalid or unenforceable any other clause or provision hereof. (b) The obligations of this lease shall run with the land, and this lease shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that LESSOR and OWNER shall be liable for obligations occurring only while lessor or owner of the leased premises. (c) Any action or proceeding arising out of the subject matter of this lease shall be brought by LESSEE within one year after the cause of action has occurred and only in a court within the commonwealth of Massachusetts. (d) If LESSOR or OWNER is a trust, corporation, or other limited liability entity, the obligations of LESSOR shall be binding upon the trust, corporation, or other entity, but not upon any trustee, officer, director, shareholder, member, limited partner or beneficiary individually. (e) If LESSOR is not the owner (OWNER) of the leased premises, LESSOR represents that OWNER has agreed to be bound by the terms of this lease unless LESSEE is in default hereof. (f) This lease is made and delivered in the commonwealth of Massachusetts, and shall be interpreted, construed, and enforced in accordance with the laws thereof. (g) This lease is the result of negotiations between parties of equal bargaining strength, and when executed by both parties shall constitute the entire agreement between the parties, superseding all prior oral and written agreements, representations, statements and negotiations relating in any way to the subject matter herein. This lease may not be extended or amended except by written agreement signed by both parties, or as otherwise provided herein, and no other subsequent oral or written representation shall have any effect hereon. (h) Notwithstanding any other statements herein, LESSOR makes no warranty, express or implied, concerning the suitability of the leased premises for LESSEE's intended use. (i) LESSEE agrees that if LESSOR does not deliver possession of the leased premises as herein provided for any reason, LESSOR shall not be liable for any damages to LESSEE for such failure, but LESSOR agrees to use reasonable efforts to deliver possession to LESSEE at the earliest practical date. A proportionate abatement of rent, excluding the cost of any amortized improvements to the leased premises, for such time as LESSEE may be deprived of possession of the leased premises shall be LESSEE's sole remedy, except where a delay in delivery is caused in any way by LESSEE. (j) Neither the submission of this lease form or any amendment hereof, nor the acceptance of the security deposit and/or rent shall constitute a reservation of or option for the leased premises, or an offer to lease, it being expressly understood and agreed that neither this lease nor any amendment shall bind either party in any manner whatsoever unless and until it has been executed by both parties. (k) LESSEE shall not be entitled to exercise any option in this lease, the attached Rider to Lease or any subsequent amendment or extension, or receive LESSOR's consent as provided for herein, if LESSEE is at that time in default of any terms or conditions hereof. (l) Except as otherwise provided herein, neither LESSOR, nor OWNER, nor LESSEE shall be liable for any special, incidental, indirect or consequential damages, including but not limited to lost profits or loss of business, arising out of or in any manner connected with performance or nonperformance under this lease, even if any party has knowledge of the possibility of such damages. (m) The headings in this lease are for convenience only and shall not be considered part of the terms hereof. (n) No restriction, condition or other endorsement by LESSEE on any check, nor LESSOR's deposit of any full or partial payment, shall bind LESSOR in any way or limit LESSOR's rights under this lease. (o) LESSEE shall pay LESSOR for all legal and administrative fees and expenses incurred by LESSOR in connection with any consent requested by LESSEE or in enforcing any or all obligations of LESSEE under this lease. (p) LESSEE will conform to all rules and regulations now or hereafter made by LESSOR for parking, for the care, use or alteration of the building, its facilities and approaches, and for the admission of others of this lease, and will not permit any employee or visitor to violate this or any other covenant or obligation of LESSEE. (q) LESSEE's covenants under this lease shall be independent of LESSOR's covenants, and LESSOR's failure to perform any of its covenants under this lease, including a covenant constituting a significant inducement to LESSEE to enter into this lease, shall not excuse the payment of rent or any other charges by LESSEE or allow LESSEE to terminate this lease. (r) LESSOR, LESSEE, OWNER and GUARANTOR hereby waive any and all rights to a *jury* trial in any proceeding in any way arising out of the subject matter of this lease. (s) **See attached Rider to Lease for additional provisions.**

29.  **SECURITY AGREEMENT.** LESSEE hereby grants LESSOR a continuing security interest in all existing and hereafter acquired property of LESSEE in any of LESSOR's buildings to secure the performance of all LESSEE's obligations under this lease or any subsequent lease between the parties. This provision shall survive termination of this lease, shall continue under any subsequent lease between the parties, and shall not negate or replace any continuing security interest of LESSOR under any prior lease between the parties. Default in the payment or performance of any of LESSEE's obligations under this lease or any subsequent lease shall be a default under this security agreement, and shall entitle LESSOR to immediately exercise all of the rights and remedies of a secured party under the Uniform Commercial Code. In the event of default, LESSEE agrees to assist and facilitate LESSOR's exercise of its rights under the Uniform Commercial Code. LESSEE agrees to execute any financing agreement or statement requested by LESSOR in connection with this security interest.

30.  **WAIVERS, ETC.** No consent or waiver, express or implied, by LESSOR to or of any breach of any covenant, condition or duty of LESSEE shall be construed as a consent or waiver to or of any other breach of the same or any other covenant, condition or duty. If LESSEE is several persons, corporations, or other legal entities, or a partnership, or some combination thereof, LESSEE's obligations are joint and several. Unless repugnant to the context, "LESSOR" and "LESSEE" mean the person or persons, natural or corporate, named above as LESSOR and as LESSEE respectively, and their respective heirs, executors, administrators, successors and assigns.

31.  **AUTOMATIC FIVE-YEAR EXTENSIONS.** This lease, including all terms, conditions, escalations, etc. shall be automatically extended for additional successive periods of five years each unless LESSOR or LESSEE serves written notice, either party to the other, of either party's option not to so extend the lease. The time for serving such written notice shall be not more than 12 months or less than six months prior to the expiration of the then current lease term. Time is of the essence.

IN WITNESS WHEREOF, LESSOR and LESSEE have hereunto set their hands and common seals, intending to be legally bound hereby this ____29th____ day of ____MARCH____ , 2004 .

LESSOR: *CUMMINGS PROPERTIES, LLC*

By: _~~Dennis Clarke~~_
                          *Duly authorized*

LESSEE:   TERMIDEBT, INC.

By: _~~Julia Colon~~_
                          *Duly authorized*
Print name: _Julia Fabryw Colon_

**GUARANTY** *TermiDebt*

IN CONSIDERATION OF LESSOR making this lease with LESSEE, at the request of the undersigned (GUARANTOR) and in reliance on this guaranty, GUARANTOR hereby personally guarantees the prompt payment of rent by LESSEE and the performance by LESSEE of all terms, conditions, covenants and agreements of the lease, any amendments thereto and any extensions or assignments thereof, with respect to the leased premises and any new premises that become subject to this lease, and the undersigned promises to pay all expenses, including reasonable attorney's fees, incurred by LESSOR in enforcing all obligations of LESSEE under the lease or in enforcing this guaranty. LESSOR's consent to any assignments, subleases, amendments and extensions by LESSEE or to any compromise or release of LESSEE's liability hereunder, with or without notice to the undersigned, or LESSOR's failure to notify the undersigned of any default and/or reinstatement of the lease by LESSEE, shall not relieve the undersigned from liability as GUARANTOR. IN WITNESS WHEREOF, the undersigned GUARANTOR has hereunto set his/her/its hand and common seal, intending to be legally bound hereby on this _____ day of _____ , _____ .

_____
                          *Signature*

Print name: _____

Address: _____
_____

REV. 1/04

CUMMINGS PROPERTIES, LLC
STANDARD FORM

B-0304081-JCS

# RIDER TO LEASE

The following additional provisions are incorporated into and made a part of the attached lease:

**A.   CONFLICTS.** In the event of any conflict between any provision of this Rider to Lease and the attached lease, the provisions of this Rider shall govern.

**B.   SOUTH ESSEX SEWERAGE DISTRICT.** With respect to leases at Cummings Center in Beverly (only), LESSEE shall fully comply with all regulations of the South Essex Sewerage District (SESD) now or hereafter in effect, including prompt filing with LESSOR of any documents required by SESD regulations, and LESSEE agrees to indemnify and hold harmless LESSOR and OWNER from any and all liability arising out of any noncompliance by LESSEE with such regulations.

**C.   ACTIVITY AND USE RESTRICTION.** With respect to leases at Cummings Center in Beverly and 10 and 18 Commerce Way in Woburn (only), and except as provided below, the following activities and uses are expressly prohibited at the property of which the leased premises are a part: residential uses (except for facilities for adult congregate care or assisted living, senior housing, nursing home uses and other adult residential facilities in certain designated areas of the property); child care, day care, or public or private elementary or secondary schools; a public park, playground or playing field, or other activities involving more than casual contact with the ground; cultivation out-of-doors of fruits and vegetables destined for human consumption; and fishing or swimming in the ponds and other waterways on or adjacent to the property. In addition, implementation of a health and safety plan is required for construction, utilities maintenance and other intrusive activities which are likely to involve extensive exposure to or contact with subsurface soils at the property. Notices of Activity and Use Limitation providing further information have been recorded at the Essex South Registry of Deeds and the Middlesex South Registry of Deeds, respectively, as well as recorded amendments authorizing both child care and a public elementary school in specific locations at Cummings Center.

**D.   PARKING.** LESSEE shall be entitled to use, in common with others, a proportionate share of the total number of common area parking spaces provided for the building (based on square footage leased by LESSEE as compared with the total leasable square footage of the building). The number of spaces used by LESSEE's employees, agents and invitees shall not at any time exceed LESSEE's proportionate share of the total spaces for the building. For purposes of determining LESSEE's compliance with this paragraph at any time, the number of spaces used by LESSEE shall be presumed to equal the number of persons who are then present at the leased premises.

**E.   RECORDING AND SECURITY.** Although LESSOR may choose at any time to record activities at the building with unmonitored remote television cameras, LESSEE acknowledges and agrees that, as provided in Section 15 above, LESSOR is not thereby or in any other way providing any security service for LESSEE or its employees, agents, invitees, contractors and representatives, and that LESSOR has made no representations whatsoever, written or oral, concerning the safety of the leased premises or the presence, effectiveness or operability of any security devices or security measures, or the safety or security of LESSEE, its employees, agents, invitees, callers, contractors and representatives, or LESSEE's property, against the criminal or wrongful acts of third parties. Additionally, LESSEE accepts full responsibility for protecting the persons and property of LESSEE and those of its employees, agents, invitees, callers, contractors and representatives, and (acknowledging that security devices or measures may fail or be thwarted by criminals, by other third parties or by electrical or mechanical malfunction), agrees not to rely on any such devices or measures, and to protect itself, its property, and its employees, agents, invitees, callers, contractors and representatives as if such devices or measures did not exist.

F.   * LESSEE agrees to take possession of the leased premises in "as is" condition.

LESSOR:  CUMMINGS PROPERTIES, LLC

By: _Dennis Clarke_

_Duly authorized_

Date: _3/29/04_

LESSEE:  **TERMIDEBT, INC.**

By: _Julie A Fabrizio-Colon_

_Termidebt Inc._         _Duly authorized_

Print Name: _Julie A Fabrizio-Colon_

03/2004

CUMMINGS PROPERTIES, LLC
STANDARD FORM

B-0504143-JCS-A

# LEASE ASSIGNMENT

In connection with a lease currently in effect between the parties at __800 Cummings Center, Suite 152-R__ ,
__Beverly__ , Massachusetts, fully executed on __March 29, 2004__ and terminating __April 30, 2008__ ,
and in consideration of one dollar ($1.00) and other mutual benefits to be derived herefrom, Cummings Properties, LLC, LESSOR, and
__Termidebt, Inc.__ , LESSEE, hereby agree to amend said lease as follows:

1. LESSEE hereby assigns to __Better Budget Financial Services, Inc. (a MA corp.)__ (ASSIGNEE) all LESSEE's right, title and interest in and to the lease effective __immediately__ .

2. LESSOR, as provided in the lease, hereby consents to this assignment to ASSIGNEE, but in so doing, does not consent to any further assignments. ~~LESSOR acknowledges receipt of $350 towards its legal and administrative expenses in connection with this consent, and LESSEE shall, upon LESSEE's execution of this Lease Assignment, pay any additional charges that may be due.~~

3. ASSIGNEE hereby agrees to accept this assignment in accordance with the lease and agrees to comply with all covenants, conditions and terms as fully as if, for purposes hereof, ASSIGNEE were LESSEE under the lease. Any references to LESSEE in the lease and any amendments thereto shall denote ASSIGNEE as well, unless the context does not permit such an interpretation.

4. Notwithstanding the foregoing, however, in the event of any default by ASSIGNEE, LESSEE shall continue to remain liable to LESSOR, as provided in Section 11 of the lease, for the payment of all rent and for the full performance of all covenants and conditions to the lease and any amendments and extensions thereof.

5. LESSEE hereby transfers to ASSIGNEE all LESSEE's right, title and interest in the $ __10,000__ security deposit previously paid by LESSEE to LESSOR, and LESSEE shall have no further responsibility to LESSEE with respect thereto.

6. ASSIGNEE shall pay LESSOR an additional security deposit of $ _____ upon execution of this Lease Assignment, subject to the same terms and conditions provided in Section 2 of the lease.

7. LESSOR agrees to refund the security deposit of $ __10,000__ to ASSIGNEE at the end of the lease term in accordance with Section 2 of the lease, subject to satisfactory compliance with the conditions of the lease by LESSEE and ASSIGNEE.

8. ASSIGNEE shall, upon its execution of this Lease Assignment, supply LESSOR with a certificate of insurance in the amount of $1,000,000.00 naming LESSOR and the owner of the building (OWNER) as additional insureds. LESSOR and OWNER shall be included as additional insureds using standard endorsement ISO Form CG 20 26 11 85 or another similar form specifically approved in advance by LESSOR.

9. Any notices from LESSOR to LESSEE shall be served at __800 Cummings Center, Suite 260-T__ and otherwise in accordance with Section 21 of the lease. Any notices from LESSOR to ASSIGNEE shall be served at the leased premises and otherwise in accordance with Section 21 of the lease.

10. * LESSOR represents that Cummings Properties, LLC has succeeded to all interests of Cummings Properties Management, Inc. as LESSOR.

All other terms, conditions and covenants of the lease shall continue to apply, and to the extent any inconsistency exists between this Lease Assignment and the lease, including any prior amendments, the conditions herein shall control and supersede any earlier provisions. In Witness Whereof, LESSOR, LESSEE and ASSIGNEE have hereunto set their hands and common seals this __9th__ day of __June__ , 2004.

LESSOR: CUMMINGS PROPERTIES, LLC

By: _E. N. Agresti_
_Duly Authorized_

LESSEE: **TERMIDEBT, INC.**

By: _____
_Duly Authorized_
Print Name: _John Colon_

ASSIGNEE: **BETTER BUDGET FINANCIAL SERVICES, INC.**

By: _____
_Duly Authorized_
Print Name: _John Colon Jr._

10/03

Case 1:04-cv-12326-WGY     Document 41-2     Filed 01/03/2005     Page 19 of 25



**Cummings Properties, LLC**
200 West Cummings Park
Woburn, MA  01801
(781) 935-8000

| STATEMENT OF: | 12/21/2004 | ACCOUNT NUMBER |
|---|---|---|

Better Budget Financial Svcs.
800 Cummings Ctr, S-260T
Beverly, MA  01915

CC8  375501    1   JS

Re:  800 Cummings Center, Beverly, MA

MAKE CHECKS PAYABLE TO:  Cummings Properties, LLC          BALANCE DUE          35,955.88

| Date | Code | Description | Charges | Pmts/Credits | Amount Due |
|---|---|---|---|---|---|
| 04/26/2004 | LOP | L#8984 FROM 375500 | 729.94 | .00 | 729.94 |
| 06/26/2004 | INT | 06/2004 Interest | 10.95 | .00 | 10.95 |
| 07/01/2004 | INT | 07/2004 Interest | 11.11 | .00 | 11.11 |
| 08/02/2004 | INT | 08/2004 Interest | 11.28 | .00 | 11.28 |
| 09/01/2004 | INT | 09/2004 Interest | 11.45 | .00 | 11.45 |
| 10/01/2004 | INT | 10/2004 Interest | 11.62 | .00 | 11.62 |
| 11/01/2004 | INT | 11/2004 Interest | 11.80 | .00 | 11.80 |
| 11/01/2004 | LOP | Inv# L-9273 | 223.19 | .00 | 223.19 |
| 11/01/2004 | LOP | Inv# L-9274 | 1,473.64 | .00 | 1,473.64 |
| 11/01/2004 | RNT | Rent | 16,535.45 | .00 | 16,535.45 |
| 11/04/2004 | TMC | ADMINISTRATIVE FEE | 35.00 | .00 | 35.00 |
| 11/23/2004 | TWO | #1799 REVIEW S DISH INSTALL | 95.00 | .00 | 95.00 |
| 12/01/2004 | INT | Interest 12/2004 | 260.00 | .00 | 260.00 |
| 12/01/2004 | RNT | Rent | 16,535.45 | .00 | 16,535.45 |

| 12/21/2004 | ACCOUNT NUMBER |
|---|---|

Please send this portion of the statement with your remittance.

INVOICE #:
Better Budget Financial Svcs.          375501          1

Cummings Properties, LLC
200 West Cummings Park
Woburn, MA  01801
(781) 935-8000

| Current | 30 | 60 | 90 | 120 | BALANCE DUE |
|---|---|---|---|---|---|
| 35,955.88 | 0.00 | 0.00 | 0.00 | 0.00 | 35,955.88 |

MINTZ LEVIN
COHN FERRIS
GLOVSKY AND
POPEO PC

Boston
Washington
Reston
New York
Stamford
Los Angeles
London

Chrysler Center
666 Third Avenue
New York, New York 10017
212 935 3000
212 983 3115 fax

www.mintz.com

## Fax Cover Sheet

**DATE:** December 9, 2004

**FROM:** Peter B. Zlotnick

**CLIENT:**

*Direct Dial*   212 692 6887
pbzlotnick@mintz.com

| Attorney No. | Client No. | Matter No. |
|---|---|---|
| 2835 | 24997 | 002 |

**TO:**

| NAME | COMPANY | BUSINESS # | FAX # |
|---|---|---|---|
| Carolann Mitchell | Cummings Properties LLC | (781) 935-8000 | (781) 935-1990 |

**MESSAGE:**

NYC 308180v1

**We are sending a total of 3 pages, including this cover sheet.**

Please call us at 212.692.6826, if you experience any problems.

STATEMENT OF CONFIDENTIALITY
THE INFORMATION CONTAINED IN THIS FAX IS INTENDED FOR THE EXCLUSIVE USE OF THE ADDRESSEE AND MAY CONTAIN
CONFIDENTIAL OR PRIVILEGED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT
ANY FORM OR DISSEMINATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF THIS FAX WAS SENT IN ERROR,
PLEASE IMMEDIATELY NOTIFY US BY PHONE.

12/08/2004 10:38 FAX

# MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

*Boston*
*Washington*
*Reston*
*New York*
*Stamford*
*Los Angeles*
*London*

*Chrysler Center*
*666 Third Avenue*
*New York, New York 10017*
*212 935 3000*
*212 983 3115 fax*
*www.mintz.com*

Peter B. Zlotnick

*Direct dial  212 692 6887*
*pbzlotnick@mintz.com*

December 8, 2004

VIA FACSIMILE AND U.S. MAIL

Carolann Mitchell, Esq.
Associate Counsel
Cummings Properties, LLC
200 West Cummings Park
Woburn, Massachusetts 01801-6396

Re:  Better Budget Financial Services, Inc.

Dear Ms. Mitchell:

This letter relates to our telephone conversation earlier yesterday.  As you know we represent Hernan Serrano, Jr. (the "Receiver"), the court-appointed receiver of Better Budget Financial Services, Inc. ("BBFS").  Mr. Serrano was appointed as the temporary receiver of BBFS pursuant to an *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Receiver, Immediate Access to Defendants' Business Premises, Expedited Discovery, and Order to Show Cause Why A Preliminary Injunction Should Not Issue, entered by the Hon. William G. Young of the United States District Court for the District of Massachusetts on November 3, 2004 (the "TRO").

As is evident by your recitation to various sections of the TRO in correspondence from you to my colleague Seth Goldman, dated November 26, 2004, and to the receiver, dated November 23, 2004, your client, Cummings Properties, LLC ("Cummings") has been served with and received actual notice of the TRO.  Your letter to Mr. Goldman also enclosed copies of the two leases and related amendments purportedly in response to the receiver's request for those documents, however, you unilaterally chose to redact various portions of the documents, stating the redacted information was "not relevant to the rent and other charges. . . ."

Mr. Goldman requested that you deliver the copies of the leases pursuant to Section XVIII.A.2 of the TRO.  Nothing in that provision or any other provision of the TRO permits Cummings to redact any portion of the leases.  We obtained an unredacted copy of Lease No. B-0202038-JCS-A and Amendment to Lease No. 1 No. B-0204065-JCS-C from the offices of

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

Carolann Mitchell, Esq.
December 8, 2004
Page 2

BBFS late last week, but were unable to obtain a complete, unredacted copy of Lease B-0304081-B or Lease Assignment B-0504143-JCS-A, relating to Suite 260-T at 800 Cummings Center, Beverly, MA 01915.

From the clean copies of the lease documents that we did obtain we learned that you deliberately attempted to conceal from us that Cummings is presently holding in a trust account for the benefit of BBFS a security deposit in the amount of $32,500 for Suite 152-R at 800 Cummings Center. We presume that the redacted portion of the lease documents for which we still have not received from you complete, unedited versions, also conceal the security amounts for Suite 260-T that Cummings is holding for the benefit of BBFS.

Please be advised that, by redacting these documents you are in violation of the TRO. Unless we immediately receive from you complete, unredacted versions of the lease documents described above and in your letter to Mr. Goldman, we will take all measures necessary and proper, at law or in equity, including, but not limited to obtaining appropriate Writs pursuant to Section XVIII.B authorizing and directing the United States Marshal or any local sheriff or deputy sheriff to seize the documents from Cummings and deliver them to the Receiver.

Please be further advised that, pursuant to Section XIX of the TRO, we hereby request that Cummings immediately transfer to the Receiver all of the funds that it is presently holding as security in connection with the BBFS leases for Suites 152-R and 260-T at 800 Cummings Center, Beverly, MA 0915. Please make the check payable to Hernan Serrano, Jr., as Receiver for Better Budget Financial Services, Inc., and produce any and all records that Cummings has in its possession, custody or control relating to these funds.

We look forward to hearing from you shortly.

Very truly yours,

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C.

Peter B. Zlotnick

NYC 308036v1