UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BETTER BUDGET FINANCIAL SERVICES, INC.,<br>JOHN COLON, JR., and JULIE FABRIZIO-COLON,<br><br>Defendants. | Civ. No. 04-12326 (WGY) |

## CUMMINGS PROPERTIES, LLC'S LIMITED OBJECTION TO FINAL REPORT OF HERNAN SERRANO, JR., THE RECEIVER OF BETTER BUDGET FINANCIAL SERVICES, INC.

Cummings Properties, LLC ("CPL") hereby submits this limited objection to the final report ("Final Report") and proposed order of the Receiver of Better Budget Financial Services, Inc. ("BBFS") dated February 8, 2006. CPL objects to the Final Report and proposed order on the ground that they do not allow secured creditors such as CPL to file or otherwise assert claims that are secured by assets in the receivership estate. In particular, the Receiver has not addressed CPL's secured claim for $59,800.

### Background

**The Leases.** CPL and BBFS were parties to two commercial leases for premises located at 800 Cummings Center, Beverly, Massachusetts. Affidavit of Ernest N. Agresti, Jr. ¶¶ 2, 3 ("Agresti Aff.") attached hereto as Exhibit A. The term of the first lease ("Lease A"), as amended, was September 1, 2002 through April 30, 2007. *Id.* ¶ 2. The monthly rent for Lease A was $16,535.45, and CPL held a security deposit of $32,500.00. *Id.* The term of the second lease ("Lease B"), as amended, was May 1, 2004 through April 30, 2008. *Id.* ¶ 3. The monthly

rent for Lease B was $5,005.00, and CPL held a security deposit of $10,000.00. *Id.* Therefore, CPL held security deposits under the two leases with BBFS in the total amount of $42,500.00. *Id.*

On or about November 2, 2004, the plaintiff, Federal Trade Commission ("FTC"), filed a complaint against the defendants, alleging violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). On November 3, 2004, the FTC filed a (Proposed) *Ex Parte* Temporary Restraining Order With Asset Freeze, Appointment of Receiver, Immediate Access to Defendants' Business Premises, Expedited Discovery, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO"). This Court granted the TRO on that day, which, by stipulation and order dated November 18, 2004, was extended until the trial date. On or about December 31, 2004, CPL filed a motion to intervene in this action to protect its interest in the security deposits and because BBFS had failed to pay rent due under both Lease A and Lease B.

**The Stipulation and Settlement Agreement**. The Receiver, FTC and CPL subsequently reached an agreement regarding the status of the leases, security deposits, past due rent and also certain office furnishings, equipment and other personal property at the premises (the "Personal Property"). *See* Stipulation and Settlement Agreement ("Stipulation"), attached hereto as Exhibit B.[1] Pursuant to the leases with BBFS, CPL held a perfected security interest in the Personal Property. Agresti Aff ¶ 4. The Stipulation authorized the Receiver to sell the Personal Property to Sensitech, Inc. ("Sensitech") for $65,000. Stipulation ¶¶ 3 & 4, at 2-4. Consistent with the agreement, the Receiver paid CPL eight percent of the proceeds of this sale, or $5,200.00, and $60,042.20 in rent and administrative expenses. *Id.* ¶¶ 3-5, at 2-4; Agresti Aff ¶ 8. CPL reserved its rights, however, to assert both secured and unsecured claims, including its right to pursue its

---

[1] The Stipulation was approved by court order, entered on February 1, 2005.

2

secured interest in the proceeds of the sale of the Personal Property over and above the $5,200 payment CPL received. After giving effect to the $5,200.00 payment to CPL, CPL's secured claim equals $59,800, the balance of the proceeds of the sale of the Personal Property. *See* pp. 6-7 below.

**Argument**

1. *The Receiver Has Not Addressed CPL's Claims Against the Estate.*

The Receiver incorrectly states that CPL has "no further rights or interests in or to any portion of the Receivership estate." Final Report ¶ 11, at 6. On the contrary, CPL continues to hold secured and unsecured claims against the estate for unpaid rent. These rights were specifically reserved in the Stipulation, and include claims CPL "may have for unpaid rent and other charges under the leases . . . after January 22, 2005." Id. ¶ 7, at 4. CPL's secured interest continues in $59,800.00 of the proceeds from the sale of the Personal Property, pursuant to the Stipulation. All of the parties contemplated that CPL would be entitled to assert secured and unsecured claims (as discussed in more detail below) once the receivership assets had been liquidated and a determination made that funds were available for distribution.[2]

2. *The Receiver Has Not Considered Creditor Claims, Contrary to the Directions to the Receiver During This Proceeding.*

Until the submission of the Final Report, CPL understood that the Receiver (or the FTC) would provide a claim determination process in which CPL among other creditors could participate. The Stipulated Final Judgment and Order (the "Order") entered on March 11, 2005 contemplates the Receiver's consideration of creditors' claims, followed by the court's consideration of objections, because the Receiver is required to deliver copies of his Final Report

---

[2] While CPL is not waiving its unsecured claim, for purposes of this limited objection, it is asserting only its secured claim.

to all known creditors to enable them to file objections to paying any assets of BBFS to satisfy the Receiver's costs and expenses or the monetary judgment in the Order. Order §§ X, A & B, at 26-27; *see FTC v. First Capital Consumer Membership Servs., Inc.*, 206 F.R.D. 358 (W.D.N.Y. 2001) (explaining that creditor "has a number of options, including participation in the Receiver's administration of the Receivership defendants' assets, if and when the court orders such distribution").[3]

The TRO and the Order oblige the Receiver to act on behalf of creditors such as CPL. The TRO specifically provides that the Receiver is "directed and authorized to . . . [c]onserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers *or to creditors* of the Defendants, . . . ." TRO, § XVI, D, at 23. (Emphasis added.) The TRO further requires the Receiver to "protect the interests of consumers *and* creditors who have transacted business with the Defendants." *Id.*, § XVI, F, at 24. (Emphasis added.) Accordingly, the TRO contemplates that creditors such as CPL have rights to the receivership assets and that the Receiver's fiduciary duties extend to consumers *and* creditors alike.

Notably, the Receiver has paid secured claims of creditors other than CPL. In particular, the Receiver paid the mortgage and taxes on the real property at Conifer Way throughout this proceeding and satisfied the mortgage from the proceeds of the sale of that property. *See* Final Report ¶ 42, at 16 (noting "monthly mortgage payments to Litten in amounts of $7,867.09 and $8,767.09"); Order § VI, A, at 16-17. Meanwhile, CPL's secured claim, which provides CPL

---

[3] While some courts have denied creditors' claims against the assets of an FTC receivership based on a state law theory that the receivership estate operates as a constructive trust that preserves the defendants' ill-gotten gains for the benefit of consumers, and therefore creditors cannot reach trust assets to satisfy their claims, *see, e.g., FTC v. Ameridebt, Inc.*, 373 F. Supp. 2d 558, 565 (D. Md. 2005) (Maryland law); *FTC v. Crittenden*, 823 F. Supp. 699, 702-04 (C.D. Cal. 1993) (California law), *aff'd* 19 F.3d 36 (9th Cir. 1994), this does not appear to be the case under Massachusetts law. *See FTC v. American Inst. for Research & Dev.*, 219 B.R. 639, 645-46 (D. Mass. 1998) (Ponsor, J.) (moneys on deposit with bank are special purpose funds, not held in a constructive trust).

rights in personal property that are comparable to this mortgagee's rights in real property, remain unaddressed.

Moreover, the Order does not preclude claims of creditors to the receivership estate, but rather disposes of the FTC's claims against the defendants only. Indeed, the Order specifically authorizes the Receiver (with court approval) to pay to creditors any debt or obligation that BBFS incurred prior to the date of entry of the TRO. *See* Order, § VIII, K, at 25. The Order also authorizes the Receiver to make rental payments as he deems necessary and without court approval. *Id.*

CPL reasonably expected the Receiver or the FTC to solicit, evaluate and determine creditor claims based on the foregoing and precedents from other equity receiverships but neither party has done so.[4] Other equity receiverships under Massachusetts law conducted in the interest of a discrete group, such as insurance company rehabilitation and liquidation proceedings, which primarily operate to protect the interests of the insurer's policyholders, do not eliminate the rights of secured creditors as the Receiver proposes here. *See* M.G.L. c. 175, § 180K. Such proceedings also require the Rehabilitator or Liquidator to notify creditors and then receive and determine secured and unsecured claims. *See id.* § 180F. Notice and claims determination procedures are also required in other federal receiverships. *See, e.g.*, 12 U.S.C. § 1821(d) (FDIC as receiver of troubled financial institution); *Simon v. FDIC*, 48 F.3d 53, 56 (1st Cir. 1995) (describing FDIC receivership process).

Accordingly, the Receiver's desire to wind up these proceedings without addressing creditors' claims contradicts the fundamental goals of an equity receivership. *See* TRO, § XVI,

---

[4] After many months and several conversations with FTC counsel, in which CPL was told the FTC was undecided as to what its procedures would be, on December 19, 2005, counsel for the FTC wrote CPL that it "will not be conducting a claims process nor will otherwise consider any monetary claim that [CPL] believes it may still have here." *See* Exhibit C.

F, at 24 (Receiver directed to "[p]revent inequitable distribution of the Receivership assets, and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Defendants"); *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) (noting "a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors", citing SEC and FDIC receivership cases); *see also Commissioner of Ins. v. Conveyancers Title Ins. & Mtge. Co.*, 300 Mass. 457, 470 (1938) (noting "the purpose of [receivership] is to secure fair and proportional distribution of available assets").

   3.  *CPL Has A Valid Secured Claim Against the Estate for Unpaid Rent.*

CPL has a valid secured claim against the receivership estate for the proceeds of the Personal Property. CPL had a perfected security interest in this collateral pursuant to Section 29 of Leases A and B, and that interest attached to the sale proceeds and continues as a secured interest as a matter of law. *See* M.G.L. c. 106, §§ 9-203, 9-315; Agresti Aff. ¶ 4. CPL reserved its rights to "any and all claims, rights and interests it may have" in the personal property sold to Sensitech, and the parties agreed that "such claims, rights and interest shall attach to the proceeds of the sale to Sensitech." Stipulation, ¶ 8, at 4-5. Since CPL's claim for unpaid rent exceeds the proceeds of the Personal Property, as discussed below, CPL has a total secured claim against the receivership estate of $59,800 in the proceeds of this sale.

  Contrary to the Receiver's assertion, CPL has not "fully mitigated any claims it might have against BBFS in connection with BBFS' leasehold interests." Final Report ¶ 11, at 6. While CPL has indeed leased both premises to new tenants, it did so at a lower rental rate and after incurring additional expenses, and the shortfall amounts to $ 256,391.15, which clearly exceeds the $59,800 balance of proceeds of the sale of the Personal Property. Agresti Aff. ¶ 9.

Thus, the Receiver is incorrect to allege that CPL has fully mitigated any claims it might have against the receivership estate.

### CPL's Limited Objection and Requested Relief

CPL objects to the Final Report and proposed order because they do not take into account secured claims by creditors such as CPL, nor do they provide any claims handling procedures for asserting such claims or otherwise sharing in any assets remaining in the receivership estate. Indeed, the proposed order provides that all remaining assets of the receivership estate, after accounting for professional services and other reserves for winding down the estate, are to be transferred to the FTC for final consumer redress. *See* Final Report, ¶ 7(h), at 4. Accordingly, CPL asks that this Court sustain its limited objection and modify the proposed order to require the Receiver to pay CPL's secured claim of $59,800, or in the alternative, establish a claims handling procedure for claims asserted by creditors such as CPL; allow CPL to file its claim; and allow CPL to share in any final distribution of the receivership estate on an equitable basis.

### Conclusion

For each of the foregoing reasons, Cummings Properties, LLC respectfully requests that the Court grant the relief requested above and such other and further relief as the Court deems just and appropriate.

By its attorney,

/s/ Susan F. Brand
Susan F. Brand BBO #054100
200 West Cummings Park
Woburn, MA 01801
(781) 935-8000

Dated: March 22, 2006

M:\LEGAL\ESCOBAR\!BETTERBUDGETCPLOBJTOFINALORDER.DOC

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 3/22/06
/s/ Susan F. Brand
+ electronic means

7